Adam A. Edwards*
William A. Ladnier (CA Bar No. 330334)
Virginia Ann Whitener*
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

*Counsel for Plaintiffs
and the Proposed Class*

*Pro hac vice* application to follow

(Additional Counsel on Signature Page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRASHMI KHANNA, FABIOLA CHAPMAN, TINA MARIE BARRALES, TIFFANY LARRY, and ALYNA SMITH, and on behalf of themselves and all others similarly situated, | Case No.: _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| NUNA BABY ESSENTIALS, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs Prashmi Khanna, Fabiola Chapman, Tina Marie Barrales, Tiffany Larry, and Alyna Smith, (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Nuna Baby Essentials, Inc. ("Nuna" or "Defendant") and alleges the following based on personal knowledge as to themselves and as to all other matters, upon information and belief, including the investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.    Nuna designs, manufactures, and sells defective car seats—the Nuna "Rava" product line of convertible car seats—that it knows are unsafe for the children who use them. The "Rava" brand includes multiple models, all of which are defective and unsafe (collectively, the "Products" or the "Car Seats").[1]

2.    The Products are marketed as "convertible" car seats that are designed to hold, secure, and protect children of all ages and sizes. As the child grows, the Product can be converted to ensure that it can still seat and safely secure the child. For example, the Product is designed to function as a rear-facing car seat for infants and children between 5-50 pounds, but can be converted to a forward-facing car seat for children at least 2 years old, between 30-65 pounds. As children continue to grow, the car seat can be extended to safely secure children up to 65 pounds.[2]

---

[1] The "Rava" product line includes 23 substantially similar models: CS-50-001 Caviar, CS-50-002 Indigo, CS-50-003 Berry, CS-50-004 Blackberry, CS-50-005 Slate, CS05101CHC Charcoal, CS05103CVR Caviar, CS05103FRT Frost, CS05103GRN Granite, CS05103LAK Lake, CS05103OXF Oxford, CS05103ROS ROSE, CS05115DDC Droplet Dot Collection, CS05105BAC Broken Arrow Caviar, CS05106BRS Brushstroke, CS05107RFD Refined, CS05109RVT Riveted, CS05110LGN Lagoon, CS05110EDG Edgehill, CS05111OCN Ocean, CS05114CRD Curated, CS05104THR Threaded, and CS05101HCV Verona. *See* https://nunababy.com/recalls-rava1 ("Recall Notice"), (last accessed Feb. 5, 2025).

[2] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720 (last accessed Feb. 5, 2025).

3.      On its website, Nuna advertises the Product as a "[f]an-favorite for security, ease-of-use, longevity and sleek design."[3] The Products, like other car seats, are designed and manufactured to provide safe and secure transport for children riding in a vehicle. The Product provides protection through a five-point harness system that, when tightened, is designed to remain securely in place until the front release button is pressed and the harness straps are loosened simultaneously. The harness system is intended to (and marketed as) remain secure throughout the ride, and especially during a crash.[4] This, however, is not the case, making the Products unsafe and unsuitable for their marketed and intended purpose of providing safe transport for children.

4.      By design, the Products' front harness adjuster button is uncovered, and is prone to being covered with debris. Should debris come into contact with the front harness adjuster button, it can impede the mechanism from properly clamping on the harness strap (the "Defect").[5] This Defect causes the harness not to properly and securely tighten (or remain tight) or to loosen altogether, which in turn "[cannot] properly restrain the occupant, increasing the risk of injury in a crash."[6]

5.      Not only is it critical that children and infants are secure in their harness, especially in the event of a crash, but children are "not known for their neatness": the presence of sand, dirt, crumbs, slick substances, or other debris on the surface of the Car Seat may cause the Defect to manifest, preventing the locking mechanism from functioning properly and allowing the harness to loosen—or, simply put, causing the Car Seat to fail to provide any protection whatsoever.[7]

6.      Nuna makes these representations because it knows that the consumers—that is, parents and caregivers—are willing to pay more for high-quality and safe baby

---

[3] *Id.*
[4] *See id.*
[5] https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990 (last accessed Feb. 5, 2025).
[6] *Id.*
[7] *Id.*

products.[8] No reasonable consumer would purchase a premium, more expensive car seat to transport children that has or could develop a serious safety defect that could harm their child.

7.    Unfortunately, all consumers who purchased the Products received a defective, unsafe, and unusable car seat. It suffers from a significant product safety Defect and is also subject to a major national recall.

8.    In other words, Nuna has placed the Products on the market based in part on the premise of "security," when it fails entirely to secure children in an environment that, as a manufacturer of children's seats, is guaranteed to occur: the presence of loose debris or slickness around young children.

9.    The Defect is confirmed by Nuna's voluntary recall of the Products on December 20, 2024 (the "Recall").[9] Sample images of the Products are included below:

 

10  11

---

[8] https://www.beautypackaging.com/contents/view_breaking-news/2023-10-17/baby-care-market-projected-to-flourish/
[9] *Id.*
[10] *Rava Voluntary Recall*, nunababy.com, https://nunababy.com/usa/recalls-rava1 (last accessed Feb. 5, 2025).
[11] *NUNA Rava Convertible Car Seat – Granite*, dearbornbaby.com, https://www.dearbornbaby.com/products/nuna-rava-convertible-car-seat-granite (last accessed Feb. 5, 2025).

10.     As part of the Recall, Nuna began to send notice to consumers on January 15, 2025, pursuant to National Highway Transportation Safety Administration ("NHTSA") requirements. A copy of this notice is attached as Exhibit A, which references the Recall as "NHTSA Recall No. 24C002." Notably, not all consumers have received this notice yet. Further, it is unclear how Nuna intends to send this notice to consumers, or whether Nuna can even ensure that all purchasers of the Product receive notice of the Recall at all. Given this, it is unclear if a majority of Product purchasers have learned—or even can learn—about the dangers of continued use of the Car Seats, or of the inherent and significant safety risks associated with continued use of the Car Seats.

11.     In this notice, Nuna recognizes that the Defect impacts the safety of the Product and, when manifested, can cause the harness to loosen, which causes it to "not properly restrain the child, increasing the risk of injury in a crash."[12]

12.     Indeed, Nuna explains that "[i]f the harness lengthens while [testing to determine if the Defect has manifested], STOP using the seat . . . immediately."[13] Nuna itself warns consumers not to use the Products when the Defect manifests—which, given the common circumstances giving rise to manifestation, likely occurs often—but fails to provide a meaningful remedy to address this or provide monetary reimbursement.

13.     However, this Recall is wholly inadequate. Rather than actually recalling this unsafe product, Nuna instead only offers to provide parents with instructions on how to slightly modify their existing Product—by providing only a new seat pad, cleaning kit, and care instructions.[14] Aside from the inadequacy of these slight

---

[12] Exhibit A, at 1.
[13] *Id.* at 2.
[14] https://nunababy.com/recalls-rava1 (last accessed Feb. 5, 2025).

modifications, this Recall only further diminishes the value of Nuna's so-called "luxurious" car seats.[15]

14. Worse, the Recall still requires consumers to *request* remediation—which they must install themselves, as laypersons with no knowledge of the design of car seats.

15. If a consumer has experienced a manifestation of the Defect—that is, the harness on their Car Seat is not operating properly and unintendedly loosens—Nuna requires that consumers provide further proof of that fact. In other words, even when consumers are directly impacted by the Defect and the associated, serious safety risks—including potentially risking harm to a child during a crash—Nuna, through this Recall, leaves itself the option to review whether it will choose to provide further meaningful repair or replacement of the Car Seat. Put differently, Nuna can choose to deny *actual* remediation of the Defect, whether through more meaningful repair or replacement of the Car Seat. This makes the Recall *illusory* and wholly inadequate.

16. Additionally, the Recall does not include a recall of the entire Product, only certain aspects of it, which Nuna advises parents to replace. The Recall provides concerned parents with no monetary remedy because they purchased a dangerously defective and misrepresented Product at the premium average retail price of $399.99.

17. The Recall is inadequate because it relies on consumers, as laypersons with no expertise or knowledge of the design of car seats, to sufficiently modify the Car Seats in a manner that makes the safe—if that is even possible. Indeed, where Nuna, a designer and manufacturer of Car Seats and child safety products, failed to make the Products safe, Nuna now refuses to correct the Defect itself but instead passes that responsibility onto laypersons. Nuna uses this Recall as a way to shirk its responsibilities of actually remediating the Defect, potentially as a cost-saving

---

[15] https://nunababy.com/usa (last accessed Feb. 5, 2025).

measure, while claiming that the Car Seats—which contained a Defect so serious it required a safety recall—can be made safe by mere cleaning and slight modification.

