**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email:  aedwards@milberg.com
        wladnier@milberg.com
        gwhitener@milberg.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  lking@kaplanfox.com
        mgeorge@kaplanfox.com
        breed@kaplanfox.com
        colivares@kaplanfox.com

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NUNA BABY ESSENTIALS RAVA LITIGATION | Case No. 3:25-cv-01284-AMO |
| | <u>**Class Action**</u> |
| | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

1    Plaintiffs Prashmi Khanna, Fabiola Chapman, Tina Marie Barrales, Tiffany Larry, Alyna

2    Smith, Mariana Bernasconi Pelufo, Eleisha Sadasey, and Behnaz Faridian Kade, individually, and

3    on behalf of themselves and a Class of those similarly situated ("Plaintiffs"), bring this action by

4    the undersigned counsel against Defendant Nuna Baby Essentials, Inc. ("Defendant" or "Nuna")

5    based upon personal knowledge of the allegations pertaining to themselves, and upon information,

6    belief, and the investigation of counsel as to all other allegations.

7    **I.    INTRODUCTION**

8        1.    Plaintiffs Prashmi Khanna, Fabiola Chapman, Tina Marie Barrales, Tiffany Larry,

9    Alyna Smith, Mariana Bernasconi Pelufo, Eleisha Sadasey, and Behnaz Faridian Kade, on behalf

10   of themselves and all others similarly situated, bring this Consolidated Class Action Complaint

11   against defendant Nuna Baby Essentials, Inc. for designing, manufacturing, developing, marketing,

12   selling, and distributing the defective and unsafe "RAVA" Convertible Car Seat ("RAVA," or

13   "RAVA Car Seat")[1] throughout the United States.

14       2.    The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are

15   designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing

16   car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing

17   car seat for children at least 2 years old. As children continue to grow, the car seat can be extended

18   to secure children up to 65 pounds.[2]

19   / / /

20   / / /

21   / / /

22   / / /

23   ───────────────────

[1] The RAVA product line includes several substantially similar models: CS-50-001 Caviar, CS-50-
24   002 Indigo, CS-50-003 Berry, CS-50-004 Blackberry, CS-50-005 Slate, CS0501CHC Charcoal,
     CS05103CVR Caviar, CS05103FRT Frost, CS05103GRN Granite, CS05103LAK Lake,
25   CS05103OXF Oxford, CS05103ROS ROSE, CS05115DDC Droplet Dot Collection,
     CS05105BAC Broken Arrow Caviar, CS05106BRS Brushstroke, CS05107RFD Refined,
26   CS05109RVT Riveted, CS05110LGN Lagoon, CS05110EDG Edgehill, CS05111OCN Ocean,
     CS05114CRD Curated, CS05104THR Threaded, and CS05101HCV Verona. *See*
27   https://nunababy.com/recalls-rava1 ("Recall Notice"), *last accessed March 26, 2025.*

[2] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26,*
28   *2025.*

3.     The RAVA Car Seats are sold for approximately $550.00,[3] significantly more expensive than similar convertible car seats:






---

[3] https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed March 26, 2025.*

4.      On its website, Nuna advertises the RAVA Car Seats as a "[f]an-favorite for security, ease-of-use, longevity and sleek design."[4] The RAVA Car Seats, like other car seats, are designed and manufactured to provide safe and secure transport for children riding in a vehicle. The RAVA Car Seats provide protection through a five-point harness system that, when tightened, is designed to remain securely in place until the front release button is pressed and the harness straps are loosened simultaneously. As the marketing confirms, the harness system is intended to remain secure throughout the ride, and especially during a crash.[5] This, however, is not the case, making the RAVA Car Seats unsafe and unsuitable for their marketed and intended purpose of providing safe transport for children.

5.      The RAVA Car Seats do not meet minimum standards of operating with the necessary level of safety. Defendant designed over 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023 without a cover over the front harness adjuster button, which controls the tightness of the RAVA Car Seat straps (the "Defect").[6] As a result, debris— whether from snacks, toys, or any of the endless variety of debris a child can produce—that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA Car Seat straps to loosen.[7]

6.      As a result of this dangerous Defect, toddlers and children can—and indeed have— loosen the straps of the RAVA Car Seat and even get out of the RAVA Car Seat while their parent is driving. In the worst-case scenario, a child could be insecurely fastened during a car accident, leading to injury or even death.

7.      Not only is it critical that children and infants are secure in their harness, especially in the event of a crash, but children are "not known for their neatness": the presence of sand, dirt, crumbs, slick substances, or other debris on the surface of the RAVA Car Seat may cause the Defect

---

[4] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed Feb. 5, 2025.*

[5] *Id.*

[6] Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990, *last accessed March 27, 2025.*

[7] https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990

to manifest, preventing the locking mechanism from functioning properly and allowing the harness to loosen. Simply put, the Defect causes the RAVA Car Seat to fail to provide any protection whatsoever.[8]

8.      This is a dangerous Defect which Defendant knew of or should have known and warned customers about, and which has been experienced and reported by disappointed consumers firsthand after the point of sale. No reasonable consumer would purchase a premium, expensive car seat to transport babies and children that has or could develop a serious safety defect that could harm or even kill their child.

9.      Defendant touts the RAVA's "unwavering security," "all-steel frame," and "energy absorbing foam" to convince safety-conscious parents to shell out for an expensive car seat,[9] but all of those safety features are for naught if the RAVA Car Seat fails in its most basic purpose: securely fastening children into the RAVA. As Nuna itself states on its website: "A loose harness may not properly restrain the occupant, increasing the risk of injury in a crash."[10]

10.      Nuna represents the RAVA Car Seat as safe because it knows parents like Plaintiffs are concerned for the safety of their children and are willing to pay top-dollar for the safest car seat possible. No reasonable consumer would purchase a premium, expensive car seat to transport children that has or could develop a serious safety defect that could harm their child.

11.      Unfortunately, all consumers who purchased a RAVA Car Seat received a defective and unsafe car seat. The RAVA Car Seats suffer from a significant product safety Defect and as of December 20, 2024, are subject to a major national recall.[11]

12.      As part of the Recall, Nuna began to send notice to consumers on January 15, 2025, pursuant to National Highway Transportation Safety Administration ("NHTSA") requirements. A copy of this notice is attached as Exhibit A, which references the Recall as "NHTSA Recall No. 24C002." Notably, not all consumers have received this notice yet. Further, it is unclear how Nuna

---

[8] *Id.*

[9] *See* https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720

[10] *See* Recall Notice; *see also* https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.

[11] *See id.*

1   intends to send this notice to consumers, or whether Nuna can even ensure that all purchasers of
2   the Product receive notice of the Recall at all. Given this, it is unclear if a majority of RAVA Car
3   Seat purchasers have learned—or even can learn—about the dangers of continued use of the RAVA
4   Car Seats, or of the inherent and significant safety risks associated with continued use of the RAVA
5   Car Seats.

6        13.    In this notice, Nuna recognizes that the Defect impacts the safety of the RAVA Car
7   Seat and, when manifested, can cause the harness to loosen, which causes it to "not properly restrain
8   the child, increasing the risk of injury in a crash."[12]

9        14.    Indeed, Nuna explains that "[i]f the harness lengthens while [testing to determine if
10  the Defect has manifested], STOP using the seat . . . immediately."[13] Nuna itself warns consumers
11  not to use the RAVA Car Seats when the Defect manifests—which, given the common
12  circumstances giving rise to manifestation, likely occurs often—but fails to provide a meaningful
13  remedy to address this or provide monetary reimbursement.

14       15.    The Recall is wholly inadequate. Rather than actually recalling this unsafe product,
15  Nuna instead only offers to provide parents with instructions on how to slightly modify their
16  existing RAVA Car Seat—by promising only a new seat pad, cleaning kit, and care instructions
17  (the "Cleaning Kit").[14] Parents must then disassemble, clean, and reassemble the RAVA Car Seat,
18  which may continue manifesting the Defect if parents—who are laypeople—are unable to get all
19  of the components thoroughly clean. Moreover, the Repair Kits do not come in all of the color
20  options that were initially available to parents, some of which parents paid an *additional* price
21  premium for. Thus, even setting aside Nuna's failure to provide financial compensation, and aside
22  from the inadequacy of these slight modifications this Recall only further diminishes the value of
23  Nuna's so-called "luxurious" car seats.[15]

24       16.    Worse, the Recall still requires consumers to *request* remediation—which they must

[12] Exhibit A, at 1.

[13] *Id.* at 2.

[14] https://nunababy.com/recalls-rava1, *last accessed Feb. 5, 2025.*

[15] https://nunababy.com/usa, *last accessed Feb. 5, 2025.*

1    install themselves, as laypersons with no knowledge of the design of car seats.

2    17.    While some consumers can no longer use their RAVA Car Seats because of the

3    Defect and have resorted to purchasing substitute car seats, others, whose RAVA's do not show

4    damage at this time or who simply cannot afford to replace their $550 RAVA, now fear for their

5    children's safety because the Defect can manifest while in ordinary use—indeed, the Defect's

6    manifestation is *caused* by perfectly ordinary use.

7    18.    While there is a significant resale market for used car seats, the defective, recalled

8    RAVA Car Seats in this case have experienced a significant loss in value and useful life because

9    of these issues. And, instead of providing a refund for customers with the RAVA Car Seats,

10    Defendant has only offered the Cleaning Kit purportedly intended to prevent the front harness

11    adjuster button from accumulating debris.[16] Through this suit, Plaintiffs request a full refund and/or

12    applicable damages on these expensive RAVA Car Seats, as well as all other appropriate relief.

## II.    PARTIES

### A.    <u>Plaintiffs</u>

15    19.    Plaintiff Prashmi Khanna resides in and is a citizen of the State of California in San

16    Mateo County.

17    20.    In approximately August 2022, Plaintiff Khanna purchased a RAVA Car Seat in

18    California online from Nordstrom.com, an authorized retailer.[17]

19    21.    Plaintiff Fabiola Chapman resides in and is a citizen of the State of California in

20    Shasta County.

21    22.    In approximately February 2024, Plaintiff Chapman purchased two RAVA Car

22    Seats in California online from Strolleria.com.[18]

23    23.    Plaintiff Tina Marie Barrales is a citizen of the State of California in Los Angeles

24    County.

25    [16] *Id.*

26    [17] Ms. Khanna's RAVA Car Seat has a model number CS05106 and was manufactured on January 6, 2022.

27    [18] Ms. Chapman's RAVA Car Seats both have a model number CS05103 and were manufactured on November 9, 2023 and October 10, 2023.

28

24.    In approximately August 2022, Plaintiff Barrales purchased a RAVA Car Seat in Huntington Park, California from Nordstrom, an authorized retailer.[19]

25.    Plaintiff Tiffany Larry resides in and is a citizen of the State of California in Los Angeles County.

26.    In approximately March 2022, Plaintiff Larry purchased a RAVA Car Seat in California online from potterybarnkids.com, an authorized retailer.[20]

27.    Plaintiff Alyna Smith resides in and is a citizen of the State of California in Los Angeles County.

28.    In approximately August 2023, Plaintiff Smith purchased a RAVA Car Seat in California online from bambibaby.com.[21]

29.    Plaintiff Mariana Bernasconi Pelufo resides in and is a citizen of the State of California in San Francisco County.

