**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: *aedwards@milberg.com*
        *wladnier@milberg.com*
        *gwhitener@milberg.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
A.J. de Bartolomeo (SBN 136502)
Blair E. Reed (SBN 316791)
Clarissa Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *ajd@kaplanfox.com*
        *breed@kaplanfox.com*
        *colivares@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NUNA BABY ESSENTIALS RAVA LITIGATION | Case No. 3:25-cv-01284-AMO |
| | <u>Class Action</u> |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Judge:      Hon. Araceli Martínez-Olguín |
| | Courtroom:  10, 19th Floor |
| | Date:       January 8, 2026 |
| | Time:       2:00 p.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL ALLEGATIONS ............................................................................. 2

    A.    The RAVA .................................................................................................. 2

    B.    The Recall ................................................................................................... 4

    C.    The Re-Design ............................................................................................ 6

III.  ARGUMENT .................................................................................................... 7

    A.    Plaintiffs' Claims Are Not Prudentially Moot ......................................... 7

    B.    Plaintiffs Have Adequately Pleaded Their Fraud-Based Claims. ........ 10

        1.    Plaintiffs Adequately Allege Claims Under the CLRA, UCL, and FAL. ............................................................................................... 10

            a.    Nuna Failed to Disclose a Dangerous Defect in Violation of its Duty to Plaintiffs and Consumers. ......................................... 11

            b.    A Reasonable Consumer Would be Misled by Nuna's Statements. ..................................................................................... 13

            c.    Plaintiffs Have Satisfied the Reliance Requirement.................... 16

        2.    Nuna Had Pre-sale Notice of the Defect. ................................... 17

    C.    Plaintiffs Have Adequately Alleged Negligent Misrepresentation. ..... 19

    D.    Plaintiffs Have Adequately Pleaded Their Warranty Claims. ............ 20

        1.    Plaintiffs Allege Claims for Breach of the Implied Warranty of Merchantability ................................................................................ 20

        2.    Plaintiffs Allege Claims for Breach of Express Warranty .......... 22

        3.    Plaintiffs Have Stated a Magnuson-Moss Warranty Act Claim. ........ 23

        4.    Plaintiffs' Song-Beverly Warranty Act Claim Should Be Sustained ....... 23

    E.    Plaintiffs Have Adequately Alleged Unjust Enrichment. .................... 24

    F.    Plaintiffs Have Adequately Pleaded a Basis for Punitive Damages.................... 25

IV.   CONCLUSION ................................................................................................ 25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) .......................................................................12, 13, 14

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................................ 11

*Bacon v. Woodward*,
  104 F.4th 744 (9th Cir. 2024)............................................................................................. 25

*Baggett v. Hewlett–Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) .............................................................................. 11

*Bank of the West v. Sup. Ct.*,
  2 Cal. 4th 1254 (1992) ........................................................................................................ 10

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ........................................................................................... 15

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019)............................................................................................. 14

*Becerra v. U.S. Dep't of Interior*,
  276 F. Supp. 3d 953 (N.D. Cal. 2017) .................................................................................. 7

*Bruton v. Gerber Prod. Co.*,
  703 F. App'x 468 (9th Cir. 2017)........................................................................................ 24

*California Med. Assn. v. Aetna Health of California Inc.*,
  14 Cal. 5th 1075 (2023) ...................................................................................................... 21

*Carlin v. DairyAmerica, Inc.*,
  978 F. Supp. 2d 1103 (E.D. Cal. 2013) .............................................................................. 19

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................................................. 10

*Chapman v. Skype Inc.*,
  220 Cal.App.4th 217 (2013)................................................................................................ 14

*Cheng v. BMW of N. Am., LLC*,
  No. CV 12-09262 GAF SHX, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ................. 7, 9

*Cole v. Wright Med. Tech. Inc.*,
  No. 2:20-CV-03993-RGK-E, 2020 WL 5846460 (C.D. Cal. July 27, 2020) ................... 20

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249, *as modified* (Dec. 28, 2011) .................................................... 12, 13

*Comes v. Harbor Freight Tools USA, Inc.*,
  No. CV 20-5451-DMG (KKX), 2021 WL 6618816 (C.D. Cal. Sept. 29, 2021) ................ 8

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ................................................................ 16

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ................................................................ 15

*Desertrain v. City of Los Angeles*,
754 F.3d 1147 (9th Cir. 2014) ................................................................ 25

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.*,
744 F.3d 1124 (9th Cir. 2014) ................................................................. 7

*Ellsworth v. U.S. Bank, N.A.*,
908 F.Supp.2d 1063 (N.D. Cal. 2012) ................................................... 15

*Enomoto v. Siemens Indus., Inc.*,
No. 22-56062, 2023 WL 8908799 (9th Cir. Dec. 27, 2023) ................... 23

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ................................................................ 24

*Friche v. Hyundai Motor, Am.*,
No. SACV 21-CV-01324-CJC, 2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ......................... 9

*Goldstein v. Gen. Motors LLC*,
445 F. Supp. 3d 1000 (S.D. Cal. 2020) .................................................. 24

*Grausz v. Hershey Co.*,
691 F. Supp. 3d 1178 (S.D. Cal. 2023) .................................................. 12

*Green v. Harley-Davidson, Inc.*,
965 F.3d 767 (9th Cir. 2020) .................................................................. 25

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................. 22

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................................... 14, 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................. 12

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015) ........................................................................... 24

*Heidelberg USA, Inc. v. PM Lithographers*, Inc.,
No. CV 17-02223-AB (AJWx), 2017 WL 7201872 (C.D. Cal. Oct. 19, 2017) ...................... 20

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ................................................................ 16

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .................................................................. 11

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.,*
295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................ 16

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.,*
No. 1:19-MD-2903, 2023 WL 1822239 (W.D.N.Y. Feb. 8, 2023) ......................... 1, 7

*In re iPhone Application Litig.,*
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ......................................................................... 16

*In re MyFord Touch Consumer Litig.,*
46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................... 21, 22

*In re Nexus 6P Prods. Liab. Litig.,*
293 F. Supp. 3d 888 (N.D. Cal. 2018) ....................................................................... 21

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,*
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................................... 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.,*
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..................................................................... 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.,*
349 F. Supp. 3d 881 (N.D. Cal. 2018) ....................................................................... 16

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.,*
601 F. Supp. 3d 625 (C.D. Cal. 2022) ....................................................................... 24

*Jordan v. Sosa,*
654 F.3d 1012 (10th Cir. 2011) ................................................................................. 10

*Kasky v. Nike, Inc.,*
27 Cal. 4th 939 (2002) ............................................................................................... 14

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ................................................................................... 15

*Keegan v. Am. Honda Motor Co.,*
838 F. Supp. 2d 929 (C.D. Cal. 2012) ....................................................................... 23

*Kowalsky v. Hewlett-Packard Co.,*
No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ................... 17

*LiMandri v. Judkins,*
52 Cal. App. 4th 326 (1997) ...................................................................................... 12

*Linear Technology Corp. v. Applied Materials, Inc.,*
152 Cal. App. 4th 115 (2007) .................................................................................... 14

*Long v. Graco Children's Prods. Inc.,*
No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ........... passim

*Low v. LinkedIn Corp.,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................... 16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*MacDonald v. Ford Motor Co.*,
37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................................. 11

*Margolis v. Apple Inc.*,
No. 5:23-CV-03882-PCP, 2025 WL 999867 (N.D. Cal. Apr. 3, 2025) .................................. 16

*Miller v. Ford Motor Co.*,
620 F. Supp. 3d 1045 (E.D. Cal. 2022) ................................................................. 11

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ................................................................................ 17

*Ng v. Nissan N. Am., Inc.*,
No. 23-CV-00875-AMO, 2023 WL 9150275 (N.D. Cal. Dec. 27, 2023) .............................. 22

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ............................................................................. 23

*Oceguera v. Baby Trend, Inc.*,
No. 521CV00398JWHKKX, 2022 WL 1599869 (C.D. Cal. Jan. 14, 2022) ........................... 15

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................... 15

*Peckerar v. Gen. Motors, LLC*,
No. EDCV182153DMGSPX, 2020 WL 6115083 (C.D. Cal. Aug. 17, 2020)............................ 8

*Philips v. Ford Motor Co.*,
No. 14-CV-02989-LHK, 2016 WL 693283  (N.D. Cal. Feb. 22, 2016).......................7, 8, 9, 10

*Pirozzi v. Apple, Inc.*,
966 F. Supp. 2d 909 (N.D. Cal. 2013) ............................................................... 16, 20

*Rees v. PNC Bank, N.A.*,
308 F.R.D. 266 (N.D. Cal. 2015) ......................................................................... 25

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) ................................................................. 24

*Sater v. Chrysler Grp. LLC*,
No. EDCV1400700VAPDTBX, 2014 WL 11412674 (C.D. Cal. Oct. 7, 2014)......................... 8

*Schnall v. Hertz Corp.*,
93 Cal. Rptr. 2d 439 (Ct. App. 2000) .................................................................... 15

