**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email:  aedwards@milberg.com
        wladnier@milberg.com
        gwhitener@milberg.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
A.J. de Bartolomeo (SBN 136502)
Clarissa Olivares (SBN 343455)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  lking@kaplanfox.com
        mgeorge@kaplanfox.com
        ajd@kaplanfox.com
        colivares@kaplanfox.com

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NUNA BABY ESSENTIALS  RAVA LITIGATION | Case No. 3:25-cv-01284-AMO |
| | <u>**Class Action**</u> |
| | **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

<u>**[PUBLIC/REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**</u>

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PARTIES .......................................................................................................... 8

    A.    Plaintiffs ................................................................................................ 8

    B.    Defendant .............................................................................................. 9

III.  JURISDICTION AND VENUE ......................................................................... 9

IV.   DIVISIONAL ASSIGNMENT ........................................................................ 10

V.    FACTUAL ALLEGATIONS ........................................................................... 10

    A.    Nuna Manufacture RAVA Car Seats and Markets Them As Safe ....... 10

    B.    The RAVA Car Seat Defect and Recall ............................................... 14

    C.    ██████████████████████████████████ ....................... 16

    D.    Consumers Reported the Defect to NHTSA Soon After RAVAs Went on Sale ..................................................................................................... 38

    E.    Nuna's Voluntary Recall is Ineffective ............................................... 47

    F.    Consumers Continue to Complain About the Defect and the Recall ..... 50

VI.   PLAINTIFFS' EXPERIENCES ....................................................................... 61

    A.    Plaintiff Tina Marie Barrales ............................................................... 61

    B.    Plaintiff Alyna Smith ........................................................................... 63

    C.    Plaintiff Mariana Bernasconi Pelufo .................................................... 65

    D.    Plaintiff Behnaz Faridian Kade ........................................................... 67

VII.  THE STATUTES OF LIMITATIONS SHOULD BE TOLLED ...................... 70

    A.    Continuing Act Tolling ........................................................................ 70

    B.    Fraudulent Concealment Tolling .......................................................... 71

    C.    Discovery Rule Tolling ........................................................................ 72

    D.    Estoppel ............................................................................................... 72

VIII. CLASS ACTION ALLEGATIONS ................................................................. 72

IX.   CLAIMS FOR RELIEF ................................................................................... 74

PRAYER FOR RELIEF ............................................................................................ 83

JURY TRIAL DEMAND .......................................................................................... 84

Plaintiffs Tina Marie Barrales, Alyna Smith, Mariana Bernasconi Pelufo, and Behnaz Faridian Kade, individually, and on behalf of themselves and a Class of those similarly situated ("Plaintiffs"), bring this action by the undersigned counsel against Defendant Nuna Baby Essentials, Inc. ("Defendant" or "Nuna") based upon personal knowledge of the allegations pertaining to themselves, and upon information, belief, and the investigation of counsel as to all other allegations.

## I.     INTRODUCTION

1.      Plaintiffs Tina Marie Barrales, Alyna Smith, Mariana Bernasconi Pelufo, and Behnaz Faridian Kade, on behalf of themselves and all others similarly situated, bring this Consolidated Class Action Complaint against defendant Nuna Baby Essentials, Inc. for designing, manufacturing, developing, marketing, selling, and distributing the defective and unsafe "RAVA" Convertible Car Seat ("RAVA," or "RAVA Car Seat") throughout the United States.

2.      The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds. *See* https://nunababy.com/usa/rava-convertible-car-seat, *last accessed February 4, 2026.*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

3.     The RAVA Car Seats are sold for approximately $550.00, significantly more expensive than similar convertible car seats. *See* https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed March 26, 2025.*

 

 

4.     On its website, Nuna advertises the RAVA Car Seats as a "[f]an-favorite for security, ease-of-use, longevity and sleek design." *See* https://nunababy.com/usa/rava-convertible-car-seat, *last accessed February 4, 2026.* The RAVA Car Seats, like other car seats, are designed and manufactured to provide safe and secure transport for children riding in a vehicle. The RAVA Car Seats provide protection through a five-point harness system that, when tightened, is designed

to remain securely in place until the front release button is pressed and the harness straps are loosened simultaneously. As the marketing confirms, the harness system is intended to remain secure throughout the ride, and especially during a crash. *Id.*

5.     This, however, is not the case. The RAVA Car Seats are unsafe and unsuitable for their intended purpose: providing safe transport for children because of a dangerous safety defect. The front harness adjuster controls the tightness of the RAVA Car Seat straps, but Nuna designed over 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023 without a cover over the front harness adjuster area. *See* RAVA Voluntary Recall, https://nunababy.com/recalls-rava1, *last accessed February 5, 2026* ("Recall Notice"), attached as **Exhibit A**. As a result, debris—whether from snacks, toys, or any of the endless variety of debris a child can produce—that falls into the front harness adjuster area can "cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight. A loose harness may not properly restrain the occupant, increasing the risk of injury in a crash." *Id.; see also* Nuna Baby Essentials Inc, Important Safety Recall, Jan. 15, 2025, https://static.nhtsa.gov/odi/rcl/2024/RIONL-24C002-8759.pdf, *last accessed February 5, 2026* ("January Notice Letter"), attached as **Exhibit B** ("Debris can enter the area where the front harness adjuster button is located [which] may cause the harness to no longer remain tight. A loose harness may not properly restrain the child, increasing the risk of injury in a crash."). Herein, Plaintiffs collectively refer to the dangerous failures of the harness mechanism and straps to remain secure described in the Recall Notice and January Notice Letter as the "Defect." Many consumers have also publicly reported experiencing the Defect occurring even without debris in the harness adjuster area or after cleaning it out.

6.     As a result of this dangerous Defect, toddlers and children can—and indeed have— experienced the harness and straps of the RAVA Car Seat loosening to the point that they are not secure while in transit and can even get out of the RAVA Car Seat while their parent is driving. Slippage of the harness during a crash can also compromise the ability of the RAVA to properly secure the child through the crash and allow for increased excursion out of the child seat. In the

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

worst-case scenario, a child could be insecurely fastened during a car accident, leading to injury or even death.

7.    Not only is it critical that children and infants are secure in their harness, especially in the event of a crash, but children are "not known for their neatness": the presence of sand, dirt, crumbs, slick substances, or other debris on the surface of the RAVA Car Seat may cause the Defect to manifest, preventing the adjuster mechanism from functioning properly and allowing the harness to loosen. *See* https://www.nbcnews.com/business/recall/nuna-baby-essentials-recall, *last accessed February 4, 2026*. And, consumers have publicly reported experiencing the Defect even without debris and even after cleaning any debris out. Simply put, the Defect causes the RAVA Car Seat to fail to provide the intended and expected safety protection for children in motor vehicles.

8.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████    Additionally, by the time of the Recall, consumers had lodged 46 complaints with the National Highway Transportation Safety Administration ("NHTSA"). ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

9.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6    10.    ███████████████████████████████████████████

7

8

9

10

11

12

13

14

15    11.    ███████████████████████████████████████████

16

17

18

19

20

21    12.    Nuna's deceptive conduct is especially egregious because it touts the RAVA's

22    "unwavering security," "all-steel frame," and "energy absorbing foam" to convince safety-

23    conscious parents to shell out for an expensive car seat, but all of those safety features are for naught

24    if the RAVA Car Seat fails in its most basic purpose: securely fastening children into the RAVA.

25    *See* https://nunababy.com/usa/rava-convertible-car-seat, *last accessed February 4, 2026*.

26    13.    Nuna concealed the RAVA's safety Defect because it knows parents like Plaintiffs

27    are concerned for the safety of their children and are willing to pay top-dollar for the safest car seat

28    possible. No reasonable consumer would purchase a premium, expensive car seat to transport

babies and children that has or could develop a serious safety defect that could harm or even kill their child. Had Nuna disclosed the Defect to consumers, they would not have purchased RAVAs and/or would not have paid high, premium prices for them.

14.     While some consumers can no longer use their RAVA Car Seats because of the Defect and have resorted to purchasing substitute car seats, others, who simply cannot afford to replace their $550 RAVA, now fear for their children's safety because the Defect can manifest while in ordinary use—indeed, the Defect's manifestation is *caused* by perfectly ordinary use.

15.     As of December 20, 2024, the RAVA Car Seats are subject to a Recall. *See* Recall Notice, Exhibit A; January Notice Letter, Exhibit B, which references the Recall as "NHTSA Recall No. 24C002." Notably, over a year later not all impacted consumers have received this notice yet. Further, it is unclear how Nuna intends to send this notice to consumers or whether Nuna can even ensure that all purchasers of the Product receive notice of the Recall at all. Given this, it is unclear if a majority of RAVA Car Seat purchasers have learned—or even can learn—about the dangers of continued use of the RAVA Car Seats, or of the inherent and significant safety risks associated with continued use of the RAVA Car Seats.

16.     In the Recall notice, Nuna recognizes that the Defect impacts the safety of the RAVA Car Seat and, when manifested, can cause the harness to loosen, which causes it to "not properly restrain the occupant, increasing the risk of injury in a crash." Recall Notice, Exhibit A, at 1. Indeed, Nuna explains that "[i]f the harness lengthens while [testing to determine if the Defect has manifested], STOP using the seat . . . immediately." January Notice Letter, Exhibit B, at 2. Nuna itself warns consumers not to use the RAVA Car Seats when the Defect manifests—which, given the common circumstances giving rise to manifestation, likely occurs often—but fails to provide a meaningful remedy to address this or provide monetary reimbursement.

17.     The Recall is wholly inadequate. Rather than actually recalling this unsafe product, Nuna instead only offers to provide parents with instructions on how to slightly clean and modify their existing RAVA Car Seat—by promising only a new seat pad, cleaning kit, and care instructions (the "Remedy Kit") (which would only end up arriving months after the Recall was announced). *See* Recall Notice, Exhibit A. Parents must then disassemble, clean, and reassemble

the RAVA Car Seat, and hope that the Defect will not manifest or recur. The Recall also relies on the parent to properly re-assemble the adjuster cover and correctly re-route straps through the seat cover. Thus, even setting aside Nuna's failure to provide any financial compensation, the inadequacy of these modifications of the Recall only further diminishes the value of Nuna's so-called "luxurious" car seats. https://nunababy.com/usa, *last accessed February 4, 2026.*

18.     Worse, the Recall requires consumers to *request* remediation—which they must install themselves, as laypersons with no knowledge of the design of car seats. And, consumers have publicly complained to NHTSA and retailers that the Recall (and Nuna's handling of it) is ineffective because, *inter alia*, that notice of Nuna's recall never reached them directly and that they only learned about it through third-parties; that Nuna's customer service was disorganized and unresponsive; that Nuna refused to provide reimbursements, refunds, or replacement non-defective car seats; that the Defect was occurring even without debris and that it continued to recur after cleaning; that Nuna's Remedy Kit was not available for many months after the Recall; that Nuna's Remedy Kit was difficult to install; that the RAVA was not properly tested for safety with the Recall and/or Remedy Kit; and that the Defect persisted after the Remedy Kit was installed and cleaning instructions Nuna provided were undertaken. In some of the more remarkable complaints, consumers reported that Nuna's customer service personnel gallingly suggested that rodents were infested in a consumer's car seat and told a woman who was 34 weeks pregnant that she had to undertake the physically strenuous task of removing her RAVA that she had already registered with Nuna in order to confirm its information before being provided a Remedy Kit. Despite these facts, Nuna claims that it has done all it has to and that consumers should just have to live with their defective, demonstrably unsafe car seats, and its shoddy Recall.

19.     Accordingly, Plaintiffs bring this proposed class action on behalf of California consumers and request a full refund, reimbursements, and/or applicable damages for these expensive RAVA Car Seats, as well as all other appropriate injunctive and equitable relief.

/ / /

/ / /

/ / /

1

## II.    PARTIES

2

### A.    Plaintiffs

3

20.    Plaintiff Tina Marie Barrales is a citizen of the State of California in Los

4

Angeles County.

5

21.    In approximately August 2022, Plaintiff Barrales purchased a RAVA Car Seat in

6

Huntington Park, California from Nordstrom, an authorized retailer. Ms. Barrales' RAVA Car Seat

7

has a model number CS05105BAC and was manufactured on November 25, 2021.

8

22.    Plaintiff Alyna Smith resides in and is a citizen of the State of California in Los

9

Angeles County.

10

23.    In August 2023, Plaintiff Smith purchased a RAVA Car Seat in California online

11

from bambibaby.com. Ms. Smith's RAVA Car Seat has a model number CS05103 and

12

manufactured on December 10, 2022.

13

24.    Plaintiff Mariana Bernasconi Pelufo resides in and is a citizen of the State of

14

California in San Francisco County.

15

25.    In September 2019, Plaintiff Bernasconi Pelufo purchased a RAVA Car Seat in

16

California for $444.44. After that RAVA Car Seat was involved in a car break-in in approximately

17

October, 2019, Plaintiff Bernasconi Pelufo gifted it to a friend and then purchased a second RAVA

18

Car Seat in California in November 2019 for $399.99. Plaintiff Bernasconi Pelufo was then

19

involved in a car accident on May 27, 2022, and, as her child was quickly outgrowing the RAVA

20

Car Seat, purchased a Nuna Exec Car Seat to replace the RAVA Car Seat after the accident.

21

26.    Plaintiff Behnaz Faridian Kade resides in and is a citizen of the State of California

22

in Los Angeles County.

23

27.    In 2021, Plaintiff Faridian Kade purchased a RAVA Car Seat in California from

24

Pottery Barn for approximately $550.00. On or about August 24, 2022, Plaintiff Faridian Kade

25

purchased a second RAVA Car Seat from Bloomingdale's for $547.45. Plaintiff Faridian Kade's

26

RAVA Car Seats have model numbers of CS05103CVR and CS05103ROS, serial numbers of

27

0788875 and 0552308, and were manufactured on September 4, 2021, and June 9, 2022,

28

respectively.

