**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
Email: *aedwards@milberg.com*
         *wladnier@milberg.com*
         *gwhitener@milberg.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
A.J. de Bartolomeo (SBN 136502)
Blair E. Reed (SBN 316791)
Clarissa Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email:  *lking@kaplanfox.com*
         *mgeorge@kaplanfox.com*
         *ajd@kaplanfox.com*
         *breed@kaplanfox.com*
         *colivares@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NUNA BABY ESSENTIALS RAVA LITIGATION | Case No. 3:25-cv-01284-AMO |
| | **Class Action** |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Judge:        Hon. Araceli Martínez-Olguín |
| | Courtroom: 10, 19th Floor |
| | Date:          April 16, 2026 |
| | Time:          2:00 p.m. |

**[PUBLIC/REDACTED VERSION OF DOCUMENT
SOUGHT TO BE FILED UNDER SEAL]**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................ 1

II.  FACTUAL ALLEGATIONS ........................................................................................ 2

    A.  Consumers First Began Reporting RAVA's Safety Defect on ███████ ................................................................................................................ 2

    B.  Nuna's Recall Is Problematic and Inadequate. ...................................................... 4

III.  ARGUMENT ................................................................................................................. 5

    A.  Plaintiffs Adequately Pleaded Their Fraud-Based Claims ...................................... 5

        1.  Plaintiffs' Fraudulent Omissions Claims Should Be Sustained. ................. 6

        2.  Plaintiffs Plausibly Plead Nuna Had, and Breached, Its Duty to Disclose the Defect. ..................................................................................... 8

        3.  Nuna Had Extensive Presale Knowledge of the Defect. ............................ 9

            a.  The ███████ of Presale Consumer Complaints Are Sufficient to Establish Nuna's Presale Knowledge ...................... 9

            b.  The RAVA Redesign Further Confirms Nuna's Presale Knowledge. ................................................................................... 15

            c.  Plaintiffs' Common Law Fraud Claim Should Also Be Sustained. ..................................................................................... 16

        4.  Plaintiffs' UCL Claim Can Also be Sustained on the Unfair or Unlawful Prongs. ..................................................................................... 17

            a.  Nuna's Conduct Was Unfair. ........................................................ 17

            b.  Nuna's Conduct Was Unlawful. .................................................... 19

        5.  Plaintiffs Allege Actionable Misrepresentations. ..................................... 19

            a.  The RAVA Was Marketed and Sold as Safe and Suitable for Children Despite Containing the Dangerous Safety Defect .......... 19

            b.  Plaintiffs Allegations Are Sufficient to Establish Reliance. ......... 20

            c.  Nuna's Advertising and Marketing Are Misrepresentations that Are Likely to Deceive Reasonable Consumers ...................... 22

        6.  Plaintiffs Sufficiently State Their Negligent Misrepresentation Claim Based on Actionable Misrepresentations and Material Omissions. ................................................................................................. 23

IV.  CONCLUSION ............................................................................................................ 24

Case No. 3:25-cv-01284-AMO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Apple, Inc*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................. 8, 21, 24

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..................................................................... 6

*Bank of the West v. Sup. Ct.*,
  2 Cal. 4th 1254 (1992) .............................................................................................. 5

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ............................................................................... 18

*Beaty v. Ford Motor Co.*,
  854 F. App'x 845 (9th Cir. 2021) ........................................................................... 10

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007) ............................................................................... 19

*Cappello v. Walmart Inc.*,
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) .................................................................. 18

*Cholokyan v. Mercedes–Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) .................................................................... 8

*Clark v. Nordic Nats., Inc.*,
  No. 24-CV-04058-EKL, 2025 WL 1592676 (N.D. Cal. June 5, 2025) ................... 24

*Coe v. Gen. Mills, Inc.*,
  No. 15-CV-05112-TEH, 2016 WL 4208287  (N.D. Cal. Aug. 10, 2016) ................ 23

*Cole v. Wright Med. Tech. Inc.*,
  No. 2:20-CV-03993-RGK-E, 2020 WL 5846460 (C.D. Cal. July 27, 2020) .......... 24

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ................................................................................... 8

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................. 18

*Deras v. Volkswagen Grp. of Am., Inc.*,
  No. 17-cv-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) .................... 10

*DiGiacinto v. RB Health (US) LLC*,
  668 F. Supp. 3d 950 (N.D. Cal. 2023) .................................................................... 22

*Doyle v. FKA Distrib. Co., LLC*,
  No. 2:23-cv-10807-SPG-SSC, 2025 WL 3804500 (C.D. Cal. June 13, 2025) ......... 11

*Edwards v. Ford Motor Co.*,
  603 F. App'x 538 (9th Cir. 2015) .............................................................................. 8

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) ........................................................................ 8

*Engalla v. Permanente Med. Group, Inc.*,
  15 Cal.4th 951 (Cal. 1997) ........................................................................................ 16

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................................... 8

*Freund v. HP, Inc.*,
  No. 22-cv-03794-BLF, 2023 WL 5184140 (N.D. Cal. Aug. 10, 2023) .................................... 17

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
  316 F. App'x 561 (9th Cir.2008) ............................................................................... 22

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................... 22, 23

*Handley v. La Melza*,
  No. 2:22-cv-00797-MCS-MAR, 2023 WL 3555480 (C.D. Cal. Apr. 20, 2023) ...................... 17

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ....................................................................................... 9

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. 1:19-MD-2903, 2023 WL 1822239 (W.D.N.Y. Feb. 8, 2023) ............................................ 1

*In re Honda Idle Stop Litig.*,
  694 F. Supp. 3d 1293 (C.D. Cal. 2023) ................................................................. 6, 10

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................................... 16

*In re Soc. Media Adolescent Addiction/Personal Injury Products Liab. Litig.*,
  753 F. Supp. 3d 849 (N.D. Cal. 2024) ......................................................................... 23

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................... 21

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
  534 F. Supp. 3d 1067 (N.D. Cal. 2021) ....................................................................... 16

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002), *as modified* (May 22, 2002) ............................................... 20, 21

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................... 16

*Kirkpatrick v. Home Depot U.S.A., Inc.*,
  No. 2:24-CV-01927-DAD-CKD, 2025 WL 2029714 (E.D. Cal. July 21, 2025) ............... 16, 17

*Klaehn v. Cali Bamboo LLC*,
  No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ............................................... 17

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Kowalsky v. Hewlett-Packard Co.*,
   No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011)................................... 6

*Krystofiak v. BellRing Brands, Inc.*,
   737 F. Supp. 3d 782 (N.D. Cal. 2024) ........................................................ 21, 23

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) ...................................................................... 21

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) ............................................................... 19

*Long v. Graco Children's Prods., Inc.*,
   No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013)......................... passim

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)................................................................ 18

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...................................................... 6, 16