18.    Moreover, Nuna's Recall is wholly inadequate for additional reasons—namely, that many (if not most) of the owners of the Product have not even yet received notice of the Recall. For example, Plaintiffs recount that they have not yet received official notice from Nuna about the Recall, only learning of the Recall through third parties.

19.    Worse, even when certain Plaintiffs reached out to Nuna to inquire about the Recall and how they could receive the modifications and cleaning kit along with instructions on how to remedy the Defect (to the extent such a dangerous Defect could be remedied in such a manner through a layperson's modifications), they were told that Nuna *was not yet even prepared to send out the modification and cleaning kits* so Product owners could begin attempting to address the dangerous Defect that, in the meantime, continued to put their children at risk.

20.    In its January 15, 2025 NHTA Recall notice, Nuna admits that it is still "currently developing a free remedy kit," that is not even available yet. Thus, even if the "remedy kit" developed by Nuna were to address the Defect—which Plaintiffs do not believe can possibly make safe the defective Product—that "remedy" is not even available yet, and there is no indication of when it will be available.[16]

21.    Indeed, when one Plaintiff—whose Car Seat was still *under warranty*—discovered the Recall (through a third party) and reached out to Nuna regarding the recall, Nuna did not offer to provide a repair or replacement under the warranty. Instead, Nuna merely provided the Plaintiff with information about the Recall, suggested she visit the Recall website, suggesting that she could request a seat pad, headrest, and cleaning kit, but ultimately Nuna left open the possibility that it could

---

[16] Exhibit A, at 1; *see also* https://nunababy.com/recalls-rava1 (last accessed Feb. 5, 2025) (explaining that, at some unspecified point in the future, Nuna "will notify owners when the seat pad and cleaning kit are available").

choose to deny providing further remediation through more substantial repair of the Defect or replacement of the Car Seat.

22.    Plaintiffs and Class Members are forced to either continue using a Product that Nuna admits is unsafe and poses a serious risk of injury to children using the Product—and which Nuna warns should *not* be used in the interim—or else to purchase a separate car seat to protect their children, thereby incurring further damages as a result of Nuna's conduct.

23.    Thus, even by Nuna's own admission, no actual remedy exists pursuant to this Recall. By Nuna's admission, this Recall is inadequate. But regardless, the proposed remedy—merely providing a "cleaning kit" cannot and will not address the underlying Defect. Accordingly, the Recall is inadequate by any measure.

24.    Without a real remedy available to them by Nuna, Plaintiffs, on behalf of themselves and Class Members, seek damages and all other relief available under law and equity from Defendant, including punitive damages for its appalling and unconscionable misconduct. Plaintiffs also seek classwide injunctive relief, including a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Products.

## **PARTIES**

**Plaintiffs**

25.    Plaintiff Prashmi Khanna is a California citizen and resident of Menlo Park, California, in San Mateo County.

26.    Plaintiff Fabiola Chapman is a California citizen and resident of Redding, California, in Shasta County.

27.    Plaintiff Tina Marie Barrales is a California citizen and resident residing in Huntington Park, California, in Los Angeles County.

28.    Plaintiff Tiffany Larry is a California citizen and resident of Palmdale, California, in Los Angeles County.

CLASS ACTION COMPLAINT

29.    Plaintiff Alyna Smith is a California citizen and resident of Carson, California, in Los Angeles County.

**Defendant**

30.    Defendant Nuna Baby Essentials, Inc. is a Pennsylvania corporation whose principal place of business is 70 Thousand Oaks Blvd, Morgantown, Pennsylvania 19543. Thus, for jurisdictional purposes, Defendant is a citizen of the State of Pennsylvania.

31.    Nuna Baby Essentials, Inc. designs, manufactures, distributes, markets, advertises, labels, and sells products for babies to consumers throughout the United States, including in California.

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 ("CAFA") because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff Barrales and Defendant are citizens of different states.

33.    This Court has supplemental jurisdiction over Defendant's state law claims pursuant to 28 U.S.C. § 1367.

34.    This Court has personal jurisdiction over Plaintiff because Plaintiff purchased the product in this State and within this District and paid a substantial amount for the product in this District.

35.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant regularly transacts business in this District, and Defendant has intentionally availed themselves of the laws and markets within this District.

## DIVISIONAL ASSIGNMENT

36.    Pursuant to Local Rules 3-2(c) and 3-2(d), assignment of this Action to the San Francisco Division or the Oakland Division is proper because a substantial part

1   of the events or omissions giving rise to Plaintiff Khanna's claims occurred in San

2   Mateo County.

3                          **COMMON FACTUAL ALLEGATIONS**

4   **Nuna Is an Industry Leader in the Premium Baby Products Market**

5          37.    Nuna is a consumer goods company founded in 2007 specializing in baby

6   products.[17]

7          38.    Nuna markets itself as a "global brand . . . inspired by the ingenuity of

8   Dutch design."[18]

9          39.    Nuna states that it knows parents "need high-performance baby gear that's

10  in it for the long haul."

11         40.    Beyond Nuna's representations of the quality of its gear, consumers

12  expect Nuna's products—and, in particular, the Rava product line—to be higher

13  performance, longer lasting and "high-performance," because they are at a premium

14  price point. As one review noted about the Rava Products, they were "super

15  expensive."[19]

16         41.    Baby Gear Lab, in that same review, lists the Nuna Rava at $650 – almost

17  double the price of the next of its listed "similar products."[20]

18         42.    As a mark of its success in this business model, at least one site places

19  Nuna's annual revenue at $43.9M.[21]

20         43.    But Nuna commands this expensive price point because of its perception

21  among new parents and within the industry: that its car seats, including the Products at

22  issue, are high quality, long lasting, and—above all else—very safe.

23  _____

24  [17] https://www.linkedin.com/company/nunababy/ (last accessed Feb. 5, 2025).

25  [18] https://nunababy.com/usa/about (last accessed Feb. 5, 2025).

26  [19] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava (last accessed Feb. 5, 2025).

27  [20] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava (last accessed Feb. 5, 2025).

28  [21] https://growjo.com/company/NUNA_International (last accessed Feb. 5, 2025).

**Nuna Marketed the Rava Car Seat with a Focus on "Safety" Because Parents Want That for Their Children**

44.    The Rava—the Product at issue—is touted on Nuna's website with certain features, including that it is a "fan-favorite for security, ease-of-use, longevity and sleek design," and that there is a "no-rethread harness mak[ing] it easy to adjust for comfort and growth."[22]

45.    Safety and "peace of mind" are the leading representations about the Rava:

> It's an uncomplicated convertible car seat that becomes a reliable anchor to your child's car-riding adventures and your parental peace of mind. As you watch them discovery the world from the back seat, you can trust in its unwavering security and focus on the memories that make the trip worthwhile.[23]

46.    This representation echoes points Nuna makes about its products generally:

> Our baby gear is extensively tested before it leaves the factory. We use advanced equipment and testing methods, going above and beyond what's required. To ensure compliance with safety standards, we regularly have our gear tested at accredited, independent labs.[24]

47.    This is materially important to Plaintiffs and reasonable consumers because millions of parents and caregivers know that car seats, such as the Products at issue in this litigation, are essential to the safety of children while driving, especially in the event of a crash.

---

[22] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16835 (last accessed Feb. 5, 2025).
[23] *Id.*
[24] *Id.*

All models of the Products are substantially similar in form and function—and therefore, suffer from the same Defect, which prompted Nuna's recall (albeit inadequate) and this litigation. Moreover, all Products contain substantially similar deceptive safety claims made by Nuna on the Products' packaging and website.

**Nuna's Rava Is Dangerous under Normal and Foreseeable Conditions.**

48.    On December 20, 2024, Nuna instituted a "voluntary recall" for certain Rava products manufactured between July 16, 2016 and October 25, 2023.[25]

49.    This Recall concerns a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash."[26]

50.    As Nuna describes, debris that enters the area where the front harness adjuster button is located "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight."[27]

(continued on next page)

---

[25] Recall Notice.
[26] Recall Notice.
[27] *Id.*

51.    Nuna highlights the Product's Defect on the Recall:[28]




52.    As any parent or caregiver can immediately see, this Defect renders the Nuna Rava totally unsafe and worthless, as it fails to do the exact thing it was designed to do: keep infants and children secure in the car.