30.    In September 2019, Plaintiff Bernasconi Pelufo purchased a RAVA Car Seat in California for $444.44. After that RAVA Car Seat was involved in a car break-in, Plaintiff Bernasconi Pelufo then purchased a second RAVA Car Seat in California in November 2019 for $399.99.[22]

31.    Plaintiff Eleisha Sadasey resides in and is a citizen of the State of California in Orange County.

32.    Plaintiff Sadasey purchased her RAVA Car Seat in California from a brick-and-mortar store, likely a Nordstrom, for approximately six hundred dollars ($600).[23]

---

[19] Ms. Barrales' RAVA Car Seat has a model number CS05105BAC and was manufactured on November 25, 2021.

[20] Ms. Larry's RAVA Car Sear has a model number CS05103 and was manufactured on December 31, 2022.

[21] Ms. Smith's RAVA Car Seat has a model number CS05103 and manufactured on December 10, 2022.

[22] Plaintiff Bernasconi Pelufo gifted her remaining RAVA Car Seat to a friend around February 2023, after her child outgrew it.

[23] Plaintiff Sadasey's RAVA Car Seat has a model number of CS05103CVR, serial number of 0199124, and was manufactured on January 4, 2021 in Morgantown, PA.

33.     Plaintiff Behnaz Faridian Kade resides in and is a citizen of the State of California in Los Angeles County.

34.     In 2021, Plaintiff Faridian Kade purchased a RAVA Car Seat in California from Pottery Barn for approximately $550.00. On or about August 24, 2022, Plaintiff Faridian Kade purchased a second RAVA Car Seat from Bloomingdales for $547.45.[24]

**B.     Defendant**

35.     Defendant Nuna Baby Essentials, Inc., is a Pennsylvania corporation whose principal place of business is at 70 Thousand Oak Blvd., Morgantown, Pennsylvania 19543-8878. Thus, for jurisdictional purposes, Defendant is a citizen of the State of Pennsylvania.

36.     Defendant Nuna Baby Essentials, Inc., is owned by Nuna International B.V., a subsidiary of Wonderland Nurserygoods, a Taiwanese company.

37.     Nuna Baby Essentials, Inc. designs, manufactures, distributes, markets, advertises, labels, and sells products for babies to consumers throughout the United States, including in California.

**III.    JURISDICTION AND VENUE**

38.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 ("CAFA") because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiffs and Defendant are citizens of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

39.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

40.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs are citizens of California and purchased the product in California and within this District.

41.     This Court has personal jurisdiction over Defendant because Defendant has transacted business and affairs in California and has committed the acts complained of in

---

[24] Plaintiff Faridian Kade's RAVA Car Seats have model numbers of CS05103CVR and CS05103ROS, serial numbers of 0788875 and 0552308, and were manufactured on September 4, 2021 and June 9, 2022, respectively, in Morgantown, PA.

California.

42.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Defendant has transacted business and affairs in this District and has committed the acts complained of in this District.

## IV.    DIVISIONAL ASSIGNMENT

43.    Pursuant to Local Rules 3-2(c) and 3-2(d), assignment of this Action to the San Francisco Division or the Oakland Division is proper because a substantial part of the events or omissions giving rise to Plaintiff Khanna's claims occurred in San Mateo County.

## V.    FACTUAL ALLEGATIONS

### A.    Nuna's RAVA Car Seats and Representations

44.    Nuna is a consumer goods company founded in 2007 specializing in baby products.[25]

45.    Nuna markets itself as a "global brand . . . inspired by the ingenuity of Dutch design."[26]

46.    Nuna develops, manufactures, markets, and sells car seats, including all variations of the RAVA Car Seat. Per Nuna's website, consumers can purchase the RAVA at Brixy, where it is listed for $550.[27] The RAVA Car Seat is also available at other online and brick and mortar vendors throughout the United States, including such as Nordstrom, Bloomingdale's, Pottery Barn Kids, Neiman Marcus, Kidsland USA, and others.

47.    For example, Baby Gear Lab lists the RAVA at $650,[28] over $200 more expensive than the next most expensive of Baby Gear Lab's listed similar convertible car seats.[29]

---

[25] https://www.linkedin.com/company/nunababy/, *last accessed August 5, 2025.*

[26] https://nunababy.com/usa/about, *last accessed August 5, 2025.*

[27] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed August 5, 2025*; https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed August 5, 2025.*

[28] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava, *last accessed August 5, 2025.*

[29] https://www.babygearlab.com/topics/vehicle-safety/best-convertible-car-seat/ratings, *last*

48.     Nuna commands this expensive price point because of its perception among new parents and within the industry: that its car seats, including the RAVA Car Seats at issue, are high quality, long lasting, and—above all else—very safe.

49.     The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds.[30]

50.     On information and belief, Plaintiffs allege that sometime around 2020, Nuna represented that the RAVA Car Seat would expand to grow with consumers' children, and last 10 years. Consumers have discussed this representation online.[31]

51.     The RAVA Car Seat is marketed as "a reliable anchor to your child's car-riding adventures and your parental peace of mind[.]" Nuna promises that consumers who buy a RAVA Car Seat "can trust in its unwavering security[.]"[32]

52.     These representations echo representations Nuna makes about its products generally:

> Our baby gear is extensively tested before it leaves the factory. We use advanced equipment and testing methods, going above and beyond what's required. To ensure compliance with safety standards, we regularly have our gear tested at accredited, independent labs.[33]

53.     On the "Features & Specs" page for the RAVA Car Seat, Nuna begins by listing six

_____

*accessed August 5, 2025.*

[30] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26, 2025.*

[31] *See, e.g.,* https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 complaint dated February 21, 2023 noting the RAVA's "10 year expiration date"), *last accessed March 27, 2025;* https://community.babycenter.com/post/a75754862/nuna-rava-worth-the-hype (comment asking: "Will [the RAVA Car Seat] make it the 10 years as advertised?"), *last accessed March 27, 2025.*

[32] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16835, *last accessed August 5, 2025.*

[33] *Id.*

safety features, including several promising that consumers' children will be securely fastened into the RAVA. Specifically, Nuna advertises the RAVA Car Seat's:

- "All-steel frame and reinforced belt path for superior protection
- EPO energy-absorbing foam and Side Impact Protection (SIP) pods for ultimate safekeeping
- Simply™ secure installation for confidence every time
- True tension™ doors provide a secure fit without the struggle
- Colored belt path indicators decrease risk of install errors
- Quick-release 3 to 5-point harness makes it easy to fasten them in[.]"[34]

54.    Nuna also engaged in targeted advertisement for the RAVA Car Seat through the internet and social media. Targeted advertisement occurs when, based off a profile built by analyzing an individual's online and on-device activity, businesses and retailers like Nuna target specific, individual consumers with advertisements that are likely to be relevant to their interests, such as expecting parents. As any new parent knows, targeted advertising is particularly prevalent in the market for baby products, such as car seats.

55.    As evidenced by the supremacy of safety considerations in its marketing, Nuna knows that safety is the paramount consideration of parents purchasing a RAVA Car Seat. For example, Nuna boasts that "Nuna's luxurious car seats are engineered for growth keeping baby to 'tween safe at every stage. Combining safety with high design, Nuna's car seats are mindfully manufactured[.]"[35] In its "Car Seat Headquarters" webpage,[36] Nuna describes its purportedly top-of-the-line safety features at length:

---

[34] https://nunababy.com/usa/rava-convertible-car-seat?srsltid=AfmBOopFQv7moc_ChKyNB1t307uXOhlKevl9vL5n2UkBZWWGHOm3yHe1&color_ref=16957, *last accessed March 26, 2025.*

[35] https://nunababy.com/usa, *last accessed March 26, 2025.*

[36] https://nunababy.com/usa/us-car-seat-headquarters, *last accessed March 26, 2025.*

1

2

3

4

Unique safety features






**A.** True tension™ doors ensure an ultra-secure fit in vehicle without the struggle.

**B.** Bubble-free installation—Designed and engineered to give you the ability to choose your preferred recline angle without the need for a bubble indicator.







**C.** Steel reinforced True lock™ and rigid latch—True lock™ installation makes set up swift, simple and above all—safe.

**D.** Aeroflex™ side impact protection—Aeroflex™ foam is cleverly lightweight, resilient, and minimizes force transferred to baby by absorbing and diffusing energy.

**E.** Multi-position steel stability leg reduces forward rotation of the car seat, absorbs impact, and minimizes forces transferred to the baby in the event of a vehicle crash.

56.     But all of these highly-marketable safety innovations are for naught if the RAVA Car Seat fails to perform a car seat's most basic function: keeping children buckled in the seat.

**B.     The RAVA Car Seat Defect and Recall**

57.     On December 20, 2024, Nuna instituted a "voluntary recall" for 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023.[37]

58.     This Recall concerns a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash."[38]

59.     Due to this Defect, debris that enters the area where the front harness adjuster button is located "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the

---

[37] Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.

[38] *Id.*

1    adjuster strap, resulting in the harness no longer remaining tight."[39]

2    60.    The Recall Notice states that, when the Defect manifests, consumers should

3    *immediately* stop using the RAVA Car Seat.[40]

4    61.    Put differently, despite Defendant's representations about the safety of the RAVA

5    Car Seat, the RAVAs do not meet the bare minimum standards of operating with the usual and

6    expected level of safety due to the Defect in the RAVA's design. The RAVA Car Seat lacks a cover

7    over the front harness adjuster button, which controls the tightness of the RAVA's straps. As a

8    result, debris, including from snacks, toys, etc., that falls into the front harness adjuster area can

9    "imped[e] the mechanism from properly clamping on the strap," causing the RAVA's straps to

10   loosen.[41] Once the RAVA's straps are loosened, a child can crawl out of their car seat, or, in the

11   case of a car accident, be seriously injured or even killed.

12   62.    This is an extremely dangerous Defect. As any parent or caregiver, or anyone

13   familiar with children whatsoever, will understand, children leave behind debris of all kinds—from

14   crumbs of puff snacks, to melted ice cream, to bits of tanbark and twigs—even under the watchful

15   eye of a guardian. Every defective RAVA Car Seat is therefore likely to manifest the Defect at

16   some point.