*Seifi v. Mercedes-Benz USA, LLC*,
No. 12-5493-TEH, 2013 WL 2285339 (N.D. Cal. May 23, 2013) ................................ 12, 13

*Sharp v. FCA US LLC*,
637 F. Supp. 3d 454 (E.D. Mich. 2022) ................................................................... 9

*Sims v. Kia Motors Am., Inc.*,
No. SACV 13-1791 AG (DFMx), 2014 WL 12558249 (C.D. Cal. Mar. 31, 2014)................. 15

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Somera v. Indymac Fed. Bank, FSB*,
  Case No. 09–1947, 2010 WL 761221 (E.D. Cal. Mar. 3, 2010) ............................................. 25

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ......................................................................... 15

*Sugasawara v. Ford Motor Co* ,
  No. 18-cv-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019).................................... 9

*Tabak v. Apple, Inc.*,
  No. 19-CV-02455-JST, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) .................................... 23

*Tarsio v. FCA US LLC*,
  No. 22-CV-9993 (NSR), 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024).................................... 9

*Torres v. Botanic Tonics, LLC*,
  709 F. Supp. 3d 856 (N.D. Cal. 2023) ......................................................................... 15

*Troup v. Toyota Motor Corp.*,
  545 Fed. App'x 668 (9th Cir. 2013) ........................................................................... 22

*U.S. v. Paradise*,
  480 U.S. 149 (1987) (Stevens, J., Concurring) ............................................................. 7

*Vitt v. Apple Computer, Inc.*,
  469 F. App'x 605 (9th Cir. 2012).............................................................................. 15

*Ward-Richardson v. FCA US LLC*,
  690 F. Supp. 3d 1372 (N.D. Ga. 2023) ....................................................................... 9

*Warsavsky v. Jaguar Land Rover N. AM., LLC*,
  No. CV 20-11159PA (EX), 2021 WL 1557751 (C.D. Cal. Mar. 10, 2021) ............................ 25

*West v. JPMorgan Chase Bank*,
  214 Cal. App. 4th 780 (4th Dist. 2013)....................................................................... 19

*White v. U.S. Army Corps of Eng'rs*,
  659 F. Supp. 3d 1045 (N.D. Cal. 2023) ....................................................................... 7

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008)............................................................................... 10, 14

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ................................................................................. 19

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)............................................................................... 17, 19

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ....................................................................... 21

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**STATUTES**

United States Constitution
   Article III.............................................................................................................. 9

28 U.S.C.
   § 1332(d)(2)(A) ................................................................................................ 23

California Business & Professions Code
   § 17200, *et seq.* (the Unfair Competition Law [UCL]) .................................... passim
   § 17500 (the False Advertising Law [FAL])....................................................... 10, 12

California Civil Code
   § 1750 (the Consumer Legal Remedies Act [CLRA]) .................................... passim
   § 1770 (a) (5), (7), (9), (16).............................................................................. 10
   § 1782(a) ............................................................................................................ 20

California Commercial Code
   § 2313(1)(a), (b) ................................................................................................ 22
   § 2607(3)(A)....................................................................................................... 20

**RULES**

Federal Rules of Civil Procedure
   Rule 9(b)............................................................................................10, 11, 16
   Rule 12 .............................................................................................................. 25
   Rule 12(b)(1) ...................................................................................................... 9
   Rule 23(d)(1)(B).................................................................................................. 5

**REGULATIONS**

49 C.F.R.
   § 571.213............................................................................................................ 18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

1    **I.    INTRODUCTION**

2        A car seat is one of the most important purchases a new or expecting parent can make. That

3    car seat will—a parent hopes—hold and protect their child during sharp turns, sudden stops, or

4    even a car accident. Defendant Nuna Baby Essentials, Inc. ("Defendant" or "Nuna") violated the

5    trust of hundreds of thousands of parents when it designed, manufactured, and marketed the

6    dangerously defective "RAVA" Car Seat for a premium price of $550. Defendant sold over 600,000

7    RAVA Car Seats manufactured between July 16, 2016, and October 25, 2023, without a cover over

8    the front harness adjuster button, which controls the tightness of the Car Seat straps, causing the

9    straps to loosen when debris enters the front harness adjuster button area (the "Defect").

10        Defendant was warned by consumers of the dangerous Defect for approximately *four years*

11    before finally announcing a recall on December 20, 2024 (the "Recall"), with parents complaining

12    to the National Highway Traffic Safety Administration ("NHTSA") that the RAVA's "strap

13    mechanism was faulty and would not remain secured." Consolidated Class Action Complaint, ECF

14    No. 43 ("CAC") ¶ 66. Scores of parents repeated this warning, stating, for example, "Our son's life

15    was in danger driving home last night. If we were to have gotten in an accident, the force of the

16    crash would have jolted his body forward and loosened the harness." *Id.* Both NHTSA and

17    consumers have communicated these dire concerns directly to Nuna for years. *Id.* Yet Nuna

18    continued to manufacture and sell the same defective RAVA Car Seat, endangering hundreds of

19    thousands of infants and toddlers, despite this knowledge, and in flagrant violation of its duty to

20    inform consumers of a serious safety defect in the RAVA Car Seat. Nuna's behavior was deceptive,

21    unlawful, and dangerous.

22        Now, Nuna attempts to deny parents their day in court and evade accountability for its

23    actions by hiding behind its belated, faulty Recall that allegedly provides a quick fix to the defective

24    RAVA Car Seats, but does not provide a refund or any real compensation.

25        Nuna's conduct begs the question: what reasonable parent would pay a price premium of

26    $550 for a car seat that does not safely fasten? As one federal court correctly observed, "there is no

27    market for childcare products discounted to reflect the risk of death or injury." *In re Fisher-Price*

28    *Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*In re Fisher Price*"), No. 1:19-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

MD-2903, 2023 WL 1822239, at *3 (W.D.N.Y. Feb. 8, 2023). Simply put, no parent would have ever purchased a RAVA Car Seat had they known it contained a dangerous Defect that could result in a child's injury or even death, and that precipitated a government-supervised Recall that itself was faulty and insufficient. Indeed, in a similar case involving car seats that failed to *un*buckle when debris was introduced to the locking mechanism, Judge William H. Orrick of the Northern District sustained plaintiff's consumer fraud-based and implied warranty claims. *See Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *6-9, *12-13 (N.D. Cal. Aug. 26, 2013). Here, Plaintiffs' claims are even stronger because Defendant admits the Defect exists.

Plaintiffs Prashmi Khanna, Fabiola Chapman, Tina Marie Barrales, Tiffany Larry, Alyna Smith, Mariana Bernasconi Pelufo, Eleisha Sadasey, and Behnaz Faridian Kade are mothers of young children in California who, like any parent, would never have purchased a RAVA Car Seat had they known that they were defectively designed and constructed such that the harness would loosen should any crumbs or debris enter the unprotected front harness adjuster button. Fortunately, their children were not physically injured by Nuna's conduct—but they nevertheless suffered damages. Accordingly, Plaintiffs bring suit on behalf of themselves and other aggrieved parents as a putative class action to avail themselves of state consumer protection and warranty laws that are in place for exactly this type of economic harm. For these and the other reasons set forth below, the Court should deny Nuna's Motion to Dismiss ("Mot.") in all respects.

## II.    FACTUAL ALLEGATIONS

### A.    The RAVA

Defendant Nuna develops, manufactures, and sells car seats, including all variations of the RAVA Car Seat, which is marketed as a "convertible" car seat designed to adjust to accommodate from infancy to childhood. CAC ¶ 2. Consumers can purchase the RAVA from various retailers, including Brixy, where it is listed for $550, or other online and brick-and-mortar vendors. *Id.* ¶ 3.

Knowing that safety is the paramount consideration when choosing a car seat, Nuna advertises the RAVA as "a reliable anchor to your child's car-riding adventures and your parental peace of mind." *Id.* ¶ 51. Nuna promises that consumers who buy a RAVA Car Seat "can trust in

its unwavering security" and lists various cutting-edge safety features, many of which ensure parents that the harness and straps, specifically, are safe. *Id.* ¶¶ 51, 53. Among other claims, Nuna touts the RAVA's "All-steel frame and reinforced belt path for superior protection"; "Colored belt path indicators decrease risk of install errors"; and "Quick-release 3 to 5-point harness makes it easy to fasten them in[.]" *Id.* ¶ 53. Moreover, Nuna promises that all its products are "extensively tested before [they] leave[] the factory. We use advanced equipment and testing methods, going above and beyond what's required." *Id.* ¶ 52.