**B.    Defendant**

28.    Defendant Nuna Baby Essentials, Inc., is a Pennsylvania corporation whose principal place of business is at 70 Thousand Oak Blvd., Morgantown, Pennsylvania 19543-8878. Thus, for jurisdictional purposes, Defendant is a citizen of the State of Pennsylvania.

29.    Defendant Nuna Baby Essentials, Inc., is owned by Nuna International B.V., a subsidiary of Wonderland Nurserygoods, a Taiwanese company.

30.    Nuna Baby Essentials, Inc. designs, manufactures, distributes, markets, advertises, labels, and sells products for babies to consumers throughout the United States, including in California.

## III.    JURISDICTION AND VENUE

31.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 ("CAFA") because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiffs and Defendant are citizens of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

32.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

33.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs are citizens of California and purchased the product in California and within this District.

34.    This Court has personal jurisdiction over Defendant because Defendant has transacted business and affairs in California and has committed the acts complained of in California.

35.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Defendant has transacted business and affairs in this District and has committed the acts complained of in this District.

/ / /

/ / /

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

IV.    **DIVISIONAL ASSIGNMENT**

36.    Pursuant to Local Rules 3-2(c) and 3-2(d), assignment of this Action to the San Francisco Division or the Oakland Division is proper because a substantial part of the events or omissions giving rise to Plaintiff Bernasconi Pelufo's claims occurred in San Francisco County.

V.    **FACTUAL ALLEGATIONS**

A.    **Nuna Manufactures RAVA Car Seats and Markets Them As Safe**

37.    Nuna is a consumer goods company founded in 2007 specializing in baby products. https://www.linkedin.com/company/nunababy/, *last accessed February 4, 2026.*

38.    Nuna markets itself as a "global brand . . . inspired by the ingenuity of Dutch design." https://nunababy.com/usa/about, *last accessed February 4, 2026.*

39.    Nuna develops, manufactures, markets, and sells car seats, including all variations of the RAVA Car Seat. The RAVA product line includes several substantially similar models: CS-50-001 Caviar, CS-50-002 Indigo, CS-50-003 Berry, CS-50-004 Blackberry, CS-50-005 Slate, CS05101CHC Charcoal, CS05103CVR Caviar, CS05103FRT Frost, CS05103GRN Granite, CS05103LAK Lake, CS05103OXF Oxford, CS05103ROS ROSE, CS05115DDC Droplet Dot Collection, CS05105BAC Broken Arrow Caviar, CS05106BRS Brushstroke, CS05107RFD Refined, CS05109RVT Riveted, CS05110LGN Lagoon, CS05110EDG Edgehill, CS05111OCN Ocean, CS05114CRD Curated, CS05104THR Threaded, and CS05101HCV Verona. *See* Recall Notice, Exhibit A.

40.    Per Nuna's website, consumers can purchase the RAVA at Brixy, where it is listed for $550. https://nunababy.com/usa/rava-convertible-car-seat, *last accessed August 5, 2025*; https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed February 4, 2026.* The RAVA Car Seat is also available at other online and brick and mortar vendors throughout the United States, including such as Nordstrom, Bloomingdale's, Pottery Barn Kids, Neiman Marcus, Kidsland USA, and others.

41.    Nuna's RAVA is priced well in excess of competitors' models, even selling at multiples of what other well-known brands charged. In a survey of 2022 prices from the American Academy of Pediatrics, found at healthychildren.org, Nuna's RAVA was listed at $449.95 with the

convertible model priced at $599.95. Comparable models were substantially cheaper, such as Cosco Scenera NEXT priced at $48.98, Disney Scenera NEXT Luxe priced at $54.99, Evenflo Sonus priced at $85.99, Safety 1st JIVE priced at $99.99, Baby Trend Trooper priced at $99.99, Maxi-Cosi Romi priced at $129.99, Graco Contender GO Convertible priced at $139.99, and Britax Emblem priced at $199.99.

42. Nuna commands this expensive price point because of its perception among new parents and within the industry: that its car seats, including the RAVA Car Seats at issue, are high quality, long lasting, and—above all else—very safe.

43. The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds. https://nunababy.com/usa/rava-convertible-car-seat, *last accessed March 26, 2025.*

44. Plaintiffs allege that Nuna represented that the RAVA Car Seat would expand to grow with consumers' children, and even indicated on a sticker on the seat shell and in the instruction manual that a RAVA would last 10 years. Consumers have discussed this representation online. *See, e.g.,* https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 complaint dated February 21, 2023 noting the RAVA's "10 year expiration date"), *last accessed March 27, 2025*; https://community.babycenter.com/post/a75754862/nuna-rava-worth-the-hype (comment asking: "Will [the RAVA Car Seat] make it the 10 years as advertised?"), *last accessed March 27, 2025.*

45. The RAVA Car Seat is marketed as "a reliable anchor to your child's car-riding adventures and your parental peace of mind[.]" Nuna promises that consumers who buy a RAVA Car Seat "can trust in its unwavering security[.]" https://nunababy.com/usa/rava-convertible-car-seat, *last accessed August 5, 2025.*

46. In promotional materials distributed at the point of sale, Nuna advertises that RAVA purchasers can "relax and enjoy every magical, messy, covered-with crumbs moment."



47.    These representations echo representations Nuna makes about its products generally, *see id.*:

> Our baby gear is extensively tested before it leaves the factory. We use advanced equipment and testing methods, going above and beyond what's required. To ensure compliance with safety standards, we regularly have our gear tested at accredited, independent labs.

48.    On the "Features & Specs" page for the RAVA Car Seat, Nuna begins by listing six safety features, including several promising that consumers' children will be securely fastened into the RAVA. Specifically, Nuna advertises the RAVA Car Seat's:

- "All-steel frame and reinforced belt path for superior protection

- EPO energy-absorbing foam and Side Impact Protection (SIP) pods for ultimate safekeeping

- Simply™ secure installation for confidence every time

- True tension™ doors provide a secure fit without the struggle

- Colored belt path indicators decrease risk of install errors

- Quick-release 3 to 5-point harness makes it easy to fasten them in[.]"

*See* https://nunababy.com/usa/rava-convertible-car-seat, *last accessed March 26, 2025.*

49.     The RAVA manual includes a section titled "Cleaning and Maintenance," but does not advise parents to keep the harness latching mechanism area clean or free of debris. For example, in the section titled "Cleaning the Harness," Nuna advises that, "[w]hen required, harness may be hand washed with a sponge . . ." and towel dried. Nuna does not instruct parents to brush out or vacuum the harness locking mechanism area to remove any crumbs or debris. Nor does it state that debris in the harness latching mechanism may cause the straps to loosen. To the contrary, the instructions state: "WARNING: Do not attempt to disassemble the Child Restraint. **Only perform steps shown in this manual**." (Emphasis provided).

50.     Nuna also engaged in targeted advertising for the RAVA Car Seat through the internet and social media.

51.     Targeted advertising occurs when, based off a profile built by analyzing an individual's online and on-device activity, businesses and retailers like Nuna target specific, individual consumers with advertisements that are likely to be relevant to their interests, such as expecting parents. As any new parent knows, targeted advertising is particularly prevalent in the market for baby products, such as car seats.

52.     As evidenced by the supremacy of safety considerations in its marketing, Nuna knows that safety is the paramount consideration of parents purchasing a RAVA Car Seat. For example, Nuna boasts that "Nuna's luxurious car seats are engineered for growth keeping baby to 'tween safe at every stage. Combining safety with high design, Nuna's car seats are mindfully manufactured[.]" https://nunababy.com/usa, *last accessed March 26, 2025*. In its "Car Seat Headquarters" webpage, https://nunababy.com/usa/us-car-seat-headquarters, *last accessed March 26, 2025*. Nuna describes its purportedly top-of-the-line safety features at length:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15









16    53.    But all of these highly-marketable safety innovations are for naught if the RAVA

17   Car Seat fails to perform a car seat's most basic function: keeping children fully secured in the

18   child seat.

19    **B.    The RAVA Car Seat Defect and Recall**

20    54.    On December 20, 2024, Nuna instituted a "voluntary recall" for 600,000 RAVA Car

21   Seats manufactured between July 16, 2016 and October 25, 2023. *See* Recall Notice, Exhibit A;

22   NHTSA, Part 573 Safety Recall Report, Nov. 27, 2024,

23   https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24C002-8642.PDF, *last accessed February 5, 2026.*

24    55.    This Recall concerns a Defect involving a "loose harness [that] may not properly

25   restrain the occupant, increasing the risk of injury in a crash." Recall Notice, Exhibit A.

26    56.    Due to this Defect, the harness may become loose and not function properly,

27   including, but not only, when debris that enters the area where the front harness adjuster button is

28   located that "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the

adjuster strap, resulting in the harness no longer remaining tight." *Id.* The Recall Notice states that, when the Defect manifests, consumers should *immediately* stop using the RAVA Car Seat. *Id.*

57.    Put differently, despite Defendant's representations about the safety of the RAVA Car Seat, the RAVAs do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the RAVA's design. The RAVA Car Seat lacks a cover over the front harness adjuster, which controls the tightness of the RAVA's straps. According to Nuna, as a result, debris, including from snacks, toys, etc., that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA's straps to loosen.    https://www.nbcnews.com/business/recall/nuna-baby-essentials-recall, *last accessed February 4, 2026*. Once the RAVA's straps are loosened, a child can crawl out of their car seat, or, in the case of a car accident, be seriously injured or even killed. Many parents have also publicly reported the Defect occurring even without debris in the harness adjuster area.

58.    This is an extremely dangerous Defect. As any parent or caregiver, or anyone familiar with children whatsoever, will understand, the Defect is exacerbated because children leave behind debris of all kinds—from crumbs of puff snacks, to melted ice cream, to bits of tanbark and twigs—even under the watchful eye of a guardian. Even Nuna recognizes this fact in its advertising, referring to every "covered-with-crumbs moment." Every defective RAVA Car Seat is therefore likely to manifest the Defect at some point (and many parents publicly reported the Defect occurring even without the presence of debris).

59.    Dr. Alisa Baer, a pediatrician and co-founder of The Car Seat Lady, an advocacy organization devoted to preventing children's injuries in cars, confirms this. "The looser the child is in the straps, the longer it takes to stop," she explained. *Id.* "You do not want to make contact with anything except your seat belt or car seat straps in a crash." *Id.* "You should notice no give in the straps. They shouldn't budge[.]" *Id.* When dirt, crumbs, or other debris enter the harness adjuster, "children can accidentally loosen the car seat straps if they lean forward because the locking mechanism might not work[.]" *Id.* Moreover, Dr. Baer confirmed the obvious: "Children are not known for their neatness," meaning that the Defect is likely to manifest. *Id.* "The gripper teeth just don't grip as well on a slick surface." *Id.*

1    **C.**    

2

3    60.

4

5

6

7

8    61.

9

10

11

12    62.

13

14

15    63.

16

17

18

19

20

21    64.

22

23

24

25

26

27    65.

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**





Case No. 3:25-cv-01284-AMO
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

74. 

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



75.



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    79.

25

26

27

28



**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    80.

2

3

4    81.

5

6

7

8

9

10

11

12

13    82.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



This is after I tighten and drive around to our destination.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



85.

86.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



87.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



88.

89.

90.

91.

92.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**





- 32 -

1

2

93. █████████████████████████████████

4 █████████████████████████████████████

5 █████████████████████████████████████

6 █████████████████████████████████████

7 █████████████████████████████████████

8 █████████████████████████████████████

9 █████████████████████████████████████

10 ██████████████████████████████████

11 94. █████████████████████████████████

12 █████████████████████████████████████

13 █████████████████████████████████████

14 █████████████████████████████████████

15 █████████████████████████████████████

16 █████████████████████████████████████

17 ███████████████

18 95. █████████████████████████████████

19 █████████████████████████████████████

20 █████████████████████████████████████

21 ████████████████████████████████████

22 96. █████████████████████████████████

23 █████████████████████████████████████

24 █████████████████████████████████████

25 █████████████████████████████████████

26 █████████████████████████████████████

27 ██████████████████████████

28



1    97. 

2

3

4

5

6

7    98.

8

9

10

11

12

13

14

15    99.

16

17    100.

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



101.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



102.

103.

104.

105.

106.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

107. █████████████████████████████████████████████

108. █████████████████████████████████████████████

109. █████████████████████████████████████████████

110. █████████████████████████████████████████████

**D.    Consumers Reported the Defect to NHTSA Soon After RAVAs Went on Sale**

111.    Nuna's extensive knowledge of the Defect and the serious safety risks it poses is confirmed by RAVA owners' complaints to NHTSA about the Defect and subsequent Recall. To date, NHTSA's website includes 140 complaints about the RAVA and the Recall, with the first complaint made on December 31, 2020—four years before Nuna issued its Recall, and approximately three years before the most recent of Plaintiffs' purchases. In fact, by the time of the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  first consumer complaint to NHTSA, ██████████████████████████████

2  ████████  And, by the time Nuna issued the Recall, 46 complaints had been made to NHTSA.

3      112.    **Exhibit C**, filed herewith, is a summary Exhibit of all 140 NHTSA complaints

4  received to date, listed in chronological order. The complaints can also be accessed on NHTSA's

5  website, here:  https://www.nhtsa.gov/car-seat/NUNA/RAVA/a_4248717.  A  sample  of  the

6  NHTSA complaints with the dates of submission are included below:

7      113.    **2020:** NHTSA received one complaint in 2020:

8          "THE CAR SEAT WAS BEING UTILIZED IN A 2014 GMC
           DENALI. THE CONTACT STATED WHILE THE CAR SEAT
9          WAS OCCUPIED, THE STRAPS FAILED TO TIGHTENED
           CAUSING THE STRAPS TO BE LOOSE AND UNUSABLE. THE
10         MANUFACTURER  WAS  NOT  NOTIFIED  OF  THE
           FAILURE.*DT*JB"
11

12     114.    **2021:** NHTSA received five complaints in 2021:

13         a.    April 15, 2021: "THE CONTACT STATED THAT WHILE
                 ATTEMPTING TO SECURE THE CHILD IN THE CAR
14               SEAT, IT WAS DISCOVERED THAT THE STRAP
                 LOCKING MECHANISM WAS FAULTY AND WOULD
15               NOT REMAIN SECURED. THE CAUSE OF THE
                 FAILURE  WAS  NOT  DETERMINED.  THE
16               MANUFACTURER AND DEALER WAS NOTIFIED OF
                 THE FAILURE.*DT"
17

18         b.    June 5, 2021: Harness will not fully tighten suddenly, car seat
                 available for inspection upon request. Child's straps are not
19               able to pass the "pinch test" making it a safety issue, if in
                 accident child could slip out of the straps. Car seat has not
20               been inspected at this time.