*Mirkin v. Wasserman*,
   5 Cal.4th 1082 (1993) ...................................................................... 8

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020)............................................................ 6, 21

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ................................................................ 22

*Nickerson v. Goodyear Tire and Rubber Corp.*,
   No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561 (C.D. Cal. June 3, 2020) ........................... 11

*Paperno v. Whirlpool Corp.*,
   No. 23-CV-05114-RFL, 2024 WL 1091192 (N.D. Cal. Mar. 13, 2024) ................................. 16

*Patrick v. Volkswagen Grp. of Am., Inc.*,
   No. 19-cv-1908-JVS, 2020 WL 3883275 (C.D. Cal. Mar. 5, 2020).................................. 10, 15

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) ...................................................... 24

*Roberts v. Nuna Baby Essentials, Inc.*,
   Case No. 25-CV-2209-KKE (W.D. Wash.)................................................ 11, 12, 19

*Romero v. Amazon.com Inc.*,
   No. C25-548 JNW, 2025 WL 2409943 (W.D. Wash. Aug. 20, 2025)............................... 19

*Sneed v. Procter & Gamble Co.*,
   779 F. Supp. 3d 1025 (N.D. Cal. 2025) ..................................................... 23

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
   904 F.3d 667 (9th Cir. 2018)................................................................ 17

## TABLE OF AUTHORITIES (cont.)

Page(s)

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011).................................................................................. 16

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)............................................................................ 20, 22

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017)...................................................................... 9, 10, 15

*Wilson v. Hewlett–Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012).......................................................................... 8, 9, 17

## STATUTES

49 C.F.R. § 571.213 ....................................................................................................... 21

California Business & Professions Code
   § 17500........................................................................................................................ 6

California Civil Code
   § 1770 (a) (5), (7), (9), (16)...................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

## I.    INTRODUCTION

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ First Amended Consolidated Complaint ("FACC") ¶¶ 78(g), 82(a), 78(c), 92(c). These are just ████████████████████████████ ████████████████████ to Defendant Nuna Baby Essentials, Inc. ("Defendant" or "Nuna"), when it violated their trust by designing, manufacturing, and marketing the dangerously defective "RAVA" Car Seat, which sold for a premium price—over $500. *Id.* ¶ 3. Nuna sold and later recalled over 600,000 RAVA Car Seats manufactured between July 16, 2016, and October 25, 2023, without a cover over the front harness adjuster button, which controls the tightness of the Car Seat straps, causing the straps to loosen when debris enters the front harness adjuster button area that can enable children to come loose in transit ("the Defect"). *Id.* ¶ 5.

Since the Court's January 7, 2026, hearing on Nuna's previous motion to dismiss, ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Indeed, by the time Nuna finally announced a recall on December 20, 2024 (the "Recall") it had received ████████████████████ ████████████████████████████ and consumers had lodged 46 additional complaints with the National Highway Transportation Safety Administration ("NHTSA"). Accordingly, Nuna had knowledge of the Defect for at least ████████████████████████████████████████, during which time it should have disclosed the Defect to prospective consumers, warned owners about it, and promptly pulled the RAVA out of the marketplace. The bottom line is that no parent would have ever purchased a RAVA Car Seat had they known it contained a dangerous Defect that could result in a child's injury or even death, and that precipitated a government-supervised Recall (that itself was problematic). As one federal court correctly observed, "there is no market for childcare products discounted to reflect the risk of death or injury." *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*In re Fisher Price*"), No. 1:19-MD-2903, 2023 WL 1822239, at *3 (W.D.N.Y. Feb. 8, 2023).

Plaintiffs Tina Marie Barrales, Alyna Smith, Mariana Bernasconi Pelufo, and Behnaz Faridian Kade are mothers of young children in California who, like any parent, would never have purchased a RAVA Car Seat had they known of the Defect. Fortunately, their children were not physically injured by Nuna's conduct, but they nevertheless suffered damages. Accordingly, Plaintiffs bring suit on behalf of themselves and other aggrieved parents as a putative class action to avail themselves of state consumer protection laws that are in place for exactly this type of economic harm. For these and the other reasons set forth below, the Court should deny Nuna's Motion to Dismiss ("Mot.") in all respects.

## II.    FACTUAL ALLEGATIONS

### A.    Consumers First Began Reporting RAVA's Safety Defect on ████████.

Nuna began manufacturing the RAVA on July 16, 2016. FACC ¶ 5. ████████

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1  ██████████████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████

4      ███████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████████████

7  ████████████████████████████████ and at least one consumer had filed a complaint with

8  NHTSA. *Id.* ████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████████████

10  and 13 consumers had filed complaints with NHTSA. *Id.* ███████████████████

11  ██████████████████████████████████████████████ and 24 consumers

12  had filed complaints with NHTSA. *Id.*

13      ████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████████

23      By 2023, Nuna was already designing and putting into production a redesigned RAVA, but

24  it continued not only to fail to disclose the Defect prior to the point of sale (and/or pull RAVAs off

25  the shelves), but also to affirmatively represent the safety, security, and durability of its defective

26  products. *Id.* ¶¶ 41-53, 57, 93. ████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████

1  █████████████████████████████████████████████

2  █████████████████████████████████████████████

3  █████████████████████████████████████████████

4  █████████████████████████████████████████████

5  █████████████████████████████████████████████

6  ████████████████████████████████

7  **B.    Nuna's Recall Is Problematic and Inadequate.**

8  Nuna did not initiate the Recall until December 2024, ████████████

9  ████████████████████████████████ *Id.* ¶¶ 70, 223. The Recall provided no refunds or

10  compensation. *Id.* ¶¶ 18, 116(g), 125, 131-146, 147(g), (j), (v), 148(b), 149. In other words, Nuna

11  prioritized profits over children's safety. Rather than actually recalling the unsafe RAVA, Nuna

12  instead offered to provide parents with instructions on how to cursorily clean and modify their

13  existing RAVA Car Seat—promising only a new seat pad, cleaning kit, and care instructions (the

14  "Remedy Kit"), which would end up arriving months after the Recall was announced. *See id.* ¶ 17,

15  Ex. A ("Recall Notice"), ECF No. 69-1. Parents must then disassemble, clean, and reassemble the

16  RAVA Car Seat, and hope that the Defect will not manifest or recur. *Id.* The Recall also relies on

17  the parent to properly re-assemble the adjuster cover and correctly re-route straps through the seat

18  cover. *Id.* Thus, even setting aside Nuna's failure to provide any financial compensation, the

19  inadequacy of the Recall further diminishes the value of Nuna's so-called "luxurious" car seats. *Id.*

20  Worse, the Recall requires consumers to *request* remediation—which they must install

21  themselves, as laypersons with no knowledge of the design of car seats. FACC ¶ 18. And consumers

22  have publicly complained to NHTSA and retailers that the Recall (and Nuna's handling of it) is