53.    Nuna's messaging concerning "debris" getting into the plastic cover is particularly concerning because, as a manufacturer who specializes in making and designing children's products, it should know there is a high likelihood of debris being present around the car seats of infants and young children, who often track sand, dirt, crumbs, or other messes into the car that may be small enough to be missed by even

---

[28] *Id.*

CLASS ACTION COMPLAINT

the most observant of parents. Thus, it is entirely foreseeable that the Defect would manifest.

54.    This is hardly conjecture: Dr. Alisa Baer, a pediatrician and co-founder of The Car Seat Lady, an advocacy organization devoted to preventing injuries in cars, has noted publicly that "children are not known for their neatness," and that "sand, dirt or crumbs can get caught in "*any* car seat's harness adjuster, not just the Nuna's."[29]

55.    This would mean that reputable and experienced car seat manufacturers—like Nuna holds itself out to be—would understand that a car seat for children must be durable enough to handle the common and foreseeable messes children bring to a car seat, including debris.

56.    The Products fail their core mission under this common set of circumstances, as when light debris falls into the area around the adjuster strap, the Defect manifests and the harness cannot clamp securely onto the adjuster strap. And in the event of a crash, the infant or child would not be securely fastened in the seat, significantly increasing the risk of injury.

57.    This Defect renders the Products unsafe and unsuitable for their intended purpose, and increases the risk of injury in the event of a crash.

**Nuna's Recall of the Products Is Wholly Inadequate**

58.    Nuna's subsequent Recall Notice is poorly designed, ineffective, and inadequate for providing consumers with a meaningful remedy for purchasing the defective Products. Further, implementing the Recall Notice constitutes an unfair and deceptive trade practice.

59.    Nuna offers a new seat pad, cleaning kit, and care instructions to ensure the car seat's harness adjuster is kept clean and working properly. These modifications significantly diminish the Products' value as "high-end," premium, or luxury products.

---

[29] https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990 (last accessed Feb. 5, 2025).

60.     Moreover, the Recall process burdens consumers who are already living busy lives caring for their children and are not trained nor experienced in designing child products, unlike Defendant.

61.     The Recall Notice is also inadequate for numerous reasons. First, it is inadequate because *Nuna failed to recall the entire Product and instead only advised* its consumers to remove certain portions of it. By failing to recall the entire Product, the Recall Notice allows and encourages consumers to continue to use a product with the risk of severe injury.

62.     Indeed, the Recall puts the burden of remediation on consumers—as laypersons with no knowledge of the design of car seats—to alter the Product in a manner to make it safe, if that is even possible. In doing so, Nuna shirks its responsibility of remediating a Defect that it incorporated into the design of the Car Seats.

63.     Second, the *Recall Notice because it states that, when the Defect manifests, consumers should immediately stop using the Product, but ultimately fails to provide a timely remedy*. Indeed, Plaintiffs contend that the proposed remedy—of providing a "cleaning kit" and updates to design to be installed by layperson consumers—does not and cannot remediate the underlying dangerous Defect.

64.     Third, the *Recall Notice is wholly ineffective in providing consumers monetary remedy* for purchasing the dangerously defective and misrepresented Products. Consumers paid an average retail price of $399.99 for the Products, but Nuna has not provided consumers with a monetary remedy.

65.     And, as noted above, Nuna informs consumers to immediately stop using the Product whenever the Defect manifests because it creates a substantial safety risk. But, of course, parents must still transport their children and will continue to need to use a car seat. Thus, consumers are forced to—based on Nuna's own warning—obtain another car seat that will (unlike Nuna) provide safe restraint for their children in the vehicle, thereby incurring further monetary damages for which Nuna is responsible.

66.    Finally, and perhaps worst, if a consumer has experienced a manifestation of the Defect—that is, the harness on their Car Seat is not operating properly and unintendedly loosens—Nuna requires that consumers provide further proof of that fact. In other words, even when consumers are directly impacted by the Defect and the associated, serious safety risks—including potentially risking harm to a child during a crash—Nuna, through this Recall, leaves itself the option to review whether it will choose to provide further meaningful repair or replacement of the Car Seat. Put differently, Nuna can choose to deny *actual* remediation of the Defect, whether through more meaningful repair or replacement of the Car Seat. This **makes the Recall illusory** and wholly inadequate.

67.    According to Nuna, between July 16, 2016 and October 25, 2023, they have sold the Product to approximately 600,000 consumers who purchased the Products in reliance on Nuna's representations, including the representations and omissions alleged herein, and which became part of the basis of their bargain with Defendant. Nuna was well aware that if it truthfully informed consumers of the dangers of using theProducts, it would significantly impact their sales.

68.    Prior to the Recall, the Products were sold in luxury and premium-priced brick-and-mortar stores such as Nordstrom, Bloomingdale's, Pottery Barn Kids, Neiman Marcus, Kidsland USA, and others. The Products were also sold online at retailer websites. The base retail pricing of the Products was approximately $399.00 - $550.00.

69.    Nuna's false and misleading marketing of these dangerous Products, and its knowing failure to disclose the grave risks of allowing children to use the Products, allowed Nuna to reap vast profits at the expense of ordinary consumers who erroneously believed their children were safe in Nuna's "premium" car seat.

70.    Every Product suffers from the uniform Defect, which, unknown to consumers but known to Nuna, exists at the point of purchase and poses an unreasonable safety hazard to children. As such, Plaintiff and all reasonable consumers

are victims of the unfair bargaining power between them and the Defendant based on Nuna's superior industry knowledge.

## **PLAINTIFFS' ALLEGATIONS**

**Plaintiff Prashmi Khanna**

71.    In approximately August 2022, Plaintiff Khanna purchased a Nuna Rava car seat model number CS05106 and manufactured on January 6, 2022, online from Nordstrom.com, an authorized retailer.

72.    Plaintiff Khanna's car seat is part of the Recall.

73.    She purchased the car seat for her child to use.

74.    Prior to her purchase, Plaintiff Khanna read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety.

75.    Plaintiff Khanna was not aware of the Defect in the Product, or the truth (or lack thereof) of Nuna's representations regarding the Product and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Khanna initially purchased the Product.

76.    Notably, Plaintiff Khanna only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the Product and would likely still be using the Product—and putting her children at serious risk.

77.    Following her discovery of the Recall, Plaintiff Khanna completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

78.    Had Plaintiff Khanna understood the true nature of the Product at the time of purchase, or had Plaintiff Khanna known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the Product, or else would have paid substantially less for it.

79.    The remedy Nuna has offered to Plaintiff Khanna through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported remedy offered by Nuna through the Recall does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the Product. It does not make Plaintiff Khanna whole. The only remedy appropriate for Plaintiff Khanna and for Class Members is a refund of the Product.

80.    Moreover, to date, Plaintiff Khanna has not received the new seat pad, cleaning kit, or care instructions.

81.    As it stands, the purported solution to the defective Products offered by Nuna to Plaintiff Khanna and the Class is insufficient and has diminished the value of the Products.

**Plaintiff Fabiola Chapman**

82.    In approximately February 2024, Plaintiff Chapman purchased two Nuna Rava car seats, model number CS05103 and manufactured on November 9, 2023 and October 10, 2023, online from Strolleria.com.

83.    Plaintiff Chapman's car seats are part of the Recall.

84.    She purchased the Products for her 1-year old child and her 2-year old child to use.

85.    Prior to her purchases, Plaintiff Chapman read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety.

86.    Plaintiff Chapman was not aware of the Defect in the Product, or the truth (or lack thereof) of Nuna's representations regarding the Product and its safety, until Nuna published the Recall Notice, nearly one year after Plaintiff Chapman initially purchased the Product.

87.    Notably, Plaintiff Chapman only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the Product and would likely still be using the Product—and putting her children at serious risk.

88.    Following her discovery of the Recall, Plaintiff Chapman contacted Nuna directly via phone and email. Nuna directed Plaintiff Chapman to the online form for the Recall and informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions.

89.    Fearing for her children's safety, Plaintiff Chapman stopped using the Products and began using her backup car seats.

90.    Had Plaintiff Chapman understood the true nature of the Product at the time of purchase, or had Plaintiff Chapman known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the Products, or else would have paid substantially less for them.

91.    The remedy Nuna has offered to Plaintiff Chapman through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported remedy offered by Nuna through the Recall does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the Product. It does not make Plaintiff Chapman whole. The only remedy appropriate for Plaintiff Chapman and for Class Members is a refund of the Product.