17   63.    Dr. Alisa Baer, a pediatrician and co-founder of The Car Seat Lady, an advocacy

18   organization devoted to preventing children's injuries in cars, confirms this. "The looser the child

19   is in the straps, the longer it takes to stop," she explained.[42] "You do not want to make contact with

20   anything except your seat belt or car seat straps in a crash."[43]

21   64.    When dirt, crumbs, or other debris enter the harness adjuster, "children can

22   accidentally loosen the car seat straps if they lean forward because the locking mechanism might

23

_____

24   [39] *Id.*

25   [40] *Id.*

26   [41] *Id.*

27   [42] *Id.*

28   [43] *Id.*

not work[.]"[44]

65.    Moreover, Dr. Baer confirmed the obvious: "Children are not known for their neatness," meaning that the Defect is likely to manifest.[45]

66.    Consumers confirm this as well. For years, consumers have been complaining online and directly to Nuna of the RAVA Car Seat's straps coming loose even when tightened by the consumer. For example, the National Highway Traffic Safety Administration ("NHTSA") has seventeen (17) pages of complaints regarding the RAVA Car Seat, with consumers nationwide complaining of the RAVA's loosening straps since late 2020, four years before Nuna initiated its Recall.[46] The complaints include, e.g.:

- "THE CONTACT WAS ABLE TO LOOSEN THE STRAPS WITH LITTLE EFFORT. THE CONTACT STATED THAT IN THE EVENT OF A CRASH, THE CHILD COULD EASILY SLIP OUT OF THE STRAPS."[47]

- "THE CONTACT STATED THAT WHILE ATTEMPTING TO SECURE THE CHILD IN THE CAR SEAT, IT WAS DISCOVERED THAT THE STRAP LOCKING MECHANISM WAS FAULTY AND WOULD NOT REMAIN SECURED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND DEALER WAS NOTIFIED OF THE FAILURE."[48]

- "We were leaving a car dealership to head home, my husband put our toddler in his car seat and after doing the pinch test, pulled on the chest buckle to make sure it was tight enough. When he pulled the chest buckle, it loosened both harness belts. We attempted the same scenario over 20 times and each time you could pull on the chest clip and retract both harness belts. Without pushing the button to retract. Nothing is stuck in the car seat as our child doesn't eat or drink in his seat. We uninstalled and reinstalled, opened the seat, etc and there is no issue that we could correct. Our son's life was in danger driving home last night. If we were to have gotten in an accident, the force of the crash would have jolted his body forward and loosened the harness."[49]

- "My child was secured in the car seat: chest clip, buckled, and the harness pulled to secure. Without pushing the release button, the harness comes loose when

---

[44] *Id.*

[45] *Id.*

[46] https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717, *last accessed March 27, 2025.*

[47] *Id.* (complaint dated December 31, 2020).

[48] *Id.* (complaint dated April 1, 2021).

[49] *Id.* (complaint dated August 9, 2021).

pulled . . . . If coming to an abrupt stop, my child may have come out of the seat."[50]

- "When the child is buckled in and the straps are all tight, they can be pulled loose without using the release button at the bottom. This is incredibly unsafe and would make this car seat useless if we were to be in a car accident. My car seat has not been inspected but the manufacturer has been notified."[51]

- "I am able to loosen the harness by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and if there were an accident it would do nothing to protect him or keep him inside the vehicle. Nuna has been contacted and is replacing the car seat shell but advised this is a "courtesy" since it is outside of the 2 year warranty. It is ridiculous that this could ever happen especially since the car seat has a 10 year expiration date and a convertible car seat is supposed to last for years."[52]

- "The contact owns a Nuna Rava car seat. The contact stated that the tether used to secure the child in the seat had become loosened. The contact stated that her child was able to pull the tether apart. The car seat had not been repaired. The manufacturer was made aware of the failure and opened a case."[53]

- "When the harness is fully tightened and secure my child can easily loosen it by pushing on it. I have sent a video to Nuna for review. If we were in an accident the harness could fully loosen and my child could be propelled out of the seat. We've discontinued use of the seat and are awaiting Nuna's response."[54]

- "My Nuna Rava car seat will not secure my child. The straps will not lock, and are coming loose with the slightest tug on the chest clip. Our 2 year old child can pull the straps loose. I hate to think about what would happen if we were in an accident. I contacted Nuna for a refund, and was informed they would be unable to process returns on behalf of a retail partner. I do not feel like Nuna Rava is a safe car seat for my children. There are 25 complaints on NHTSA, and many seem to be about the same issue. This is also the second Nuna Rava car seat I've personally had to file report on that is defective. We've had five total. Two out of five malfunctioning in the same way is very concerning. I'm hoping these get recalled. I can't believe they haven't already. I just hope a child doesn't get seriously hurt, before action is taken."[55]

- "Harness suddenly started to loosen by itself without pushing on the release mechanism. Extremely dangerous as child is not restrained at all when this happens. After doing some research online, it appears that there may be something stuck in the release mechanism area, but there is no easy way to get to the area to clean it. (Only way is to unscrew the bottom portion of the car seat

---

[50] *Id.* (complaint dated June 8, 2022).

[51] *Id.* (complaint dated July 13, 2022).

[52] *Id.* (complaint dated February 21, 2023).

[53] *Id.* (complaint dated June 10, 2023).

[54] *Id.* (complaint dated August 15, 2023).

[55] *Id.* (complaint dated December 21, 2023).

- which a Nuna representative has said they do not advise doing and also is impractical if you are not at home and have a screwdriver nearby.)"[56]

- "Problem occurred after several months of use. The chest straps will not consistently lock into position, despite the release button not being engaged. They can easily be pulled to loosen again. This does not secure the child into the seat. We have ensured that the strap mechanism is not clogged with debris. We have submitted a claim to the Nuna company."[57]

67.    On March 21, 2024, a consumer submitted a letter to NHTSA petitioning NHTSA to open a recall for the RAVA Car Seat, stating: "the car seat harness can be loosened completely without pressing on the harness release button. This harness would not be able to restrain a child at all in case of a crash."[58]

68.    Consumers have complained directly to Nuna since at least 2021, as noted in these NHTSA complaints.

69.    Consumers have complained directly to Nuna through other means as well. For example, one consumer stated in an online forum in 2021 that they had reported the loosening straps—that is, the Defect and its manifestation—to both NHTSA and Nuna. In response, "Nuna sent me a new seat and said sometimes crumbs or sand can get inside of the seat. Tiny particles can get on the tightening strap from shoes or whatever and when you loosen the harness and the strap goes back inside, the lock traps the particles."[59] The consumer continued: "Yes so scary a cheerio or playground sand could be life or death for my kiddo. Toddlers are such messy creatures! No matter how hard us parents try to keep things clean."[60]

70.    Perhaps in response to consumer complaints regarding the dangerous Defect, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button:

---

[56] *Id.* (complaint dated July 16, 2024).

[57] *Id.* (complaint dated July 31, 2024).

[58] https://static.nhtsa.gov/complaints/11583786/11583786-0002.pdf

[59] https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/, *last accessed Feb. 10, 2025.*

[60] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14




15    71.    This is the exact remedy prescribed by the Recall.

16    72.    It is clear that Nuna knew about this potentially life-threateningly dangerous Defect

17   for years before notifying the public of the serious risks use of the RAVA posed to infants and

18   children for three reasons: (1) Nuna presumably began designing the redesigned RAVA Car Seat

19   prior to beginning manufacturing, (2) consumers have repeatedly complained about his dangerous

20   Defect since 2020, including directly to Nuna, and (3) Nuna has responded to many consumer

21   complaints, including, but not limited to, Nuna's 2021 acknowledgement to consumers that

22   "sometimes crumbs or sand can get inside of the seat[.]".

23    73.    This Defect renders the RAVA Car Seats worthless and unusable for their intended

24   purpose of safely transporting babies, toddlers, and young children.

25    74.    Additionally, Plaintiffs and Class Members substantially overpaid for the defective

26   RAVAs, which have experienced a significant diminution in value and useful life due to this

27   undisclosed Defect and Recall.

28    75.    Indeed, despite this dangerous Defect, the RAVA Car Seat is expensive—some

commenters have called it "super expensive"[61]—compared to similar convertible car seats sold, for example, by Graco Baby for $199.99[62] and Evenflo for $349.98,[63] meaning that consumers sometimes spend hundreds of dollars more for the RAVA Car Seat than for competitor car seats. Consumers, including Plaintiffs, were willing to pay this higher price specifically because of the RAVA's reputation for safety and security. Unfortunately, they were sold an unsafe and defective car seat instead.

76.    Nuna was on notice of its obligations to provide a safe and Defect-free car seat to parents like Plaintiff and Class members for several reasons. As an initial matter, a car seat exists for the sole purpose of safely transporting infants, toddlers, and small children in a moving vehicle. Any car seat, like the RAVA Car Seat, that is not safe need not exist.

77.    And as Nuna is no doubt aware, federal regulations governing car seats are implemented to "reduce the number of children killed or injured in motor vehicle crashes." 49 C.F.R. § 571.213.

78.    Further, the particular Defect here is one that manufacturers and sellers of car seats, such as Nuna, should be aware of given prior recalls prompted by similar defects.[64]

[61] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava, *last accessed March 26, 2025.*

[62] https://www.gracobaby.com/car-seats/toddler-car-seats/convertible-car-seats/extend2fit-convertible-car-seat/SAP_1963212.html, *last accessed March 26, 2025.*

[63] https://www.evenflo.com/products/revolve360-all-in-one-car-seat, *last accessed March 26, 2025.*

[64]    *See*,    *e.g.*,    https://www.npr.org/sections/thetwo-way/2014/02/11/275506262/graco-recalls-nearly-3-8-million-child-car-seats#:~:text=toggle%20caption,affected%20consumers%20at%20no%20cost,    *last accessed August 5, 2025* (Graco recall of approximately 3.8 million car seats, with an additional 1.8 million car seats under review because "the buckles stop working properly when debris and liquids are dropped into them"); https://www.counton2.com/news/evenflo-recalls-convertible-car-seats-due-to-safety-concerns, *last accessed August 5, 2025* (Evenflo recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and    drinks)");    https://babytrend.com/pages/safety-notices#:~:text=Baby%20Trend%20is%20providing%20customers%20who%20own%20the%20TrendZ%20Fastback,to%20install%20the%20new%20buckle, *last accessed August 5, 2025* (Baby Trend recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and drinks)"); *see also*, *e.g.*, *Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257- WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) (case involving a children's car seat that failed to *un*buckle when debris was introduced to the locking mechanism).

79.    Indeed, as NHTSA has warned companies in the past: "It is completely foreseeable that children will eat or drink while seated in their car seat and that some amount of these substances may enter the buckle."[65] For this reason, regulators do not "believe that food or drink contamination should create any buckle performance issues[.]"[66]

80.    For these and other reasons, Nuna was or should have been made aware of the Defect long before the announcement of the Recall by adequate pre-market product safety testing.

## C.    Nuna's Voluntary Recall Is Insufficient

81.    Nuna's subsequent Recall fails to make Plaintiffs and Class Members whole. To the contrary, it is ineffective and inadequate for providing consumers with a meaningful remedy for purchasing the defective RAVA.

82.    As an initial matter, there was insufficient notice to impacted customers, leaving some parents to unknowingly continue using the dangerously defective RAVA Car Seat even after Nuna announced the Recall.

83.    Since the Recall was announced, some Plaintiffs experienced delays in receiving the promised Cleaning Kits, even when they have requested them repeatedly, leaving them with expensive and dangerous Car Seats with no repair.

84.    In fact, a Nuna employee informed Plaintiff Faridian Kade on or about February 7, 2025 that Nuna had yet to mail out a single Cleaning Kit to any purchaser of the RAVA Car Seat as of that date.

85.    Even for those consumers who have received the Cleaning Kits, such Cleaning Kits fail to make Plaintiffs and Class Member whole because the Cleaning Kits do not address Plaintiffs' and Class Members' overpayment for or diminution in value of the RAVA Car Seat. No reasonable consumer would purchase a $550 car seat that does not safely fasten, and that instead endangers their child. Nuna was able to demand such a high price only by misleadingly advertising the RAVA as safe and by failing to notify the public of the dangerous Defect.