Nuna's safety claims concerning the RAVA Car Seat are false and omit material information that Nuna had a duty to disclose to consumers. In fact, the RAVA Car Seats are demonstrably unsafe due to a defective design that leaves the front harness adjuster button uncovered. When debris—such as tanbark from the playground, crumbs from a mid-drive snack, or simply dirt from a messy child—falls into the uncovered front harness adjuster button, the harness may come loose when even slight pressure is applied. In other words, the RAVA Car Seat "may not properly restrain the occupant, increasing the risk of injury in a crash." *Id.* ¶¶ 9, 58; *see also id.*, Ex. A; ECF No. 43-1 (the "January Notice Letter"). Once the RAVA's straps are loosened, a child can crawl out of their car seat, as Plaintiff Sadasey's child did, *see* CAC ¶¶ 171-72, or—far worse—be seriously injured in a car accident.

As early as December 2020, parents began reporting this dangerous Defect to both NHTSA and directly to Nuna. As described at more length in the CAC, parents spent approximately *four years* warning that they were "able to loosen the straps with little effort . . . [such that] in the event of a crash, the child could easily slip out of the straps"; that a "child was able to pull the tether apart"; that "[t]he straps will not lock, and are coming loose with the slightest tug on the chest clip"; and that the "[h]arness suddenly started to loosen by itself without pushing on the release mechanism." CAC ¶ 66. Parents reported this directly to Nuna on multiple occasions, even sending Nuna video of the malfunctioning RAVA. *Id.* NHTSA complaints confirm that Nuna was, on numerous occasions, "made aware of the failure and opened a case." *Id.*[1] Rather than promptly

---

[1] *See also*, *e.g.*, CAC ¶ 66 ("the strap locking mechanism was faulty and would not remain secured . . . The manufacturer [] was notified of the failure.") (quoting https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717) (complaint dated April 15, 2021).

informing the public of this dangerous Defect, Nuna failed to take any corrective action and systematically denied consumers refunds for years. *Id.* It was not until December 20, 2024—four years after the first complaint on the NHTSA website—that Nuna announced a recall, warning the public that the RAVA Car Seats they entrusted their children's lives with every single day, in fact, contained a severe and dangerous Defect that could manifest at any time through ordinary use. Still, Nuna refused to reimburse parents.

**B.    The Recall**

Finally, on December 20, 2024, Nuna instituted a voluntary recall for 600,000 RAVA Car Seats manufactured between July 16, 2016, and October 25, 2023, concerning a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash." January Notice Letter; CAC, Ex. 1, ECF No. 43-1; *see also* CAC ¶¶ 57-58. Due to this Defect, debris that enters the front harness adjuster button area "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight." CAC ¶ 59. The Recall notice[2] states that, when the Defect manifests, consumers should immediately stop using the RAVA Car Seat. *Id.* ¶ 60.

This dangerous Defect renders the RAVA Car Seats worthless and unusable for their intended purpose of safely transporting babies, toddlers, and young children. As any parent will understand, children leave behind debris of all kinds, even under the watchful eye of a guardian, and they fidget when restrained in a car seat. Every defective RAVA Car Seat is therefore likely to manifest the Defect at some point. Indeed, some Plaintiffs have experienced this first-hand. *See id.* ¶¶ 123-24, 171-72, 184.

Despite this dangerous Defect, the $550 RAVA Car Seat is more expensive than similar car seats, meaning that consumers were duped into spending a premium—sometimes hundreds of dollars—for a purportedly safer car seat that, in fact, put their children at *greater* risk. *Id.* ¶ 75. Adding insult to injury, many consumers were not directly notified of the Recall due to Nuna's inadequate notice efforts. *See*, *e.g.*, *id.* ¶¶ 12, 102, 112, 128, 139, 150, 163, 173, 185.

In sum, the Recall was and is inadequate for several reasons:

---

[2] https://nunababy.com/recalls-rava1, discussed at CAC ¶¶ 1, 57-58.

*First*, there was insufficient notice to impacted consumers, including Plaintiffs, most of whom never received formal notice of the Recall. *See id.* ¶¶ 112, 128, 139, 150, 163, 173, 185.

*Second*, the Recall fails to make Plaintiffs whole for their financial damages, including because Plaintiffs paid a price premium for the defective RAVA Car Seats and because the RAVA's Defect and Recall have also caused a significant diminution of its value and useful life, for which Nuna has not provided compensation. *See id.* ¶¶ 18, 104, 115, 130, 141, 155, 164, 177, 193. Moreover, the Recall offers no meaningful remedy for additional costs incurred by parents who had to replace the RAVA out of their own pocket, or, if they were unable to afford a replacement for the $550 RAVA, were forced to transport their children in the unsafe and defective RAVA Car Seat. *Id.* ¶¶ 17, 125, 154, 176, 188.

*Third*, Nuna instructed consumers to immediately stop using the RAVA Car Seat upon manifestation of the Defect, requiring them to constantly check the car seat for manifestation of this dangerous Defect, even though the replacement covers would take several months to begin shipping out. Indeed, on or around February 7, 2025 (over a month after the Recall was announced), a Nuna employee informed Plaintiff Faridian Kade over the phone that Nuna had not mailed out a single Cleaning Kit to *any* purchaser of a RAVA Car Seat as of that date. *Id.* ¶¶ 191-92.

*Last*, Nuna is not repairing the Defect itself, but instead requires Plaintiffs and consumers—all laypeople—to clean out the front harness latch such that *all* debris is removed and the Defect does not manifest, remove the Defective RAVA Car Seat cover, and install the redesigned RAVA Car Seat cover. *See id.* ¶ 15. To start, this fails in any way to even attempt to remediate the failing latching and harness mechanism, which allows the straps to loosen. *See id.* ¶ 13.

On this renewed Motion, Nuna introduces for the first time a notice letter issued February 21, 2025 ("February Notice Letter") (after litigation was initiated, *see Khanna* Compl., ECF No. 1 (filed Feb. 6, 2025))[3], that purports to provide (a) reimbursements replacement car seats purchased between December 20, 2024, and February 14, 2025, and (b) "additional assistance and

---

[3] To the extent that Nuna's post-litigation communications even reached any putative class members, they likely run afoul of Rule 23(d)'s requirements that notices impacting class members' rights have Court approval "to protect class members and fairly conduct the litigation" once a class action is initiated. Fed. R. Civ. P. 23(d)(1)(B).

cleaning" for consumers who choose to mail their RAVA in for an indefinite period of time. *See* Mot., ECF No. 49, at 2-4. These offers from Nuna are included in neither the January Notice Letter nor the online version of the Recall notice, and were presumably seen by vanishingly few consumers, if any, and by no Plaintiff. *See* CAC ¶¶ 102, 112, 128, 139, 150, 163, 173, 185; *compare* January Notice Letter, ECF No. 43-1, *with* Mot. at 4 (citing February Notice Letter).

Nothing in the February Notice Letter obviates any Plaintiff's standing or claims. A post-litigation limited refund for a subsequent purchase does not refund a single penny to Plaintiffs for their purchase of a car seat Nuna sold knowing it put their children's lives in danger. The "reimbursement" offer therefore only betrays that the Cleaning Kit will not make the RAVA safe and confirms no *actual* refunds were offered. And as the RAVA is one of the most expensive car seats on the market, retroactive notice of potential reimbursement for a cheaper replacement is a long way from the refund consumers seek through this lawsuit. *See id.*, ¶¶ 47, 188. As for the "additional assistance and cleaning" offer, it came months after the Recall was announced, and assistance was in fact denied to consumers like Plaintiff Smith, *see* CAC ¶¶ 152-53. In any event, consumers who mailed in their RAVA (if any did) were forced to buy a replacement out of pocket or simply go without any car seat—something most families who rely daily on their car seat cannot do. *See* February Notice Letter at 1.

### C.    The Re-Design

Admitting its design was faulty, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button. CAC ¶ 70. It is therefore clear that Nuna knew about this potentially life-threateningly dangerous Defect for years before notifying the public of the serious risks use of the RAVA posed to infants and children for three reasons: (1) Nuna presumably began designing the redesigned RAVA Car Seat prior to beginning manufacturing in October 2023, over a year before the Recall was announced; (2) consumers have repeatedly complained about this dangerous Defect since at least December 2020, including directly to Nuna; and (3) Nuna was long-aware that manifestation of the Defect was likely because Nuna has acknowledged, since at least 2021, that "sometimes crumbs or sand can get inside of the seat." *See id.* ¶ 69.

1    **III.    ARGUMENT**

2        **A.    Plaintiffs' Claims Are Not Prudentially Moot.**

3        "The doctrine of prudential mootness permits a court to dismiss [a case] not technically

4    moot if circumstances have changed since the beginning of litigation that forestall any occasion for

5    meaningful relief[.]" *Deutsche Bank Nat. Trust Co. v. F.D.I.C.* ("*Deutsche Bank*"), 744 F.3d 1124,

6    1135 (9th Cir. 2014) (internal quotation marks omitted). "[B]ecause prudential mootness is an

7    equitable doctrine, courts have held that the doctrine should apply only to 'claims for equitable

8    relief' which 'appeal to the remedial discretion of the courts.'" *Philips v. Ford Motor Co.*, No. 14-

9    CV-02989-LHK, 2016 WL 693283, at *7 (N.D. Cal. Feb. 22, 2016) (quoting *Winzler v. Toyota*

10   *Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012)). When a court evaluates whether

11   a case is prudentially moot, it should be guided by a "sense of basic fairness," *U.S. v. Paradise*, 480

12   U.S. 149, 192 (1987) (Stevens, J., Concurring), and whether the challenged conduct could be

13   repeated or would not provide the requested relief. *Becerra v. U.S. Dep't of Interior*, 276 F. Supp.