21         c.    July 17, 2021: It was discovered today (July 17, 2021) that 2
                 of  the  3  harness  belts  have  ripped  and  their
22               safety/effectiveness has been significantly compromised. The
                 belt that goes between baby's legs is torn to the halfway
23               point. The seat was installed per the manufacturer's
                 instructions and inspected by the local fire department upon
24               installation. Child's safety was significantly put at risk. We
                 are fortunate to have discovered the issue prior to the safety
25               belt's full failure and/or an accident. Seat was purchased from
                 Nordstroms and we have contacted them to initiate a return.
26               Original purchase date was February 13, 2021. Since belt
                 damage/failure, the car seat has not been inspected by
27               manufacturer, police, insurance rep or others. Manufacturer
                 has been contacted, but a response has not been received, yet.
28               We suspect a design defect has led to friction against the belt
                 at multiple points, which caused the damage.

d.  August 10, 2021: We were leaving a car dealership to head home, my husband put our toddler in his car seat and after doing the pinch test, pulled on the chest buckle to make sure it was tight enough. When he pulled the chest buckle, it loosened both harness belts. We attempted the same scenario over 20 times and each time you could pull on the chest clip and retract both harness belts. Without pushing the button to retract. Nothing is stuck in the car seat as our child doesn't eat or drink in his seat. We uninstalled and reinstalled, opened the seat, etc and there is no issue that we could correct. Our son's life was in danger driving home last night. If we were to have gotten in an accident, the force of the crash would have jolted his body forward and loosened the harness.

115.    **2022:** NHTSA received ten complaints in 2022. A selection of complaints is below:

a.  February 20, 2022: NUNA RAVA HARNESS TIGHTENING STRAP DISCOVERED TO BE FRAYING, AVAILABLE FOR INSPECTION UPON REQUEST. SEAT HAS BEEN USED ACCORDING TO MANUAL, NEVER DAMAGED OR IN ACCIDENT. INSTALL AND USAGE HAS BEEN INSPECTED BY CPST. DISCONTINUED USE PER MANUAL. NUMEROUS SIMILAR COMPLAINTS FOUND IN CHILD SAFETY GROUP. THIS IS EXTREMELY CONCENING AS THE HARNESS IS COMPROMISED AND HAS PLACED CHILD SAFETY AT RISK. INCIDENT REPORTED TO MANUFACTURER. Consumer stated manufacture indicated they would send a new shell to replace the defective one, however the shell is back ordered for up to 3 months, which was not a reasonable solution. Manufacture also indicated that the extent of the fraying "will not present a significant safety concern." Manufacture did eventually agree to replace the seat.

b.  June 8, 2022: My child was secured in the car seat: chest clip, buckled, and the harness pulled to secure. Without pushing the release button, the harness comes loose when pulled. The seat is available for inspection if needed! If coming to an abrupt stop, my child may have come out of the seat. So far, the car seat has not been inspected by anyone else.

c.  June 20, 2022: After the harness is clipped in place and tightened as directed, you can pull the straps forward (including my 3yo child was able to do this) and loosen the straps of the harness without pressing on the release button. The harness pulls loose and will not stay locked in place. I also tried to simulate impact with a sudden and strong pull on the harness to see if it would lock in that situation and it does not. If we had been in an accident using this car seat, my child could have been seriously injured because the harness would have failed to lock. We purchased this in Sept 2019 and just noticed this occurring now but unclear if we just didn't realize it before or if the harness just failed now.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

d.    July 24, 2022: When the child is buckled in and the straps are all tight, they can be pulled loose without using the release button at the bottom. This is incredibly unsafe and would make this car seat useless if we were to be in a car accident. My car seat has not been inspected but the manufacturer has been notified.

e.    August 27, 2022: The chest harness can be pulled loose by simply pulling on the straps without using the release button - OR the child can lean their shoulders into the strap and loosen the component. If this seat were to be involved in a wreck, it would be absolutely useless. The seat is available for inspection. Video of issue available upon request

116.    **2023:** NHTSA received twelve complaints in 2023. A selection of complaints is below:

a.    February 18, 2023: I am able to loosen the harness by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and if there were an accident it would do nothing to protect him or keep him inside the vehicle. Nuna has been contacted and is replacing the car seat shell but advised this is a "courtesy" since it is outside of the 2 year warranty. It is ridiculous that this could ever happen especially since the car seat has a 10 year expiration date and a convertible car seat is supposed to last for years.

b.    April 6, 2023: Seat harness comes loose when pulled on. Won't tighten . Cleared west of loose debris and still won't tighten. Comes loose if child moves around.

c.    May 5, 2023: The harness can be loosened by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and the car seat is therefore unsafe for use.

d.    June 13, 2023: The contact owns a Nuna RAVA car seat. The contact stated that the tether used to secure the child in the seat had become loosened. The contact stated that her child was able to pull the tether apart. The car seat had not been repaired. The manufacturer was made aware of the failure and opened a case.

e.    August 15, 2023: When the harness is fully tightened and secure my child can easily loosen it by pushing on it. I have sent a video to Nuna for review. If we were in an accident the harness could fully loosen and my child could be propelled out of the seat. We've discontinued use of the seat and are awaiting Nuna's response.

f.    September 14, 2023: The harness is not staying locked. When I gently tug I can loosen the strap entirely. My daughter also did it earlier today while we were driving. I have discontinued

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

use of the seat - there is no debris on the button and it clicks up and down but is not locking. Feeling very unsafe.

g.   December 19, 2023: My Nuna RAVA car seat will not secure my child. The straps will not lock, and are coming loose with the slightest tug on the chest clip. Our 2 year old child can pull the straps loose. I hate to think about what would happen if we were in an accident. I contacted Nuna for a refund, and was informed they would be unable to process returns on behalf of a retail partner. I do not feel like Nuna RAVA is a safe car seat for my children. There are 25 complaints on NHTSA, and many seem to be about the same issue. This is also the second Nuna RAVA car seat I've personally had to file report on that is defective. We've had five total. Two out of five malfunctioning in the same way is very concerning. I'm hoping these get recalled. I can't believe they haven't already. I just hope a child doesn't get seriously hurt, before action is taken.

117.   **2024:** NHTSA received thirty complaints in 2024, including 18 before the Recall was announced. A selection of complaints from before the Recall is below:

a.   January 10, 2024: We are experiencing an issue with the car seat where after we have put our child in the seat, buckled the straps and tightened them, my 2 year old daughter can then push the straps back out, completely loosening them. The straps will not stay tight.

b.   March 18, 2024: The car seat harness can be loosened by pulling on it, even without depressing the harness release button. The 1 year old child was able to do this on her own. It would not restrain the child safely in a crash.

c.   March 21, 2024: What component or system failed or malfunctioned, and is it available for inspection upon request? I feel that the straps are faulty and have been for some time. I tried to follow up with Nuna directly and was not successful as apparently a carseat that was purchased in 2021 is out of their warranty (yet kids should be in carseats for a VERY long time). The carseat is available upon request for inspection. I cannot get a tight pull on the crotch pull to make the straps tight on my child. They seem to always feel loose and such a struggle to pull the strap. The straps feels as though they have lost their "taught-ness" and are loosy goosey just feeling. How was the child's safety put at risk? I don't feel the straps are tight enough to his body to keep him safe in the event of an accident. I can't get the pull strap to budge, it feels stuck or broken inside and you cant get to it at all. Has the car seat been inspected by the manufacturer, police, insurance representatives or others? I had filed a report with Nuna but they were unable to do anything because of the warranty no longer being valid.

d.   March 30, 2024: The harness does not stay tight on the child's chest. The harness was adjusted to the correct fit, when pulled to check the tightness the harness does not stay taught. It releases without pushing the release button.

e.   April 14, 2024: My child wiggled in his seat and noticed he could loosen the strap on his own after I tightened it. He immediately told me and I confirmed that I can loosen by pulling on it without pressing the button to loosen it. The other seat of exact model we have stays locked. If we were in an accident, he would be thrown from this seat and not protected at all. It has not been inspected, but is available for inspection. We are waiting to hear from the manufacturer.

f.   May 10, 2024: We bought the Nuna rava back in September 2021 from pottery barn kids. We didn't put our son in the new seat until his 2nd birthday, January 2022. My husband first noticed the straps becoming loose just by pulling on them. Luckily our son is not strong enough to make it happen. I've notice it happens when I pull on the straps, making sure they're tight and if you pull enough they become loose without pushing the red harness release button. Not sure how safe that is especially if we were to get into a crash and the straps become loose, unable to hold him correctly in his seat.

g.   August 7, 2024: Problem occurred after several months of use. The chest straps will not consistently lock into position, despite the release button not being engaged. They can easily be pulled to loosen again. This does not secure the child into the seat. We have ensured that the strap mechanism is not clogged with debris. We have submitted a claim to the Nuna company. Videos of problem are available if needed.

h.   November 9, 2024: I purchased a nuna rava car seat in 2021. When I buckle my child in, I always check to make sure that the harness is snug and secure. My issue with this car seat took place one day when I was on a trip away from home. I buckled my child in, and then I checked to make sure the harness was secure. When I did this, I accidentally pulled up on the chest clip, and the seatbelt loosened. I did this multiple times to confirm the problem and each time it loosened without any forceful tugging on my part. All I did was tug up on the chest clip and the entire harness started loosening, similar to what happens when you intentionally press a car seat's button to loosen a harness, except that I was not depressing the loosening button and my child was supposed to be restrained. My child's normal wiggling and shifting in a car seat would have been enough "force" to loosen the belt. I was on a trip and away from home, which meant that I could not actually drive with my child in the car. I had to dispose of the car seat and go purchase another one on the spot. I am concerned that there may be other similar car seats of this model out there.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

118.    On March 21, 2024, a consumer submitted a letter to NHTSA petitioning NHTSA to open a recall for the RAVA Car Seat, stating: "the car seat harness can be loosened completely without pressing on the harness release button. This harness would not be able to restrain a child at all in case of a crash."

119.    Notably, NHTSA has warned companies in the past: "It is completely foreseeable that children will eat or drink while seated in their car seat and that some amount of these substances may enter the buckle." https://www.wral.com/story/graco-recalls-nearly-3-8-million-car-seats, *last accessed* June 25, 2025. For this reason, regulators do not "believe that food or drink contamination should create any buckle performance issues[.]" *Id.*

120.    ██████████████████████████████████████████ Plaintiff Bernasconi Pelufo purchased her first RAVA in September 2019 by which time ████████████████████████ and second RAVA in November 2019, by which time ████████████████████████ Plaintiff Faridian Kade purchased her first RAVA in 2021, by which time ████████████████████████ ████ and at least one consumer had filed a complaint with NHTSA. Plaintiff Faridian Kade purchased her second RAVA and Plaintiff Barrales purchased her RAVA in August 2022, by which time Nuna had ████████████████████████ and 13 consumers had filed complaints with NHTSA. Plaintiff Smith purchased her RAVA in August 2023, by which time Nuna had ████████████████████████ and 24 consumers had filed complaints with NHTSA.

121.    Perhaps in response to consumer complaints regarding the dangerous Defect, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster area:

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1





2

3

4

5

6

7

8

9

10

11

12

13

14

15     122.    This is part of the proposed remedy prescribed by the Recall.

16     123.    It is clear that Nuna knew about this potentially life-threateningly dangerous Defect

17 for years before notifying the public of the serious risks use of the RAVA posed to infants and

18 children for many reasons, including that: ███████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ███████████████████████████████████████████ and

23 (4) Nuna began designing and manufacturing the redesigned RAVA Car Seat over a year before it

24 announced the Recall.

25     124.    This Defect renders the RAVA Car Seats worthless and unusable for their intended

26 purpose of safely transporting babies, toddlers, and young children.

27     125.    While there is a significant resale market for used car seats, the defective, recalled

28 RAVA Car Seats in this case have experienced a significant loss in value and useful life because

of these issues. And, instead of providing a refund for customers with the RAVA Car Seats, Nuna's Recall has only offered a "Remedy Kit" purportedly intended to prevent the front harness adjuster button from accumulating debris. *Id.*

126.     Consumers, including Plaintiffs, were willing to pay higher prices specifically because of the RAVA's reputation for safety and security. Unfortunately, they were sold an unsafe and defective car seat instead. Had Nuna disclosed the Defect and the need for an eventual Recall to Plaintiffs and consumers prior to the purchase of their RAVAS, no Plaintiff or consumer would have purchased one (or paid the full price for it).

127.     Nuna was on notice of its obligations to provide a safe and Defect-free car seat to parents like Plaintiffs and Class members for several reasons. As an initial matter, a car seat exists for the sole purpose of safely transporting infants, toddlers, and small children in a moving vehicle. Any car seat, like the RAVA Car Seat, that is not safe need not exist.

128.     And as Nuna is no doubt aware, federal regulations governing car seats are implemented to "reduce the number of children killed or injured in motor vehicle crashes." 49 C.F.R. § 571.213. A RAVA with the Defect that will not restrain a child in the event of an accident would not pass federal impact testing mandates, including those contained in Federal Motor Vehicle Safety Standard ("FMVSS") No. 213, which is a requirement for the marketing and sale of car seats in the United States.