23  ineffective because, *inter alia*, that notice of Nuna's recall never reached them directly and that

24  they only learned about it through third-parties; that Nuna's customer service was disorganized and

25  unresponsive; that Nuna refused to provide reimbursements, refunds, or replacement non-defective

26  car seats; that the Defect was occurring even without debris and that it continued to recur after

27  cleaning; that Nuna's Remedy Kit was not available for many months after the Recall; that Nuna's

28  Remedy Kit was difficult to install; that the RAVA was not properly tested for safety with the

Recall and/or Remedy Kit; and that the Defect persisted after the Remedy Kit was installed and cleaning instructions Nuna provided were undertaken. *Id.* In some of the more remarkable complaints, consumers reported that Nuna's customer service personnel gallingly suggested that rodents had damaged a consumer's car seat and told a woman who was 34 weeks pregnant that she had to undertake the physically strenuous task of removing her RAVA (which she had already registered with Nuna) in order to confirm its information before being provided a Remedy Kit. *Id.*

Many consumers have also reported experiencing the Defect occurring even without debris in the harness adjuster area or after cleaning it out. *Id.* ¶¶ 5, 7, 11, 18, 57-58, 67, 78(c), 78(h) ("█████████████████████████████████████████████████████████████████████"), 80, 89, 92 (h), 92(m), 92(n) ("███████████████████████████████████████████████████████████"), 95, 104, 137, 139, 147(a), 147(k) ("The entire car seat was cleaned and the issue was still present."), 147(n), 147(p), 147(u), 147(w) ("I followed the instructions for cleaning of the car seat and installation of the new cover. My child's safety was put at risk as the straps are now able to loosen without pressing the button. We had not had strap loosening issues initially, but now are despite having followed the instructions as part of the recall . . . .") 149, 155. Despite these facts, Nuna claims that it has done all it has to and that consumers should just have to live with their defective, demonstrably unsafe car seats, and its shoddy Recall. *Id.* ¶ 18; *see also* ¶¶ 131-49. Accordingly, the only remedy that will make Plaintiffs and consumers whole is compensation for their RAVAs and injunctive relief to institute a proper recall to get dangerous RAVAs out of parents' cars *Id.* ¶¶ 155, 169, 185, 197, 216, 241.

## III.    ARGUMENT

### A.    Plaintiffs Adequately Pleaded Their Fraud-Based Claims.

Nuna's advertising and sale of the dangerously defective RAVA Car Seat violated California law. California's Unfair Competition Law ("UCL") generally prohibits "deceptive" advertising. *Bank of the W. v. Sup. Ct.*, 2 Cal. 4th 1254, 1266-67 (1992). The California Consumer Legal Remedies Act ("CLRA") also prohibits "unfair or deceptive acts or practices," such as "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." *See* Cal. Civ. Code § 1770 (a) (5), (7), (9), (16). The

False Advertising Law ("FAL") generally prohibits advertising that contains "any statement . . . which is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The legal standards for all three are similar, *see, e.g.*, *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016-17 (9th Cir. 2020), and Nuna has run afoul of all three.

As described below, Plaintiffs have satisfied these elements. Plaintiffs address the prevailing principles of law and common allegations applicable to their fraud (Count I), CLRA (Count III), UCL (Count IV), and FAL (Count V), followed by negligent misrepresentation (Count II) claims. Plaintiffs first address their primary omissions theory of fraud, then misrepresentations.

### 1.    Plaintiffs' Fraudulent Omissions Claims Should Be Sustained.

Nuna's defenses to Plaintiffs' fraudulent omissions claims fail for several reasons. While, as a general matter, "claims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim[,]'" Plaintiffs have alleged a bevy of evidence of Nuna's presale knowledge sufficiently to satisfy the Rule 9(b) fraud standard. *MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quoting *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)); *see also Kowalsky v. Hewlett-Packard Co*., No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (holding that presale knowledge requirements are fulfilled where plaintiff plausibly pleads that defendant "should have known" about the defect); *In re Honda Idle Stop Litig*., 694 F. Supp. 3d 1293, 1305 (C.D. Cal. 2023) (presale knowledge "need only be pleaded generally").

First, Plaintiffs adequately allege that Nuna was aware the RAVA contained a dangerous Defect for over ███████████████████████. FACC ¶ 120. Specifically, Plaintiffs allege that the Defect involves a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash." *Id.* ¶¶ 5, 55-56; Recall Notice. Due to this Defect, the harness may loosen and not function properly, including, but not only, when debris that enters the area where the front harness adjuster button is located that "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight." *Id.* The Recall Notice states that when the Defect manifests, consumers should

*immediately* stop using the RAVA Car Seat. *Id*. Nuna could (and should) have stopped selling RAVAS after learning this, but instead chose to conceal the information.

Second, Plaintiffs have adequately alleged that Nuna omitted material information about the safety of the RAVA on its website, in its targeted advertisements on social media, in the manual, on the packaging, or in any of its other marketing materials while marketing the RAVA as safe. *Id.* ¶¶ 41-48, 50-53, 154, 219-20, 226, 229. Specifically, Plaintiffs allege Nuna has known about the Defect since at least ███████████████████████████████. *Id*. ¶ 8. By the time Nuna finally issued the Recall in December 2024, it had received ████ direct complaints about the Defect from consumers in the United States. *Id*. Additionally, by the time of the Recall, consumers had lodged 46 complaints with NHTSA. *Id*., *see also* Recall Notice. Accordingly, at a minimum, Nuna had knowledge of the Defect for ████████████ during which it should have disclosed the Defect to prospective consumers, warned owners about it, and promptly pulled the RAVA out of the marketplace. *Id.* ¶ 8. Instead, Nuna concealed the known Defect from unsuspecting purchasers in violation of California law. *Id*.

Third, Plaintiffs have adequately alleged that Nuna's omissions and misrepresentations are misleading to the reasonable consumer, that they relied on Nuna's omissions, and that Nuna's omissions are the cause of their injuries. For example, each Plaintiff alleges that, had she "understood the true nature of the RAVA Car Seat at the time of purchase or had Plaintiff [] known the truth underneath Nuna's misleading representations and omissions she would not have purchased the RAVA Car Seat, or else would have paid substantially less for it" and that "had Nuna disclosed to Plaintiff[s] [] prior to the point of sale the existence of the Defect and that the RAVA would eventually be subject to a safety recall, she never would have purchased it or paid the premium price for it." *Id.* ¶¶ 167-68, 183-84, 195-96, 214-15. Moreover, each Plaintiff alleges she conducted extensive research into the RAVA Car Seat prior to purchase, including, *e.g*., viewing statements regarding the safety and reliability of the RAVA on the Nuna website, targeted advertisements on social media, print advertisements displayed at retailers such as Pottery Barn Kids, consumer reviews, labels, and packaging, as well as speaking with sales associates and certified car seat professionals at retailers about the RAVA. *Id.* ¶¶ 159, 175, 190-91, 202-203; *see*