92.    Moreover, to date, Plaintiff Chapman has not received the new seat pad, cleaning kit, or care instructions.

93.    As it stands, the purported solution to the defective Products offered by Nuna to Plaintiff Chapman and the Class is insufficient and has diminished the value of the Products.

**Plaintiff Tina Marie Barrales**

94.    In approximately August 2022, Plaintiff Barrales purchased a Nuna Rava car seat, model number CS05105BAC and manufactured on November 25, 2021, from Nordstrom, an authorized retailer, in Huntington Park, California.

95.    Plaintiff Barrales' car seat is part of the Recall.

96.    She purchased the Product for her 1-year old child to use.

97.    Prior to her purchase, Plaintiff Barrales read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety.

98.    For two weeks, Plaintiff Barrales attempted to use the Product with her younger child. However, she found the lower buckle to be very difficult to latch and unlatch; in order to properly secure her infant in the seat, she needed to keep the chest and lower buckle extremely tight, causing her baby to suffocate and cough in the seat.

99.    When the straps were not so tight as to injure her child, Plaintiff Barrales observed that the lower buckle and chest straps seemed to come dislodged on their own.

100.    After about two weeks, Plaintiff Barrales stopped using the Product and purchased a different car seat from a different car seat manufacturer.

101.    Plaintiff Barrales was concerned that, if she returned the defective Product, another unsuspecting consumer may purchase it and put their child at risk. Thus, she instead chose not to return the Product and still has it in her possession, although she refuses to use it.

102.    Plaintiff Barrales was not aware of the Defect in the Product, or the truth (or lack thereof) of Nuna's representations regarding the Product and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Barrales initially purchased the Product.

103.    Notably, Plaintiff Barrales only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate

enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the Product and would likely still be using the Product—and putting her children at serious risk.

104.    Had Plaintiff Barrales understood the true nature of the Product at the time of purchase, or had Plaintiff Barrales known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the Product, or else would have paid substantially less for it.

105.    The remedy Nuna has offered to Plaintiff Barrales through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported remedy offered by Nuna through the Recall does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the Product. It does not make Plaintiff Barrales whole. The only remedy appropriate for Plaintiff Barrales and for Class Members is a refund of the Product.

106.    Moreover, to date, Plaintiff Barrales has not received the new seat pad, cleaning kit, or care instructions.

107.    As it stands, the purported solution to the defective Products offered by Nuna to Plaintiff Barrales and the Class is insufficient and has diminished the value of the Products.

**Plaintiff Tiffany Larry**

108.    In approximately March 2022, Plaintiff Larry purchased a Nuna Rava car seat, model number CS05103, manufactured on December 31, 2022, online from potterybarnkids.com, an authorized retailer.

109.    Plaintiff Larry's car seat is part of the Recall.

110.    She purchased the Product for her 5-month old child.

111.    Prior to her purchase, Plaintiff Larry read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety.

112.   In 2024, prior to the Recall, Plaintiff Larry noticed that the Product's harness straps were not functioning properly. Plaintiff Larry called and informed Nuna of the harness straps. Nuna did not offer a remedy at this time, and instead requested Plaintiff Larry send in a video of the harness straps.

113.   Plaintiff Larry was not aware of the Defect in the Product, or the truth (or lack thereof) of Nuna's representations regarding the Product and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Larry initially purchased the Product.

114.   Notably, Plaintiff Larry only happened to learn of the Recall through social media and, eventually, through notice by a third-party, Pottery Barn Kids. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the Product and would likely still be using the Product without performing the new recommended Harness Function Test—and putting her child at serious risk.

115.   Following discovery of the Recall, Plaintiff Larry contacted Nuna via phone. Nuna informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions, but the cleaning kits were not currently available.

116.   Had Plaintiff Larry understood the true nature of the Product at the time of purchase, or had Plaintiff Larry known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the Product, or else would have paid substantially less for it.

117.   The remedy Nuna has offered to Plaintiff Larry through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported remedy offered by Nuna through the Recall does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the Product. It does not make

Plaintiff Larry whole. The only remedy appropriate for Plaintiff Larry and for Class Members is a refund of the Product.

118.  Moreover, to date, Plaintiff Larry has not received the new seat pad, cleaning kit, or care instructions.

119.  As it stands, the purported solution to the defective Products offered by Nuna to Plaintiff Larry and the Class is insufficient and has diminished the value of the Products.

**Plaintiff Alyna Smith**

120.  In approximately August 2023, Plaintiff Smith purchased a Nuna Rava car seat, model number CS05103 and manufactured on December 10, 2022, online from bambibaby.com.

121.  Plaintiff Smith's car seat is part of the Recall.

122.  She purchased the Product for her child to use.

123.  At the time of purchase, Plaintiff Smith registered the Product with Nuna.

124.  Prior to her purchase, Plaintiff Smith read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety.

125.  Plaintiff Smith was not aware of the Defect in the Product, or the truth (or lack thereof) of Nuna's representations regarding the Product and its safety, until Nuna published the Recall Notice, over one year after Plaintiff Smith initially purchased the Product.

126.  Notably, Plaintiff Smith only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the Product and would likely still be using the Product—and putting her child at serious risk.

127.  Following her discovery of the Recall, Plaintiff Smith contacted Nuna directly via email. Nuna directed Plaintiff Smith to the online form for the Recall and

informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions. Nuna informed her that if her Car Seat was not working correctly, she must provide video evidence of that fact, but notably Nuna left open the possibility that it could still deny further meaningful repair of the Defect or replacement of her Car Seat following review of whatever further information Plaintiff Smith provided.

128.   Had Plaintiff Smith understood the true nature of the Product at the time of purchase, or had Plaintiff Smith known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the Product, or else would have paid substantially less for it.

129.   The remedy Nuna has offered to Plaintiff Smith through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported remedy offered by Nuna through the Recall does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the Product. It does not make Plaintiff Smith whole. The only remedy appropriate for Plaintiff Smith and for Class Members is a refund of the Product.

130.   Moreover, to date, Plaintiff Smith has not received the new seat pad, cleaning kit, or care instructions.

131.   As it stands, the purported solution to the defective Products offered by Nuna to Plaintiff Smith and the Class is insufficient and has diminished the value of the Products.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

**Continuing Act Tolling**

132.   Nuna has continuously marketed and sold the dangerous Products to unsuspecting parents and caregivers. Nuna continuously represented that the Product is safe and suitable for securing children and infants in the vehicle.

133.   By continuously repeating these false representations and failing to disclose that the Products are not safe or suitable for securing children and infants in a

vehicle, contain a uniform Defect, and expose infants and children to risk of serious injury and death, Nuna engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Nuna might seek to apply.

134. As the creator, designer, and manufacturer of the Product, Nuna has had actual knowledge since at least 2016, that the Product is defectively designed and exposes infants to great risk of serious injury and death.

135. Through rigorous testing of the Products, at a minimum, Nuna should have had knowledge of the Defect in the Products.

136. And, at the absolute latest, Nuna's knowledge is evidenced by the Recall that was issued in December 2024.

137. But, upon information and belief, Nuna certainly had knowledge of the Defect in the Products when it redesigned the Products to include a cloth cover over the front harness adjuster button—the exact remedy being offered through the Recall—in October 2023.[30] Indeed, given that this updated design began manufacture by October 25, 2003, it is likely that Nuna had knowledge of the Defect well before that when it considered design modifications, tested those updated designs, and prepared for production of those designs.

138. Despite this knowledge, Nuna waited *over a year* before issuing a recall, all while fully aware of the serious dangers caused by the Defect and the serious risks use of the Products posed to infants and children.

139. Thus, at all relevant times, Nuna indisputably possessed continuous knowledge of the material dangers posed by the Product, and yet Nuna knowingly continued to allow the sale of the Product. Plaintiff's and other Class Members' claims are not time barred.

---

[30] https://nunababy.com/usa/recalls-rava1(last accessed Jan. 24, 2025) (indicating all Products with a "fabric cover" over the front harness adjuster button, which was included in designed manufactured after October 25, 2023, are "not affected" by the Recall).

140.   Moreover, even after the Recall was initiated, there is no evidence that Nuna's Recall Notice has reached all owners of the Products. To date, some Plaintiffs have *not* received notice of the Recall from Nuna.

141.   Plaintiff and other Class Members could not have reasonably discovered and could not have known of these facts, which until only recently has Nuna publicly disclosed. Indeed, until it issued the Recall, Nuna has knowingly failed to disclose material information regarding the existence of the Defect in the Products. Accordingly, no potentially relevant statute of limitations should apply.