86.    Further, Nuna failed to recall the entire RAVA Car Seat and instead only advised

---

[65] https://www.wral.com/story/graco-recalls-nearly-3-8-million-car-seats/13382063/, *last accessed* June 25, 2025.

[66] *Id.*

consumers to clean and replace certain portions of it. By failing to recall the entire RAVA Car Seat, the Recall allows and encourages consumers to continue to use a car seat with the risk of severe injury, and without the benefit of a professional repair.

87.    Instead of recalling the RAVA, offering professional repair of the RAVA, and/or providing consumers with a refund, Nuna offers the Cleaning Kit to ensure the car seat's harness adjuster is kept clean and working properly. Given that Plaintiffs and Class Members are expected to thoroughly clean their own RAVA Car Seat—something which consumers report can be accomplished only with the aid of a screwdriver[67]—and install Nuna's purported repair themselves, these modifications significantly diminish the RAVA's value as a "high-end," premium, or luxury product.

88.    For the same reason, the Recall burdens consumers who are already living busy lives caring for their children and are not trained or experienced in designing or repairing car seats, unlike Nuna.

89.    Further, Nuna advises consumers to immediately stop use of the RAVA Car Seat if the Defect manifests because it creates a substantial safety risk. Parents who need to transport their child are therefore forced to either subject their child to danger or to obtain another car seat that will (unlike the RAVA) safely transport their child during the months Nuna took to send consumers the promised Cleaning Kits, thereby incurring further monetary damages for which Nuna is responsible.

90.    Moreover, the purported repair does not even appear to be available to all consumers at this time.

91.    Indeed, Nuna states in its Recall Notice that they will send (only to consumers who specifically request) a letter to "notify owners when the seat pad and cleaning kit are available."[68] It is not clear when that will be.

---

[67] *See, e.g.*, https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 (complaint dated July 16, 2024); https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/ (describing cleaning RAVA Car Seat "by removing two screws under the leg rest. Once opened I found all sorts of gunk that was restricting the friction on the latch.").

[68] Recall Notice.

92.     After originally learning of the Recall, Plaintiff Alyna Smith, for example, contacted Nuna to complain. Nuna simply directed Plaintiff Smith to the online form for the Recall and informed her that if her RAVA Car Seat was not working properly, she must provide video evidence of that fact, while simultaneously leaving open the possibility that Nuna could choose to deny further meaningful repair of the Defect or replacement of the RAVA Car Seat. Thus, even upon request by a consumer, it remains unclear whether Nuna or the Recall will adequately and safely remediate the Defect.

93.     Plaintiff Smith did eventually receive a Cleaning Kit as part of the Recall. However, despite following the installation instructions, once installed the seat pad did not fit properly in the RAVA Car Seat, which posed a continuing safety issue for her child and did not remediate the Defect. This renders the Recall insufficient.

94.     Other Plaintiffs and Class Members have not even received the cleaning kit and seat pad as part of the Recall. For example, Plaintiff Barrales has not received the Cleaning Kit and, thus, cannot make the repairs called for by the Recall. Indeed, Plaintiff Barrales has *still* not received notice from Nuna of the Recall. Therefore, the Recall cannot remediate the Defect. This renders the Recall insufficient.

95.     Nuna's false and misleading marketing of the dangerous RAVA Car Seat, and its knowing failure over *years* to disclose the grave risks of allowing children to use the RAVA Car Seat, allowed Nuna to reap vast profits at the expense of ordinary consumers who erroneously believed their infants and children were safe in Nuna's "premium" car seat.

96.     Every RAVA Car Seat suffers from the uniform Defect, which, unknown to consumers but known to Nuna, exists at the point of purchase and poses an unreasonable safety hazard to infants and children. As such, Plaintiff and Class Members are victims of the unfair bargaining power between them and the Defendant based on Nuna's superior industry knowledge.

## VI.    PLAINTIFFS' EXPERIENCES

### A.    Plaintiff Prashmi Khanna

97.     In approximately August 2022, Plaintiff Khanna purchased a Nuna Rava car seat model number CS05106 and manufactured on January 6, 2022, online from Nordstrom.com, an

1    authorized retailer.

2    98.    Plaintiff Khanna's Car Seat is part of the Recall.

3    99.    She purchased the RAVA Car Seat for her child to use.

4    100.    Prior to her purchase, Plaintiff Khanna read and relied on Defendant's advertising

5    and marketing materials, including viewing representations that the RAVA Car Seat was known

6    for its security and safety.

7    101.    Plaintiff Khanna was not aware of the Defect in the RAVA Car Seat, or the truth (or

8    lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna

9    published the Recall Notice, over two years after Plaintiff Khanna initially purchased the RAVA

10    Car Seat.

11    102.    Notably, Plaintiff Khanna only happened to learn of the Recall. She only received

12    formal notice from Nuna of the Recall *after* she had already learned of the Recall on her own and

13    completed the online form.

14    103.    Following her discovery of the Recall, Plaintiff Khanna completed the online form

15    for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care

16    instructions.

17    104.    Had Plaintiff Khanna understood the true nature of the RAVA Car Seat at the time

18    of purchase, or had Plaintiff Khanna known the truth underneath Nuna's misleading representations

19    and omissions, she would not have purchased the RAVA Car Seat, or else would have paid

20    substantially less for it.

21    105.    The remedy Nuna has offered to Plaintiff Khanna through the Recall—that is,

22    providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely

23    insufficient. The purported remedy, even if actually provided, does not actually address the Defect

24    or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and

25    omissions Nuna has made regarding the RAVA, which enticed Plaintiff Khanna to overpay in the

26    first place. It does not make Plaintiff Khanna whole. The only remedy appropriate for Plaintiff

27    Khanna and for Class Members is a refund of the RAVA Car Seat.

28    106.    As it stands, the purported solution to the defective Car Seats offered by Nuna to

1  Plaintiff Khanna and the Class and Subclass is insufficient and has diminished the value of the

2  RAVA Car Seats.

3      **B.    Plaintiff Fabiola Chapman**

4      107.    In approximately February 2024, Plaintiff Chapman purchased two Nuna Rava car

5  seats, model number CS05103 and manufactured on November 9, 2023 and October 10, 2023,

6  online from Strolleria.com.

7      108.    Plaintiff Chapman's RAVA Car Seats are part of the Recall.

8      109.    She purchased the RAVA Car Seats for her 1-year old and 2-year old children to

9  use.

10     110.    Prior to her purchases, Plaintiff Chapman read and relied on Defendant's advertising

11 and marketing materials, including viewing representations that the RAVA Car Seat was known

12 for its security and safety.

13     111.    Plaintiff Chapman was not aware of the Defect in the RAVA Car Seat, or the truth

14 (or lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna

15 published the Recall Notice, nearly one year after Plaintiff Chapman initially purchased the RAVA

16 Car Seats.

17     112.    Notably, Plaintiff Chapman only happened to learn of the Recall. She never received

18 formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear

19 of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA

20 Car Seat and would likely still be using the RAVA Car Seat—and putting her children at serious

21 risk.

22     113.    Following her discovery of the Recall, Plaintiff Chapman contacted Nuna directly

23 via phone and email. Nuna directed Plaintiff Chapman to the online form for the Recall and

24 informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions.

25     114.    Fearing for her children's safety, Plaintiff Chapman stopped using the RAVA Car

26 Seats and began using her backup car seats.

27     115.    Had Plaintiff Chapman understood the true nature of the RAVA Car Seat at the time

28 of purchase, or had Plaintiff Chapman known the truth underneath Nuna's misleading

representations and omissions, she would not have purchased the RAVA Car Seats, or else would have paid substantially less for them.

116.    The remedy Nuna has offered to Plaintiff Chapman through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Chapman to overpay in the first place. It does not make Plaintiff Chapman whole. The only remedy appropriate for Plaintiff Chapman and for Class Members is a refund of the RAVA Car Seat.

117.    Moreover, to date, Plaintiff Chapman has not received the new seat pad, cleaning kit, or care instructions.

118.    As it stands, the purported solution to the defective RAVA Car Seats offered by Nuna to Plaintiff Chapman and the Class and Subclass is insufficient and has diminished the value of the RAVA Car Seats.

### C.    Plaintiff Tina Marie Barrales

119.    In approximately August 2022, Plaintiff Barrales purchased a Nuna Rava car seat, model number CS05105BAC and manufactured on November 25, 2021, from Nordstrom, an authorized retailer, in Huntington Park, California.

120.    Plaintiff Barrales' RAVA Car Seat is part of the Recall.

121.    She purchased the RAVA Car Seat for her 1-year old child to use.

122.    Prior to her purchase, Plaintiff Barrales read and relied on Defendant's advertising and marketing materials, including viewing representations that the RAVA Car Seat was known for its security and safety.

123.    For two weeks, Plaintiff Barrales attempted to use the RAVA Car Seat with her younger child. However, she found the lower buckle to be very difficult to latch and unlatch; in order to properly secure her infant in the seat, she needed to keep the chest and lower buckle extremely tight, causing her baby to suffocate and cough in the seat.

124.    When the straps were not so tight as to injure her child, Plaintiff Barrales observed

that the lower buckle and chest straps seemed to come dislodged on their own.

125.    After about two weeks, Plaintiff Barrales stopped using the RAVA Car Seat and purchased a different car seat from a different car seat manufacturer.

126.    Plaintiff Barrales was concerned that, if she returned the defective RAVA Car Seat, another unsuspecting consumer may purchase it and put their child at risk. Thus, she instead chose not to return the RAVA Car Seat and still has it in her possession, although she refuses to use it.

127.    Plaintiff Barrales was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Barrales initially purchased the RAVA Car Seat.

128.    Notably, Plaintiff Barrales only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat and would likely still be using the RAVA Car Seat—and putting her children at serious risk.

129.    To date, Plaintiff Barrales has *still* not received notice from Nuna of the Recall, and she has not received a repair or cleaning kit as part of the Recall.

130.    Had Plaintiff Barrales understood the true nature of the RAVA Car Seat at the time of purchase, or had Plaintiff Barrales known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

131.    The remedy Nuna has offered to Plaintiff Barrales through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Barrales to overpay in the first place. It does not make Plaintiff Barrales whole. The only remedy appropriate for Plaintiff Barrales and for Class Members is a refund of the RAVA Car Seat.

132.    As it stands, the purported solution to the defective RAVA Car Seats offered by Nuna to Plaintiff Barrales and the Class is insufficient and has diminished the value of the RAVA Car Seats.

**D.    Plaintiff Tiffany Larry**

133.    In approximately March 2022, Plaintiff Larry purchased a Nuna Rava car seat, model number CS05103, manufactured on December 31, 2022, online from potterybarnkids.com, an authorized retailer.

134.    Plaintiff Larry's RAVA Car Seat is part of the Recall.

135.    She purchased the RAVA Car Seat for her 5-month old child.

136.    Prior to her purchase, Plaintiff Larry read and relied on Defendant's advertising and marketing materials, including viewing representations that the RAVA Car Seat was known for its security and safety.