14   3d 953, 960 (N.D. Cal. 2017) ("[A] principle concern when determining if the court can provide

15   meaningful relief is whether it is likely that the challenged conduct will be repeated."); *see also*

16   *Philips*, 2016 WL 693283 at *10-11. Ninth Circuit courts rarely find that the doctrine of prudential

17   mootness applies: "[i]ndeed, the Ninth Circuit has found a suit prudentially moot only once, when

18   no assets remained for distribution in a bankruptcy proceeding."[4] *White v. U.S. Army Corps of*

19   *Eng'rs*, 659 F. Supp. 3d 1045, 1051-52 (N.D. Cal. 2023) (discussing *Deutsche Bank*).

20       Here, the Recall is insufficient for several reasons, as described herein. *See*, Section II(B),

21   *supra*. Nuna concealed for approximately four years a known Defect that endangered the lives of

22   over half a million infants and toddlers. Yet "there is no market for childcare products discounted

23   to reflect the risk of death or injury." *In re Fisher-Price*, 2023 WL 1822239 at *3. In other words,

24   parents, including Plaintiffs, paid a premium price of approximately $550 for the RAVA Car Seat

25   *only because* of Nuna's deceptive and reckless behavior. Allowing Nuna to wantonly endanger

26   children for years without providing any financial compensation epitomizes unfairness. This is why

27

28   _____

[4] Plaintiffs have located a single additional example: *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (finding prudential mootness). In short, application of the doctrine is *exceedingly rare*.

Plaintiffs seek monetary damages in addition to equitable relief.

As Nuna's own citation makes clear, if Plaintiffs can show that they "will be left without a complete remedy," Plaintiffs' claims cannot be dismissed under the doctrine of prudential mootness. *Winzler*, 681 F.3d at 1211-12 (citing *U.S. v. W. T. Grant Co*., 345 U.S. 629, 633 (1953)). Such a dismissal would be fundamentally unfair and contrary to prevailing Ninth Circuit case law. For example, in *Philips*, under analogous circumstances involving an insufficient recall, a Northern District court held:

> [T]he relief that California Plaintiffs seek and the relief that Ford has provided under the recall are not one and the same. If California Plaintiffs are successful in litigating this action, Ford could be required to (1) provide reimbursement without regard to a particular filing deadline, and (2) provide recovery to owners for losses in market value. Under the recall, Ford is not required to provide either type of recovery. In these circumstances, application of the prudential mootness doctrine is not warranted.

*Philips*, 2016 WL 693283 at *7. The vast majority of Ninth Circuit courts considering this question have reached the same conclusion. *See*, *e.g.*, *Sater v. Chrysler Grp. LLC*, No. EDCV1400700VAPDTBX, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) ("Unlike *Winzler*, *Hadley*, and *Cheng*, where the classes sought only new parts to replace the defective ones, [plaintiff] seeks more . . . . Specifically, the class in this case is suing on theories related to deceptive business practices, lost use . . . caused by the defect, and diminished resale value . . . . Dismissing this case as prudentially moot would likely leave the owners of Class Vehicles 'without complete relief.'"); *Peckerar v. Gen. Motors, LLC*, No. EDCV182153DMGSPX, 2020 WL 6115083, at *6 (C.D. Cal. Aug. 17, 2020) ("Because the Recall allegedly does not provide Plaintiffs with the full relief they seek, the Court finds that the doctrine of prudential mootness does not warrant dismissal of Plaintiffs' claims for equitable relief."); *Comes v. Harbor Freight Tools USA, Inc*., No. CV 20-5451-DMG (KKX), 2021 WL 6618816, at *4 (C.D. Cal. Sept. 29, 2021) (declining to apply doctrine of prudential mootness because NHTSA-approved recalls did not provide the same remedy sought by plaintiffs). The fact that the Recall is under NHTSA authority does not change this analysis, as demonstrated by the several foregoing cases analyzing NHTSA recalls.

Nuna's nonprecedential and mostly out-of-circuit cases do not alter this analysis. Unlike here, plaintiffs in those cases sought relief identical (or near-identical) to the relief provided by the

- 8 -

recall. *See Winzler*, 681 F.3d at 1211 ("Congress and the Executive have committed to ensure [plaintiff] precisely the relief she seeks"); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1377-78 (N.D. Ga. 2023) ("Recall ZB7 provides the exact relief Plaintiffs seek, namely free repairs and reimbursement"); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 465 (E.D. Mich. 2022) (finding case prudentially moot where recall "promised to replace the defective fuel pump and affected fuel system components, update software, and reimburse owners who already paid for repairs"); *Cheng*, 2013 WL 3940815 at *2 (finding claims prudentially moot where "the NHTSA recall provides plaintiff precisely the relief he seeks") (internal quotation marks omitted).

Nuna's reliance on *Sugasawara v. Ford Motor Co.*, is misplaced for several reasons. *See* No. 18-cv-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019). First, *Sugasawara* does not discuss the doctrine of prudential mootness, and Nuna does not (and cannot plausibly) argue that Plaintiffs lack Article III standing.[5] Second, the facts in this case are more akin to Judge Koh's decision in *Philips*. 2016 WL 693283 at *7. Third, Plaintiffs here allege injuries that were never alleged in *Sugasawara*, including first-hand experience of the Defect and loss of use, CAC ¶¶ 123, 171-72, 184, 188, and economic loss caused by Nuna's fraudulent concealment at the point of sale, *id.*, ¶¶ 104, 115, 130, 141, 155, 164, 177, 193. And in *Sugasawara*, Judge Koh concluded that the plaintiff did not allege Ford had pre-sale knowledge of the defect. 2019 WL 3945105, at *7. Moreover, Judge Carney in *Friche v. Hyundai Motor, Am.*, "respectfully disagree[d]" with *Sugasawara*'s holding that a plaintiff lacks Article III standing where they allege that they would not have purchased a defective product had they known of the defect at the time of purchase. No. SACV 21-CV-01324-CJC, 2022 WL 1599868, at *3 (C.D. Cal. Jan. 28, 2022). The *Friche* court "especially disagree[d] in a case in which a plaintiff has plausibly pled that the defect actually existed (rather than potentially existed) in his [product] and has plausibly pled that the defendant fraudulently concealed the existence of the defect[,]" as Plaintiff does here. *See id.*

Plaintiffs here seek equitable relief and monetary damages beyond the scope of the Recall—

---

[5] Another case Nuna cites, *Tarsio v. FCA US LLC*, No. 22-CV-9993 (NSR), 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024) also addressed a NHTSA recall in the context of Article III mootness under Rule 12(b)(1)— not prudential mootness. Notably, the Court in *Tarsio* also acknowledged standing may be satisfied when a plaintiff alleges a deceptive practice caused him to overpay for a product. *Id.*, at *4. Thus, even under *Tarsio*, Plaintiffs' claims survive.

which does not provide any compensation or refunds for the RAVA—such that the prudential mootness doctrine does not apply. Nuna's belated, post-litigation, limited-time offer of a reimbursement for a *replacement* for the RAVA, does not cure the defective Recall, and in fact only underscores that the Cleaning Kit is not an effective remedy. Moreover, the doctrine of prudential mootness generally applies where the plaintiff seeks only injunctive or declaratory relief and therefore should not apply here. *Philips*, 2016 WL 693283 at *5 (citing *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)); *see also Winzler*, 681 F.3d at 1210-11. Nuna does not and cannot dispute that the Recall process for the RAVA Car Seat has neither provided nor will provide the monetary relief that Plaintiffs seek exclusively through this suit. This Court should therefore decline to find this case prudentially moot.

**B.    Plaintiffs Have Adequately Pleaded Their Fraud-Based Claims.**

Nuna seeks dismissal of Plaintiffs' CLRA, UCL, and FAL claims because they purportedly do not meet the "particularity required under Rule 9(b)." Mot. at 14-18. But Plaintiffs need not plead scienter to satisfy )Rule 9(b because neither the UCL nor the CLRA requires it. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (applying a "reasonable consumer" test to UCL and CLRA claims); *see also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (rejecting arguments that plaintiffs must show intent to deceive under CLRA and UCL). Even so, where applicable, Plaintiffs have satisfied Rule 9(b)'s requirements.

**1.    Plaintiffs Adequately Allege Claims Under the CLRA, UCL, and FAL.**

Nuna's advertising and sale of the dangerously defective RAVA Car Seat violated California law. California's UCL generally prohibits "deceptive" advertising. *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1266-67 (1992). The CLRA also prohibits "unfair or deceptive acts or practices," such as "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." *See* Cal. Civ. Code § 1770 (a)(5), (7), (9), (16). The FAL generally prohibits advertising that contains "any statement . . . which is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. Nuna has run afoul of all three.