129.     Further, the particular Defect here is one that manufacturers and sellers of car seats, such as Nuna, should be aware of given prior recalls prompted by similar defects.[1]

---

[1] *See*, *e.g.*, https://www.npr.org/sections/thetwo-way/2014/02/11/275506262/graco-recalls-nearly-3-8-million-child-car-seats, *last accessed August 5, 2025* (Graco recall of approximately 3.8 million car seats, with an additional 1.8 million car seats under review because "the buckles stop working properly when debris and liquids are dropped into them"); https://www.counton2.com/news/evenflo-recalls-convertible-car-seats-due-to-safety-concerns, *last accessed August 5, 2025* (Evenflo recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and drinks)"); https://babytrend.com/pages/safety-notices, *last accessed August 5, 2025* (Baby Trend recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and drinks)"); *see also*, *e.g.*, *Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257- WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) (case involving a children's car seat that failed to *un*buckle when debris was introduced to the locking mechanism).

1   130.   Indeed, as NHTSA has warned companies in the past: "It is completely foreseeable

2   that children will eat or drink while seated in their car seat and that some amount of these substances

3   may enter the buckle." https://www.wral.com/story/graco-recalls-nearly-3-8-million-car-seats/ *last*

4   *accessed June 25, 2025*. For this reason, regulators do not "believe that food or drink contamination

5   should create any buckle performance issues[.]" *Id.*

6   **E.   Nuna's Voluntary Recall is Ineffective**

7   131.   Nuna's subsequent Recall fails to make Plaintiffs and Class Members whole. To the

8   contrary, it is ineffective and inadequate for providing consumers with a meaningful remedy for

9   purchasing the defective RAVA.

10   132.   As an initial matter, there was insufficient notice to impacted customers, leaving

11   some parents to unknowingly continue using the dangerously defective RAVA Car Seat even after

12   Nuna announced the Recall.

13   133.   Indeed, multiple Plaintiffs are members of parent groups on social media and have

14   been surprised at the lack of discussion and knowledge surrounding the RAVA Recall. This is likely

15   because many RAVA owners are, to date, unaware that their RAVA Car Seat is

16   dangerously defective.

17   134.   Since the Recall was announced, some Plaintiffs and consumers experienced delays

18   in receiving the promised Remedy Kits, even when they have requested them repeatedly, leaving

19   them with expensive and dangerous Car Seats, that cannot be used to secure their children, with

20   no repair.

21   135.   In fact, a Nuna employee informed Plaintiff Faridian Kade on or about February 7,

22   2025, that Nuna had yet to mail out a single Remedy Kit to any purchaser of the RAVA Car Seat

23   as of that date.

24   136.   Even for those consumers who have received the Remedy Kits, such Remedy Kits

25   fail to make Plaintiffs and Class Member whole because the Remedy Kits do not address Plaintiffs'

26   and Class Members' overpayment for or diminution in value of the RAVA Car Seat. No reasonable

27   consumer would purchase a $550 car seat that does not safely remain secured, and that instead

28   endangers their child. Nuna was able to demand such a high price only by misleadingly advertising

1 the RAVA as safe and by failing to disclose to potential consumers the Defect and failing to notify

2 the public of the dangerous Defect.

3     137.    Further, Nuna failed to recall the entire RAVA Car Seat and instead only advised

4 consumers to clean and replace certain portions of it that does not remedy the Defect. By failing to

5 recall the entire RAVA Car Seat with a non-defective car seat, the Recall allows and encourages

6 consumers to continue to use a car seat with the risk of severe injury, and without the benefit of a

7 professional repair that is necessary in a safety related recall.

8     138.    Instead of recalling the RAVA, offering professional repair of the RAVA, and/or

9 providing consumers with a refund, Nuna only offers the Remedy Kit to purportedly ensure the car

10 seat's harness adjuster is kept clean and working properly. Plaintiffs and Class Members are

11 expected to thoroughly clean their own RAVA Car Seat—something which consumers report can

12 be accomplished only with the aid of a screwdriver. *See, e.g.*, Exhibit C (complaint dated

13 July 16, 2024);

14 https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps,

15 *last accessed February 5, 2026* (describing cleaning RAVA Car Seat "by removing two screws

16 under the leg rest. Once opened I found all sorts of gunk that was restricting the friction on the

17 latch."). They are then expected to install Nuna's purported repair themselves as instructed with a

18 screwdriver to loosen, remove, and reinstall screws.

19     139.    The Defect may continue to occur even after the car seat is removed, cleaned, and

20 the replacement seat pad included with the Remedy Kit is installed. Indeed, consumers have

21 publicly reported that the Defect has not only occurred even without the presence of debris but also

22 when it has been cleaned out pursuant to the Recall, indicating that it is not effective to remediate

23 the Defect.

24     140.    These modifications—and the cloud of a safety Recall—significantly diminish the

25 RAVA's value as a "high-end," premium, or luxury product.

26     141.    For the same reason, the Recall burdens consumers who are already living busy lives

27 caring for their children and are not trained or experienced in designing or repairing car seats,

28 unlike Nuna.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

142.    Further, Nuna advises consumers to immediately stop use of the RAVA Car Seat if the Defect manifests because it creates a substantial safety risk. Parents who needed to transport their child were therefore forced to either subject their child to danger or to obtain another car seat able (unlike the RAVA) to safely transport their child during the months Nuna took to send consumers the promised Remedy Kits, thereby incurring further monetary damages for which Nuna is responsible.

143.    Moreover, the purported repair does not even appear to be available to all consumers. Indeed, Nuna states in its Recall Notice that it will send (only to consumers who specifically request) a letter to notify owners when "the remedy kits are available" *See* January Notice Letter, Exhibit B. Consumers have publicly reported that it took months to receive their Remedy Kits.

144.    After originally learning of the Recall, Plaintiff Alyna Smith, for example, contacted Nuna to complain. Nuna simply directed Plaintiff Smith to the online form for the Recall and informed her that if her RAVA Car Seat was not working properly, she must provide video evidence of that fact, while simultaneously leaving open the possibility that Nuna could choose to deny further meaningful repair of the Defect or replacement of the RAVA Car Seat. Thus, even upon request by a consumer, it remains unclear whether Nuna or the Recall will adequately and safely remediate the Defect.

145.    Plaintiff Smith did eventually receive a Remedy Kit as part of the Recall. However, despite following the installation instructions, once installed the seat pad did not properly fit on the RAVA Car Seat, which posed a continuing safety issue for her child and did not remediate the Defect. This renders the Recall insufficient.

146.    Other consumers have still not received Remedy Kits despite requesting them. Indeed, Plaintiffs and Class Members have not even received *notice* of the Recall in some instances. For example, Plaintiffs Faridian Kade and Barrales never received any recall notices from Nuna informing them of the Recall. This also renders the Recall insufficient.

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

**F.    Consumers Continue to Complain About the Defect and the Recall**

2      147.    Consumers impacted by the Recall have voiced their concerns about the Recall both

3    to NHTSA and on retailers' websites. Since the Recall was announced, NHTSA has received 90

4    more complaints from consumers about the RAVA and the Recall. *See* Exhibit C. A sample of the

5    complaints is provided below:

6        a.    December 21, 2024: We learned of the Nuna RAVA recall
            and the next day while driving our daughter to daycare, we
7            noticed the buckle was considerably loosened during the ride.
            Upon testing the buckle as noted in the Nuna video, the
8            harness loosened very easily while the loosen button for the
            tether was not engaged. This is a serious safety risk as the car
9            seat harness can no longer remain firmly tightened. In the
            event of a crash, my daughter would've been at risk for
10           serious injury. Upon alerting the manufacturer, Nuna, they
            refuse to provide any replacement for the seat stating it is out
11           of warranty even though there is an active recall. Their
            mitigation plan is a new seat cover and cleaning kit, however
12           our seat is already compromised and even with cleaning was
            not repaired. Nuna refuses to investigate and look into it
13           further despite numerous calls and emails. They also refuse
            to escalate my concerns to higher management. I have video
14           proof if needed, but cannot attach below due to
            file restrictions.

15
        b.    December 21, 2024: Nuna has knowingly sold this RAVA car
16           seat with a defective belt buckle tightening mechanism. They
            have now issued a recall years after discovering the issue but
17           not making it known to prospective buyers. Their current
            remedy is unacceptable as they are only sending out
18           "cleaning kits" that are not guaranteed to resolve the problem.
            The car seat buckle loosens as it should not. This is extremely
19           dangerous to children riding in a RAVA car seat.

20       c.    December 26, 2024: My car seat is impacted by the Nuna
            RAVA recall - the straps on this car seat can be completely
21           pulled out without pressing a button. Nuna cannot offer any
            sort of remedy for 2-3 months and cannot guarantee that it
22           will fix the issue.

23       d.    December 27, 2024: The remedy to the most recent recall has
            not determined to be effective or a viable solution. Our
24           children should not be a test subject whether the "repair kit"
            they are sending owners 2 months from now. With the recall
25           all seats should be replaced. I also found out via the news and
            not through nuna there was a recall. This is a safety risk in
26           itself and the company should be fined.

27       e.    January 5, 2025: I have 2 Nuna RAVAs with loose harnesses
            when not holding the release button. My children could have
28           been seriously injured in the event of a crash. The harness

does not stay tight, they pull right out with very little effort when they should be locked. Nuna will not replace the car seats and will not address the problem for 2-3 months. This is SERIOUS SAFETY HAZARD THAT CANNOT WAIT MONTHS.

f.    January 6, 2025: For months I noticed the five point harness was loose after driving. I thought it was user error. Nuna finally released a recall of the seat with a way to check if it has failed safety tests. Mine failed and I have now been waiting two weeks just to get a letter that tells me when I can expect a fix. This is so unacceptable and I asked them to overnight or expedite a kit to fix it and they said they aren't available yet and I just simply cannot use the seat. I cannot pay $400 more to get a new seat, because Nuna's is faulty and they are not taking the potentially deadly issue seriously.

g.    January 8, 2025: The harness becomes loose without pressing the button to loosen it. When I pull on it to make sure it is tight, it loosens without pushing the button. Nuna has been notified but will not provide a timely solution. I did not receive a recall letter in the mail even though my car seat is registered with the manufacturer and has been since 2021. I called Nuna and they said they could not find my registration and to re-register online then I should receive a letter about the recall. I re-registered approximately a month ago and still have not received any letters. Nuna told me to immediately discontinue the use of the car seat but did not provide a timely solution. They stated a "cleaning kit" would be mailed but that it was not ready to be shipped yet and they did not know when it would be ready. I asked to be sent a replacement RAVA that was not affected by the recall and Nuna said they would not provide a replacement or a refund. Nuna is putting all the responsibility and liability on the parents by sending a cleaning kit that the parents have to do. I am not a trained or certified car seat comfortable and do not feel comfortable putting my child at risk if the cleaning kit does not work or if I am not able to clean it correctly. I was told that Nuna's head supervisor, Melissa, would call me, however she has not called me back. Nuna refuses to offer a refund, a replacement seat, or a repair in a timely manner nor a repair that has been crash tested. By sending the "kit" to the parents, Nuna is putting the liability and responsibility of the child's injury or death on the parents even though it is NUNA's product recall and fault. Nuna is not accepting any phone calls anymore either. I also asked Nuna if they would provide a reimbursement for the new car seat I had to buy since I had to discontinue the RAVA immediately, and I was told by Nuna that they would not provide any reimbursement, refund, or replacement seat.

h.    January 13, 2025: We purchased 2 Nuna RAVAs for our 2 kids in 2021. One of them had the harness fail to remain tight in 04/24. It took a few months but Nuna eventually replaced the shell for us. Now our other seat is having the same

problem where we can pull on the tightened harness without pressing the release button. There is already a recall for this issue, however I don't think the recall - fix is good enough. They are just sending me a cleaning kit and new seat cushion to prevent debris for a seat that is already unsafe to use, and have no estimate of when I'll receive the kit. They have acknowledged the seats are unsafe and could cause serious injury or death if in an accident. No one has inspected the carseat though I sent in a video of the issue to the manufacturer. Initial customer support has not been great so far and I am still working to get the issue resolved after multiple emails back and forth.

i.  January 8, 2025: Car seat harness in the Nuna RAVA has been difficult to tightening safely and has been loosening after being securely fastened. A manufacturers recall was implemented December 19. Even though my car seat was registered, I have not personally received any correspondence from the company regarding the recall and I have not received the repair kit that is described on the manufacturers recall page. My only option now is continue to use a hazardous car seat or purchase a new one even though my Nuna RAVA is still under the manufacturer's warranty. This is dangerous because some families may not be aware of the recall due to the lack of initiative to notify consumers by the company and it has been 3 weeks since the recall and the repair kits still are not available.

j.  January 28, 2025: I own three Nuna RAVA car seats. Nuna's recall notice states that the RAVA has a defect whereby debris can enter the harness adjuster and cause the harness to "no longer remain tight." Since the entire purpose of a car seat is for the harness to remain tight and restrain the child, this is a significant safety issue. However, the only remedies proposed by Nuna are for consumers to "check the performance" of the harness by pulling on it, and at some unstated future time, for consumers to personally repair the defect after receiving a "remedy kit." These proposed remedies are unsatisfactory. I am not a car seat manufacturer and am not qualified to repair a life threatening defect. If the defect can be triggered by "debris entering the harness adjuster area," this presumably could happen while i am driving, a time at which i cannot be checking the harness for functionality. I have raised these concerns with Nuna directly and been rebuffed by boilerplate emails that do not directly address my concerns in any way. I spent between $449-$474 on each of these car seats, which are marketed as high end products that can be used until your child weighs 65 lbs, only to later be told they have a defect that goes directly to my childrens' safety. Testing for this defect every time i use the car seat is not an adequate remedy because even if i were qualified to test car seats, the defect can apparently arise at any moment, and i cannot test the seats while i am driving. Repairing the products myself is also inadequate because i

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   am not qualified to repair child car seats. I hereby request that
2   the NHTSA pursue a refund from Nuna on my behalf.

k.   January 29, 2025: Received the NUNA RAVA recall in the
3        mail a couple days ago (we own two). Went out to the cat to
         check to see if they were working properly. One of them was,
4        and one of them wasn't. The chest straps come loose without
         pushing the button. The entire car seat was cleaned and the
5        issue was still present. I contact Nuna, and all the said is they
         have a new seat pad and cleaning kit coming to fix the issue,
6        though they couldn't give any ETA on when that would come.
         In the recall letter it states that if it fails the test stop using the
7        car seat immediately. Contact NUNA again and they looked
         at a video we sent, the receipt and a the serial number, since
8        then it has been crickets. What is totally unprofessional is
         they say stop using the car seat immediately if it fails, but at
9        the same time they have no ETA on the fix to arrive.
         Something needs to be done for those who are affect. Im sure
10       like me most people use this car seat everyday. They either
         need to get a fix out ASAP or reimburse all of those who are
11       affected for a new car seat. I am sure many people are not in
         a financial position to just go out and buy a brand new car
12       seat. When they say stop using immediately in the recall letter
         they better damn well have a fix or be ready to fork out to all
13       those affected.