*also* ¶¶ 255-58, 278, 285-86, 299. Due to Plaintiffs' diligence in evaluating their RAVA purchases, they would have seen any disclosure of the Defect and not bought the expensive RAVA, but Nuna failed to disclose the Defect until 2024. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (a plaintiff proves reliance on an omission by "proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)); *see also id.*

### 2. Plaintiffs Plausibly Plead Nuna Had, and Breached, Its Duty to Disclose the Defect.

"A manufacturer has a duty to disclose a known defect that poses an unreasonable safety hazard." *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015) (citing *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141–43 (9th Cir. 2012)). For example, courts have concluded that plaintiffs have stated fraud-based claims based on a speedometer defect that could cause vehicles to travel at "unsafe speeds," defective windshields that could become dislodged in roll-over accidents, and sunroof seal defects that could lead to electrical problems. *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 n.* (N.D. Cal. 2007); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010); *Cholokyan v. Mercedes–Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236–38 (C.D. Cal. 2011).

Plaintiffs primarily assert that Nuna had a duty to disclose the Defect because it cannot be reasonably disputed that the Defect poses an unreasonable safety risk. FACC ¶ 5 ("A loose harness may not properly restrain the occupant, increasing the risk of injury in a crash.'") (citing Recall Notice); *see also Edwards*, 603 F. App'x at 541. Common sense dictates that the central purpose of a car seat is to *safely* transport an infant or toddler in a moving car. *See* FACC ¶ 127. For example, the *Long v. Graco Children's Prods., Inc.*, court held that "defendants have a duty to disclose defects in the [car seat buckle] because car seats relate to safety concerns." No. 13-CV-01257-WHO, 2013 WL 4655763, at *6 (N.D. Cal. Aug. 26, 2013) (sustaining CLRA and UCL claims).

Partial representations can also create a duty to disclose. *See Anderson v. Apple, Inc*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020) ("the duty to disclose the allegedly omitted information arises from the fact that the omission is 'contrary to a representation actually made by the defendant.'")

(quoting *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018)). As discussed below, Nuna also made partial representations as to the RAVA's safety while concealing the truth of the Defect. FACC ¶¶ 60-110; Secs. III(A)(3)-(6), *infra*.

The only question is whether Nuna knew of the Defect prior to Plaintiffs' purchases. This cannot be reasonably in dispute because: ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ and (4) Nuna began designing and manufacturing the redesigned RAVA Car Seat over a year before it announced the Recall. FACC ¶ 123; *see* Sec. III(A)(3), *infra*. ████████████████████████████████████████████ ██████████████████████████████████████ Thus, Nuna had and breached its duty to disclose the dangerous safety Defect in the RAVA Car Seat.

### 3.    Nuna Had Extensive Presale Knowledge of the Defect.

**a.    The ███████ of Presale Consumer Complaints Are Sufficient to Establish Nuna's Presale Knowledge.**

Plaintiffs have sufficiently alleged that Nuna was aware of the Defect at the time of sale to survive a motion to dismiss with evidence of ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *Id*. ¶¶ 60-110; *see Wilson*, 668 F.3d at 1145; *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1027 (9th Cir. 2017) (clarifying that "*Wilson* did not hold that consumer complaints may never support an allegation of presale knowledge" and finding plausible presale knowledge based on allegations of defendant's tracking of consumer complaints). Nuna does not cite any case where a court has assessed such an immense quantity of outraged consumer complaints made *directly* to the manufacturer and failed to find presale knowledge.

Indeed, as confirmed by the Ninth Circuit, customer complaints may form the basis for an inference of presale knowledge; Nuna's characterization of *Williams* is overstated because the

*Williams* court did not hold that a plaintiff *must* allege that defendant received an "unusually high" quantity of complaints (although Plaintiffs do allege that here), but instead accepted that plaintiffs' alleged "as many as 40 or 50 different consumer complaints, or more" *constituted* an "unusually high" number of complaints. *Williams*, 851 F.3d at 1026, 1028. As Plaintiffs allege that Nuna received ███████████████████████████████████████████████████████████████████ ██████████████████████████████████, FACC ¶¶ 62, 120. *Williams* supports denying Nuna's Motion. *Williams*, 851 F.3d at 1026, 1028; *see also*, *e.g.*, *Beaty v. Ford Motor Co*., 854 F. App'x 845, 848 (9th Cir. 2021) ("Pre-sale customer complaints to both Ford and [NHTSA] create a triable issue as to whether Ford knew that its [products] were prone to spontaneously explode under ordinary use."); *Long*, 2013 WL 4655763 at *6 (five presale NHTSA complaints and four presale complaints on Amazon were sufficient to allege "that the defendants 'knew or should have known' of the defects at the time of sale due to the complaints to the NHTSA from before and after his purchase, as well as consumer complaints directly to the defendants, to which the defendants responded."); *In re Honda Idle Stop Litig*., 694 F. Supp. 3d at 1306 (finding presale knowledge plausible based on two presale NHTSA complaints); *Patrick v. Volkswagen Grp. of Am., Inc.*, No. 19-cv-1908-JVS, 2020 WL 3883275, at *5 (C.D. Cal. Mar. 5, 2020) (finding presale knowledge plausible based on consumer complaints and defendant engagement therewith, buybacks, and warranty trends).

Faced with these extraordinary facts, Nuna pivots to inventing a presale knowledge standard entirely unsupported by case law, purportedly requiring that consumers demonstrate some "change in corporate behavior" to establish presale knowledge. *See* Mot. at 13. In support of this proposition, Nuna cites to *Williams*, 851 F.3d at 1027, n.8, where defendant established "a dedicated customer care center[,]" and *Deras v. Volkswagen Grp. of Am., Inc*., No. 17-cv-05452-JST, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018), where defendant implemented "special quality control mechanisms" in response to the defect. Mot. at 13. But in each of these cases, defendant received approximately 50 consumer complaints, prompting the court to consider (but not require) other evidence in addition to the mere existence of the complaints. *See id.*; *but compare to Long*, 2013 WL 4655763 at *6; *In re Honda Idle Stop Litig.*, 694 F. Supp. 3d at 1306. Nuna also cites to *Nickerson v. Goodyear Tire and Rubber Corp.*, which is distinguishable because plaintiff alleged

only NHTSA complaints and "*a single consumer's* 2011 complaint sent to directly to [defendant.]" No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561, at *9 (C.D. Cal. June 3, 2020) (emphasis in original). And, in *Doyle v. FKA Distrib. Co., LLC*, plaintiff alleged only 138 negative online reviews on a *third-party* website, and not a single complaint made directly to defendant's customer service team. No. 2:23-cv-10807-SPG-SSC, 2025 WL 3804500, at *10 (C.D. Cal. June 13, 2025).