**Fraudulent Concealment Tolling**

142.   Throughout the period relevant to this Action, Nuna concealed from and failed to disclose vital information about the Defect described herein to Plaintiffs and the other Class Members.

143.   Nuna kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

144.   Further, Nuna created consumer confusion in its deficient Recall notice, encouraging consumers to continue to use the dangerous Product after the consumer's own inspection.

145.   Nuna had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Products, including that the Products have a uniform dangerous Defect, and that they pose safety concerns and are in fact dangerous.

146.   This duty arose, among other things, from Nuna's representations and omissions concerning the safety of the Products.

147.   Throughout the Class Period, at all relevant times, Nuna has known that the Products, which they designed, manufactured, selected materials for and sold, contained the Defect resulting in failure in the Product's essential purpose, and serious safety risks to infants and young children.

148.    Nuna's actual knowledge of the serious safety concerns created by the use of the Products is evidenced by, among other things, Nuna's safety representations and omissions and the Recall issued in December 2024.

149.    Despite Nuna's knowledge of the Defect and serious safety issues posed by the Products when used as intended, Nuna failed to disclose and concealed this material information from Plaintiffs and other Class Members, even though, at any point in time, they could have disclosed the Defect through an earlier recall, individual correspondence, media release, or by other means.

150.    Instead, Nuna continued to market the Products as suitable for their intended purpose as a safe restraining device for infants and children for use in a vehicle, while refusing to acknowledge the existence of the Defect.

151.    The purpose of Nuna's concealment of the dangers was to continue to profit from the sale of their popular, premium-branded Products and prevent Plaintiffs and other Class Members from seeking redress.

152.    Plaintiffs and the other Class Members justifiably relied on Nuna to disclose the true nature of the Products they purchased and/or owned because that inherent Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

153.    Any applicable statute of limitations has been tolled by Nuna's knowledge, active concealment, and denial of the facts alleged herein, which is ongoing.

**Discovery Rule Tolling**

154.    Plaintiffs and other Class Members could not have discovered through the exercise of reasonable diligence that their Product was defective within the time period of any applicable statutes of limitation.

155.    Among other things, neither Plaintiffs nor the other Class Members knew or could have known that the Products contain the Defect.

156.    There is no evidence that Plaintiffs were aware of the Products' dangerous Defect and safety risks until they learned of its existence through Nuna's Recall (for which many Plaintiffs and Class Members have still yet to formal notice). Nuna has concealed and misrepresented the dangerous Defect in the Products and the risks that were posed by that Defect.

157.    Plaintiffs and other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect, that Nuna knowingly failed to disclose material information within its knowledge about a dangerous Defect to consumers in the United States and elsewhere.

158.    As such, no potentially relevant statute of limitations should be applied.

**Estoppel**

159.    Nuna was under a continuous duty to disclose to Plaintiffs and other Class Members the fact they knew about the dangerously defective nature of the Products.

160.    Nuna knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Products from Plaintiffs and Class Members.

161.    Thus, Nuna is estopped from relying on any statutes of limitations in defense of this Action.

### UNCONSCIONABILITY AND FAILURE OF ESSENTIAL PURPOSE OF THE EXPRESS AND IMPLIED WARRANTIES

162.    The express and implied warranties relating to the Products are collectively and individually the result of surprise and oppression and are so one-sided and overly harsh such that they are both procedurally and substantively unconscionable.

163.    In addition, the Defendant's warranty fails of its essential purpose in that (1) the Defect exists at the time the Products leave the manufacturing facility and (2) Defendant fails to disclose its knowledge of the Defect when contacted by customers about the Products' failures.

## CLASS ACTION ALLEGATIONS

164.  Plaintiffs bring this action individually and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the members of the following proposed Class (the "Class" or the "California Class"):

> During the fullest period allowed by law, all persons who purchased the Products in the State of California for personal use and not resale.

165.  Specifically excluded from these definitions are: (1) Nuna, any entity in which Nuna has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

166.  Plaintiffs reserve the right to amend the Class definition as necessary, including but not limited to include additional products made by Nuna with the same Defect and/or other products manufactured by Nuna with the common Defect but bearing different brand names.

167.  **Numerosity:** The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least thousands of people throughout the state of California, as 600,000 Products were reportedly sold. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

168.  **Typicality:** The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Products that were manufactured, marketed, advertised, distributed, and sold by Nuna. Plaintiffs, like all Class Members,

were damaged by Nuna's uniform misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for the Products that were manufactured with the Defect, which makes them unusable, inherently dangerous, and not fit for their intended use, and which are subject to an inadequate recall. Furthermore, the factual basis of Nuna's misconduct is common to all Class Members because it engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class they seek to represent.

169. **Commonality:** Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Nuna has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

    a.     Whether the Products are defective;

    b.     Whether the Products are defectively designed and/or manufactured;

    c.     Whether Nuna knew or should have known about the Defect in its Products prior to distributing and selling them to Plaintiffs and Class Members;

    d.     Whether Nuna knew or should have known about the Defect in its Products after distributing and selling them to Plaintiffs and Class Members;

    e.     Whether Nuna knew or should have known about the Defect in its Products prior to issuance of the Recall;

    f.     Whether Nuna concealed from and/or failed to disclose to Plaintiffs and Class Members that the Products contained a uniform Defect;

    g.     Whether Nuna failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, were not safe or suitable for

children to ride in a moving vehicle, and could and have caused severe or fatal injury in the event of a crash;

h.  Whether Nuna engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Products containing the Defect;

i.  Whether Nuna omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Products;

j.  Whether Nuna concealed from and/or failed to disclose to Plaintiffs and Class Members that the Products are not safe and not suitable for infant sleep;

k.  Whether Nuna engaged in false or misleading advertising by selling, packaging, and/or marketing the Products;

l.  Whether Nuna has violated consumer protection statutes;

m.  Whether Nuna has been unjustly enriched;

n.  Whether Nuna breached the implied warranty of merchantability;

o.  Whether Nuna breached express warranties relating to the Products;

p.  Whether Plaintiffs and Class Members either paid a premium for the Products that they would not have paid but for their false representations or would not have purchased them at all;

q.  Whether Plaintiff and Class Members have been injured by Nuna's misconduct, and the proper measure of their losses as a result of those injuries;

r.  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages; and

s.  Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief, including enjoining Nuna from selling and marketing the Products containing the Defect.

CLASS ACTION COMPLAINT

170.   Nuna engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and other Class Members. Similar or identical statutory violations, common law wrongs, business practices, and injuries are involved. Individual questions—if there are any—pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

171.   **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer products, product defects, misrepresentation, mislabeling, and class actions, and Plaintiffs intend to prosecute this Action vigorously.

172.   **Predominance and Superiority:** Plaintiffs and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Nuna's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the Products and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Nuna's misconduct. Absent a class action, Class Members will continue to incur damages, and Nuna's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

173.   The claims presented in this case predominate over any questions of law or fact affecting individual Class Members

174.   Plaintiffs know of no difficulty to be encountered in the maintenance of this Action that would preclude its maintenance as a class action.

175.   Nuna's failure to implement an adequate recall for the Products arises out of a common omission or failure to act, which has a uniform effect on Plaintiffs and all Class Members. Plaintiffs seek preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Nuna to stop its unlawful conduct.

176.   Nuna implemented uniform procedures relating to the Recall, which resulted in uniform damage to Plaintiffs and Class Members. As a result, Defendant has acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

177.   Because Plaintiffs seek injunctive and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Nuna.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**BREACH OF EXPRESS WARRANTY**

**(On behalf of Plaintiffs and the Proposed Class)**

178.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

179.   Nuna is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Products.

180.   Nuna provided Plaintiffs and Class Members with an express warranty (the "Limited Warranty").

181.    Nuna claims that it "purposely designed [its] high-quality product[] so that [they] can grow with both your child and family." Accordingly, "[Nuna's] gear is covered by a limited warranty, starting from the day it was purchased."