137.    In 2024, prior to the Recall, Plaintiff Larry noticed that the RAVA Car Seat's harness straps were not functioning properly. Plaintiff Larry called and informed Nuna of the harness straps. Nuna did not offer a remedy at this time, and instead requested Plaintiff Larry send in a video of the harness straps.

138.    Plaintiff Larry was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Larry initially purchased the RAVA Car Seat.

139.    Notably, Plaintiff Larry only happened to learn of the Recall through social media and, eventually, through notice by a third-party, Pottery Barn Kids. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat and would likely still be using the RAVA Car Seat without performing the new recommended Harness Function Test—and putting her child at serious risk.

140.    Following discovery of the Recall, Plaintiff Larry contacted Nuna via phone. Nuna informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions, but

1    the cleaning kits were not currently available.

2        141.    Had Plaintiff Larry understood the true nature of the RAVA Car Seat at the time of

3    purchase, or had Plaintiff Larry known the truth underneath Nuna's misleading representations and

4    omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially

5    less for it.

6        142.    The remedy Nuna has offered to Plaintiff Larry through the Recall—that is,

7    providing a new seat pad, cleaning kit, and care instructions—is entirely inadequate. The purported

8    remedy, even if actually provided, does not actually address the Defect or make the RAVA Car

9    Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made

10   regarding the RAVA, which enticed Plaintiff Larry to overpay in the first place. It does not make

11   Plaintiff Larry whole. The only remedy appropriate for Plaintiff Larry and for Class Members is a

12   refund of the RAVA Car Seat.

13       143.    As it stands, the purported solution to the defective RAVA Car Seats offered by

14   Nuna to Plaintiff Larry and the Class is insufficient and has diminished the value of the RAVA Car

15   Seats.

16       **E.    Plaintiff Alyna Smith**

17       144.    In approximately August 2023, Plaintiff Smith purchased a Nuna Rava car seat,

18   model number CS05103 and manufactured on December 10, 2022, online from bambibaby.com.

19       145.    Plaintiff Smith's RAVA Car Seat is part of the Recall.

20       146.    She purchased the RAVA Car Seat for her child to use.

21       147.    At the time of purchase, Plaintiff Smith registered the RAVA Car Seat with Nuna.

22       148.    Prior to her purchase, Plaintiff Smith read and relied on Defendant's advertising and

23   marketing materials, including viewing representations that the RAVA Car Seat was known for its

24   security and safety.

25       149.    Plaintiff Smith was not aware of the Defect in the RAVA Car Seat, or the truth (or

26   lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna

27   published the Recall Notice, over one year after Plaintiff Smith initially purchased the RAVA Car

28   Seat.

150.    Notably, Plaintiff Smith only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat and would likely still be using the RAVA Car Seat—and putting her child at serious risk.

151.    Following her discovery of the Recall, Plaintiff Smith contacted Nuna directly via email. Nuna directed Plaintiff Smith to the online form for the Recall and informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions. Nuna informed her that if her RAVA Car Seat was not working correctly, she must provide video evidence of that fact, but notably Nuna left open the possibility that it could still deny further meaningful repair of the Defect or replacement of her RAVA Car Seat following review of whatever further information Plaintiff Smith provided.

152.    Plaintiff Smith received a remedy kit from Nuna and followed the provided instructions to replace the seat pad. However, the new seat pad does not fit properly or "snug" on the RAVA Car Seat, thus it is able to shift and move and is still not safe.

153.    Plaintiff Smith contacted Nuna via email informing them that the seat pad did not fit properly. She received a phone call back from a Nuna representative who only told her that the seat was safe to use. She had a second phone call with Nuna, but no solution was offered.

154.    To date, despite Plaintiff Smith's best efforts, she feels that the Recall did not remediate the Defect and that her RAVA Car Seat is not safe.

155.    Had Plaintiff Smith understood the true nature of the RAVA Car Seat at the time of purchase, or had Plaintiff Smith known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

156.    The remedy Nuna has offered to Plaintiff Smith through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient, particularly in light of the fact that the provided seat pad does not even fit properly within Plaintiff Smith's RAVA Car Seat. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy

the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Smith to overpay in the first place. It does not make Plaintiff Smith whole. The only remedy appropriate for Plaintiff Smith and for Class Members is a refund of the RAVA Car Seat.

157.    As it stands, the purported solution to the defective RAVA Car Seats offered by Nuna to Plaintiff Smith and the Class is insufficient and has diminished the value of the RAVA Car Seat.

### F.    Plaintiff Mariana Bernasconi Pelufo

158.    Plaintiff Mariana Bernasconi Pelufo resides in the State of California in San Francisco County.

159.    Plaintiff Bernasconi Pelufo purchased her first RAVA Car Seat from a brick-and-mortar store in Alameda, California called Tot Tank for $444.44 in September of 2019. She was willing to pay this high price only because of the safety representations made by Defendant.

160.    After her first RAVA Car Seat was involved in a car break-in mere months after she purchased it, Plaintiff Bernasconi Pelufo purchased a second RAVA Car Seat from Nordstrom for $399.99 in November 2019. Yet again, she was willing to pay this high price only because of the safety representations made by Defendant.

161.    Indeed, Plaintiff Bernasconi Pelufo conducted extensive research into which car seat to purchase for her child, including looking at labels, packaging, advertisements, and online reviews. Based on Nuna's misleading statements, she believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Plaintiff Bernasconi Pelufo to believe the RAVA would be safe.

162.    Plaintiff Bernasconi Pelufo was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over five years after Plaintiff Bernasconi Pelufo initially purchased the RAVA.

163.    Notably, Plaintiff Bernasconi Pelufo only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen

1  to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of

2  the RAVA Car Seat.

3      164.    Had Plaintiff Bernasconi Pelufo understood the true nature of the RAVA Car Seat

4  at the time of purchase, or had Plaintiff Bernasconi Pelufo known the truth underneath Nuna's

5  misleading representations and omissions, she would not have purchased the RAVA Car Seat, or

6  else would have paid substantially less for it.

7      165.    The remedy Nuna has offered to Plaintiff Bernasconi Pelufo through the Recall—

8  that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event,

9  entirely insufficient. The purported remedy, even if actually provided, does not actually address the

10 Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations

11 and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Bernasconi Pelufo to

12 overpay in the first place. It does not make Plaintiff Bernasconi Pelufo whole. The only remedy

13 appropriate for Plaintiff Bernasconi Pelufo and for Class Members is a refund of the RAVA Car

14 Seat.

15     166.    As it stands, the purported solution to the defective Car Seats offered by Nuna to

16 Plaintiff Bernasconi Pelufo and the Class is insufficient and has diminished the value of the RAVA

17 Car Seat.

18     **G.    Plaintiff Eleisha Sadasey**

19     167.    Plaintiff Eleisha Sadasey resides in the State of California in Orange County.

20     168.    Plaintiff Sadasey purchased her RAVA Car Seat from a brick-and-mortar store in

21 California, likely a Nordstrom, for approximately six hundred dollars ($600.00) in 2021. She was

22 willing to pay this high price only because of the safety representations made by Defendant.

23     169.    Indeed, Plaintiff Sadasey conducted extensive research into which car seat to

24 purchase for her child, including looking at labels, packaging, advertisements, and online reviews.

25 Based on Nuna's misleading statements, she believed that the RAVA was the safest car seat on the

26 market. Moreover, the high price of the RAVA caused Plaintiff Sadasey to believe the RAVA

27 would be safe.

28

1    170.    Plaintiff Sadasey was not aware of the Defect in the RAVA Car Seat, or the truth

2    (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published

3    the Recall Notice, over two years after Plaintiff Sadasey initially purchased the RAVA.

4    171.    However, Plaintiff Sadasey was made aware of how misleading Defendant's

5    promises were shortly after purchasing her RAVA Car Seat. Sometime in 2023, Plaintiff Sadasey

6    was driving alone with her then-two-year-old son, when she realized, to her horror, that her son

7    was out of his car seat and crawling around in the well of the backseat. She quickly pulled over and

8    got him fastened back into his car seat.

9    172.    After that incident, Plaintiff Sadasey was concerned about ensuring her son was

10   buckled in securely, thinking it may have been her error that endangered him. That was not the

11   case. Just a day later, Plaintiff Sadasey was again driving alone with her son, and again realized

12   that he had gotten out of his car seat and into the well of the backseat.

13   173.    Notably, Plaintiff Sadasey only happened to learn of the Recall. She never received

14   formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear

15   of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA

16   Car Seat.

17   174.    Following her discovery of the Recall, Plaintiff Sadasey completed the online form

18   for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and

19   care instructions.

20   175.    Since receiving notice of the Recall, Plaintiff Sadasey has put two and two together:

21   her expensive RAVA Car Seat suffers from an extremely dangerous defect.

22   176.    Due to the high price of the RAVA Car Seat, Plaintiff Sadasey spent months afraid

23   that her child would be harmed in an accident, as she was unable to afford to replace the

24   expensive RAVA.

25   177.    Had Plaintiff Sadasey understood the true nature of the RAVA Car Seat at the time

26   of purchase, or had Plaintiff Sadasey known the truth underneath Nuna's misleading

27   representations and omissions, she would not have purchased the RAVA Car Seat, or else would

28   have paid substantially less for it.

178.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Sadasey to overpay in the first place. It does not make Plaintiff Sadasey whole. The only remedy appropriate for Plaintiff Sadasey and for Class Members is a refund of the RAVA Car Seat.

179.    As it stands, the purported solution to the defective Car Seats offered by Nuna to Plaintiff Sadasey and the Class is insufficient and has diminished the value of the RAVA Car Seats.

**H.    Plaintiff Behnaz Faridian Kade**

180.    Plaintiff Behnaz Faridian Kade resides in the State of California in Los Angeles County.

181.    In approximately 2021, Plaintiff Faridian Kade purchased both a Nuna RAVA Car Seat from Pottery Barn in California for approximately $550.00 and a different Nuna car seat: the PIPA. However, her child soon outgrew the PIPA car seat and Plaintiff Faridian Kade decided to replace it with an additional Nuna RAVA Car Seat from Bloomingdales for $547.45 in August of 2022.

182.    Plaintiff Faridian Kade was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over three years after Plaintiff Faridian Kade initially purchased the RAVA.

183.    Like her fellow Plaintiffs, Plaintiff Faridian Kade did extensive research into which car seat to purchase for her child, including looking at labels, packaging, advertisements, and online reviews before choosing the RAVA Car Seat. Plaintiff Faridian Kade chose the RAVA in part because she believed, based on Nuna's misleading statements, that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Plaintiff Faridian Kade to believe the RAVA would be safe

184.    Plaintiff Faridian Kade soon realized that the RAVA Car Seat was not, in fact, safe.

Almost immediately after purchasing her RAVA Car Seat, Plaintiff Faridian Kade began to notice the straps were coming loose. Using a handheld vacuum she purchased specifically for this purpose, Plaintiff Faridian Kade would vacuum out the coverless front harness adjuster button and re-tighten the straps until they held—a time-consuming and stressful endeavor that left her concerned about the safety of her child.