Nuna's defenses miss the mark for two reasons. First, Plaintiff has adequately alleged that

Nuna omitted material information it was under a duty to disclose *and* misrepresented the safety of the RAVA. Second, Plaintiff has adequately alleged that Nuna's omissions and misrepresentations are misleading to the reasonable consumer, that consumers relied on Nuna's omissions and misrepresentations, and that Nuna's omissions and misrepresentations are the cause of their injuries. *See*, *e.g.*, CAC ¶¶ 100, 104, 110, 115, 122, 130, 136, 141, 148, 155, 161, 164, 169, 177, 183, 193. Nuna's remaining arguments are easily dispensed with.

### a. Nuna Failed to Disclose a Dangerous Defect in Violation of its Duty to Plaintiffs and Consumers.

This case is primarily predicated on the theory that Nuna sold consumers the RAVA Car Seats, which contained an undisclosed safety Defect. Ninth Circuit law provides for an omission-based theory of fraud in product defect cases where a plaintiff "adequately allege[s] the 'who, what, when, where, and how,' given the inherent limitations of an omission claim." *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. 2022); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1326 (C.D. Cal. 2013) (holding allegations of omission satisfied Rule 9(b) and sustaining CLRA and UCL claims); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). "[C]laims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim.'" *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).

Plaintiffs have pleaded their claims with particularity, describing the who, what, when, where, and how of Nuna's deceptive marketing. The "who" is Nuna; the "what" is that the RAVA Car Seat has a dangerous Defect that causes the harness straps to loosen; the "when" is the proposed class period for the sale of the RAVA; the "where" is the various channels of information and commerce through which Nuna sold the RAVA; and the "how" is Nuna's failure to disclose the defect while mispresenting the safety of the dangerously defective RAVA Car Seat that warranted the Recall. *See*, *e.g.*, CAC ¶¶ 1-6, 9-10, 46-48, 51-62, 72, 95, 100, 110, 122, 136, 148, 161, 169, 183, 201, 206. Courts in the Ninth Circuit have upheld similar claims countless times, and this Court should do the same. *See*, *e.g.*, *MacDonald*, 37 F. Supp. 3d at 1096-97 (sustaining UCL and CLRA claims based on omissions where Plaintiffs alleged a safety defect but did not specifically

allege "what information about the alleged defect should have been disclosed, who should have disclosed the omitted information . . . when such information should have been disclosed . . . or how the information should have been disclosed.") (alterations in original); *see also Anderson v. Apple Inc*., 500 F. Supp. 3d 993, 1013-14 (N.D. Cal. 2020) (confirming a seller's duty to disclose information that contradicts affirmative representations).

Further, "[a] manufacturer has a duty to disclose a defect that poses an unreasonable safety risk," *see Seifi v. Mercedes-Benz USA, LLC*, No. 12-5493-TEH, 2013 WL 2285339, at *7 (N.D. Cal. May 23, 2013), or when the defect impedes the functioning of a part or feature "central to the function" of the product at issue. *see Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 258 (2011), *as modified* (Dec. 28, 2011). It cannot be reasonably disputed that the central purpose of a car seat is to *safely* transport an infant or toddler in a moving automobile. For example, in *Long*, Judge Orrick of the Northern District held that "defendants have a duty to disclose defects in the [car seat buckle] because car seats relate to safety concerns." *Long*, 2013 WL 4655763 at *6.

Ninth Circuit courts have additionally held that "failure to disclose can constitute actionable fraud under the CLRA . . . '(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.'" *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (same).[6] Courts particularly disfavor partial omissions, where the "duty to disclose the allegedly omitted information arises from the fact that the omission is contrary to a representation actually made by the defendant. Otherwise, defendants could make misleading statements that, in a vacuum, were

---

[6] Some courts have reconciled these tests, holding that a duty to disclose a defect exists where the defect "either (1) relates to an unreasonable safety hazard or (2) is material, 'central to the product's function,' and meets one of the four *LiMandri* factors." *Grausz v. Hershey Co*., 691 F. Supp. 3d 1178, 1194 (S.D. Cal. 2023). This is called the *Hammerling* test, in reference to its application in *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). The *Hammerling* test applies to UCL, CLRA, and FAL claims. *See*, *e.g.*, *Grausz*, 691 F. Supp. 3d at 1194-95 (noting that, under the *Hammerling* test, a plaintiff may adequately allege "violations of California's FAL, CLRA, and UCL on a theory of fraud by omission" where defendant has a duty to disclose a safety hazard). Plaintiffs' claims also meet the *Hammerling* test.

true while leaving out contradictory information." *Anderson*, 500 F. Supp. 3d at 1013 (cleaned up).

By any standard, Nuna had a duty to disclose the dangerous Defect in the RAVA Car Seat. The Defect is so severe and dangerous it unquestionably "poses an unreasonable safety risk," as evidenced both by the mere description of the Defect—the Defect may result in a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash"—and by the January Notice Letter, which advised consumers to immediately stop using the RAVA if the Defect manifests. *See Seifi*, 2013 WL 2285339 at *7; *see also* CAC ¶¶ 9, 57-60; January Notice Letter. It is similarly self-evident that the Defect impedes the central—*and only*—function of the RAVA Car Seat: to keep infants and toddlers safely and securely fastened while traveling on the highway. *See Collins*, 202 Cal. App. 4th at 258. Moreover, Nuna not only had exclusive knowledge of the Defect—which it designed and implemented and was unknown to Plaintiffs until the Recall—but also actively concealed the Defect from Plaintiffs and the public. *See Long*, 2013 WL 4655763 at *6 (sustaining UCL and CLRA claims where, based on only five pre-sale complaints, car seat manufacturer "knew or should have known about the harness buckle defects but nonetheless 'actively concealed the existence and nature of the defects.'"). Adequate pre-market product safety testing would also have revealed the Defect before exposing children to the risk of it manifesting after purchase. Thus, as in *Long*, Defendant here breached its duty to disclose by waiting nearly *four years* to announce the Recall after consumers complained about the Defect. CAC ¶¶ 68-72.

### b. A Reasonable Consumer Would be Misled by Nuna's Statements.

In seeking dismissal over Plaintiffs' misrepresentation claims, *see* Mot. at 14-18, Nuna distracts the Court from the fact that Nuna violated its duty to parents, like Plaintiffs, by failing to disclose a safety Defect in the RAVA Car Seat—which is enough to sustain Plaintiffs' UCL and CLRA claims. *See Long*, 2013 WL 4655763 at *6. Even in the absence of *any* safety representations, Nuna's omission is sufficient basis for liability under California law. Nuna did, however, misrepresent the safety of the RAVA Car Seat, as discussed below.

The "California Supreme Court has recognized that [the UCL, CLRA, and FAL] prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."

*Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002)) (internal quotation marks omitted). The reasonable consumer standard "requires more than a mere possibility that [a representation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019) (internal citations omitted). Thus, to state a claim under either the UCL, CLRA, or FAL for deceptive practices, it is necessary only to show that "members of the public are likely to be deceived." *Williams*, 552 F.3d at 938; *see also*, *e.g.*, *Chapman v. Skype Inc*., 220 Cal. App. 4th 217, 226 (2013). In any event, "whether a reasonable consumer would be deceived . . . is generally a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see also*, *e.g.*, *Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134-35 (2007).

Several features of Nuna's advertising and packaging are likely to deceive a reasonable consumer, including but not limited to Nuna's touting of the RAVA's "unwavering security," "all-steel frame," and "energy absorbing foam." CAC ¶ 9. Even the steep price point suggests to consumers that the RAVA is a safe, reliable, and luxury car seat. *See id.* ¶ 85. Indeed, Plaintiffs allege that they conducted extensive research into which car seat to purchase for their children, including looking at labels, packaging, advertisements, and online reviews. *Id.* ¶¶ 100, 110, 122, 136, 148, 161, 169, 183. Nuna should not be permitted to use their lack of a clearly stated promise that consumers' children will be safe travelling in the RAVA as "a shield for liability," *see Williams*, 552 F.3d at 939, for their deceptive and obfuscatory practices. *See Anderson*, 500 F. Supp. 3d at 1013 (disfavoring partial omissions). After all, it defies common sense to assert, as Nuna does, that consumers viewing any advertisement or product packaging touting the RAVA's safety features do not expect the RAVA to actually be safe. Safety features are for naught if the RAVA Car Seat fails in its most basic purpose: securely securing children in the car seat.