14  l.   February 5, 2025: My car seat has failed the safety test on
         recall and they refuse to warranty it. It loosens significantly
15       when pulled.

16  m.   February 8, 2025: The release adjuster has quit working.
         Nuna refuses to help. They have no ETA on replacement
17       parts but want me to discontinue using it and aren't providing
         any additional help.
18

19  n.   February 14, 2025: The car seat harness fails to stay engaged
         in a safe and secure position. When tightened to the correct
20       position it becomes loose. I contacted Nuna and they advised
         I should clean the harness adjuster button from debris but I
21       did that and the harness is still coming loose. I don't know
         how many times my children have been transported while
22       wearing this faulty harness over time since purchasing our
         seats in 2021 but we are in our vehicle daily so my guess is
23       upwards of 100's of times. The manufacturer refuses to take
         accountability and recommends we wait indefinitely for a
24       new car seat fabric cover, cleaning kit and instructions to alter
         the car seat for the purpose of cleaning the harness adjuster
         button ourselves.
25

26  o.   February 19, 2025: This company continues to fail parents
         and caregivers who were affected by the safety recall of this
27       car seat. We have had to purchase another car seat (from a
         different company) while we await a "remedy kit" for the
28       defective Nuna car seat. Zero date has been given to when

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  this "remedy kit" will be available, and zero confidence that
   it will fix the problem and ensure our child's safety in the seat.

2

3      p.    February 21, 2025: I have cleaned the car seat per the recall
             instructions and while the straps started locking again, they
4            failed again within a day and while my child was in the seat
             and the car was moving. There are hundreds of others that
5            this happened to with the failed remedy. The recall response
             is laughable and honestly negligent. This is kids safety at
6            hand and Nuna needs to do better. This is not ok.

7      q.    March 5, 2025: NUNA recalled its NUNA RAVA car seat
             due to the harness NOT functioning properly, therefore
8            remaining loose and COMPLETELY UNSAFE! Not only
             did they REFUSE to replace the car seat, they asked us to
9            register for the pathetic FIX IT YOURSELF KIT. Not only
             that, they are REFUSING to even send the fix it kit, and
10           saying it will take 3-4 MONTHS!!!! This is a child's safety!
             I had to buy a NEW CARSEAT because I refuse to risk
11           anything. The cheap DIY kit being sent, isn't crash tested
             either. PLEASE ASSIST!

12     r.    The harness on one of our 2 Nuna RAVA carseats affected
             by the recall has come loose without pressing the harness
13           release on two occasions, failing to restrain my child. I
             became aware on these two occasions because he was able to
14           lean forward while the car was moving. There was no
             predictable indicator. Of note I do tighten and release the
15           harness every time I take my kids in and out of the car so
             there is significant regular movement of the strap. The
16           harness seemed to work between the two instances that
             occurred a few days apart and seemed to work until I learned
17           of the recall and discontinued use. When I test it manually
             now the harness holds. As part of the recall have performed
18           the harness test, cleaning, and repeated harness test according
             to the instructions from Nuna and had a virtual meeting to
19           review the steps. I have expressed concern that through a very
             small opening under the vehicle belt securement
20           compartment the harness path is partially visible and I can see
             debris in both seats that I am not able to reach to remove. Of
21           note my son has also vomited and it dripped into the shell in
             that area and I contacted the support chat and was told to
22           spray enzyme cleaner and allow it to dry. I was advised this
             area of the seat is not part of the recall and that as long as the
23           teeth of the clip are clean the recall issue has been remedied.
             I am concerned that with the movement of the strap loosening
24           and tightening the harnesses and movement/vibration of the
             car this debris could get caught and be the cause of the strap
25           having failed intermittently and more importantly potentially
             cause it to fail in the future. Safety risk is inadequate restraint
26           of my child. The seat has not been inspected by the
             manufacturer in person, I explained that i am not comfortable
27           using them and that I want them to provide cleaning but they
             offered the virtual call instead and I am now waiting for a
28           Nuna car seat tech to contact me regarding my concerns.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

s.   Nuna provided a recall for their Raava car seat. It was an expensive premium car seat that was purchased on the guise of high safety ratings and premium quality. However, the recall is none of those things. It is a cheap material that gives my child a rash, it is not the same color, and frankly doesn't correct the safety issue. I cannot believe that Nuna has been allowed to get away with putting our children's safety at risk.

t.   April 25, 2025: The Nuna RAVA is currently under recall due to a harness tightening defect. Over time, the harness on my unit has become increasingly difficult to tighten, even when following all recommended usage instructions. This raises serious safety concerns, as the primary function of a car seat is to provide secure restraint during a crash. Nuna's proposed remedy is insufficient. Instead of replacing or repairing the defective harness mechanism, they send a "remedy kit" consisting of a seat pad and headrest cover and instruct users to perform a harness function test before every use. This is not a sustainable or acceptable solution for a safety product. A car seat should be dependable and reliable. Not something a parent must validate every single time to ensure basic safety. If Nuna cannot trust the seat to perform as intended without constant testing, then it is not safe. The burden of safety should not be shifted onto the consumer when the design flaw is the manufacturer's responsibility. This recall remedy needs to be reevaluated. Affected units should be properly repaired or replaced to restore trust and ensure the continued safety of the children who use them.

u.   May 5, 2025: The harness on my child's Nuna RAVA loosened during a 30 minute drive home (highway and downtown driving) in May of 2025. I learned later that month that there is a recall on Nuna RAVAs for that exact reason. It is available for inspection. My child was not properly secured, and I did not know it until we got home; he could have been killed or seriously injured had we gotten into a collision on that drive. The car seat has not been inspected by anyone. Nuna offered me a "remedy kit" with a screwdriver, a brush, and a mismatched fabric cover, but I am not a safety technician and do not have the time or expertise to take the seat apart myself and still trust it to secure my child. The problem with the harness straps we have is intermittent, and does not replicate when the car is parked and I simply "tug" on the straps. I do not feel that this is an adequate safety test anyway, as it doesn't replicate the forces or conditions in an accident. I requested a replacement seat, but Nuna denied my request on 7/21 and again on 7/28. Nuna has not supplied crash test results on layperson "repaired" car seats. This defect is the subject of NHTSA actions DP24003 and PE24026. Other RAVA owners have complained that their repaired RAVA still malfunctioned even after using Nuna's "remedy kit." I would like a replacement car seat to ensure my child's safety.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

v.    October 16, 2025: We placed our child in her car seat to go to a store. When buckling her in, we secured the 5-point harness and tugged on it to ensure it was tight and stable. At that time, the seat was functioning properly. Later, when leaving the store, we did the same to buckle her in again. This time, the 5-point harness failed and would not lock. We attempted to uninstall the car seat, shake out any possible crumbs, and blow into the buckle to remove debris, but the harness still would not secure. This car seat was part of a previous recall and already had the remedy seat cover installed. Until this incident, we had no issues and believed that the remedy had resolved the defect. There is no mention on Nuna's website that the harness may continue to fail even with the remedy cover installed, or that the remedy cleaning kit must be kept on hand for continued safe operation. Our child's safety was put at risk — if we had not noticed the harness failure, she could have been unsecured in the event of a crash. Because the seat was unusable, we had to return to the store and purchase a new car seat on the spot in order to bring her home safely. I contacted Nuna to request a refund for the replacement seat. Their response was that I need to use the remedy cleaning kit to get the seat working again and that they could arrange a video call with a technician. However, the cleaning kit was not with us at the time, and I was under the impression that the installed remedy seat cover had permanently resolved the issue. The failed seat has not been inspected by anyone, and I am keeping it in its current condition in case NHTSA would like to examine it.

w.    October 20, 2025: My Nuna rava was part of the recent recall that happened. The company offered remedy kits to replace the seat fabrics as well as tools to clean where the harness straps tightened/loosened. We received the remedy kit in March after waiting 3 months for the kits to be available. I followed the instructions for cleaning of the car seat and installation of the new cover. My child's safety was put at risk as the straps are now able to loosen without pressing the button. We had not had strap loosening issues initially, but now are despite having followed the instructions as part of the recall which I was told would resolved the issue and prevent further concern over the strap mechanism failing. To my knowledge this is a known issue that is what caused the recall for the car seat in the first place. I have removed the car seat from use as it is no longer safe with the straps loosening. I have contacted Nuna Baby customer support.

x.    December 3, 2025: Crotch buckle belt is frayed and no longer safe to use. this should not fall under the umbrella of normal wear and tear since it is a safety strap. Nuna claimed it to be caused by a rodent, but there is no other evidence or signs of any other rodent activity

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

148. RAVA owners also complained on retailers' websites about the failures and inefficacy of the Recall (emphasis in original postings):

    a. Nordstrom's January 11, 2024: **great seat until the recall -** I have 4 nuna rava seats and have loved them. However all 4 are a part of the recall of 600,000 ravas. The way nuna has handled this makes me not recommend these seats or this company. The straps can loosen unexpectedly at any time due to a malfunction of the harness adjust if anything gets lodged in it ie crumbs, pebble, dirt etc. Nuna's solution is checking your seat every time you drive until they can send a cleaning kit and cover which won't be available for 2-3 months minimum. In addition the seat cover is only available in black and gray, too bad if you paid extra for the Nordstrom exclusive cover. Oh and they aren't sending all parts of the cover so your seat will be mismatched. It's a nightmare and I'm trying to return my seat that was purchased in the last year. Stay away from this brand.

    b. Nordstrom's January 30, 2025: **Great seat when we can use it** - We have one of the Nuna RAVAs that's recalled. We have shown our seat is unsafe to use and have been told to discontinue use. Nuna has no solution for us other than waiting for a repair kit to ship, and they have no estimate for when that kit will be available. It's been over a month now and the kits aren't available, even though (by their own admission) they've known about the problem since last May. Nuna will provide no other support, so now my choices are to buy a new car seat out of pocket or to wait for months without being able to drive (so unsafe in an emergency!) When UPPAbaby had a recall they refunded the full cost of the unsafe car seats PLUS $50 for the inconvenience. Nuna is doing nothing to help us and just say it's a "personal decision" if I chose to buy a new car seat to replace our unsafe RAVA. I guess Nuna execs can choose to just not drive their children for months, but my child does have to go places.

    c. February 1, 2025: **DO NOT BUY. Horrible product and customer service.** DO NOT BUY THIS CAR SEAT. I bought two of the slightly older models for $550 each ($1,100 total). A lot of money. It took forever to install these seats because of how much force you have to apply to push the seat into place and hold it there while simultaneously buckling all the seat buckles into place. But eventually got them both in. Filled out both forms to register the car seats with Nuna for possible recall issues. Fast forward to there actually being a recent recall. They sent me a letter in the mail, but didn't bother to send the remedy kit. I reached out and kindly asked them to send the remedy kit, confirming I still had and was using both the seats. They told me they can't send them to me unless I uninstall both seats and send them the serial number/model number on the bottom of each. Well... I'm currently 34 weeks pregnant and it took me over 2 hours to install them in the first place. I kindly asked if they could just

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

pull my information from the registration forms I sent in that include the serial number/model number -- since they clearly have this information on file. Nope. They refused. Said I had to uninstall the seats. If you registered your car seat, they have your information. Why won't they just automatically send everyone impacted by the recall a remedy kit? Why are they making this so much harder on families who are trying to keep their children safe? Worst customer service, worst company. Never buying anything from them again.

d.   Nordstrom's March 14, 2025: **DO NOT PURCHASE** - I purchased 4 nuna ravas from Nordstroms over the years. All 4 of my ravas are a part of the recall. I am extremely disappointed Nordstrom will not take them back. I understand it is a nuna car seat but I purchased them through Nordstroms. We have not a single back up car seat and this involves my children's safety!! I understand this is a Nuna recall but when it involves children's safety, Nordstroms should be accepting returns immediately. I called to let Nordstroms know that I still have yet to receive my recall kits and they said to reach out to Nuna. I've reached out to Nuna 10+ times now….. Don't purchase them. Find a company that handles recalls better.

e.   Nordstrom's April 24, 2025: **WAS a great seat- buyer beware** - We own 3 Nuna RAVAs all purchased from Nordstrom. 2 seats have been affected by the recall. The remedy kit provided by Nuna is a joke making the harness adjuster impossible to access. I also don't trust that the seat is safe to use because Nuna refuses to provide any updated crash test reports. We have 1 seat that is newer and not affected by the recall. It's incredibly shady that Nuna clearly knew about the issues with the recalled seats long before they issued a recall. Long enough to completely change the design. It should be known that Nuna as a brand has DEPLORABLE customer service. Like if your seat ever has an issue (not just affected by the recall), they will do everything not to help you or provide a replacement. For a brand that is so expensive, this is incredibly disappointing. I wouldn't have spent this much on a car seat had I known I would have to replace it in less than 3 years. Nordstroms also refused to help at all which was disappointing. I personally will never buy another Nuna product or recommend Nuna to any friends or family. The customer service with Uppababy is night and day difference for the record. I suggest thinking long and hard about the company you are supporting when you purchase a Nuna product.

f.   Nordstrom's July 14, 2025: **Nuna does not care about safety** - I used to love the Nuna RAVA and recommended it to all of my friends. The car seat itself is well-designed, and I initially felt confident in its safety and quality. However, my opinion completely changed after the recent recall. The way Nuna handled the recall was extremely disappointing. Their customer service was unhelpful, dismissive, and made the

process far more difficult than it needed to be. It felt like they were more focused on protecting their brand than actually supporting the families who trusted them with their children's safety. I would not repurchase from Nuna again, and honestly, I wish I could return the RAVA car seats I already own. Going forward, I'll be purchasing from a company that prioritizes both product safety and responsible, respectful customer service. Nuna has lost my trust.

g.    Dillard's April 2025: 1 out of 5 stars. Chris - I loved this car seat until I got a recall notice. I've contacted Nuna 4 times now and still have not received the kit to make the seat safe. I no longer trust this brand. Customer service is poor.