Even if a "change in corporate behavior" were required, ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ FACC ¶¶ 105-110. Accordingly, Nuna's argument would fail even if it were based on some black letter Ninth Circuit authority—which it is not. Nuna's argument that Plaintiffs must plead a manufacturer's fraudulent conduct with specificity while *also* pleading that it took positive, demonstrable corporate changes to remedy its fraudulent conduct to state a claim is unsupported by law, in tension with its own premise, and not consistent with the facts of Nuna's conduct—which was reckless. *Id.* ¶¶ 10, 88

Nuna attempts to stretch the law even further and argues that Plaintiffs must allege "an unusually high number of customer complaints, either compared to other products sold by Defendants or compared to competitor products[.]" Mot. at 12. This is not required by any legal authority and would create an impossible standard for any plaintiff to meet because it would require a plaintiff to have inside information about all pertinent competitors and their internal records. Perhaps the volume of complaints Plaintiffs have provided is causing Nuna to pivot to these faulty arguments, because in a February 11, 2026 hearing in a related matter, *Roberts v. Nuna Baby Essentials, Inc.*, Case No. 25-CV-2209-KKE (W.D. Wash.), Nuna eschewed the "numbers" arguments and all but conceded that where complaints are made *directly* to a defendant, as they were to Nuna, such complaints may be sufficient to establish pre-sale knowledge. *See* Exhibit 1 at 31:12-16 (Counsel for Nuna: "The bottom line, though, Your Honor, is that it's not a numbers issue[], it's not how many complaints were there, or how many -- how many complaints did the

1    defendant know of. The question is, does that give rise to knowledge."). Although Nuna provided

2    that transcript to Judges with related cases (without them requesting it), here, Nuna's Motion stated

3    in a footnote that it would do so in this case and *only* if this Court specifically requested it. Mot. at

4    8, n.1. Notably, the plaintiff in the *Roberts* matter did not have access to the NHTSA files to include

5    in her complaint and therefore the Court dismissed certain claims without the new allegations

6    Plaintiffs assert in their current FACC here. *See* Exhibit 1 at 37:5-38:25.

7         Here, ███████████████████████████████████ and had access to

8    approximately 20 complaints made to NHTSA by Plaintiffs' most recent RAVA purchase—over

9    ████████ the number of complaints contemplated in *Williams* and *Deras* and ████ the number of

10   negative reviews on a third-party website contemplated in *Doyle*. *Id.* ¶¶ 60-110, 113-16. Nuna first

11   received two complaints from consumers █████ *Id.* ¶ 70-71. ████████████████████

12   █████████████████████████████

13   █ ████████████████████████████

14   █ ████████████████████████████████████████

15   ███████████████████████████████████████████

16   ██████████████████████████████████

17   █ ████████████████████████████████████████

18   █ ████████████████████████████

19   ███████████████████████████████████████████

20

21

22

23

24   ████████████████████████████████

25     ██████████████████████████████████████████████

26   ████████████████████████████████████████████

27   █ ████████████████████████████████████████

28





In the face of these complaints, ███████████████, that Nuna claims it did not

implement "a dedicated customer care center" or "special quality control mechanisms" is not

1  exculpatory, but is instead further evidence of Nuna's reckless and callous disregard for the lives
2  and safety of hundreds of thousands of infants and toddlers. *See id.* ¶¶ 60-110; Mot. at 11-14. A
3  holding otherwise would create a policy that would reward a manufacturer for taking no action in
4  response to consumers' demonstrable safety concerns.

5        In any event, Plaintiffs' allegations establish ██████████████████████████
6  ██████████████████████████ as in *Williams*, 851 F.3d at 1027, *Long*, 2013 WL 4655763 at
7  *6, and *Patrick*, 2020 WL 3883275 at *5. ████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10  ████████████████████████████████████████████████████████████████████████
11  ████████████████████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████████████████
17  ████████████████████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████ Nuna's averments that it did
20  not know of the Defect at any point before Plaintiffs' purchases is repudiated by ██████████
21  ████████████████████████████████.

### b.    The RAVA Redesign Further Confirms Nuna's Presale Knowledge.

24        Nuna began manufacturing the redesigned RAVA—which is different from the original
25  Nuna in that it is manufactured with the fabric cover Nuna asserts "repairs" the Defect—in October
26  of 2023, over a year before the Recall was announced and just three months after Plaintiffs' final
27  purchase in August 2023. FACC ¶¶ 121, 222. Because the redesign plausibly took months-to-years
28  to develop and test, this is also evidence of Nuna's presale knowledge.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

The RAVA redesign can be analogized to, in the car defect context, a Technical Service Bulletin ("TSB") providing technicians with instructions for vehicle repairs. *See Paperno v. Whirlpool Corp.*, No. 23-CV-05114-RFL, 2024 WL 1091192, at *1-2 (N.D. Cal. Mar. 13, 2024) (analogizing "technical service pointers" for refrigerator repair to TSBs for purposes of assessing presale knowledge). Like a product redesign, a TSB can take months or years to develop, leading Northern District courts to hold that "TSBs issued after Plaintiffs' purchases also plausibly give rise to the inference that [defendant] knew of the issue prior to their issuance." *MacDonald*, 37 F. Supp. 3d at 1094; *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (holding that TSBs issued a year after purchase were sufficient to plausibly infer presale knowledge because "TSBs and updates were proceeded by an accretion of knowledge by [defendant]"); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1099 (N.D. Cal. 2021) (holding that TSBs issued 7 months after purchase, in addition to NHTSA complaints, were sufficient to plausibly infer presale knowledge).

The redesign therefore supports the inference that Nuna knew of the Defect long before it was disclosed with the Recall.

### c.    Plaintiffs' Common Law Fraud Claim Should Also Be Sustained.

In addition to sustaining the statutory based claims under the UCL, CLRA, and FAL, the Court can also sustained Count I – Plaintiffs' common law fraud claim. The "elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis in original) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 974 (Cal. 1997)). This standard is akin to that of UCL, FAL, and CLRA claims, with the addition of scienter and intent elements.

"'Under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity, but malice, intent, knowledge, and other conditions of a person's mind, including scienter, can be alleged generally.'" *Kirkpatrick v. Home Depot U.S.A., Inc.*, No. 2:24-CV-01927-DAD-CKD, 2025 WL 2029714, at *7 (E.D. Cal. July 21, 2025) (quoting *United States*

*v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011)) (internal citation and quotation marks omitted). Plaintiffs' complaint must therefore "'set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred.'" *Id.* (quoting *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679-80 (9th Cir. 2018)). As to the timing of that knowledge, Plaintiffs must plead defendant's knowledge of fraud before or at the time of Plaintiffs' purchases. *See*, *e.g.*, *Freund v. HP, Inc.*, No. 22-cv-03794-BLF, 2023 WL 5184140, at *3 (N.D. Cal. Aug. 10, 2023) ("The parties agree that Plaintiff must plead HP's knowledge of the defect at the time the sale was made."); *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *2 (9th Cir. June 3, 2022) ("Under Fed. R. Civ. P. 9(b), a plaintiff must plead circumstances from which a court can plausibly infer the defendant's knowledge. So, the question here is whether Plaintiffs pleaded facts about the circumstances of the alleged defect that would allow us to infer that [defendant] knew about the defect *at the time of sale to Plaintiffs*.") (emphasis in original).