182.    The Limited Warranty provides that if Nuna's product "shows a defect in materials or workmanship during the warranty period," the customer can request Nuna to review a warranty claim. Customer's must maintain proof of purchase, along with the product's model number and serial number to make a warranty claim. "If such a defect is discovered during the warranty period, [Nuna] will, at [its] discretion, repair or replace your product."[31]

183.    While Nuna provides the same Limited Warranty for its "gear" and other products, it provides different warranty periods depending on the type of product. For example, "Gear" receives a 2-year warranty starting from the date of purchase, and "Infant car seats, bassinets and accessories" receive a 1-year warranty starting from the date of purchase.[32] Nuna separately clarifies that "All of [its] grear] is covered by a 2-year warranty, starting from the day it was purchased," with the exception of "PIPA infant car seats, [] bassinets, accessories, and spare parts."[33]

184.    Thus, the Products at issue (the Rava product line) were subject to a 2-year Limited Warranty.

185.    The Limited Warranty became part of the basis of the bargain between Plaintiffs and Class Members and Nuna.

186.    As explained above, the Limited Warranty fails of its essential purpose because:

        a.    the Defect exists at the time the Products leave Nuna's control, and

---

[31] https://usasupport.nunababy.com/hc/en-us/articles/360045758132-Limited-Warranty (last accessed Jan. 27, 2025).

[32] Warranty Card, available at https://usasupport.nunababy.com/hc/en-us/articles/360045758132-Limited-Warranty (last accessed Jan. 27, 2025).

[33] https://usasupport.nunababy.com/hc/en-us/articles/360045761012-Product-Warranty-Period (last accessed Jan. 27, 2025).

      b.     Nuna, despite its knowledge of the Defect and its knowledge that the Defect should be covered by the Limited Warranty, failed to disclose—either through misrepresentation or omission—the existence of the Defect at the point of sale (or following sale), including failing to disclose its knowledge of the Defect when contacted by consumers seeking to bring a claim under the Limited Warranty.

187.  Additionally, the Limited Warranty was collectively and individually the result of surprise and was so one-sided and overly harsh such that it is both procedurally and substantively unconscionable.

188.  Plaintiffs and Class Members notified Nuna of the breaches within a reasonable time and/or were not required to do so because affording Nuna a reasonable opportunity to cure its breach of written warranty would have been futile.

189.  Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nuna's conduct described herein.

190.  Plaintiffs and Class Members are entitled to legal and equitable relief against Nuna, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Warranties

### (On behalf of Plaintiffs and the Proposed Class)

191.  Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

192.  Nuna is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Products.

193.   The Products were and are, at all relevant times, a "good" within the relevant laws. Nuna knew or had reason to know of the specific use for which the Products, as goods, were purchased.

194.   Nuna entered into agreements with retailers, suppliers, and/or contractors to sell its Product to be used by Plaintiffs and Class Members.

195.   Nuna provided Plaintiffs and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which the Product was used and sold and was not otherwise injurious to consumers, that the Product would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Nuna in its Safety Representations and Omissions. These implied warranties became part of the basis of the bargain between Plaintiffs and Class Members and Nuna.

196.   However, at the time of delivery, Nuna breached the implied warranties because the Product is not fit for its ordinary purpose of providing a reasonably safe product that is suitable for children because, *inter alia*, the Product contains the Defect rendering the Product unsafe and unsuitable for children, and unreasonably dangerous. Therefore, the Product is not fit for its particular purpose.

197.   As alleged herein, Plaintiffs were forced to completely discontinue their use of the Product shortly after their purchase when the Defect was discovered and presented an ongoing, serious safety risk to children placed in the Product, which normally should provide safe, protective transport for children in a vehicle, but which cannot be provided due to the existence of the Defect.

198.   The aforementioned problems associated with the Products constitute safety risks, such that the Product is not safe nor suitable for children, and therefore, there is a breach of the implied warranty of merchantability.

199.   Moreover, due to the inadequate and unfair nature of the Recall, it is not required and would be futile for Plaintiffs to provide Nuna further opportunity to cure their breach.

200.   Plaintiffs and Class Members have had sufficient direct dealings with either Nuna or one of their authorized retailers, representatives, and agents to establish privity of contract between Nuna, on the one hand, and Plaintiffs and each Class Member, on the other hand.

201.   Privity is not required because Plaintiffs and each of the Class Members are the intended beneficiaries of Nuna's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranties provided by Nuna. Nuna's warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Products.

202.   More specifically, Nuna's manifest intent was that their warranties apply to Plaintiffs and Class Members as third-party beneficiaries. Likewise, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Products and the warranties.

203.   Nuna impliedly warranted that the Product is safe, suitable for infant transport, of merchantable quality, and fit for its intended purpose. These implied warranties included, among other things: (i) a warranty that the Product manufactured, supplied, distributed, and/or sold by Nuna was safe and suitable for infant and children restraint and transport in a vehicle; (ii) a warranty that the Product would be fit for its intended use while the Product is being used; and (iii) a warranty that the Product would conform to all of the promises and affirmations of fact on the Product's label and online advertising.

204.   Contrary to the applicable implied warranties, the Product, at the time of sale and thereafter, was and is not fit for its ordinary and intended purpose of providing Plaintiffs and Class Members with a reasonably reliable and safe child product. Instead, the Product contains a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Product fails to conform with the promises or affirmations of fact on its label and online advertising.

205.  Nuna failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, was not safe or suitable for children, and could cause severe or fatal injury in the event of a car crash.

206.  Nuna breached the implied warranties because the Product was and is sold with the Defect, which prevents the Product from even the most basic degree of fitness for ordinary use as a reliable and safe child product.

207.  Nuna's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

208.  Plaintiffs' complete inability to use the Products for their intended purpose, resulting from the fact that the Products did not meet the most basic degree of fitness for providing a safe car seat for children, renders any attempts to limit or disclaim damages substantively unconscionable.

209.  The limitations contained in the warranty are unconscionable and inadequate to protect Plaintiffs and Class Members. Plaintiffs and Class Members had no meaningful choice in determining the terms of which unreasonably favored Nuna, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Products. A gross disparity in bargaining power existed between Nuna and Plaintiffs and the Class Members, and Nuna knew or should have known that the Products were defective at the time of sale and would fail before their useful life.

210.  Plaintiffs' inability to view Nuna's purported disclaimers prior to their purchases, along with their inability to negotiate the terms or make a different choice at the time of their purchases, renders any disclaimers procedurally unconscionable. The unavailability of additional warranty coverage from Nuna further demonstrates the disclaimer of implied warranties is procedurally unconscionable.

211.  Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing a safe car seat for children. Instead, the Products suffered, and continue to suffer, from the Defect as alleged herein.

212.   Nuna's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

213.   As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## THIRD CLAIM FOR RELIEF

### Violation of the Magnuson-Moss Warranty Act

### 15 U.S.C. § 2301, *et seq.*

### (On behalf of Plaintiffs and the Proposed Class)

214.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

215.   The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

216.   This Court has jurisdiction over this matter under CAFA and can therefore assert alternative jurisdiction over Plaintiffs' MMWA claims.

217.   The Products are "consumer products" as defined by 15 U.S.C. § 2301(1).

218.   Plaintiffs and Class Members are "consumers" as defined by 15 U.S.C. § 2301(3).

219.   Nuna is a "warrantor" and "supplier" as defined by 15 U.S.C. § 2301(4) and (5).

220.   As detailed above, Nuna breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Nuna made about the Products, by failing to truthfully advertise and warrant that the Products were safe, free of defect, and fit for their intended purpose. The Defect in the Products existed at the time the Products left Nuna's control and Nuna failed to disclose the existence of

the Defect either prior to, at the point of, or following sale of the Products, including when customers contacted Nuna to inquire about the Products' failures. Nuna's conduct has rendered the warranties null and caused them to fail of their essential purpose.

221.   Nuna's breach of warranty deprived Plaintiffs and Class Members of the benefit of their bargain.

222.   The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

223.   Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiffs, on behalf of themselves and Class Members, sent notice to Nuna on January 29, 2025 and contemporaneously with the filing of this Class Action Complaint, to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.[34]

224.   In addition, resorting to any sort of informal dispute settlement procedure or affording Nuna another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Nuna has repeatedly mispresented the true quality and nature of the Products, and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiffs submit to any informal dispute settlement procedure or otherwise afford Nuna reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

---

[34] Plaintiffs Fabiola Chapman, Tina Marie Barrales, Tiffany Larry, and Alyna Smith provided Nuna with notice of its breaches of the warranties (and regarding its violations of the CLRA) on January 29, 2025. Plaintiff Prashmi Khanna provided Nuna with notice of its breaches of the warranties (and regarding its violations of the CLRA) contemporaneously with the filing of this Class Action Complaint.