185.   Notably, Plaintiff Faridian Kade only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

186.   Following her discovery of the Recall, Plaintiff Faridian Kade completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

187.   Since receiving notice of the Recall, Plaintiff Faridian Kade has put two and two together: her expensive RAVA Car Seat suffers from an extremely dangerous defect.

188.   Plaintiff Faridian Kade, fearing for the safety of her child, replaced her RAVA Car Seats at a cost of approximately $120 to her. The replacement car seats lacked the advertised safety and cleanliness features that drew Plaintiff Faridian Kade to the RAVA—features for which she paid a price premium of over five hundred dollars ($500.00) per RAVA Car Seat.

189.   When Plaintiff Faridian Kade purchased the replacement car seats, she chose a budget option because she assumed that Nuna would promptly provide her with a Cleaning Kit, enabling her to safely use her RAVA Car Seats once again.

190.   However, Nuna did not provide a Cleaning Kit to Plaintiff Faridian Kade for over two months, and then finally provided her with a single Cleaning Kit, rather than the two she required. Plaintiff Faridian Kade was forced to wait even longer for the second Cleaning Kit, and when it arrived it did not match the purposefully-selected color of her remaining RAVA Car Seat.

191.   In fact, on or about February 7, 2025, a Nuna employee informed Plaintiff Faridian Kade over the phone that Nuna had not mailed out a single Cleaning Kit to any purchaser of a RAVA Car Seat as of that date.

192.    In other words, two months after Nuna announced the Recall of the RAVA Car Seat, Nuna has not provided consumers any remedy at all for the dangerous—potentially fatal—Defect, leaving parents with a $550.00 car seat they could not safely use.

193.    Had Plaintiff Faridian Kade understood the true nature of the RAVA Car Seat at the time of purchase, or had Plaintiff Faridian Kade known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

194.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Faridian Kade to overpay in the first place. It does not make Plaintiff Kade whole. The only remedy appropriate for Plaintiff Faridian Kade and for Class Members is a refund of the RAVA Car Seat.

195.    As it stands, the purported solution to the defective Car Seats offered by Nuna to Plaintiff Faridian Kade and the Class is insufficient and has diminished the value of the RAVA Car Seats.

**I.    Continuing Act Tolling**

196.    Nuna continued to market and sell the dangerously defective RAVA Car Seat long after consumers began complaining that it was unsafe. Despite evidence to the contrary, Nuna continuously represented that the RAVA is safe and suitable for securing children and infants while driving.

197.    By continuously repeating false representations and failing to disclose that the RAVA contains a uniform and dangerous Defect, Nuna engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Nuna might seek to apply.

198.    Specifically, as the creator, designer, and manufacturer of the RAVA, Nuna has had actual knowledge likely since at least 2016, and certainly since at least 2021 when consumers began

complaining of the Defect online and directly to Nuna, that the RAVA is defectively designed and exposes infants and children to risk of injury and even death.

199.    Moreover, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button—which Nuna presumably began designing months if not years before it began manufacturing it. This further reveals Nuna's ongoing knowledge of the Defect, and ongoing failure to disclose the Defect to the public.

200.    Nonetheless, Nuna issued the Recall only in December of 2024—*four years* after Nuna first became aware of the Defect via customer complaints, and fourteen months after it began manufacturing the re-designed, (presumably) Defect-free RAVA.

201.    Thus, at all relevant times, Nuna indisputably possessed continuous knowledge of the material dangers posed by the RAVA, and yet Nuna knowingly continued to allow the sale of the RAVA. Plaintiffs' and Class Members' claims are not time-barred.

202.    Moreover, even after the Recall was initiated, there is no evidence that Nuna's Recall Notice has reached all owners of the RAVA Car Seats.

203.    Plaintiffs and Class Members could not have reasonably discovered and could not have known of these facts, which Nuna publicly disclosed for the first time mere months ago. Indeed, until it issued the Recall, Nuna knowingly failed to disclose material information regarding the existence of the Defect in all RAVAs manufactured before October 25, 2023. Accordingly, no potentially relevant statute of limitations should apply.

**J.    Fraudulent Concealment Tolling**

204.    Any applicable statutes of limitations have been tolled or have not run for the additional reason that Nuna knowingly, actively, and fraudulently concealed the facts as alleged herein. Nuna had actual and constructive knowledge of the potentially fatal Defect in the RAVA Car Seat for, *at minimum*, fourteen months before announcing the Recall.

205.    Plaintiffs and Class Members have been kept in ignorance of information essential to the pursuit of their claims, and the safety of their children, without any fault or lack of diligence on their part. Nuna's concealment of the Defect in the RAVA before, during, and after the purchases

of Plaintiffs' RAVA Car Seats prevented them from being on notice of any facts or information that would have required them to inquire whether Nuna fulfilled its duties under the law and, if not, whether Plaintiffs and Class Members had legal recourse.

206.  At all times prior to, during, and since the purchase of Plaintiffs' and Class Members' RAVA Car Seats, Nuna has been in a superior position of knowledge about the Defect and under a continuing duty to disclose the true facts regarding the safety Defect in the RAVA. Plaintiffs and Class Members justifiably relied on Nuna to disclose the true nature of the Products they purchased and/or owned because that inherent Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts. Because of Nuna's willful concealment of material information concerning the RAVA over a period of years, Nuna is estopped from relying on any statute of limitations defense against the claims of Plaintiffs and Class Members.

**K.    Discovery Rule Tolling**

207.  Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their RAVA Car Seats were defective within the time period of any applicable statutes of limitation because, as described herein, only Nuna had that information and was, at all relevant times, in a superior position of knowledge about the Defect, and Nuna was concealing that information from the public.

208.  Indeed, Plaintiffs first became aware of the RAVA's dangerous Defect and associated safety risks when they learned of the Defect's existence through Nuna's Recall (for which many Class Members have still yet to formal notice).

209.  Plaintiffs and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Nuna was designing, manufacturing, and marketing the RAVA Car Seat despite being aware it contained a dangerous Defect.

210.  As such, no potentially relevant statute of limitations should be applied.

**L.    Estoppel**

211.  Nuna was under a continuous duty to disclose to Plaintiffs and other Class Members the fact they knew about the dangerously defective nature of the RAVA Car Seats.

212.    Nuna knowingly, affirmatively, and actively concealed the true nature, quality, and character of the RAVA Car Seats from Plaintiffs and Class Members.

213.    Thus, Nuna is estopped from relying on any statute of limitations defense against the claims of Plaintiffs and Class Members.

## VII.    CLASS ACTION ALLEGATIONS

214.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and others similarly situated.

215.    Plaintiffs seek to represent a Nationwide class, defined as:

> All persons in the United States who purchased (not for resale) a RAVA Car Seat (the "Class").

216.    Additionally, or in the alternative, Plaintiffs also seek to represent a Subclass defined as:

> All persons in California who purchased (not for resale) a RAVA Car Seat (the "California Subclass").

217.    Plaintiffs reserve the right to amend the Class definitions as necessary, including but not limited to include additional products made by Nuna with the same Defect and/or other products made by Nuna with the common Defect but bearing different brand names.

218.    **Numerosity:** At this time, Plaintiffs do not know the exact number of members of the Class or California Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the RAVA Car Seats, Plaintiffs believe that members of the Class and Subclass are so numerous that joinder of all members is impracticable.

219.    **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class Members include, but are not necessarily limited to:

- Whether Defendant's conduct was unfair, deceptive, and/or misleading under applicable law;

- Whether Defendant has been unjustly enriched as a result of the unlawful,

fraudulent, and unfair conduct alleged in this First Amended Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class and Subclass;

- Whether Defendant breached its express and/or implied warranties to Plaintiffs and the Class and Subclass;

- Whether Plaintiffs and the Class and Subclass have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

- Whether Defendant made negligent representations with regards to the RAVA Car Seats; and

- Whether Defendant has violated the state consumer protection laws alleged in this complaint.

220.    **Typicality:** Plaintiffs' claims are typical of those of the Class and Subclass because Plaintiffs, like all members of the Class and Subclass, purchased and used, in a typical consumer setting, Nuna's RAVA Car Seat and Plaintiffs sustained damages from Nuna's wrongful conduct.

221.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class and Subclass and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiffs have no interests which conflict with those of the Class or the Subclass.

222.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

223.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate equitable relief with respect to the Class and Subclass as a whole.

224.    The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and Subclass even where certain Class Members are not parties to such actions.

1

**VIII.  CLAIMS FOR RELIEF**

2

<u>COUNT ONE</u>
**Breach of the Implied Warranties**
**(On behalf of Plaintiffs and the California Subclass)**

3

4

225.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

5

complaint as though fully set forth herein.

6

226.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

7

227.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller,

8

impliedly warranted that the RAVA Car Seats are merchantable as a convertible car seat for infants

9

and children and are fit for the ordinary purpose for which they were sold.

10

228.    Defendant breached the warranties implied in the contract for the sale of the RAVA

11

Car Seat because it could not "pass without objection in the trade under the contract description,"

12

the goods were not "of fair average quality within the description," the goods were not "adequately

13

contained, packaged, and labeled as the agreement may require," and the goods did not "conform

14

to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing

15

requirements for merchantability). As a result, Plaintiffs and Class Members did not receive the

16

goods as impliedly warranted by Defendant to be merchantable.

17

229.    Plaintiffs and Class Members purchased the RAVA Car Seats relying on

18

Defendant's skill and judgment in properly packaging and labeling the RAVA Car Seats.

19

230.    The RAVA Car Seats were not altered by Plaintiffs or Class Members.

20

231.    The RAVA Car Seats were defective when they left the exclusive control

21

of Defendant.

22

232.    Defendant knew that the RAVA Car Seats would be purchased and used without

23

additional testing by Plaintiffs and Class Members.

24

233.    The RAVA Car Seats were defectively designed and unfit for their intended purpose

25

and Plaintiffs and Class Members did not receive the goods as warranted.

26

234.    Any attempt by Defendant to disclaim or limit its implied warranties is

27

unconscionable and unenforceable under the circumstances here. Defendant knew or should have

28

known that the RAVA Car Seats did not and would not have the represented capabilities; Defendant

1    had unequal bargaining power and misrepresented the reliability, quality, performance, and

2    qualities of the RAVA Car Seats; and any limited remedies unreasonably favor Defendant and fail

3    Plaintiffs' and Class Members' reasonable expectations concerning product performance.

4         235.    As a direct and proximate cause of Defendant's breach of the implied warranty,

5    Plaintiffs and Class Members have been injured and harmed because they would not have

6    purchased the RAVA Car Seats if they knew the truth about the RAVAs, and because the car seats

7    they received were worth substantially less than the RAVA Car Seats they were promised and

8    expected.

9         236.    On behalf of themselves and other members of the Subclass, Plaintiffs seek

10   damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

11   **COUNT TWO**
     **Breach of Express Warranty**

12   **(On behalf of Plaintiffs and the California Subclass)**

13        237.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

14   complaint as though fully set forth herein.

15        238.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

16        239.    Defendant was at all relevant times a merchant involved in the manufacturing,

17   distributing, warranting, and/or selling of the RAVA Car Seat.