Moreover, Plaintiffs' UCL claims can stand on the "unfair" prong.[7] A business practice is

---

[7] And just as in *Long*, 2013 WL 4655763 at *9, Plaintiffs' claims may be sustained on the
*Footnote continued on next page*

"unfair" when it "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" or when, on a balancing test, "the gravity of the harm to the alleged victim" outweighs the "utility of defendant's conduct[.]" *Long*, 2013 WL 4655763 at *8 (citing *Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1268 (2006); *Schnall v. Hertz Corp*., 78 Cal. App. 4th 1144, 1167 (2000)). Courts "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer[.]" *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotations and citation omitted). The balancing test is "lenient" on a motion to dismiss. *Ellsworth v. U.S. Bank, N.A*., 908 F.Supp.2d 1063, 1090 (N.D. Cal. 2012). As one court explained:

> The Legislature intended the unfair-practices prong to reach beyond existing law, to capture practices that should result in liability but that legislatures and courts had not yet envisioned. Depending on the facts, if a seller knows that a product poses a serious danger to its consumers and chooses to sell it without warning of the danger, that seller could potentially be liable under the unfair-practices prong even if there would be no liability for failure to disclose under any other statutory or common law cause of action.

*Torres v. Botanic Tonics, LLC*, 709 F. Supp. 3d 856, 858-59 (N.D. Cal. 2023). And Nuna's conduct was unfair in precisely this manner; Nuna knew for years that the RAVA posed a danger to infants and toddlers and sold it without warning parents of that danger. Even if Nuna were not liable under any other statutory or common law cause of action (it is), Nuna could and should be held liable under the UCL's unfair-practices prong.

Each of Nuna's cases is factually distinguishable from the case at bar. In *none* of Nuna's cited cases does the court analyze whether a defendant violated its duty to disclose a safety defect. *See, e.g.*, *Oestreicher v. Alienware Corp*., 544 F. Supp. 2d 964 (N.D. Cal. 2008) (defect complained of was non-safety-related); *Vitt v. Apple Computer, Inc*., 469 F. App'x 605 (9th Cir. 2012) (same); *Stickrath v. Globalstar, Inc*., 527 F. Supp. 2d 992 (N.D. Cal. 2007) (same); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) (same); *Sims v. Kia Motors Am., In*c., No. SACV 13-1791 AG (DFMx), 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014) (analyzing only alleged misrepresentations, not safety-related omissions); *Oceguera v. Baby Trend, Inc*., No. 521CV00398JWHKKX, 2022 WL 1599869, at *7 (C.D. Cal. Jan. 14, 2022) (same); *Kearns v. Ford*

---

"unlawful" prong as Nuna's omission of the safety Defect violates, *inter alia*, the CLRA.

*Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (discussing in general terms the applicability of Rule 9(b), not safety-related omissions).

### c.        Plaintiffs Have Satisfied the Reliance Requirement.

To plead reliance, "plaintiffs must allege that defendant's misrepresentation or nondisclosure 'was an immediate cause of the plaintiff's injury-producing conduct.'" *Margolis v. Apple Inc.*, No. 5:23-CV-03882-PCP, 2025 WL 999867, at *4 (N.D. Cal. Apr. 3, 2025) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). Plaintiffs have done so: the CAC alleges that "[h]ad [Plaintiffs] understood the true nature of the RAVA Car Seat at the time of purchase, or had [they] known the truth underneath Nuna's misleading representations and omissions, [they] would not have purchased the RAVA Car Seat, or else would have paid substantially less for it." CAC ¶¶ 104, 115, 130, 141, 155, 164, 177, 193. Plaintiffs allege that they extensively researched which car seat to purchase for their children, including looking at labels, packaging, advertisements, and online reviews. *Id.*, ¶¶ 100, 110, 122, 136, 148, 161, 169, 183. Plaintiffs also allege that they believed the RAVA would be safe due to its high retail price of $550. *See id.*, ¶¶ 159-61, 168-69, 183. These allegations are sufficient. Requiring Plaintiffs, without the benefit of discovery, to pinpoint exactly which advertisements were broadcast to which audiences and when, particularly in the age of social media where ads are targeted but then disappear when a consumer scrolls to the next post, is not a burden that courts require. And such an effort is largely beside the point because this case is mostly about what Nuna failed to disclose—a safety Defect that put Plaintiffs' children at risk.

Importantly, not a single case cited by Nuna in its section on reliance, *see* Mot. at 18-19, involves a safety defect triggering a defendant's duty to disclose. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (defect complained of was non-safety-related); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103–04 (9th Cir. 2013) (same); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013) (same); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 915 (N.D. Cal. 2018) (same); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) (same); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (same). The RAVA

is a car seat; unlike a toy designed primarily to entertain a child, but which could become dangerous if misused, an unsafe car seat should *never* be sold. After all, what reasonable parent would pay anything, much less $550, for an *unsafe*—and useless—car seat? Plaintiffs' reliance is therefore properly presumed because Nuna failed to disclose a dangerous Defect (in a product that exists only for safety purposes), violating its duty to consumers.

### 2.    Nuna Had Pre-Sale Notice of the Defect.

Nuna is correct that Plaintiffs "must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss," *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012), though "allegations of fraud based on information and belief [] may be relaxed with respect to matters within the opposing party's knowledge" so long as they "state the factual basis for the belief," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Plaintiffs' claims are also sufficient if they plausibly plead that the defendant "should have known" about the defect. *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011). For example, in *Long*, the court held that a plaintiff alleging, *inter alia*, UCL and CLRA claims related to a defective car seat "sufficiently allege[d] that the defendants 'knew or should have known' of the defects at the time of sale due to the complaints to the NHTSA from before and after his purchase, as well as consumer complaints directly to the defendants, to which the defendants responded." *Long*, 2013 WL 4655763 at *6. Only five NHTSA complaints and four complaints on Amazon pre-dated the plaintiff's purchase of the car seat in *Long*. *Id.*

Like the plaintiff in *Long*, Plaintiffs here have satisfied this burden. Plaintiffs purchased their RAVA Car Seats prior to the Recall. Approximately 40 consumer complaints were made on the NHTSA webpage for the RAVA Nuna before the Recall—eight times as many as in *Long*.[8] The first NHTSA consumer complaint describing the RAVA harness straps loosening was made on December 31, 2020. CAC ¶ 66. In that complaint, a consumer stated that "in the event of a crash, [their] child could easily slip out of the straps." *Id.* On April 1, 2021, a consumer complained that the "strap locking mechanism was faulty and would not remain secured . . . the manufacturer . . . was notified of the failure." *Id.* On July 13, 2022, a consumer complained: "When the child is

---

[8] *See* https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717, discussed at CAC ¶¶ 66-68.

buckled in and the straps are all tight, they can be pulled loose without using the release button at the bottom. This is incredibly unsafe and would make this car seat useless if we were to be in a car accident . . . . [T]he manufacturer has been notified." *Id.* On June 10, 2023, another consumer complained that "the tether used to secure the child in the seat had become loosened . . . . her child was able to pull the tether apart. The car seat had not been repaired. The manufacturer was made aware of the failure and opened a case." *Id.* These are just a handful of the many consumer complaints during the class period wherein consumers not only complained of the Defect, but also directly informed Nuna of the Defect. Consumers have also complained of the Defect on online forums since at least 2021. *Id.* ¶¶ 68-69. It is unclear how many warnings Nuna would require be made before it deigns to act to protect the lives of the infants and toddlers entrusted to its RAVA Car Seat, but Plaintiffs submit that it had more than adequate notice.

Further, Nuna "should have known" of the Defect prior to the point of sale if Nuna had conducted adequate pre-market safety testing as part of its requirements under federal law to ensure RAVA Car Seats were permitted to be sold. Federal regulations governing car seats are implemented to "reduce the number of children killed or injured in motor vehicle crashes." 49 C.F.R. § 571.213. Indeed, Nuna promises consumers that its "baby gear is extensively tested before it leaves the factory. We use advanced equipment and testing methods, going above and beyond what's required." CAC ¶ 52. Nuna should therefore know that NHTSA has warned companies in the past: "It is completely foreseeable that children will eat or drink while seated in their car seat and that some amount of these substances may enter the buckle." *Id.* ¶ 79. For this reason, regulators do not "believe that food or drink contamination should create any buckle performance issues[.]" *Id.* And Nuna was certainly aware of the danger posed by the Defective RAVA Car Seat, as evidenced by the re-design in Fall 2023 which, purportedly, cures the Defect. Plaintiffs expect that discovery will reveal that the re-design took months of planning and testing before October 2023.[9] It is therefore apparent that, *at a minimum*, Nuna, with full knowledge, sold the dangerously

---

[9] Nuna suggests that the re-design sprang into existence in October 2023 when it began *manufacturing* the re-designed RAVAs. *See* Mot. at 19-20. Setting aside that this pre-dates the Recall by over a year, this implausibly suggests that Nuna spent no time whatsoever planning, designing, or testing the re-designed RAVA.

Defective RAVA Car Seat to hoodwinked parents for over a year—but likely much longer.