149.    In sum, RAVA owners have publicly posted their concerns about the Recall to NHTSA and retailers, including, but not limited to, that Nuna misrepresented the safety of the RAVA and concealed the Defect long after it was known; that notice of Nuna's recall never reached them directly and that they only learned about it through third-parties, that Nuna's customer service was disorganized, unresponsive, and unhelpful; that Nuna refused to provide reimbursements, refunds, or non-defective replacement car seats; that the Defect was occurring even without debris and that it continued to recur after cleaning; that Nuna's Remedy Kit was not available for many months after the Recall; that Nuna's Remedy Kit was difficult to install; that the RAVA was not properly tested for safety with the Recall and/or Remedy Kit; that the Defect persisted after the Remedy Kit was installed and suggested cleaning instructions Nuna provided were undertaken; and that the "refreshed" design RAVA model sold starting in October 2023 was experiencing the same Defect. In response to its own Recall, Nuna's customer service even suggested rodents were infested in a consumer's car seat and told a woman who was 34 weeks pregnant had to undertake the physically strenuous task of removing her RAVA in order to confirm her purchase before being provided a Remedy Kit.

150.    Publicly available complaints also confirm that the re-designed RAVA manufactured beginning in October 2023, is experiencing the same Defect that Nuna claims was eliminated by the "refresh" and that the Remedy Kit was intended to mimic. For example, on June00A017, 2025, a consumer who owned a non-recalled RAVA posted to NHTSA:

"The harness fails to clamp onto the strap, so the straps loosen with any tension on the straps, without the release button being pressed, meaning the child is not secured in the seat. This car seat was

1

manufactured after the recall date, suggesting that it was not
remedied and there is a fundamental design flaw. I believe all Nuna

2

RAVA car seats, regardless of the manufacturing date, are unsafe due
to this defect. Company refuses to offer refund[.]"

3

4    151.    Similarly, a post on Nordstrom's website on July 2, 2025 states:

5            **"Post Recall Design is still failing** - Avoid like the plague if you
have and desire for safety or support from Nordstrom/Nuna. We have

6            3, one of which is pre recall and 2 of the redesigned seats. One of the
new ones has failed despite no eating in the seat. Nordstrom will not

7            accept returns and Nuna is profoundly difficult to get a refund, will
only offer replacement without major obstacles. Do you and your

8            child a favor and avoid this product." (emphasis in original).

9    152.



25    153.



154.    In sum, Nuna's false and misleading marketing of the dangerous RAVA Car Seat, and its knowing failure over *years* to disclose the grave risks of allowing children to use the RAVA Car Seat, allowed Nuna to reap vast profits at the expense of ordinary consumers who erroneously believed their infants and children were safe in Nuna's "premium" car seat.

155.    Every RAVA Car Seat has and continues to suffer from the uniform Defect, which, unknown to consumers but known to Nuna, existed at the point of purchase and poses an unreasonable safety hazard to infants and children. Moreover, the Defect occurs even without debris, and even after cleaning any debris and installation of the Remedy Kit. As such, Plaintiff and Class Members have been injured economically and are entitled to the relief in the form of damages and restitution, as well as any and all appropriate injunctive relief, sought via this lawsuit.

## VI.    PLAINTIFFS' EXPERIENCES

### A.    Plaintiff Tina Marie Barrales

156.    In approximately August 2022, Plaintiff Barrales purchased a Nuna RAVA Car Seat, model number CS05105BAC and manufactured on November 25, 2021, from Nordstrom, an authorized retailer, in Culver City, California.

157.    Plaintiff Barrales' RAVA Car Seat is part of the Recall.

158.    She purchased the RAVA Car Seat for her 1-year old child to use.

159.    Prior to her purchase, Plaintiff Barrales read and relied on Defendant's advertising and marketing materials, including viewing representations that the RAVA Car Seat was known for its security and safety.

160.    For two weeks, Plaintiff Barrales attempted to use the RAVA Car Seat with her younger child. However, she found the lower buckle to be very difficult to latch and unlatch; in order to properly secure her infant in the seat, she needed to keep the chest and lower buckle extremely tight, causing her baby to suffocate and cough in the seat.

161.    When the straps were not so tight as to injure her child, Plaintiff Barrales observed that the lower buckle and chest straps seemed to come dislodged on their own.

162.    After about two weeks, Plaintiff Barrales stopped using the RAVA Car Seat and purchased a different car seat from a different car seat manufacturer.

163.    Plaintiff Barrales was concerned that, if she returned the defective RAVA Car Seat, another unsuspecting consumer may purchase it and put their child at risk. Thus, she instead chose not to return the RAVA Car Seat and retained it in her garage for several months, before moving it to a storage unit.

164.    Plaintiff Barrales was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until Nuna published the Recall Notice, over two years after Plaintiff Barrales initially purchased the RAVA Car Seat.

165.    Notably, Plaintiff Barrales only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

166.    To date, Plaintiff Barrales has *still* not received notice from Nuna of the Recall, and she has not received a repair or cleaning kit as part of the Recall.

167.    Had Plaintiff Barrales understood the true nature of the RAVA Car Seat at the time of purchase or had Plaintiff Barrales known the truth underneath Nuna's misleading representations

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

168.    Had Nuna disclosed to Plaintiff Barrales prior to the point of sale the existence of the Defect and that the RAVA would eventually be subject to a safety recall, she never would have purchased it or paid the premium price for it.

169.    The remedy Nuna has offered to Plaintiff Barrales through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient. The purported remedy does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Barrales to purchase it and/or overpay in the first place. It does not make Plaintiff Barrales whole. The only remedy appropriate for Plaintiff Barrales and for Class Members is a refund of the RAVA Car Seat.

170.    As it stands, the purported solution to the defective RAVA Car Seats offered by Nuna to Plaintiff Barrales and the Class is insufficient and has diminished the value of the RAVA Car Seats.

**B.    Plaintiff Alyna Smith**

171.    In August 2023, Plaintiff Smith purchased a Nuna RAVA car seat, model number CS05103 and manufactured on December 10, 2022, online from bambibaby.com for $399.99.

172.    Plaintiff Smith's RAVA Car Seat is part of the Recall.

173.    She purchased the RAVA Car Seat for her child to use.

174.    At the time of purchase, Plaintiff Smith registered the RAVA Car Seat with Nuna.

175.    Prior to her purchase, Plaintiff Smith read and relied on Defendant's advertising and marketing materials, including viewing representations that the RAVA Car Seat was known for its security and safety.

176.    Plaintiff Smith was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA Car Seat and its safety, until she happened to learn of the Recall on social media, over one year after Plaintiff Smith initially purchased the RAVA Car Seat.

177.    Notably, Plaintiff Smith only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat and would likely still be using the RAVA Car Seat—and putting her child at serious risk.

178.    Following her discovery of the Recall, Plaintiff Smith contacted Nuna directly via email. Nuna directed Plaintiff Smith to the online form for the Recall and informed her that the offered remedy was a new seat pad, cleaning kit, and care instructions. Nuna informed her that if her RAVA Car Seat was not working correctly, she must provide video evidence of that fact, but notably Nuna left open the possibility that it could still deny further meaningful repair of the Defect or replacement of her RAVA Car Seat following review of whatever further information Plaintiff Smith provided.

179.    Plaintiff Smith received a remedy kit from Nuna and followed the provided instructions to replace the seat pad. However, the new seat pad does not fit properly or "snug" on the RAVA Car Seat, thus it is able to shift and move and is still not safe.

180.    Plaintiff Smith contacted Nuna via email informing them that the seat pad did not fit properly. She received a phone call back from a Nuna representative who only told her that the seat was safe to use. She had a second phone call with Nuna, but no solution was offered.

181.    Plaintiff Smith's Nuna RAVA was within its warranty period when she learned of the Recall. When Plaintiff Smith attempted to request a replacement car seat, she was stonewalled, ignored, then denied.

182.    To date, despite Plaintiff Smith's best efforts, she feels that the Recall did not remediate the Defect and that her RAVA Car Seat is not safe.

183.    Had Plaintiff Smith understood the true nature of the RAVA Car Seat at the time of purchase or had Plaintiff Smith known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

184.    Had Nuna disclosed to Plaintiff Smith prior to the point of sale the existence of the Defect and that the RAVA would eventually be subject to a safety recall, she never would have purchased it or paid the premium price for it.

185.    The remedy Nuna has offered to Plaintiff Smith through the Recall—that is providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient, particularly in light of the fact that the provided seat pad does not even fit properly within Plaintiff Smith's RAVA Car Seat. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Smith to purchase it and/or overpay in the first place. It does not make Plaintiff Smith whole. The only remedy appropriate for Plaintiff Smith and for Class Members is a refund of the RAVA Car Seat.

186.    As it stands, the purported solution to the defective RAVA Car Seats offered by Nuna to Plaintiff Smith and the Class is insufficient and has diminished the value of the RAVA Car Seat.

**C.    Plaintiff Mariana Bernasconi Pelufo**

187.    Plaintiff Mariana Bernasconi Pelufo resides in the State of California in San Francisco County.

188.    Plaintiff Bernasconi Pelufo purchased her first RAVA Car Seat from a brick-and-mortar store in Alameda, California called Tot Tank for $444.44 in September of 2019. She was willing to pay this high price only because of the safety representations made by Defendant.

189.    After her first RAVA Car Seat was involved in a car break-in shortly after she purchased it, Plaintiff Bernasconi Pelufo purchased a second RAVA Car Seat from Nordstrom for $399.99 in November 2019. Yet again, she was willing to pay this high price primarily because of the safety representations made by Defendant.

190.    Indeed, prior to her purchases, Plaintiff Bernasconi Pelufo conducted extensive research into which car seat to purchase for her child, including looking at the Nuna website, crash test ratings, labels, packaging, advertisements, in-store displays, and online reviews, including,

*inter alia*, from Baby Gear Lab and Car Seat for the Littles. Plaintiff Bernasconi Pelufo also discussed the RAVA with certified car seat professionals at Tot Tank. Based on Nuna's misleading statements, she believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Plaintiff Bernasconi Pelufo to believe the RAVA would be safe.

191.    Plaintiff Bernasconi Pelufo also received targeted advertisements for the Nuna RAVA on social media websites including Facebook and Instagram prior to her purchases.

192.    Plaintiff Bernasconi Pelufo was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety until the Recall was publicized over five years after Plaintiff Bernasconi Pelufo initially purchased the RAVAs.

193.    Notably, Plaintiff Bernasconi Pelufo only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

194.    To date, Plaintiff Bernasconi Pelufo has *still* not received notice from Nuna of the Recall, and she has not received a repair or cleaning kit as part of the Recall.

195.    Had Plaintiff Bernasconi Pelufo understood the true nature of the RAVA Car Seat at the time of purchase or had Plaintiff Bernasconi Pelufo known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seats, or else would have paid substantially less for them.

196.    Had Nuna disclosed to Plaintiff Bernasconi Pelufo prior to the point of sale the existence of the Defect and that the RAVAs would eventually be subject to a safety recall, she never would have purchased them or paid the premium price for them.

197.    The remedy Nuna has offered to Plaintiff Bernasconi Pelufo through the Recall— that is, providing a new seat pad, cleaning kit, and care instructions— is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Plaintiff Bernasconi Pelufo to

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    purchase them and/or overpay in the first place. It does not make Plaintiff Bernasconi Pelufo whole.

2    The only remedy appropriate for Plaintiff Bernasconi Pelufo and for Class Members is a refund of

3    the RAVA Car Seats.

4        198.    As it stands, the purported solution to the defective Car Seats offered by Nuna to

5    Plaintiff Bernasconi Pelufo and the Class is insufficient and has diminished the value of the RAVA

6    Car Seat.

7        **D.    Plaintiff Behnaz Faridian Kade**

8        199.    Plaintiff Behnaz Faridian Kade resides in the State of California in Los

9    Angeles County.

10       200.    In approximately 2021, Plaintiff Faridian Kade purchased both a Nuna RAVA Car

11   Seat from Pottery Barn in California for approximately $550.00 and a different Nuna car seat: the

12   PIPA. However, her child soon outgrew the PIPA car seat and Plaintiff Faridian Kade decided to

13   replace it with an additional Nuna RAVA Car Seat from Bloomingdale's for $547.45 in August

14   of 2022.

15       201.    Plaintiff Faridian Kade was not aware of the Defect in the RAVA Car Seat, or the

16   truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until she

17   learned of the Recall on social media in approximately late December 2024 to early January 2025,

18   over three years after Plaintiff Faridian Kade initially purchased her first RAVA.

19       202.    Prior to her purchases, Plaintiff Faridian Kade did extensive research into which car

20   seat to purchase for her child, including looking at targeted advertisements on social media, print

21   advertisements displayed at Pottery Barn Kids, the Nuna website, labels, packaging, and online

22   reviews before choosing the RAVA Car Seat. Plaintiff Faridian Kade chose the RAVA in part

23   because she believed, based on Nuna's misleading statements, that the RAVA was the safest car

24   seat on the market. Moreover, the high price of the RAVA caused Plaintiff Faridian Kade to believe

25   the RAVA would be safe.

26       203.    Plaintiff Faridian Kade also received targeted advertisements for the Nuna RAVA

27   on social media websites including Facebook and Instagram prior to her purchases.