As described herein, Plaintiffs have provided evidence of Nuna's knowledge and concealment of the Defect from the public ████████████████████████████████████████████████████████████████████████. FACC ¶¶ 60-110; *see also* Sec. III(A)(3), *supra*. This is "sufficient factual matter from which [Nuna's] knowledge of a fraud might reasonably be inferred." *See Kirkpatrick*, 2025 WL 2029714, at *7; *United States ex rel. Anita Silingo*, 904 F.3d at 679-80. It is also sufficient evidence of Nuna's intent to deceive. *See*, *e.g.*, *Wilson*, 668 F.3d at 1146 (finding intent where plaintiff established presale knowledge); *Handley v. La Melza*, No. 2:22-cv-00797-MCS-MAR, 2023 WL 3555480, at *4 (C.D. Cal. Apr. 20, 2023) (same). After all, why would Nuna fail to disclose a safety Defect endangering the lives of hundreds of thousands of infants and toddlers except to continue to induce consumers to purchase the expensive RAVA Car Seat?

### 4. Plaintiffs' UCL Claim Can Also be Sustained on the Unfair or Unlawful Prongs.

#### a. Nuna's Conduct Was Unfair.

In addition to Plaintiffs' fraud-based claims, Plaintiffs have alleged conduct that is unfair and unlawful for purposes of the UCL. "Under the balancing test, the California Courts of Appeal

1    have stated that 'an unfair business practice occurs when it offends an established public policy or

2    when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

3    consumers.'" *Cappello v. Walmart Inc*., 394 F. Supp. 3d 1015, 1023–24 (N.D. Cal. 2019) (citing

4    *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1263 (2006)). In deciding what conduct

5    is "unfair," some ninth circuit courts apply a balancing test, which requires courts to "weigh the

6    utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v.*

7    *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted);

8    *see also id*. Others apply a "tethering" test, under which the "unfairness must be tethered to some

9    legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano*

10   *v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 735 (9th Cir. 2007) (internal quotation marks

11   omitted); *see also Cappello*, 394 F. Supp. 3d. at 1023.

12          Under either test, Plaintiffs prevail. As described herein, *see* Sec. I-III(A)(3), *supra*, Nuna

13   knowingly endangered over half a million infants and toddlers by manufacturing and selling the

14   defective RAVA Car Seat and waiting to announce a Recall until December 20, 2024—███████

15   ████████████████████████████████████████████████████. Nuna did this, in

16   all likelihood, to avoid costly refunds or repairs. Instead, it waited until kids were grown out of

17   their seats and warranties had expired. On balance, the lives and safety of 600,000 children are

18   certainly weightier than Nuna's bottom line. *See Long*, 2013 WL 4655763, at *9 (holding the sale

19   of defective car seats violated the balancing test because "there would be no utility in the

20   defendants' provision of a defective product or failure to notify consumers about the defect").

21          Moreover, Nuna has violated the public policy of the United States. Federal regulations

22   governing car seats are implemented to "reduce the number of children killed or injured in motor

23   vehicle crashes." 49 C.F.R. § 571.213; *see also* FACC ¶¶ 128, 285. A RAVA with the Defect that

24   will not restrain a child in the event of an accident would not pass federal impact testing mandates,

25   including those contained in Federal Motor Vehicle Safety Standard ("FMVSS") No. 213, which

26   is a requirement for the marketing and sale of car seats in the United States. Thus, under any test,

27   Nuna has run afoul of the UCL's "unfair" prong.

28          Nuna's conduct was additionally unfair because the Recall is ineffective, meaning that

hundreds of thousands of infants and toddlers remain endangered by their use of the RAVA. As an initial matter, Nuna failed to recall the entire RAVA Car Seat and instead only advised consumers to clean and replace certain portions of it that do not remedy the Defect. FACC ¶¶ 137, 147, 148. By failing to recall the entire RAVA Car Seat with a non-defective car seat, the Recall allows and encourages consumers to continue to use a car seat with the risk of severe injury, and without the benefit of a professional repair that is necessary in a safety related recall. *Id.* Moreover, consumers who received and installed Nuna's Repair Kit report that the Defect continues to manifest. *Id*. ¶¶ 139, 147(a), (p), (s), (v), (w), 148(e). Indeed, in the related *Roberts* action, the court has held that such allegations were sufficient to sustain a claim under the "unfair acts or practices" prong of the Washington Consumer Protection Act, which is similar to the UCL unfair prong. *See* Exhibit 1 at 35:16-19 ("Plaintiff's allegation that the recall is inadequate and ineffective are adequate to state [a Washington Consumer Protection Act claim based on unfair acts or deceptive practices]."); *see also Romero v. Amazon.com Inc*., No. C25-548 JNW, 2025 WL 2409943, at *2 (W.D. Wash. Aug. 20, 2025) (finding no conflict between Washington CPA and UCL/CLRA).

### b.    Nuna's Conduct Was Unlawful.

"Under its 'unlawful' prong, 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1554 (2007) (quoting *Lazar v. Hertz Corp*., 69 Cal. App. 4th 1494, 1505 (1999)). Here, Plaintiffs allege that Nuna's conduct violated, in addition to the UCL, the CLRA, FAL, FMVSS 213, 213a, 49 C.F.R. § 571.213 and 517.213a, and California's fraud and negligent misrepresentation common law, meaning that Nuna has run afoul of the UCL's "unlawful" prong as well. FACC ¶ 285(c).

### 5.    Plaintiffs Allege Actionable Misrepresentations.

#### a.    The RAVA Was Marketed and Sold as Safe and Suitable for Children Despite Containing the Dangerous Safety Defect.