225.   As a direct and proximate result of Nuna's warranty breaches, Plaintiffs and Class Members sustained damages and other losses to be determined at trial. Nuna's conduct damaged Plaintiffs and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## FOURTH CLAIM FOR RELIEF

### Violation of the Song-Beverly Consumer Warranty Act

### Cal. Civ. Code § 1790, *et seq.*

### (On behalf of Plaintiffs and the Proposed Class)

226.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

227.   Plaintiffs and Class Members are "buyers" as that term is defined in California Civil Code § 1791(b).

228.   The Products are "consumer goods" as that term is defined in California Civil Code § 1791(a).

229.   At all relevant times, Nuna was the "manufacturer, distributor, warrantor and/or seller" of the Products within the meaning of California Civil Code § 1791.

230.   Nuna provided Plaintiffs and Class Members with express warranties that cover "defect[s] in materials or workmanship during the warranty period." If such a defect is discovered, Nuna warrants that it "will, at [its] discretion, repair or replace" the Product.

231.   As detailed above, Nuna breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Nuna made about the Products, by failing to truthfully advertise and warrant that the Products were safe, free of defect, and fit for their intended purpose. The Defect in the Products existed at the time the Products left Nuna's control and Nuna failed to disclose the existence of the Defect either prior to, at the point of, or following sale of the Products, including when customers contacted Nuna to inquire about the Products' failures. Nuna's

conduct has rendered the warranties null and caused them to fail of their essential purpose.

232.    Tesla's conduct as complained herein breached applicable warranties and violated the Song-Beverly Consumer Warranty Act.

**FIFTH CLAIM FOR RELIEF**

**Fraud**

**(On behalf of Plaintiffs and the Proposed Class)**

233.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

234.    Nuna knew or should have known that the Product contains the dangerous Defect rendering the Product unsafe and unsuitable for children.

235.    Nuna provided Plaintiffs and Class Members with false or misleading material information and failed to disclose material facts about the true nature of the Product, including but not limited to the fact the Product contains the dangerous Defect rendering the Product unsafe and unsuitable to serve its intended purpose as a child safety product, contrary to Nuna's misrepresentations.

236.    Nuna promised consumers that the Product was fit for its intended purpose and that it was free of defects and that it was safe and suitable for infants and children for restraint in a moving vehicle through its safety representations and omissions.

237.    Nuna had exclusive knowledge of the Product's Defect at the time of sale and at all other relevant times. Neither Plaintiffs nor Class Members, in the exercise of reasonable diligence, could have independently discovered the true nature of the Product prior to purchase.

238.    Nuna had the capacity to, and did, deceive Plaintiffs and Class Members into believing they were purchasing a car seat that was safe and suitable for children.

239.    Nuna undertook active and ongoing steps to conceal the presence of the Defect in the Product. Plaintiffs are not aware of anything in Nuna's advertising,

publicity, or marketing materials that disclosed the truth about the Product, despite Nuna's awareness of the Defect and the serious safety risks associated with the Defect.

240.   The facts concealed and/or not disclosed by Nuna to Plaintiffs and Class Members are material facts in that a reasonable person would have considered fundamental in deciding whether to purchase the Product, or else to pay substantially less for the Product.

241.   Nuna intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and Class Members to act purchase the Product.

242.   Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchases of the Product.

243.   The misrepresentations and omissions made by Nuna, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

244.   Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial as a result of Nuna's fraudulent concealment and nondisclosure because they would not have purchased the Product, or would not have purchased the Product for the price they did, if the true facts concerning the Product had been known.

245.   Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Nuna's actions described herein.

## SIXTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (On behalf of Plaintiffs and the Proposed Class)

246.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

247. Nuna had a duty to provide honest and accurate information to consumers so that its customers could make informed decisions on the substantial purchase of the Product.

248. Nuna misrepresented material facts regarding the Products to Plaintiffs and Class Members, including that the Products were safe, free of defect, and fit for their intended purpose.

249. Plaintiffs and Class Members considered the advertised high-quality and safety of the Product to be material and important when decided to purchase the Products. The Product's quality (including purportedly being free of defects) and safety are material to the average, reasonable consumer.

250. Nuna knew or reasonably should have known, that the average, reasonable consumer would be misled by Nuna's misleading and deceptive advertisements and statements, which falsely represent that the Products are safe, free of defects, and fit for their intended purpose of providing safe restraint to infants and children in a vehicle.

251. Plaintiffs and Class Members justifiably relied on Nuna's misrepresentations and omissions and were actually misled and deceived and were induced by Nuna to purchase the Products. Had Nuna truthfully advertised the true nature, quality, and character of the Products, Plaintiffs and Class Members would have either not purchased the Products, or else would have paid substantially less for them.

252. As a result of Nuna's conduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### Violation of the California Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq.*

### (On behalf of Plaintiffs and the Proposed Class)

253. Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

254.   Nuna is a "person" as that term is defined in California Civil Code § 1761(c).

255.   Plaintiffs and Class Members are "consumers" as that term is defined in California Civil Code § 1761(d).

256.   Nuna engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiffs and Class Members in a material way in the process of purchasing the Products by failing to disclose the existence of the Defect in the Products and by representing that the Products were safe and fit for their intended purpose of providing safe and secure restraint and transport of children in a vehicle. These acts and practices violate, at a minimum, the following sections of the CLRA:

California Civil Code § 1770(a)(2): Misrepresenting the source, sponsorship, approval or certification of goods or services;

California Civil Code § 1770(a)(5): Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

California Civil Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

California Civil Code § 1770(a)(9): Advertising goods and services with the intent not to sell them as advertised.

257.   Nuna's unfair or deceptive acts or practices occurred repeatedly in Nuna's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

258.   Throughout the relevant period, Nuna knew or reasonably should have known that the Products included the Defect, which made them unsafe and unfit for their intended purpose.

259.   Nuna was under a duty to Plaintiffs and Class Members to disclose the true nature of the Products because:

    a.   Nuna was in a superior position to know the true state of facts about the Defect in the Products and the unsafe nature of the Products and their unfitness for their intended purpose;

    b.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover the Defect or defective nature of the Products and thus that the Products were not in accordance with Nuna's representations;

    c.   Nuna knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true state of facts about the Defect or defective nature of the Products; and

    d.   Nuna actively concealed and failed to disclose the existence of the Defect in the Products to Plaintiffs and the Class.

260.   Nuna knew or should have known about the existence of the Defect in the Products, including that the Defect rendered the Products unsafe. In failing to disclose the existence of the Defect in the Products, Nuna has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

261.   Plaintiffs and Class Members considered the advertised high-quality and safety of the Product to be material and important when decided to purchase the

CLASS ACTION COMPLAINT

Products. The Product's quality (including purportedly being free of defects) and safety are material to the average, reasonable consumer.

262. The misrepresented facts concerning the Products are also material because they concern central functions of the car seats (*e.g.*, the defect-free and safe quality of the car seat and its ability to provide safe and secure restraint and transport of children in a vehicle, including providing safe restraint during a potential crash).

263. Had Nuna disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the Products and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their Products and did not receive the benefit of their bargain.

264. Plaintiffs plausibly would have learned of the existence of the Defect and the true nature of the Products, had Nuna truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiffs and Class Members' injuries were proximately caused by Nuna's fraudulent and deceptive business practices.

265. Pursuant to California Civil Code § 1782(a), Plaintiffs are providing Nuna with notice of its violations under the CLRA. Pursuant to California Civil Code § 1782(d), following the thirty-day notice period, Plaintiffs will amend this Class Action

CLASS ACTION COMPLAINT

Complaint to seek damages in addition to the injunctive relief they now seek under the CLRA.[35]

266.    Plaintiffs have attached their Declarations of Venue as Collective Exhibit B to this Class Action Complaint, establishing that this Action has been properly commenced in this District, because a significant portion of the relevant facts occurred in San Mateo County and other counties in the State of California. *See* Collective Exhibit B.

267.    Pursuant to California Civil Code § 1780, Plaintiffs seek an order enjoining Nuna from the unlawful practices described above and a declaration that Nuna's conduct violated the CLRA.

268.    Plaintiffs, on behalf of themselves and Class Members, seek equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF
**Violation of the California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Proposed Class)**

269.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

---

[35] Plaintiffs Fabiola Chapman, Tina Marie Barrales, Tiffany Larry, and Alyna Smith provided Nuna with notice pursuant to the CLRA (and for breaches of the warranties) on January 29, 2025. Plaintiff Prashmi Khanna provided Nuna with notice pursuant to the CLRA (and for breaches of the warranties) contemporaneously with the filing of this Class Action Complaint.