18        240.    Plaintiff and the Class formed contracts with Defendant at the time they purchased

19   their RAVA Car Seats. The terms of that contract include that the Nuna would repair or replace a

20   product that shows a "defect in materials or workmanship."[69] This warranty became part of the

21   basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the

22   Class, on the one hand, and Defendant, on the other.

23        241.    Defendant breached the terms of these contracts, including the express warranties,

24   by failing to provide a RAVA Car Seat that provided the benefits advertised by Defendant—

25   namely, a car seat that is safe for transporting infants and toddlers.

26        242.    Any attempt by Defendant to disclaim or limit its express warranties is

27   unconscionable and unenforceable under the circumstances here. Defendant knew or should have

28

---

[69] https://nunababy.com/en/warranty, *last accessed* June 25, 2025.

1  known that the RAVA Car Seats did not and would not have the represented capabilities; Defendant

2  had unequal bargaining power and misrepresented the reliability, quality, performance, and

3  qualities of the RAVA Car Seats; and any limited remedies unreasonably favor Defendant and fail

4  Plaintiff's reasonable expectations concerning product performance.

5  243.  Any purported warranty limitations excluding or limiting (a) labor and costs of labor

6  and (b) incidental and consequential damages, are also procedurally and substantively

7  unconscionable and thus fail under UCC § 2-302 and relevant state law.

8  244.  Plaintiff and the Class members have complied with all obligations under the

9  warranty, or otherwise have been excused from performance of said obligations as a result of

10  Nuna's conduct described herein. Plaintiff and the Class members were not required to notify Nuna

11  of the breach because it would have been futile.

12  245.  As a direct and proximate cause of Defendant's breach of the express warranty,

13  Plaintiff and Class Members have been injured and harmed because they would not have purchased

14  the RAVA Car Seats if they knew the truth about the RAVAs and that the RAVAs they received

15  were worth substantially less than the RAVA Car Seats they were promised and expected.

16  246.  On behalf of themselves and other members of the class, Plaintiff seeks damages.

**COUNT THREE**
**Breach of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.***
**(On behalf of Plaintiffs and the Nationwide Class and California Subclass)**

20  247.  Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

21  complaint as though fully set forth herein.

22  248.  Plaintiffs bring this claim on behalf of themselves and the Nationwide Class and the

23  California Subclass.

24  249.  Plaintiffs and the other class members are "consumers" within the meaning of the

25  Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

26  250.  Defendant is a "supplier" and "warrantor" within the meaning of

27  15 U.S.C. § 2301(4)-(5).

28  251.  The RAVA Car Seats are "consumer products" within the meaning of § 2301(1).

252.    Defendant's express warranty is a "written warranty" within the meaning of § 2301(6).

253.    As detailed above, Defendant breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Defendant made about the RAVA Car Seats, by failing to truthfully advertise and warrant that the RAVA Car Seats were safe, free of defect, and fit for their intended purpose. The Defect in the RAVA Car Seats existed at the time the RAVA Car Seats left Defendant's control and Defendant failed to disclose the existence of the Defect either prior to, at the point of, or following sale of the RAVAs, including when customers contacted Defendant to inquire about the RAVA's failures. Defendant's conduct has rendered the warranties null and caused them to fail of their essential purpose.

254.    Defendant's breach of warranty deprived Plaintiffs and Class Members of the benefit of their bargain.

255.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

256.    Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiffs, on behalf of themselves and Class Members, sent notice to Defendant on January 29, 2025, to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

257.    In addition, resorting to any sort of informal dispute settlement procedure or affording Defendant another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Defendant has repeatedly mispresented the true quality and nature of the RAVA Car Seat, and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiffs submit to any informal dispute settlement procedure or otherwise afford Defendant reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

258.    As a direct and proximate result of Defendant's warranty breaches, Plaintiffs and Class Members sustained damages and other losses to be determined at trial. Defendant's conduct

1    damaged Plaintiffs and Class Members, who are entitled to recover damages, specific performance,

2    costs, attorneys' fees, and other appropriate relief.

3    **COUNT FOUR**
     **Violation of the Song-Berly Consumer Warranty Act,**
4    **Cal. Civ. Code § 1790,** *et seq.*
     **(On behalf of Plaintiffs and the California Subclass)**
5

6    259.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

7    complaint as though fully set forth herein

8    260.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

9    261.    Plaintiffs and Class Members are "buyers" as that term is defined in California Civil

10   Code § 1791(b).

11   262.    The Car Seats are "consumer goods" as that term is defined in California Civil Code

12   § 1791(a).

13   263.    At all relevant times, Defendant was the "manufacturer, distributor, warrantor

14   and/or seller" of the RAVA Car Seats within the meaning of California Civil Code § 1791.

15   264.    Defendant provided Plaintiffs and Class Members with implied warranties under

16   California Civil Code § 1791.1, and with express warranties under California Civil Code § 1791.2.

17   265.    Defendant violated the Song-Berly Consumer Warranty Act by, among other

18   things, violating the implied warranties of merchantability and fitness by knowingly selling

19   defective RAVA Car Seats that are unsuitable for their expected use and were therefore not fit for

20   the ordinary purpose for which the goods were intended to be sold.

21   266.    Plaintiffs and Class Members have complied with all obligations under the warranty

22   or otherwise have been excused from performance of said obligations as a result of Defendant's

23   conduct described herein.

24   267.    Plaintiffs, on behalf of themselves and Class Members, seek restitution and damages

25   as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs.

26   **COUNT FIVE**
     **Fraud**
27   **(On behalf of Plaintiffs and the California Subclass)**

28   268.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

1    complaint as though fully set forth herein.

2    269.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

3    270.    Defendant knew or should have known that the RAVA Car Seats contain the

4    dangerous Defect rendering the RAVA Car Seat unsafe and unsuitable for children.

5    271.    Defendant provided Plaintiffs and Class Members with false or misleading material

6    information and failed to disclose material facts about the true nature of the RAVA Car Seat,

7    including but not limited to the fact the RAVA Car Seat contains the dangerous Defect rendering

8    the Product unsafe and unsuitable to serve its intended purpose as a child safety product, contrary

9    to Defendant's misrepresentations.

10    272.    Defendant promised consumers that the RAVA Car Seat was fit for its intended

11    purpose and that it was free of defects and that it was safe and suitable for infants and children for

12    restraint in a moving vehicle through its safety representations and omissions.

13    273.    Defendant had exclusive knowledge of the RAVA Car Seat's Defect at the time of

14    sale and at all other relevant times. Neither Plaintiffs nor Class Members, in the exercise of

15    reasonable diligence, could have independently discovered the true nature of the RAVA Car Seat

16    prior to purchase.

17    274.    Defendant had the capacity to, and did, deceive Plaintiffs and Class Members into

18    believing they were purchasing a car seat that was safe and suitable for children.

19    275.    Defendant undertook active and ongoing steps to conceal the presence of the Defect

20    in the RAVA Car Seat. Plaintiffs are not aware of anything in Defendant's advertising, publicity,

21    or marketing materials that disclosed the truth about the RAVA Car Seat, despite Defendant's

22    awareness of the Defect and the serious safety risks associated with the Defect.

23    276.    The facts concealed and/or not disclosed by Defendant to Plaintiffs and Class

24    Members are material facts in that a reasonable person would have considered fundamental in

25    deciding whether to purchase the RAVA Car Seat, or else pay substantially less for the RAVA Car

26    Seat.

27    277.    Defendant intentionally concealed and/or failed to disclose material facts for the

28    purpose of inducing Plaintiffs and Class Members to act purchase the RAVA Car Seat.

278.    Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchases of the RAVA Car Seat.

279.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the RAVA Car Seat.

280.    Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial as a result of Defendant's fraudulent concealment and nondisclosure because they would not have purchased the RAVA Car Seat, or would not have purchased the RAVA Car Seat for the price they did, if the true facts concerning the RAVA Car Seat had been known.

281.    Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Defendant's actions described herein.

**COUNT SIX**
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the California Subclass)**

282.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

283.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

284.    As discussed above, Defendant represented that the RAVA Car Seats are safe for their principal use of safely transporting children. However, Defendant failed to disclose that the RAVA Car Seats are not safe and use of the RAVA Car Seats could cause severe injury or even death to an infant or child while using the RAVA.

285.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

286.    At an absolute minimum, Defendant negligently misrepresented material facts about the safety of the RAVA Car Seats.

287.    The negligent misrepresentations made by Defendant, upon which plaintiffs and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class to purchase the RAVA Car Seats.

288.    The negligent actions of Defendant caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

**COUNT SEVEN**
**Violations of the California Consumers Legal Remedies Act,**
**Cal. Civ. Code §§1750, *et seq.***
**(On behalf of Plaintiffs and the California Subclass)**

289.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

290.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

291.    Plaintiffs and the Class Members are "consumers" that purchased "goods" in the form of the RAVA Car Seat within the meaning of California Civil Code § 1761. The application of the California Consumer Legal Remedies Act ("CLRA") to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of California.

292.    Defendant is a "person" within the meaning of California Civil Code § 1761(c).

293.    Defendant violated California Consumer Legal Remedies Act, Civil Code § 1770(a)(5), *inter alia*, by representing that the RAVA Car Seat has characteristics, uses or benefits, which it does not have, and/or Civil Code § 1770(a)(7) by representing that the RAVA Car Seat is of a particular standard, quality, or grade, even though it is of another. Such conduct includes, among other things:

a.    Designing, manufacturing, marketing, and selling the RAVA Car Seat consumers that contained material, fundamental defects without disclosing such defects to consumers;

b.    Marketing and selling the RAVA Car Seat when it was not merchantable for the purpose of providing safe transportation for infants and small children;

c.    Marketing and selling the RAVA Car Seat while concealing material facts from Plaintiffs and Class Members regarding the defects in the RAVA Car Seats that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiffs and Class Members who purchased the RAVAs to provide safe and reliable

1    transportation for their infants and small children;

2              d.    Concealing from Class Members that Defendant was in breach and intended

3    to breach its warranty obligations as set forth in this complaint.

4    294.    Pursuant to California Civil Code § 1782, Plaintiff Khanna sent a CLRA notice of

5    violation and demand letter to Defendant on February 6, 2025. Plaintiffs Chapman, Barrales, Larry,

6    and Smith sent a CLRA notice of violation and demand letter earlier to Defendant on January 29,

7    2025. Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade sent a CLRA notice of violation

8    and demand letter to Defendant on March 31, 2025. Plaintiffs have received no response.

9    295.    Pursuant to California Civil Code § 1780, Plaintiffs, on behalf of themselves and

10   Class Members, seek an order enjoining Defendant from the unlawful practices described herein

11   and a declaration that Defendant's conduct violated the CLRA.

12   296.    Pursuant to California Civil Code § 1782(d), Plaintiffs, on behalf of themselves and

13   Class Members, also seek equitable relief as well as monetary relief from Defendant to provide

14   actual, compensatory, statutory, punitive damages, and attorneys' fees and costs.

15
16
17

**COUNT EIGHT**
**Unlawful, Unfair, and Fraudulent Business Acts and Practices**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On behalf of Plaintiffs and the California Subclass)**

18   297.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

19   complaint as though fully set forth herein.