In its defense, Nuna relies heavily on *Wilson v. Hewlett-Packard Co.*, *see* Mot. at 19-20, but the *Long* court specifically addressed *Wilson*, stating that "the plaintiff in *Wilson* failed to show that the defendant was aware of a defect because, of the 14 complaints alleged, none stated its source, 12 were undated, and two were made two years after the plaintiff's purchase. That is not the case here." *Long*, 2013 WL 4655763 at *7 (citation omitted). Nor is it the case *here*, where dozens of complaints on the NHTSA website alone pre-date at least some of Plaintiffs' purchases of the RAVA Car Seat.[10] Moreover, in *Wilson*, the laptops were not a product whose sole function is child safety and there were no affirmative safety requirements for the product under federal law.

**C.     Plaintiffs Have Adequately Alleged Negligent Misrepresentation.**

In California, the elements of negligent misrepresentation are "(1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." *Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1111 (E.D. Cal. 2013) (citing *West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780, 792 (2013)). As discussed at length in Section III(B), *supra*, Plaintiffs have satisfied these elements.

Nuna attempts to muddy the waters with allusions to a requirement that only advertisements not disseminated to the general public are cognizable, Mot. at 21-22, but this fails for two reasons. First, Plaintiffs allege that Nuna has engaged in targeted advertisement through the internet and social media. *See* CAC ¶ 54. Targeted advertisement occurs when, based on a profile built by analyzing an individual's online and on-device activity, businesses and retailers like Nuna target specific, individual consumers, such as expecting parents, with advertisements that are relevant to their interests. *See* CAC ¶ 54. As any new parent knows, targeted advertising is particularly prevalent in the market for baby products such as car seats. *Id.* Targeted advertisements are not

---

[10] Nuna attempts to distinguish its conduct from that in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027, n.8, 1028 (9th Cir. 2017), *see* Mot. at 20, where the court found pre-sale knowledge when defendant received an "unusually high" number of complaints. The number of complaints in *Williams* was "as many as 40 or 50 different consumer complaints[.]" *Id.* at 1026. So too here.

1    made to the general public.

2        Second, Nuna's assertions are simply wrong: the overwhelming weight of Ninth Circuit

3    authority confirms that negligent misrepresentation claims may be predicated on advertisements

4    made to the general public. *See, e.g., Pirozzi*, 966 F. Supp. 2d at 921, 924; *Clark v. Nordic Nats.,*

5    *Inc.*, No. 24-CV-04058-EKL, 2025 WL 1592676, at *7 (N.D. Cal. June 5, 2025); *Cole v. Wright*

6    *Med. Tech. Inc.*, No. 2:20-CV-03993-RGK-E, 2020 WL 5846460, at *4-6 (C.D. Cal. July 27, 2020).

7    In fact, Nuna did not cite a single Ninth Circuit case where the court dismissed a negligent

8    misrepresentation claim because the alleged misrepresentations were made to the public.

9        **D.    Plaintiffs Have Adequately Pleaded Their Warranty Claims.**[11]

10            **1.    Plaintiffs Allege Claims for Breach of the Implied Warranty of Merchantability.**

11        Nuna argues that Plaintiffs' implied warranty claim must fail for lack of privity, Mot. at 11,

12    but "where there are 'direct dealings' between parties for the sale and purchase of a good, vertical

13    privity may be satisfied." *Heidelberg USA, Inc. v. PM Lithographers*, Inc., No. CV 17-02223-AB

14    (AJWx), 2017 WL 7201872, at *11 (C.D. Cal. Oct. 19, 2017). Nuna provided Plaintiffs and Class

15    Members with implied warranties that the RAVA was merchantable and fit for the ordinary

16    purposes for which it was used and sold and would conform to the promises and affirmations of

17    fact made by Nuna in its safety representations and omissions. CAC ¶¶ 51-55. Plaintiffs and Class

18    Members purchased the RAVA based on these representations. Moreover, Plaintiffs have dealt

19    directly with Nuna raising their concerns about their Car Seats or the Recall, *id.*, ¶¶ 113, 140, 152,

20

21    _____

    [11] As an initial matter, Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade have satisfied any
22    pre-suit notice and demand requirement applicable to these counts, as "this [pre-suit notice]
    requirement is excused as to a manufacturer with which the purchaser did not deal." *In re Toyota*
23    *Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d
    1145, 1180 (C.D. Cal. 2010); *see also* Mot. at 12. All three purchased their RAVA Car Seats from
24    third-party vendors, CAC ¶¶ 159, 168, 181, and are therefore excused from any requirement to
    provide Nuna with pre-suit notice imposed by Cal. Com. Code § 2607(3)(A).
25    As to the CLRA, Cal. Civ. Code § 1782(a) provides that a plaintiff must provide notice to a
    defendant "[t]hirty days or more prior to the commencement of an action *for damages* pursuant to
26    this title." (emphasis provided). Plaintiffs Bernasconi Pelufo, Sadasey, and Faridian Kade's initial
    CLRA claim was solely for injunctive relief. Plaintiffs amended their CLRA claim to include a
27    request for damages *after* giving Nuna the required 30-day notice. *See* CAC ¶ 294. Nothing further
    is required, especially as sending additional pre-suit notice would have been futile for Plaintiffs.
28    Nuna has been aware of the Defect for many years—and has been on-notice of these claims since
    the date of the first-filed lawsuit on February 6, 2025. *See Khanna* Compl., ECF No. 1.

186, 191, including in at least one case, seeking a warranty repair (which Nuna denied), *id.* ¶¶ 152-53. These direct dealings with Nuna satisfy the privity requirement. *Id.* ¶ 244; *see also Heidelberg USA, Inc.*, 2017 WL 7201872 at *11.

In any event, this case falls under the third-party beneficiary exception, described at length in *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018). Courts are split, but many courts have held that a consumer who purchased a product from a retailer can invoke the third-party beneficiary exception to bring an implied warranty claim against the manufacturer. *See, e.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018) (applying third-party beneficiary exception to uphold implied warranty claims against manufacturer of defective smartphones); *see also, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) (concluding "that the third-party beneficiary exception remains viable under California law"). This makes sense. In our modern world, end retailers are rarely the manufacturer for a given product. Requiring privity between that consumer and manufacturer would therefore altogether foreclose many consumer protection suits under California law, in contravention of the stated purpose of such laws. *See, e.g.*, *California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1085 (2023) ("The [UCL's] purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.") (cleaned up) (citing *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 954 (2017)).

Here, Plaintiffs have alleged facts supporting the third-party beneficiary exception to privity, including that Nuna's own website directs customers to third-party vendors. CAC ¶ 46. Nuna, presumably, enters into contracts with third-party vendors such as those listed on its own website to fulfill consumers' orders, further supporting the application of the third-party beneficiary exception in this case. Beyond this, Nuna provides warranties for the RAVA car seats directly to consumers. *Id.* ¶¶ 227, 240. As Judge Orrick held in *Long* when sustaining plaintiff's implied warranty and Magnuson-Moss Warranty Act claims:

> Consumers do not merely expect a car seat to serve its bare-minimum purpose, but rather, "reasonably expect that a child's car seat is safe, will function in a manner that will not pose a safety hazard, and is free from defects." . . . . the mere fact that a child car seat keeps a child strapped in does not mean that it is fit for its intended purpose—reasonable consumers would also expect that they would be able to

quickly unlatch the harness or buckle in case of an emergency[.]

*Long*, 2013 WL 4655763 at *12. That reasoning applies equally here.

### 2. Plaintiffs Allege Claims for Breach of Express Warranty.

As Nuna's authority confirms, "a seller may create an express warranty by making an 'affirmation of fact or promise' or description of the goods which becomes 'part of the basis of the bargain.'" *Ng v. Nissan N. Am., Inc.*, No. 23-CV-00875-AMO, 2023 WL 9150275, at *4 (N.D. Cal. Dec. 27, 2023) (citing Cal. Comm. Code § 2313(1)(a), (b)). Here, Plaintiffs allege Nuna promised that purchasers of a RAVA Car Seat "can trust in its unwavering security," and that the RAVA is "engineered for growth keeping baby to 'tween safe at every stage," and combines "safety with high design," among other affirmations. CAC ¶¶ 51, 55. Moreover, Plaintiffs allege that Nuna "breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Defendant made about the RAVA Car Seats, by failing to truthfully advertise and warrant that the RAVA Car Seats were safe, free of defect, and fit for their intended purpose." CAC ¶ 253. Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 969. Nuna's statements about safety and reliability are precisely the type of affirmations that create enforceable express warranties.

Moreover, "[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) (citing *Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (finding "allegations [] sufficient to state a claim for breach of express warranty" where plaintiffs satisfied the reasonable consumer standard)); *see also Ham*, 70 F. Supp. 3d at 1195.

Nuna's cited case law relies on non-precedential authority for the rule that design defects cannot be covered by an express warranty that covers manufacturing defects only. *See* Mot. at 12. *Chiulli*, the only California case Nuna offers in support of this point, relies on *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 668 (9th Cir. 2013), which at least one opinion in this District

has described as "non-binding authority" that is "not instructive or relevant to breach-of-warranty claims." *See Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2020 WL 9066153, at *10 (N.D. Cal. Jan. 30, 2020). Plaintiffs note, however, that design defects are *not* listed among the warranty's multiple express exclusions. *Bernasconi-Pelufo v. Nuna*, No. 3:25-cv-0296, ECF No. 17-4, at 2-3 (listing issues "[o]ur limited warranty does **not** cover" (emphasis in original)).