28

204.    Plaintiff Faridian Kade soon realized that the RAVA Car Seat was not, in fact, safe. Almost immediately after she began using her RAVA Car Seat, Plaintiff Faridian Kade began to notice the straps were coming loose. Using a handheld vacuum, she purchased specifically for this purpose, Plaintiff Faridian Kade would vacuum out the coverless front harness adjuster button and re-tighten the straps until they held—a time-consuming and stressful endeavor that left her concerned about the safety of her child.

205.    Notably, Plaintiff Faridian Kade only happened to learn of the Recall. She never received formal notice from Nuna of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall, she likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

206.    Following her discovery of the Recall, Plaintiff Faridian Kade completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

207.    Plaintiff Faridian Kade affirmatively reached out to Nuna repeatedly via phone and email in January and February of 2025 and was told to wait an indeterminate time until she received a Remedy Kit.

208.    Since receiving notice of the Recall, Plaintiff Faridian Kade has put two and two together: her expensive RAVA Car Seat suffers from an extremely dangerous defect.

209.    Plaintiff Faridian Kade, fearing for the safety of her child, replaced her RAVA Car Seats at a cost of approximately $120 to her. The replacement car seat lacked the advertised safety and cleanliness features that drew Plaintiff Faridian Kade to the RAVA—features for which she paid a price premium of over five hundred dollars ($500.00) per RAVA Car Seat.

210.    When Plaintiff Faridian Kade purchased the replacement car seat, she chose a budget option because she assumed that Nuna would promptly provide her with a Remedy Kit, enabling her to safely use her RAVA Car Seats once again.

211.    However, Nuna did not provide a Remedy Kit to Plaintiff Faridian Kade for over two months, and then finally provided her with a single Remedy Kit, rather than the two she

required. Plaintiff Faridian Kade was forced to wait even longer for the second Remedy Kit, and when it arrived, it did not match the purposefully-selected color of her remaining RAVA Car Seat.

212.    In fact, on or about February 7, 2025, a Nuna employee informed Plaintiff Faridian Kade over the phone that Nuna had not mailed out a single Remedy Kit to any purchaser of a RAVA Car Seat as of that date.

213.    In other words, two months after Nuna announced the Recall of the RAVA Car Seat, Nuna has not provided consumers any remedy at all for the dangerous—potentially fatal—Defect, leaving parents with a $550.00 car seat they could not safely use.

214.    Had Plaintiff Faridian Kade understood the true nature of the RAVA Car Seat at the time of purchase or had Plaintiff Faridian Kade known the truth underneath Nuna's misleading representations and omissions, she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it.

215.    Had Nuna disclosed to Plaintiff Faridian Kade prior to the point of sale the existence of the Defect and that the RAVAs would eventually be subject to a safety recall, she never would have purchased them or paid the premium price for them.

216.    The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVAs, which enticed Plaintiff Faridian Kade to purchase them and/or overpay in the first place. It does not make Plaintiff Kade whole. The only remedy appropriate for Plaintiff Faridian Kade and for Class Members is a refund of the RAVA Car Seat.

217.    Further, even if Nuna had offered Plaintiff Faridian Kade assistance installing using the Remedy Kit, Plaintiff Faridian Kade would not have felt comfortable mailing the RAVA to Pennsylvania, as it could be jostled and damaged without proper packaging and padding.

218.    As it stands, the purported solution to the defective Car Seats offered by Nuna to Plaintiff Faridian Kade and the Class is insufficient and has diminished the value of the RAVA Car Seats.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**VII.    THE STATUTES OF LIMITATIONS SHOULD BE TOLLED**

**A.    Continuing Act Tolling**

219.    Nuna continued to market and sell the dangerously defective RAVA Car Seat long after consumers began complaining that it was unsafe. Despite evidence to the contrary, Nuna continuously represented that the RAVA is safe and suitable for securing children and infants while driving and failed to disclose the dangerous Defect.

220.    By continuously repeating false representations and failing to disclose that the RAVA contains a uniform and dangerous Defect, Nuna engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Nuna might seek to apply.

221.    Specifically, as the creator, designer, and manufacturer of the RAVA, Nuna has had actual knowledge likely since at least 2016, and certainly ███████████████████████ ████████████████████████████ and by 2020 when consumers started complaining to NHTSA, that the RAVA is defectively designed and exposes infants and children to risk of injury and even death.

222.    Moreover, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster area—in an attempt to remedy the Defect, which Nuna presumably began designing months if not years before it began manufacturing it. This further reveals Nuna's ongoing knowledge of the Defect, and ongoing failure to disclose the Defect to the public.

223.    Nonetheless, Nuna issued the Recall only in December of 2024—███████████ █████████████████████████████████████████████ and fourteen months after it began manufacturing the re-designed RAVA. In the interim, Nuna did not issue a stop shipment or stop sell on the defective RAVAs even after they had notice of the Defect and waited over a year until the re-designed RAVA was on sale and warranties were expiring on the defective RAVAs before instituting an insufficient and poorly executed Recall.

224.    Thus, at all relevant times, Nuna indisputably possessed continuous knowledge of the material dangers posed by the RAVA, and yet Nuna knowingly continued to allow the sale of the RAVA. Plaintiffs' and Class Members' claims are not time-barred.

1    225.    Moreover, even after the Recall was initiated, there is no evidence that Nuna's

2    Recall Notice has reached all owners of the RAVA Car Seats.

3    226.    Plaintiffs and Class Members could not have reasonably discovered and could not

4    have known of these facts, which Nuna publicly disclosed for the first time mere months ago.

5    Indeed, until it issued the Recall, Nuna knowingly failed to disclose material information regarding

6    the existence of the Defect in all RAVAs manufactured before October 25, 2023. Accordingly, no

7    potentially relevant statute of limitations should apply.

8    **B.    Fraudulent Concealment Tolling**

9    227.    Any applicable statutes of limitations have been tolled or have not run for the

10    additional reason that Nuna knowingly, actively, and fraudulently concealed the facts as alleged

11    herein. Nuna had actual and constructive knowledge of the potentially fatal Defect in the RAVA

12    Car Seat for, *at minimum,* ███████████ before announcing the Recall.

13    228.    Plaintiffs and Class Members have been kept in ignorance of information essential

14    to the pursuit of their claims, and the safety of their children, without any fault or lack of diligence

15    on their part. Nuna's concealment of the Defect in the RAVA before, during, and after the purchases

16    of Plaintiffs' RAVA Car Seats prevented them from being on notice of any facts or information

17    that would have required them to inquire whether Nuna fulfilled its duties under the law and, if not,

18    whether Plaintiffs and Class Members had legal recourse.

19    229.    At all times prior to, during, and since the purchase of Plaintiffs' and Class

20    Members' RAVA Car Seats, Nuna has been in a superior position of knowledge about the Defect

21    and under a continuing duty to disclose the true facts regarding the safety Defect in the RAVA.

22    Plaintiffs and Class Members justifiably relied on Nuna to disclose the true nature of the Products

23    they purchased and/or owned because that inherent Defect was not discoverable by Plaintiffs and

24    the other Class Members through reasonable efforts. Because of Nuna's willful concealment of

25    material information concerning the RAVA over a period of years, Nuna is estopped from relying

26    on any statute of limitations defense against the claims of Plaintiffs and Class Members.

27    / / /

28    / / /

1

### C.    Discovery Rule Tolling

2       230.    Plaintiffs and Class Members could not have discovered through the exercise of

3   reasonable diligence that their RAVA Car Seats were defective within the time period of any

4   applicable statutes of limitation because, as described herein, only Nuna had that information and

5   was, at all relevant times, in a superior position of knowledge about the Defect, and Nuna was

6   concealing that information from the public.

7       231.    Indeed, Plaintiffs first became aware of the RAVA's dangerous Defect and

8   associated safety risks when they learned of the Defect's existence through Nuna's Recall (for

9   which many Class Members have still yet to formal notice).

10      232.    Plaintiffs and other Class Members could not have reasonably discovered and could

11  not have known of facts that would have caused a reasonable person to suspect, that Nuna was

12  designing, manufacturing, and marketing the RAVA Car Seat despite being aware it contained a

13  dangerous Defect.

14      233.    As such, no potentially relevant statute of limitations should be applied.

15      ### D.    Estoppel

16      234.    Nuna was under a continuous duty to disclose to Plaintiffs and other Class Members

17  the fact they knew about the dangerously defective nature of the RAVA Car Seats.

18      235.    Nuna knowingly, affirmatively, and actively concealed the true nature, quality, and

19  character of the RAVA Car Seats from Plaintiffs and Class Members.

20      236.    Thus, Nuna is estopped from relying on any statute of limitations defense against

21  the claims of Plaintiffs and Class Members.

22  ## VIII.    CLASS ACTION ALLEGATIONS

23      237.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiffs bring

24  this action on behalf of themselves and others similarly situated.

25      238.    Plaintiffs seek to represent a Class defined as:

26          All persons in California who purchased or own a RAVA Car Seat
            subject to the Recall.

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

239.    Plaintiffs reserve the right to amend the Class definition as necessary, including but not limited to, including additional products made by Nuna with the same Defect and/or other products made by Nuna with the common Defect but bearing different brand names.

240.    **Numerosity:** At this time, Plaintiffs do not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in California selling the RAVA Car Seats, as well as total nationwide sales figures of over 600,000, Plaintiffs believe that members of the Class and Subclass are so numerous that joinder of all members is impracticable.

241.    **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class Members include, but are not necessarily limited to:

- Whether Defendant's conduct was unfair, deceptive, and/or misleading under applicable law;
- Whether Defendant has violated the state consumer protection laws and common law claims alleged in this complaint; and
- Whether Plaintiffs and Class Members are entitled to damages, restitution, injunctive or other equitable relief.

242.    **Typicality:** Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased and used, in a typical consumer setting, Nuna's RAVA Car Seat and Plaintiffs sustained damages from Nuna's wrongful conduct.

243.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiffs have no interests which conflict with those of the Class.

244.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

/ / /

/ / /

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

245.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate equitable relief with respect to the Class as a whole.

246.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class Members are not parties to such actions.

## IX.     CLAIMS FOR RELIEF

**COUNT ONE**
**Fraud**
**(On behalf of Plaintiffs and the Class)**

247.     Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

248.     Plaintiffs bring this claim on behalf of themselves and the Class.

249.     At all times material herein, Defendant knew that the RAVA Car Seats contain the dangerous Defect rendering the RAVA Car Seat unsafe and unsuitable for children.

250.     Defendant provided Plaintiffs and Class Members with false or misleading material information and failed to disclose material facts about the true nature of the RAVA Car Seat, including but not limited to the fact the RAVA Car Seat contains the dangerous Defect rendering the Product unsafe and unsuitable to serve its intended purpose as a child safety product. Further, Defendant's omissions by failing to disclose the Defect contrary to Defendant's representations or partial representations.

251.     Defendant omitted disclosing the Defect to consumers that it had knowledge of and a duty to disclose. Rather, Defendant promised consumers that the RAVA Car Seat was fit for its intended purpose and that it was free of defects and that it was safe and suitable for infants and children for restraint in a moving vehicle through its safety-related representations in its advertising and marketing.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

252.    Defendant had exclusive knowledge of the RAVA Car Seat's Defect at the time of sale to Plaintiffs and Class Members and at all other relevant times. Neither Plaintiffs nor Class Members, in the exercise of reasonable diligence, could have independently discovered the true nature of the RAVA Car Seat and its Defect prior to purchase.

253.    Defendant had the capacity to, and did, deceive Plaintiffs and Class Members into believing they were purchasing a car seat that was safe and suitable for children.

254.    Defendant undertook active and ongoing steps to conceal the presence of the Defect in the RAVA Car Seat. Plaintiffs are not aware of anything in Defendant's advertising, publicity, or marketing materials that disclosed the truth about the RAVA Car Seat, despite Defendant's awareness of the Defect and the serious safety risks associated with the Defect.

255.    The facts concealed and/or not disclosed by Defendant about the Defect to Plaintiffs and Class Members are material facts in that a reasonable person would have considered fundamental in deciding whether to purchase the RAVA Car Seat, or else pay substantially less for the RAVA Car Seat.

256.    Defendant intentionally concealed and/or failed to disclose material facts about the Defect for the purpose of inducing Plaintiffs and Class Members to act purchase the RAVA Car Seat.

257.    Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchases of the RAVA Car Seat.

258.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the RAVA Car Seat.

259.    Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial as a result of Defendant's fraudulent concealment and nondisclosure because they would not have purchased the RAVA Car Seat or would not have purchased the RAVA Car Seat for the price they did, if the true facts concerning the RAVA Car Seat had been known.

260.    Plaintiffs and Class Members are entitled to all relief the Court deems proper as a result of Defendant's actions described herein.

**COUNT TWO**
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the Class)**

261.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

262.    Plaintiffs bring this claim on behalf of themselves and the Class.

263.    At all times material herein, Defendant knew that the RAVA Car Seats contain the dangerous Defect rendering the RAVA Car Seat unsafe and unsuitable for children.

264.    Defendant provided Plaintiffs and Class Members with false or misleading material information and failed to disclose material facts about the true nature of the RAVA Car Seat, including but not limited to the fact the RAVA Car Seat contains the dangerous Defect rendering the Product unsafe and unsuitable to serve its intended purpose as a child safety product. Further, Defendant's omissions by failing to disclose the Defect contrary to Defendant's representations or partial representations.

265.    Defendant omitted disclosing the Defect to consumers that it had knowledge of and a duty to disclose. Rather, Defendant promised consumers that the RAVA Car Seat was fit for its intended purpose and that it was free of defects and that it was safe and suitable for infants and children for restraint in a moving vehicle through its safety-related representations in its advertising and marketing.

266.    Defendant had exclusive knowledge of the RAVA Car Seat's Defect at the time of sale to Plaintiffs and Class Members and at all other relevant times. Neither Plaintiffs nor Class Members, in the exercise of reasonable diligence, could have independently discovered the true nature of the RAVA Car Seat and its Defect prior to purchase.

267.    Defendant had the capacity to, and did, deceive Plaintiffs and Class Members into believing they were purchasing a car seat that was safe and suitable for children.