While the FACC contains limited new allegations as to Nuna's affirmative misrepresentations, Plaintiffs submit that the fact remains: Nuna consistently marketed and sold the

RAVA as a safe and secure car seat for transporting children and its continued representations about the RAVA's safety were deceptive and material to consumers. FACC ¶¶ 41-48, 50-53, 219-221. Specifically, Nuna advertised the RAVA as "a reliable anchor to your child's car-riding adventures and your parental peace of mind[.]" *Id.* ¶ 45. "Nuna promises that consumers who buy a RAVA Car Seat 'can trust in its unwavering security[.]'" *Id.* Nuna goes so far as to claim that parents can "relax and enjoy every magical, messy, covered-with crumbs moment[,]" all while knowing that the dangerous safety Defect in the RAVA is related to debris entering the front harness adjuster. *Id.* ¶ 46. Nuna positions itself as an industry leader in car seat safety by touting its gear as "extensively tested before it leaves the factory[,]" and telling consumers that it "use[s] advanced equipment and testing methods, going above and beyond what's required," and that, "[t]o ensure compliance with safety standards, [Nuna] regularly [has its] gear tested at accredited, independent labs." *Id.* ¶ 47. Further, Nuna represents that its "luxurious car seats are engineered for growth keeping baby to 'tween safe at every stage. Combining safety with high design, Nuna's car seats are mindfully manufactured[.]" *Id.* ¶ 52. On its website, Nuna lists specific safety features for the RAVA, including several promising that children will be securely fastened into the RAVA. *Id.* ¶ 48. Further, Nuna combines many of these statements with pictures and videos of children securely fastened in the RAVA car seats, even including a video of where a caregiver tugs on tightly secured straps. *Id.* ¶¶ 45, 48 (citing to website which contains images and videos of RAVA car seats). Nuna also posted advertisements for the RAVA representing its safety on social media sites. *Id.* ¶¶ 50-51. Nuna also lists its RAVA at a premium price compared to other car seats. *Id.* ¶¶ 41-42.

While making these representations, Nuna continuously failed to disclose the Defect to Plaintiffs and other unsuspecting consumers—rendering what it *did* represent misleading. *Id.* ¶¶ 9-10, 154, 167-68, 183-84, 195-96, 214-15.

### b.    Plaintiffs Allegations Are Sufficient to Establish Reliance.

The "California Supreme Court has recognized that [the UCL, CLRA, and FAL] prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.* ("*Gerber*"), 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v.*

*Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002)). Accordingly, *any* safety-related claims or features are misleading if the RAVA is not, in fact, safe. *See Anderson*, 500 F. Supp. 3d at 1013-14 (disfavoring partial representations that contradict omitted information). A plaintiff must "allege actual reliance in order to have standing[,]" *Moore*, 966 F.3d at 1020, to pursue misrepresentation under the UCL, FLA, and CLRA, but need not "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement[,]" *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Reliance for standing purposes can be met by allegations that the plaintiffs "would not have bought the product but for the misrepresentation." *Moore*, 966 F.3d at 1020-21 (quoting *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 330 (2011)).

Each Plaintiff alleges that they performed significant diligence in investigating their purchases and saw advertisements from Nuna prior to purchase that they relied upon. *Id.* ¶¶ 159, 167,175, 183, 190-91, 202-03, 214. Specifically, Plaintiffs Barrales and Smith allege they read and relied upon Nuna's marketing materials regarding the RAVA's safety and security, *id.* ¶¶ 159, 175; Plaintiff Bernasconi Pelufo alleges she "conducted extensive research," including "looking at the Nuna website, crash test ratings, labels, packaging, advertisements, in-store displays, and online reviews," and also received targeted ads on her social media, *id.* ¶ 190-91; Plaintiff Kade alleges she "did extensive research into which car seat to purchase, including looking at targeted advertisements on social media, print advertisements displayed at Pottery Barn Kids, the Nuna website, labels, packaging, and online reviews[,]" *id.* ¶ 202.

These allegations are enough to defeat a motion to dismiss. In *Krystofiak v. BellRing Brands, Inc.*, the court found that, at the motion to dismiss stage, a combination of health representations could mislead reasonable consumers and that it was sufficient for plaintiff to allege he "relied on the 'totality of the products' labeling that they were healthy" to meet the reliance requirement, and for another plaintiff to allege he relied on specific misrepresentations. 737 F. Supp. 3d 782, 795, 799-800 (N.D. Cal. 2024) (dismissing plaintiffs' claims on other grounds). Likewise, here, all Plaintiffs plead that they relied on the totality of Nuna's representations regarding safety, and two Plaintiffs point specifically to representations made on the Nuna website, to conclude that the RAVA was safe. *See* Sec. III(A)(5)(c) *infra*; FACC ¶¶ 159, 175, 190, 202.

1

2

        **c.**      **Nuna's Advertising and Marketing Are Misrepresentations that Are Likely to Deceive Reasonable Consumers.**

3

4

      For claims arising under California's UCL, FAL, and CLRA, plaintiffs must show that reasonable consumers are likely to be deceived by the representations. *Gerber*, 552 F.3d at 938-39.

5

6

This standard also applies to common law fraud and negligent misrepresentation claims. *Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (the reasonable consumer

7

8

"standard also applies to common law fraud and negligent misrepresentation claims"); *Girard v. Toyota Motor Sales, U.S.A., Inc.,* 316 F. App'x 561, 562 (9th Cir.2008) (equating "justifiable

9

10

reliance" element of negligent misrepresentation to the "reasonable consumer" standard). Under the reasonable consumer standard, "information available to a consumer is not limited to the

11

12

physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

13

14

      Plaintiffs have alleged more than enough of Nuna's advertising and marketing practices to demonstrate why Nuna's statements regarding its safety, used to justify its premium price, *see*

15

16

FACC ¶ 41, are misleading to a reasonable consumer. The entire essential purpose for a car seat is to securely fasten children in a vehicle. *Id.* ¶¶ 12-13; *see Long*, 2013 WL 4655763 at *8

17

18

("[C]onsumers have 'an expectation or an assumption' that child car seats will work properly and not have safety flaws."). The Defect, however, renders Nuna's entire advertising and marketing

19

20

campaign revolving around the RAVA's superior security, safety, and durability misleading. *Id.* ¶¶ 5-6; *compare to* ¶¶ 44-48, 52-53. Further, Nuna combines its statements with photos and videos of

21

22

children securely fastened in the RAVA car seats, contributing to the context that misleads consumers. *Id.* ¶ 17 (incorporating Nuna's website). All of these statements, images, videos, along

23

24

with the targeted advertising to Plaintiffs and consumers, give, and are designed to give, consumers the impression that the RAVA is safe, secure, and is fit for the purpose of restraining and protecting

25

26

children while driving (and, of course, in the event of a crash). In reality, the Defect renders the RAVA unsafe. *See id.* ¶¶ 53, 57. Courts in this district consistently find that a combination of

27

28

statements, images, and product marketing and labeling rise to the level of "representations likely to mislead reasonable consumers." *See*, *e.g.*, *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d

950, 965 (N.D. Cal. 2023) (denying motion to dismiss UCL, FAL, and CLRA claims based on plaintiff's allegations as to overall impact of advertising images and text); *Coe v. Gen. Mills, Inc*., No. 15-CV-05112-TEH, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016) (denying motion to dismiss in relevant part where combination of representations and context of representations "arguably contribute to the alleged deceptive context of the packaging as a whole.") (internal quotation marks omitted); *Krystofiak*, 737 F. Supp. 3d at 799-800.