CLASS ACTION COMPLAINT

270.  The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200

271.  Nuna has engaged in "unfair competition" through its conduct, as described herein, including by failing to disclose the existence of the Defect in the Products; by misrepresenting the nature, quality, and character of the Products as safe, free of defect, and fit for their intended purpose; and by violating the CLRA, as described above and in Plaintiffs' notice letter sent to Defendant concurrently with the filing of this Complaint.

272.  All of Nuna's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Products, occurred in the course of Nuna's business and were part of a pattern or generalized course of illegal conduct.

273.  Nuna's conduct was fraudulent because Nuna failed to disclose the Defect associated with the Products. Specifically, Nuna failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, were not safe or suitable for children, and posed a risk of severe or fatal injury in the event of a crash.

274.  Nuna's conduct was unfair because it was specifically designed to and did induce Plaintiffs and Class Members to purchase the Products.

275.  Nuna's conduct was deceptive because it was specifically designed to and did induce Plaintiffs and Class Members to purchase the Products despite knowing that they contained the dangerous Defect.

276.  Plaintiff and Class Members reasonably and justifiably relied on Nuna's conduct alleged herein. Had Nuna disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the Products and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them.

Accordingly, Plaintiffs and Class Members overpaid for their Products and did not receive the benefit of their bargain.

277.   Plaintiffs plausibly would have learned of the existence of the Defect and the true nature of the Products, had Nuna truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiffs and Class Members' injuries were proximately caused by Nuna's fraudulent and deceptive business practices

278.   Further, as a result of Nuna's conduct, Plaintiff and Class Members have suffered injury-in-fact, lost money, and potential damage to property, in that they have incurred actual costs to repair and/or replace the Product upon manifestation or discovery of the Defect.

279.   Plaintiffs, on behalf of themselves and Class Members, seek equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs

## NINTH CLAIM FOR RELIEF

### Violation of the California False Advertisement Law ("FAL")

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

### (On behalf of Plaintiffs and the Proposed Class)

280.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

281.   The FAL states: ""It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

282.    All of Nuna's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Products, occurred in the course of Nuna's business, took place within the State of California, and constitute deceptive or false advertising in violation of the FAL.

283.    Nuna marketed, advertised, labeled, and represented the Products as merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers.

284.    More specifically, Nuna misrepresented the true nature, quality, and character of the Products by failing to disclose the existence of the Defect and by misrepresenting that the Products were fit for their intended purpose of providing safe restraint to infants and children in a vehicle.

285.    To the contrary, the Products contained the dangerous Defect at the time of purchase and no reasonable consumer would believe that, in light of the dangerous Defect, that the Products were merchantable or fit for the ordinary purpose for which they were used and sold or were not otherwise injurious to consumers, where Plaintiff and Class Members could not immediately identify the Defect.

286.    At the time it made the misrepresentations, Nuna either knew or should have known about the existence of the Defect in the Products, which rendered them unsafe. Nuna concealed, omitted, and failed to disclose this information from Plaintiffs and Class Members.

287.    Nuna has violated the FAL because the misrepresentations and omissions regarding the Products as set forth herein were material and likely to deceive a reasonable consumer.

288.    The misrepresented facts concerning the Products were also material because they concern central functions of the Products—namely, that the Products are safe, free of defect, and capable of providing safe restraint to infants and children in a vehicle, including during a crash.

CLASS ACTION COMPLAINT

289.   Plaintiffs have standing to pursue claims under the FAL as she reviewed and relied on Nuna's packaging, advertising, representations, and marketing materials regarding the Products when selecting and purchasing the Products. Plaintiffs and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Nuna's unfair, unlawful, and/or deceptive practices.

290.   In reliance on the statements made in Nuna's advertising and marketing materials and Nuna's omissions and concealment of material facts regarding the quality and use of the Products, Plaintiffs and Class Members purchased the Products.

291.   Had Nuna disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the Products and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their Products and did not receive the benefit of their bargain.

292.   As a direct and proximate result of Nuna's conduct as set forth herein, Nuna has obtained ill-gotten gains and/or profits, including but not limited to money from Plaintiffs and Class Members who paid for the Products, which contained the Defect.

293.   Plaintiffs, on behalf of themselves and Class Members, seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Nuna, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California law.

(continued on next page)

CLASS ACTION COMPLAINT

# TENTH CLAIM FOR RELIEF

## Unjust Enrichment

### (On behalf of Plaintiffs and the Proposed Class)

294.   Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopt and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

295.   Plaintiffs and Class Members conferred a benefit on Nuna by purchasing the Products.

296.   Nuna has knowledge that this benefit was conferred upon it.

297.   Nuna's unfair and unlawful conduct includes, among other things, designing, manufacturing, and selling the Products with the dangerous Defect as well as making false and misleading representations about the nature, quality and character of the Products as being safe and fit for their intended purpose of providing safe restraint to infants and children in a vehicle. Contrary to these representations, the Products pose an unreasonable risk of serious severe or fatal injury in the event of a crash.

298.   Nuna omitted, concealed, and failed to disclose to consumers, including Plaintiffs and Class Members, that the Products pose serious safety risks to children, including that the Products are inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contain a uniform Defect that renders the Products unsafe and unsuitable for children. Rather than disclose this information, Nuna marketed the Products as safe and fit for their intended purpose.

299.   Nuna failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, were not a safe or suitable car seat for children, and could cause severe or fatal injury in the event of a crash.

300.   Because of its wrongful acts and misrepresentations and omissions, Nuna charged a higher price for the Products than the Products' true value. Plaintiffs and Class Members purchased the Products without knowing the true nature, quality, and

character of the Products, which Nuna concealed and misrepresented. Accordingly, Nuna obtained money which rightfully belongs to Plaintiffs and Class Members.

301.   Nuna's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and Class Members were harmed at the time of purchase, Nuna was unjustly enriched by their misrepresentations, false statements and/or material omissions.

302.   Plaintiff and Class Memebrs were harmed when they purchased the Products as a result of Nuna's misrepresentations, false statements, and/or material omissions, as set forth herein. Plaintiffs and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Nuna's unfair, unlawful, and/or deceptive practices.

303.   Nuna's conduct allows them to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Nuna's benefit and enrichment. Nuna's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

304.   Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Nuna for the Products, which were not as Nuna represented them to be.

305.   Nuna has been unjustly enriched at the expense of Plaintiffs and Class Members, and its retention of this benefit under the circumstances would be inequitable

306.   Plaintiffs, on behalf of themselves and Class Members, seek an order requiring Nuna to make restitution to Plaintiffs and Class Members and be disgorged of all profits arising out of the sale of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

a.    Declare that this Action is a proper class action under Federal Rule of Civil Procedure 23, certifying the proposed Class as requested herein,

designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

b.   Award all actual, general, special, incidental, statutory, and punitive damages to which Plaintiffs and Class Members are entitled;

c.   Award restitution and order disgorgement of all profits and unjust enrichment that Nuna obtained from Plaintiffs and Class Members as a result of Nuna's unlawful, unfair, and fraudulent business practices;

d.   Grant injunctive relief as permitted by law or equity, including enjoining Nuna from continuing the unlawful practices as set forth herein and issuing a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Products;

e.   Award attorneys' fees and litigation costs to Plaintiffs and the Class Members;

f.   Award both pre- and post-judgment interest on any monetary relief; and

g.   Order such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  February 6, 2025          /s/ *William A. Ladnier*
                                  Adam A. Edwards*
                                  William A. Ladnier (CA Bar No. 330334)
                                  Virginia Ann Whitener*
                                  **MILBERG COLEMAN BRYSON**
                                     **PHILLIPS GROSSMAN PLLC**
                                  800 S. Gay Street, Suite 1100
                                  Knoxville, TN 37929
                                  Tel:  (865) 247-0080
                                  Fax:  (865) 522-0049
                                  aedwards@milberg.com
                                  wladnier@milberg.com
                                  gwhitener@milberg.com

CLASS ACTION COMPLAINT

Alex R. Straus (CA Bar No. 321366)
**MILBERG COLEMAN BRYSON
   PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel:    (866) 252-0878
Fax:   (865) 522-0049
astraus@milberg.com

Kevin Laukaitis*
Daniel Tomascik*
**LAUKAITIS LAW LLC**
*klaukaitis@laukaitislaw.com*
*dtomascik@laukaitislaw.com*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462

*Attorneys for Plaintiffs
and the Proposed Class*

**Pro hac vice application forthcoming*

CLASS ACTION COMPLAINT