20   298.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

21   299.    Defendant's acts and practices constitute "unfair competition," "unlawful, unfair,

22   and fraudulent business practices" and "unfair, deceptive, untrue, or misleading advertising" in

23   violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. The

24   application of the UCL to the putative Class in this action is appropriate because Defendant's

25   wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of

26   defective, unsafe RAVA Car Seats in the state of California.

27   300.    Defendant engaged in fraudulent, unlawful and unfair business practices in violation

28   of the UCL by, among other things:

a.      Designing, manufacturing, marketing and selling the RAVA Car Seat to consumers when it contained material, fundamental defects without disclosing such defects to consumers;

b.      Marketing and selling RAVA Car Seats that were not merchantable for the purpose of providing safe transportation for infants and small children;

c.      Marketing and selling RAVA Car Seats while concealing material facts from Plaintiff and Class Members regarding the defects in the RAVAs that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiff and Class Members who purchased the RAVA Car Seats to provide safe transportation for infants and small children;

d.      Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this First Amended Complaint;

e.      Violating additional laws and regulations as set forth herein; and

f.      Breaching its express and implied warranties with Class Members as set forth herein.

301.    Defendant also violated the UCL because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and Class Members and because Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class Members.

302.    Plaintiffs and Class Members reasonably and justifiably relied on Defendant's conduct alleged herein. Had Defendant disclosed the existence of the Defect in the RAVA Car Seats in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the RAVA Car Seats and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the RAVA Car Seats, they either would not have purchased the RAVA Car Seats, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their RAVA Car Seats and did not receive the benefit of their bargain.

303.    Had Defendant disclosed the existence of the Defect in the RAVA Car Seats in its

1   advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of

2   the RAVA Car Seats and would have acted differently. Had Plaintiffs and Class Members known

3   about the true state of facts of the RAVA Car Seats, they either would not have purchased the

4   RAVA Car Seats, or else would have paid substantially less for them. Accordingly, Plaintiffs and

5   Class Members overpaid for their RAVA Car Seats and did not receive the benefit of their bargain.

6       304.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on behalf of themselves and

7   Class Members, have suffered injury in the form of lost money and property, including but not

8   limited to a diminishment in the value and useful life of the RAVA Car Seat, as a direct and

9   proximate result of Defendant's fraudulent, unlawful, and unfair business practices are therefore

10  entitled to equitable relief, including restitution, disgorgement of profits Defendant obtained from

11  its fraudulent, unlawful, and unfair business practices, and an order enjoining Defendant from the

12  unlawful practices described herein, as well actual damages, punitive damages, and attorneys' fees

13  and costs.

14  **COUNT NINE**
**Violation of California False Advertising Law,**
15  **Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiffs and California Subclass)**
16

17      305.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

18  complaint as though fully set forth herein.

19      306.    Plaintiffs bring this claim on behalf of themselves and the California Subclass.

20      307.    Each of the above deceptive and misleading advertising practices of Defendant set

21  forth above constitutes untrue or misleading advertising under the California False Advertising Law

22  ("FAL"), California Business & Professions Code § 17500, *et seq.*

23      308.    At all material times, Defendant's statements and marketing and advertising

24  materials misrepresented or omitted material facts regarding the safety of Defendant's RAVA Car

25  Seat as set forth in this Complaint. Defendant is disseminating statements, marketing and

26  advertising concerning the safety of its RAVA Car Seat that are unfair, untrue, deceptive, or

27  misleading within the meaning of California Business & Professions Code § 17500, *et seq.*

28      309.    Defendant's acts and practices have deceived and/or are likely to continue to deceive

Plaintiffs, members of the California Subclass, and the public. As set forth above, Defendant's safety and quality claims are deceptive and misleading to reasonable consumers because the coverless front harness adjuster button on the RAVA Car Seat is defective, making the RAVA extremely hazardous as it fails to meet average standards of safety. Moreover, Defendant intentionally does not disclose any of this information to consumers and instead represents that the RAVA Car Seat is beyond average levels of safety.

310.   Defendant marketed, advertised, labeled, and represented the RAVA Car Seats as merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers.

311.   More specifically, Defendant misrepresented the true nature, quality, and character of the RAVA Car Seats by failing to disclose the existence of the Defect and by misrepresenting that the RAVA Car Seats were fit for their intended purpose of providing safe restraint to infants and children in a vehicle.

312.   To the contrary, the RAVA Car Seats contained the dangerous Defect at the time of purchase and no reasonable consumer would believe that, in light of the dangerous Defect, that the RAVA Car Seats were merchantable or fit for the ordinary purpose for which they were used and sold or were not otherwise injurious to consumers, where Plaintiff and Class Members could not immediately identify the Defect.

313.   At the time it made the misrepresentations, Defendant either knew or should have known about the existence of the Defect in the RAVA Car Seats, which rendered them unsafe. Defendant concealed, omitted, and failed to disclose this information from Plaintiffs and Class Members.

314.   Defendant has violated the FAL because the misrepresentations and omissions regarding the RAVA Car Seats as set forth herein were material and likely to deceive a reasonable consumer.

315.   The misrepresented facts concerning the RAVA Car Seats were also material because they concern central functions of the RAVA Car Seats—namely, that the RAVA Car Seats are safe, free of defect, and capable of providing safe restraint to infants and children in a vehicle,

1    including during a crash.

2        316.    Plaintiffs and Class Members purchased the RAVA Car Seats in reliance on the

3    statements made in Defendant's advertising and marketing materials and Defendant's omissions

4    and concealment of material facts regarding the quality and use of the RAVA Car Seats.

5        317.    Had Defendant disclosed the existence of the Defect in the RAVA Car Seats in its

6    advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of

7    the RAVA Car Seats and would have acted differently. Had Plaintiffs and Class Members known

8    about the true state of facts of the RAVA Car Seats, they either would not have purchased the

9    RAVA Car Seats, or else would have paid substantially less for them. Accordingly, Plaintiffs and

10   Class Members overpaid for their RAVA Car Seats and did not receive the benefit of their bargain.

11       318.    As a direct and proximate result of Defendant's conduct as set forth herein,

12   Defendant has obtained ill-gotten gains and/or profits, including but not limited to money from

13   Plaintiffs and Class Members who paid for the RAVA Car Seats, which contained the Defect.

14       319.    Plaintiffs, on behalf of themselves and Class Members, have suffered injury in the

15   form of lost money and property, including but not limited to a diminishment in the value and useful

16   life of the RAVA Car Seat, as a direct and proximate result of Defendant's fraudulent, unlawful,

17   and unfair business practices are therefore entitled to equitable relief, including restitution,

18   disgorgement of profits Defendant obtained from its fraudulent, unlawful, and unfair business

19   practices, and an order enjoining Defendant from the unlawful practices described herein, as well

20   as any other relief allowed under California law.

21   **COUNT TEN**
     **Unjust Enrichment**
22   **(On behalf of Plaintiffs and the Nationwide Class and California Subclass)**

23       320.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this

24   complaint as though fully set forth herein.

25       321.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class and the

26   California Subclass.

27       322.    Plaintiffs and Class Members conferred benefits on Defendant by purchasing the

28   RAVA Car Seat.

1    323.    Defendant has knowledge that such benefits were conferred upon it.

2    324.    Defendant's unfair and unlawful conduct includes, among other things, designing,

3    manufacturing, and selling the Products with the dangerous Defect as well as making false and

4    misleading representations about the nature, quality and character of the Products as being safe and

5    fit for their intended purpose of providing safe restraint to infants and children in a vehicle. Contrary

6    to these representations, the Products pose an unreasonable risk of serious severe or fatal injury in

7    the event of a crash.

8    325.    Defendant omitted, concealed, and failed to disclose to consumers, including

9    Plaintiffs and Class Members, that the Products pose serious safety risks to children, including that

10   the Products are inherently defective; unreasonably dangerous; not fit to be used for their intended

11   purpose; and contain a uniform Defect that renders the Products unsafe and unsuitable for children.

12   Rather than disclose this information, Defendant marketed the Products as safe and fit for their

13   intended purpose.

14   326.    Defendant failed to adequately warn Plaintiffs and Class Members that the Products

15   contained the Defect, were not a safe or suitable car seat for children, and could cause severe or

16   fatal injury in the event of a crash.

17   327.    Because of its wrongful acts and misrepresentations and omissions, Defendant

18   charged a higher price for the Products than the Products' true value. Plaintiffs and Class Members

19   purchased the Products without knowing the true nature, quality, and character of the Products,

20   which Defendant concealed and misrepresented. Accordingly, Defendant obtained money which

21   rightfully belongs to Plaintiffs and Class Members.

22   328.    Defendant's acts and business practices offend the established public policy of

23   California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and

24   Class Members were harmed at the time of purchase, Defendant was unjustly enriched by their

25   misrepresentations, false statements and/or material omissions.

26   329.    Plaintiff and Class Members were harmed when they purchased the Products as a

27   result of Defendant's misrepresentations, false statements, and/or material omissions, as set forth

28   herein. Plaintiffs and Class Members have suffered an injury in fact, including the losses of money

or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

330.  Defendant's conduct allows them to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience. Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

331.  Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the RAVA Car Seat. Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that the RAVA Car Seat are safe for its principal use of safely transporting children when it is not.

332.  Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment individually, and on behalf of themselves, and members of the Class, as follows:

A.  For an order certifying the Class and Subclass under Federal Rul of Civil Procedure 23 and naming Plaintiffs as representatives of the Class and Subclass, and Plaintiffs' attorneys as Class Counsel;

B.  For an order declaring that Nuna's conduct violates the statutes referenced herein;

C.  For an order finding in favor of Plaintiffs, the Class, and/or the Subclass on all counts asserted herein;

D.  Award actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.  Award restitution and order disgorgement of all profits and unjust enrichment that Nuna obtained from Plaintiffs and Class Members as a result of Nuna's unlawful, unfair, and fraudulent business practices;

F.  Grant injunctive relief as permitted by law or equity, including enjoining Nuna from continuing the unlawful practices and illegal acts detailed herein;

G.  Award pre- and post-judgment interest on all amounts awarded;

H.  Award Plaintiffs, the Class, and Subclass their reasonable attorneys' fees and expense and cost; and

I.  Order such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

DATED: August 7, 2025

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: /s/ *William A. Ladnier*
     William A. Ladnier

Adam A. Edwards (*pro hac vice*)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email:  *aedwards@milberg.com*
        *wladnier@milberg.com*
        *gwhitener@milberg.com*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Alex R. Straus (SBN 321366)
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel: (866) 252-0878
Fax: (865) 522-0049
astraus@milberg.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice*)
Daniel Tomascik (*pro hac vice*)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462

DATED: August 7, 2025

**KAPLAN FOX & KILSHEIMER LLP**

By: /s/ *Matthew B. George*
     Matthew B. George

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*
        *colivares@kaplanfox.com*

*Attorneys for Plaintiffs Mariana Bernasconi Pelufo, Eleisha Sadasey, Behnaz Faridian Kade, and the Proposed Class*

*Attorneys for Plaintiffs Prashmi Khanna,*
*Fabiola Chapman, Tina Marie Barrales,*
*Tiffany Larry, Alyna Smith and the Proposed*
*Class*

CONSOLIDATED CLASS ACTION COMPLAINT