### 3.    Plaintiffs Have Stated a Magnuson-Moss Warranty Act Claim.

Nuna argues that class claims under the Magnuson-Moss Warranty Act are only cognizable where there are 100 named plaintiffs. Mot. at 13 (citing 15 U.S.C. § 2310(d)(3)). However, "where the party invoking federal jurisdiction is able to meet his or her burden of proving jurisdiction under [the Class Action Fairness Act ("CAFA")], the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson–Moss Warranty Act." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012) (collecting cases). Plaintiffs have satisfied this requirement by alleging "the aggregate amount in controversy exceeds $5,000,000.00" and that the district court has diversity jurisdiction under CAFA. *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *3 (9th Cir. Dec. 27, 2023); 28 U.S.C. § 1332(d)(2)(A); CAC ¶ 38.

### 4.    Plaintiffs' Song-Beverly Warranty Act Claim Should Be Sustained.

Nuna argues that Plaintiffs Khanna, Chapman, Larry, Smith, and Pelufo's Song-Beverly Act claims fail because they did not experience manifestation of the Defect. But Nuna *already* admitted that the RAVA Car Seats are defective and implemented a recall. *See* CAC ¶¶ 57-60; *see also* January Notice Letter at 1 ("[Nuna] has decided that a defect which relates to motor vehicle safety exists in certain Nuna Rava Convertible Car Seats"). Nuna now suggests that parents must wait for that Defect to "manifest"—namely, for their child to actually be endangered or injured, before honoring its warranty obligations for a safety defect it admitted exists. This untenable and callous position—from a child safety product manufacturer, no less—is demonstrative of Nuna's total disregard for the actual safety of children that its overpriced car seats were supposed to protect.

Nuna "conflates cases where a defect causes an injury, and those, like this one, where the defect itself is the injury." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019).

1    Plaintiffs are entitled to relief for their economic injuries resulting from overpayment, loss of use,

2    and replacement costs "'because the [car seats] were defective and not of merchantable quality at

3    the time they left [Nuna's] possession. . . . [P]roof of the manifestation of a defect is not a

4    prerequisite.'" *Id.* at 820 (quoting *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168,

5    1173 (9th Cir. 2010)); *see also In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp.

6    3d 625, 810 (C.D. Cal. 2022) ("[E]ven if Plaintiffs continued to drive their Class Vehicles, and

7    have not suffered serious bodily harm as a result of the Alleged Defect, they have alleged sufficient

8    facts to state a plausible claim that the vehicles are not fit for their ordinary purpose, which is 'to

9    provide . . . safe, reliable transportation.'") (quoting *Clark v. Am. Honda Motor Co.*, 528 F. Supp.

10   3d 1108, 1120 (C.D. Cal. 2021)), *opinion clarified sub nom. In re ZF-TRW Airbag Control Units

11   Prod.*, No. LAML1902905JAKFFMX, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022)); *see also*,

12   *e.g.*, CAC ¶¶ 104, 115, 130, 141, 155, 164, 177, 193 (alleging injury).

13       **E.    Plaintiffs Have Adequately Alleged Unjust Enrichment.**

14       Nuna is wrong that California does not permit standalone unjust enrichment claims. *Cf.*

15   Mot. at 22 (citing *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)). Although courts

16   in the past have had diverging viewpoints on this issue, "[m]ore recent authority, [] confirms that

17   both the Ninth Circuit and the California Supreme Court construe California law to permit a cause

18   of action for unjust enrichment." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1132-33 (N.D.

19   Cal. 2023) (collecting cases); *see also, e.g., Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470

20   (9th Cir. 2017) (noting California law "allow[s] an independent claim for unjust enrichment to

21   proceed") (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).

22       "To allege unjust enrichment as an independent cause of action, a plaintiff must show that

23   a defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners,

24   LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Goldstein v. Gen. Motors LLC*, 445 F.

25   Supp. 3d 1000, 1020 (S.D. Cal. 2020). Here, Plaintiffs allege that they and the Class Members

26   conferred benefits on Nuna by purchasing RAVA Car Seats, and that this benefit was unjustly

27   conferred upon Dependent through its misleading statements that the RAVA Car Seat was safe for

28   its principal use of safely transporting children when it is not. CAC ¶¶ 46-48, 51-55, 75.

### F.      Plaintiffs Have Adequately Pleaded a Basis for Punitive Damages.

"Federal Rules of Civil Procedure provide the pleading standard for cases in federal courts." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015). "Although [Cal. Civil Code] Section 3294 provides the governing substantive law for punitive damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure." *Id.* "Accordingly, in federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Id.* (citing *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1019 (S.D.Cal.2000) (quotation marks omitted). Thus, "[u]nder federal pleading standards, defendant's argument that plaintiff must plead specific facts to support allegations for punitive damages is without merit." *Somera v. Indymac Fed. Bank, FSB*, Case No. 09–1947, 2010 WL 761221, at *10 (E.D. Cal. Mar. 3, 2010); *see also Warsavsky v. Jaguar Land Rover N. AM., LLC*, No. CV 20-11159PA (EX), 2021 WL 1557751, at *2 (C.D. Cal. Mar. 10, 2021).

The allegations of the CAC show an award of punitive damages is "reasonably possible." *See Green v. Harley-Davidson, Inc.*, 965 F.3d 767, 769 (9th Cir. 2020). Although Nuna was aware of the Defect (as evidenced by myriad consumer complaints since late 2020 and a change in design that directly addressed this longstanding—but undisclosed—Defect), Nuna did not stop selling defective car seats and initiate a faulty Recall until December 20, 2024. This supports a finding that profits were placed over children's safety, and thus supports an award of punitive damages. *Id.* ¶¶ 57, 199. Further, the Recall is grossly insufficient, inadequate, and illusory. *See id.* ¶¶ 81-96; *see also* Section II(B), *supra*. At a minimum, the Court should decline to dismiss Plaintiffs' prayer for punitive damages on a Rule 12 motion and decide the issue on a full factual record.

## IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendant Nuna's Motion to Dismiss in its entirety. Should the Court be inclined to grant the Motion to Dismiss in any respect, Plaintiffs respectfully request leave to amend to correct any deficiencies.[12]

---

[12] "Leave to amend shall be freely given when justice so requires, and this policy is to be applied with extreme liberality." *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)).

1

2                                        Respectfully submitted,

3

4       DATED: September 18, 2025                    DATED: September 18, 2025

5       **MILBERG COLEMAN BRYSON**                   **KAPLAN FOX & KILSHEIMER LLP**
        **PHILLIPS GROSSMAN, PLLC**

6       By: /s/ *William A. Ladnier*                 By: /s/ *Matthew B. George*
              William A. Ladnier                          Matthew B. George
7

8       Adam A. Edwards (*pro hac vice*)             Laurence D. King (SBN 206423)
        William A. Ladnier (SBN 330334)              Matthew B. George (SBN 239322)
9       Virginia Ann Whitener (*pro hac vice*)       A.J. de Bartolomeo (SBN 136502)
        800 S. Gay Street, Suite 1100                Blair E. Reed (SBN 316791)
10      Knoxville, TN 37929                          Clarissa R. Olivares (SBN 343455)
        Telephone: (865) 247-0080                    1999 Harrison Street, Suite 1560
11      Facsimile: (865) 522-0049                    Oakland, CA 94612
        Email:  aedwards@milberg.com                 Telephone: 415-772-4700
12              wladnier@milberg.com                 Facsimile: 415-772-4707
                gwhitener@milberg.com                Email:  lking@kaplanfox.com
13                                                           mgeorge@kaplanfox.com
        **MILBERG COLEMAN BRYSON**                           ajd@kaplanfox.com
14      **PHILLIPS GROSSMAN, PLLC**                          breed@kaplanfox.com
        Alex R. Straus (SBN 321366)                          colivares@kaplanfox.com
15      280 S. Beverly Drive, PH Suite
        Beverly Hills, CA 90212                      *Attorneys for Plaintiffs Mariana Bernasconi*
16      Tel: (866) 252-0878                          *Pelufo, Eleisha Sadasey, Behnaz Faridian Kade,*
        Fax: (865) 522-0049                          *and the Proposed Class*
17      astraus@milberg.com

18      **LAUKAITIS LAW LLC**
        Kevin Laukaitis (*pro hac vice*)
19      Daniel Tomascik (*pro hac vice*)
        954 Avenida Ponce De Leon
20      Suite 205, #10518
        San Juan, PR 00907
21      Telephone: (215) 789-4462

22      *Attorneys for Plaintiffs Prashmi Khanna,*
        *Fabiola Chapman, Tina Marie Barrales,*
23      *Tiffany Larry, Alyna Smith and the Proposed*
        *Class*
24

25

26

27

28