268.    Defendant undertook active and ongoing steps to conceal the presence of the Defect in the RAVA Car Seat. Plaintiffs are not aware of anything in Defendant's advertising, publicity, or marketing materials that disclosed the truth about the RAVA Car Seat, despite Defendant's awareness of the Defect and the serious safety risks associated with the Defect.

269.    The facts concealed and/or not disclosed by Defendant to Plaintiffs and Class Members about the Defect are material facts in that a reasonable person would have considered them fundamental in deciding whether to purchase the RAVA Car Seat, or else pay substantially less for the RAVA Car Seat.

270.    At the time Defendant made these representations and omissions, Defendant knew or should have known that these representations and omissions were false and/or material or made them without knowledge of their truth or veracity.

271.    At an absolute minimum, Defendant negligently misrepresented material facts about the safety of the RAVA Car Seats by failing to disclose the Defect.

272.    The negligent misrepresentations and omissions made by Defendant, upon which plaintiffs and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class to purchase the RAVA Car Seats.

273.    The actions of Defendant caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

**COUNT THREE**
**Violations of the California Consumers Legal Remedies Act,**
**Cal. Civ. Code §§1750, *et seq.***
**(On behalf of Plaintiffs and the Class)**

274.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

275.    Plaintiffs bring this claim on behalf of themselves and the Class.

276.    Plaintiffs and the Class Members are "consumers" that purchased "goods" in the form of the RAVA Car Seat within the meaning of California Civil Code § 1761. The application of the California Consumer Legal Remedies Act ("CLRA") to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of California.

277.    Defendant is a "person" within the meaning of California Civil Code § 1761(c).

278.    Defendant violated California Consumer Legal Remedies Act, Civil Code § 1770(a)(5), *inter alia*, by representing that the RAVA Car Seat has characteristics, uses or

1    benefits, which it does not have, and/or Civil Code § 1770(a)(7) by representing that the RAVA

2    Car Seat is of a particular standard, quality, or grade, even though it is of another. Such conduct

3    includes, among other things:

4        a.    Designing, manufacturing, marketing, and selling the RAVA Car Seat

5    consumers that contained material, fundamental Defects without disclosing such Defects

6    to consumers;

7        b.    Marketing and selling the RAVA Car Seat when it was not safe for the

8    purpose of providing safe transportation for infants and small children; and

9        c.    Marketing and selling the RAVA Car Seat while concealing material facts

10   from Plaintiffs and Class Members regarding the Defects in the RAVA Car Seats that would create

11   a safety risk for Plaintiffs and Class Members who purchased the RAVAs to provide safe and

12   reliable transportation for their infants and small children.

13       279.    Pursuant to California Civil Code § 1782, former Plaintiff Prashmi Khanna sent a

14   CLRA notice of violation and demand letter to Defendant on February 6, 2025 on behalf of herself

15   and similarly situated class members. Plaintiffs Barrales and Smith sent a CLRA notice of violation

16   and demand letter earlier to Defendant on January 29, 2025 on behalf of themselves and similarly

17   situated class members. Plaintiffs Bernasconi Pelufo and Faridian Kade sent a CLRA notice of

18   violation and demand letter to Defendant on March 31, 2025 on behalf of themselves and similarly

19   situated class members. Plaintiffs have received no responses.

20       280.    Pursuant to California Civil Code § 1780, Plaintiffs, on behalf of themselves and

21   Class Members, seek an order enjoining Defendant from the unlawful practices described herein

22   and a declaration that Defendant's conduct violated the CLRA.

23       281.    Pursuant to California Civil Code § 1782(d), Plaintiffs, on behalf of themselves and

24   Class Members, also seek equitable relief as well as monetary relief from Defendant to provide

25   actual, compensatory, and statutory damages, and attorneys' fees and costs.

26   / / /

27   / / /

28   / / /

**COUNT FOUR**
**Unlawful, Unfair, and Fraudulent Business Acts and Practices**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Class)**

282.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

283.    Plaintiffs bring this claim on behalf of themselves and the Class.

284.    Defendant's acts and practices constitute "unfair competition," "unlawful, unfair, and fraudulent business practices" and "unfair, deceptive, untrue, or misleading advertising" in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. The application of the UCL to the putative Class in this action is appropriate because Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of California.

285.    Defendant engaged in fraudulent, unlawful and unfair business practices in violation of the UCL by, among other things:

a.    <u>Fraudulent</u>: Designing, developing, marketing and selling RAVA Car Seats while concealing material facts from Plaintiff and Class Members regarding the Defects in the RAVAs that would create a safety risk for Plaintiff and Class Members who purchased the RAVA Car Seats to provide safe transportation for infants and small children;

b.    <u>Unfair</u>: Defendant's conduct is unfair because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and Class Members and because Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class Members. As described in this Complaint, Defendant's unfair conduct is attributable to, inter alia, its ongoing fraudulent deception of failing to disclose a known Defect prior to consumers' purchase, continuing to conceal that Defect and failing to disclose and warn consumers about the risks associated with the Defect

before it initiated the Recall; and by implementing a insufficient and ineffective Recall that failed to remedy the Defect and devalued consumers' property and limited its useful life; and

    c.    <u>Unlawful</u>: Defendant's conduct is unlawful because it violates:

        1.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.;

        2.    California False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq.*;

        3.    Federal Motor Vehicle Safety Standard 213 and 213a, 49 C.F.R. § 571.213 and 517.213a; and

        4.    California's fraud and negligent misrepresentation claims.

286.    Plaintiffs and Class Members reasonably and justifiably relied on Defendant's conduct alleged herein. Had Defendant disclosed the existence of the Defect in the RAVA Car Seats, Plaintiffs and Class Members would have learned of the true nature of the RAVA Car Seats and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the Defects in the RAVA Car Seats, they either would not have purchased the RAVA Car Seats, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members purchased and overpaid for their RAVA Car Seats and did not receive the benefit of their bargain.

287.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on behalf of themselves and Class Members, have suffered injury in the form of lost money and property, including but not limited to, lost money associated with the purchase of the RAVA Car Seat, lost money associated with the purchase of replacement car seats, a diminishment in the value and useful life of the RAVA Car Seat, as a direct and proximate result of Defendant's fraudulent, unlawful, and unfair business practices are therefore entitled to equitable relief, including restitution, disgorgement of profits Defendant obtained from its fraudulent, unlawful, and unfair business practices, and an order enjoining Defendant from the unlawful practices described herein, as well actual damages, and attorneys' fees and costs.

1

**COUNT FIVE**
**Violation of California False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On behalf of Plaintiffs and Class)**

288.    Plaintiffs incorporate by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

289.    Plaintiffs bring this claim on behalf of themselves and the Class.

290.    Each of the above deceptive and misleading advertising practices of Defendant set forth above constitutes untrue or misleading advertising under the California False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq.*

291.    At all material times, Defendant's statements and marketing and advertising materials misrepresented or omitted material facts regarding the safety of Defendant's RAVA Car Seat as set forth in this Complaint. Defendant is disseminating statements, marketing and advertising concerning the safety of its RAVA Car Seat that are unfair, untrue, deceptive, or misleading within the meaning of California Business & Professions Code § 17500, *et seq.*

292.    Defendant's acts and practices have deceived and/or are likely to continue to deceive Plaintiffs, members of the Class, and the public. As set forth above, Defendant's safety and quality claims are deceptive and misleading to reasonable consumers because the RAVA Car Seat contained a safety Defect, making the RAVA extremely hazardous and unsafe. Moreover, Defendant intentionally does not disclose any of this information to consumers and instead represents that the RAVA Car Seat is beyond average levels of safety.

293.    More specifically, Defendant misrepresented the true nature, quality, and character of the RAVA Car Seats by failing to disclose the existence of the Defect and by misrepresenting that the RAVA Car Seats were fit for their intended purpose of providing safe restraint to infants and children in a vehicle.

294.    To the contrary, the RAVA Car Seats contained the dangerous Defect at the time of purchase and no reasonable consumer would believe that, in light of the dangerous Defect, that the RAVA Car Seats were merchantable or fit for the ordinary purpose for which they were used and

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  sold or were not otherwise injurious to consumers, where Plaintiff and Class Members could not

2  immediately identify the Defect.

3      295.    At the time it made the misrepresentations and omissions, Defendant either knew

4  about the existence of the Defect in the RAVA Car Seats, which rendered them unsafe. Defendant

5  concealed, omitted, and failed to disclose this information from Plaintiffs and Class Members.

6      296.    Defendant has violated the FAL because the misrepresentations and omissions

7  regarding the RAVA Car Seats as set forth herein were material and likely to deceive a

8  reasonable consumer.

9      297.    The misrepresented and omitted facts concerning the RAVA Car Seats were also

10 material because they concern central functions of the RAVA Car Seats—namely, that the RAVA

11 Car Seats are safe, free of defect, and capable of providing safe restraint to infants and children in

12 a vehicle, including during a crash.

13     298.    Plaintiffs and Class Members purchased the RAVA Car Seats in reliance on the

14 statements and omissions made in Defendant's advertising and marketing materials and

15 Defendant's omissions and concealment of material facts regarding the quality and use of the

16 RAVA Car Seats.

17     299.    Plaintiffs and Class Members reasonably and justifiably relied on Defendant's

18 conduct alleged herein. Had Defendant disclosed the existence of the Defect in the RAVA Car

19 Seats, Plaintiffs and Class Members would have learned of the true nature of the RAVA Car Seats

20 and would have acted differently. Had Plaintiffs and Class Members known about the true state of

21 facts of the Defects in the RAVA Car Seats, they either would not have purchased the RAVA Car

22 Seats, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class

23 Members purchased and overpaid for their RAVA Car Seats and did not receive the benefit of

24 their bargain.

25     300.    As a direct and proximate result of Defendant's conduct as set forth herein,

26 Defendant has obtained ill-gotten gains and/or profits, including but not limited to money from

27 Plaintiffs and Class Members who paid for the RAVA Car Seats, which contained the Defect.

28

301.    Plaintiffs, on behalf of themselves and Class Members, have suffered injury in the form of lost money and property including but not limited to, lost money associated with the purchase of the RAVA Car Seat, lost money associated with the purchase of replacement car seats, a diminishment in the value and useful life of the RAVA Car Seat, as a direct and proximate result of Defendant's violations of the FAL are therefore entitled to equitable relief, including restitution, disgorgement of profits Defendant obtained from its fraudulent, unlawful, and unfair business practices, and an order enjoining Defendant from the unlawful practices described herein, as well as any other relief allowed under California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment individually, and on behalf of themselves, and members of the Class, as follows:

A.    For an order certifying the Class and Subclass under Federal Rule of Civil Procedure 23 and naming Plaintiffs as representatives of the Class, and Plaintiffs' attorneys as Class Counsel;

B.    For an order declaring that Nuna's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs, the Class, and/or the Subclasses on all counts asserted herein;

D.    Award actual, compensatory, and statutory damages in amounts to be determined by the Court and/or jury;

E.    Award restitution and order disgorgement of all profits that Nuna obtained from Plaintiffs and Class Members as a result of Nuna's unlawful, unfair, and fraudulent business practices;

F.    Grant injunctive relief as permitted by law or equity, including enjoining Nuna from continuing the unlawful practices and illegal acts detailed herein;

G.    Award pre- and post-judgment interest on all amounts awarded;

H.    Award Plaintiffs, the Class, and Subclass their reasonable attorneys' fees and expense and cost; and

I.    Order such other and further relief as may be just and proper.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

**JURY TRIAL DEMAND**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

Respectfully submitted,

4

DATED: February 6, 2026                    DATED: February 6, 2026

5

**MILBERG COLEMAN BRYSON**            **KAPLAN FOX & KILSHEIMER LLP**
**PHILLIPS GROSSMAN, PLLC**

6

By: /s/ *William A. Ladnier*                   By: /s/ *Matthew B. George*

7

     William A. Ladnier                             Matthew B. George

8

Adam A. Edwards (*pro hac vice*)            Laurence D. King (SBN 206423)
William A. Ladnier (SBN 330334)             Matthew B. George (SBN 239322)

9

Virginia Ann Whitener (*pro hac vice*)       A.J. de Bartolomeo (SBN 136502)
800 S. Gay Street, Suite 1100               Clarissa R. Olivares (SBN 343455)

10

Knoxville, TN 37929                          1999 Harrison Street, Suite 1501
Telephone: (865) 247-0080                   Oakland, CA 94612

11

Facsimile: (865) 522-0049                    Telephone: 415-772-4700
Email:  aedwards@milberg.com                Facsimile: 415-772-4707

12

      wladnier@milberg.com              Email:   lking@kaplanfox.com
      gwhitener@milberg.com                  mgeorge@kaplanfox.com

13

           ajd@kaplanfox.com
**MILBERG COLEMAN BRYSON**                  colivares@kaplanfox.com

14

**PHILLIPS GROSSMAN, PLLC**
Alex R. Straus (SBN 321366)                 *Attorneys for Plaintiffs Mariana Bernasconi*

15

280 S. Beverly Drive, PH Suite              *Pelufo, Behnaz Faridian Kade, and the*
Beverly Hills, CA 90212                      *Proposed Class*

16

Tel: (866) 252-0878
Fax: (865) 522-0049

17

astraus@milberg.com

18

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice*)

19

Daniel Tomascik (*pro hac vice*)
954 Avenida Ponce De Leon

20

Suite 205, #10518
San Juan, PR 00907

21

Telephone: (215) 789-4462

22

*Attorneys for Plaintiffs Tina Marie Barrales,*
*Alyna Smith and the Proposed Class*

23

24

25

26

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

## SIGNATURE ATTESTATION

2          Pursuant to N.D. Cal. Local Rule 5(i)(3), I hereby attest that the other signatory has

3   concurred in the filing of this document.

4

5                                              **KAPLAN FOX & KILSHEIMER LLP**

   DATED: February 6, 2026              /s/ *Matthew B. George*
6                                               Matthew B. George

7                                              *Attorney for Plaintiffs Mariana Bernasconi Pelufo,*
                                               *Behnaz Faridian Kade, and the Proposed Class*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28