Nuna argues that the statements must be specific to the harness functionality for it to qualify under California law. Mot. at 9. Nuna is wrong. The statements do not have to specifically indicate the functionality of the harness for it to be actionable, they must only be likely to deceive reasonable consumers, as described in detail above. Nuna's narrow view would essentially establish an impregnable standard to shield defendants, all while continuing to endanger consumers. That is simply not the law. *See, e.g.*, *Ham*, 70 F. Supp. 3d at 1193-94; *Sneed v. Procter & Gamble Co.*, 779 F. Supp. 3d 1025, 1034-36 (N.D. Cal. 2025).

> **6.    Plaintiffs Sufficiently State Their Negligent Misrepresentation Claim Based on Actionable Misrepresentations and Material Omissions.**

Nuna also argues that Plaintiffs' negligent misrepresentation claim should be dismissed because, as Nuna claims, its marketing statements were "non-actionable puffery," and Plaintiffs did not allege they relied on Nuna's misrepresentations. Mot. at 14. Both points are wrong.

First, and as detailed in Sec. III(A)(5)(c), *supra*, Plaintiffs allege specific marketing statements by Nuna that go beyond "puffery." *See* FACC ¶¶ 44-52. But courts in this district have held "puffery can be actionable when the defendant knows facts that makes the at-issue statement deceitful or makes the statement in a context that renders it deceitful." *In re Soc. Media Adolescent Addiction/Personal Injury Products Liab. Litig.*, 753 F. Supp. 3d 849, 890 (N.D. Cal. 2024), *appeal dismissed sub nom. Fla. Off. of Atty. Gen. v. Meta Platforms, Inc.*, No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024), and *mot. to cert. appeal denied*, No. 4:22-MD-3047-YGR, 2025 WL 1182578 (N.D. Cal. Mar. 11, 2025). The allegations in Plaintiffs' FACC unequivocally demonstrate Nuna's ███████████████████████████████████████████████████████████

██████████████████. FACC ¶¶ 60-110; *see also* Sec. III(A)(3), *supra*. Nuna's presale knowledge

1  of the Defect alone converts any statements that would potentially be "puffery" into actional

2  misrepresentations. The RAVA's sole purpose is to keep infants and toddlers safe in the car, and

3  the Defect renders the RAVA *unsafe*. Accordingly, *any* marketing statements regarding the

4  RAVA's safety, security, and durability are rendered actionable misrepresentations. *See Gerber*,

5  552 F.3d at 939 n.3 (noting that representation of snacks as "nutritious" on its own could constitute

6  puffery, but declining to dismiss the statement as puffery because it "certainly contributes … to the

7  deceptive context of the packaging as a whole."); *see also Anderson*, 500 F. Supp. 3d at 1013-14.

8     Second, Plaintiffs specifically allege that they saw and relied upon Nuna's marketing prior

9  to purchasing their RAVAs. FACC ¶¶ 159, 175, 190-91, 202-03; *see* Sec. III(A)(5)(b), *supra*.

10    Finally, Nuna argues that Plaintiffs' negligent misrepresentation claim fails because it

11 "relies on marketing statements made to the general public[.]" Mot. at 14. Nuna's assertion is

12 wrong. Ninth Circuit law confirms that negligent misrepresentation claims may be predicated on

13 advertisements made to the general public. *See*, *e.g.*, *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 at

14 921-24 (N.D. Cal. 2013) (declining to dismiss UCL, FAL, CLRA, and negligent misrepresentation

15 claims based on public advertisements); *Clark v. Nordic Nats., Inc.*, No. 24-CV-04058-EKL, 2025

16 WL 1592676, at *7 (N.D. Cal. June 5, 2025) (similar); *Cole v. Wright Med. Tech. Inc.*, No. 2:20-

17 CV-03993-RGK-E, 2020 WL 5846460, at *4-6 (C.D. Cal. July 27, 2020) (similar). Regardless,

18 Plaintiffs alleged that Nuna engaged in targeted advertising on social media, and at a minimum,

19 Plaintiffs Bernasconi Pelufo and Kade received such advertisements. FACC ¶¶ 50, 191, 203.

20 **IV.    CONCLUSION**

21    For the above reasons, Plaintiffs respectfully request that the Court deny Defendant Nuna's

22 Motion to Dismiss in its entirety.

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT

1

Respectfully submitted,

2

3    DATED: March 6, 2026                        DATED: March 6, 2026

4    **MILBERG COLEMAN BRYSON**                  **KAPLAN FOX & KILSHEIMER LLP**
     **PHILLIPS GROSSMAN, PLLC**

5    By: /s/ *William A. Ladnier*                By: /s/ *Matthew B. George*
          William A. Ladnier                          Matthew B. George
6

7    Adam A. Edwards (*pro hac vice*)            Laurence D. King (SBN 206423)
     William A. Ladnier (SBN 330334)            Matthew B. George (SBN 239322)
8    Virginia Ann Whitener (*pro hac vice*)     A.J. de Bartolomeo (SBN 136502)
     800 S. Gay Street, Suite 1100              Blair E. Reed (SBN 316791)
9    Knoxville, TN 37929                         Clarissa R. Olivares (SBN 343455)
     Telephone: (865) 247-0080                  1999 Harrison Street, Suite 1560
10   Facsimile: (865) 522-0049                  Oakland, CA 94612
     Email:  aedwards@milberg.com               Telephone: 415-772-4700
11          wladnier@milberg.com                Facsimile: 415-772-4707
            gwhitener@milberg.com               Email:  lking@kaplanfox.com
12                                                      mgeorge@kaplanfox.com
     **MILBERG COLEMAN BRYSON**                          ajd@kaplanfox.com
13   **PHILLIPS GROSSMAN, PLLC**                         breed@kaplanfox.com
     Alex R. Straus (SBN 321366)                        colivares@kaplanfox.com
14   280 S. Beverly Drive, PH Suite
     Beverly Hills, CA 90212                    *Attorneys for Plaintiffs Mariana Bernasconi*
15   Tel: (866) 252-0878                        *Pelufo, Behnaz Faridian Kade, and the*
     Fax: (865) 522-0049                        *Proposed Class*
16   astraus@milberg.com

17   **LAUKAITIS LAW LLC**
     Kevin Laukaitis (*pro hac vice*)
18   Daniel Tomascik (*pro hac vice*)
     954 Avenida Ponce De Leon
19   Suite 205, #10518
     San Juan, PR 00907
20   Telephone: (215) 789-4462

21   *Attorneys for Plaintiffs Tina Marie Barrales,*
     *Alyna Smith, and the Proposed Class*

22

23

24

25

26

27

28