Valerie M. Goo (CA Bar No. 187334)
  VGoo@crowell.com
Branden Nikka (CA Bar No. 352943)
  BNikka@crowell.com
Kendyl Barnholtz (CA Bar No. 359694)
  KBarnholtz@crowell.com
CROWELL & MORING LLP
515 South Flower Street
41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Scott L. Winkelman (DC Bar No. 416747) (admitted pro hac vice)
  Swinkelman@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116

Robert A. Mantel (NY Bar No. 5128756)
(admitted pro hac vice)
  RMantel@crowell.com
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: 212.223.4000
Facsimile: 212.223.4134

Attorneys for *Defendant*
NUNA BABY ESSENTIALS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NUNA BABY ESSENTIALS RAVA LITIGATION | Case No. 3:25-cv-01284-AMO<br><br>**DEFENDANT NUNA BABY ESSENTIALS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>[Relates to Docket No. 69]<br><br>Date:  April 16, 2026<br>Time:  2:00 p.m.<br>Place:  Courtroom 10, 19th Floor<br><br>Judge: Hon. Araceli Martínez-Olguín |

CROWELL & MORING LLP
ATTORNEYS AT LAW

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR FRAUD-BASED CLAIMS (FRAUD, NEGLIGENT MISREPRESENTATION, CLRA, UCL, FAL) (COUNTS 1–5) ................................................................................................................. 1

   A.   Plaintiffs allege no actionable misrepresentations on which they relied. ........................ 1

   B.   Plaintiffs fail to allege reliance. ..................................................................................... 3

   C.   Plaintiffs' omission-based claims fail because they do not plausibly plead presale knowledge that could give rise to a duty to disclose. .............................................. 4

   D.   Plaintiffs' negligent misrepresentation claim fails for additional reasons (Count 2) ..... 10

   E.   Plaintiffs fail to state a claim under the UCL "unfair" and "unlawful" prongs (Count 4) 11

III. CONCLUSION ................................................................................................................. 15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*,
 623 F. Supp. 3d 1059 (C.D. Cal. 2022) .................................................................................. 13

*Beaty v. Ford Motor Co.*,
 854 Fed. Appx. 845 (9th Cir. 2021) (unpublished) .................................................................. 6

*Brinkley v. Monterey Fin. Servs., LLC*,
 340 F. Supp. 3d 1036 (S.D. Cal. 2018) .................................................................................. 14

*Brown v. Madison Reed, Inc.*,
 21 cv-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ......................................... 3

*Clark v. Nordic Naturals., Inc.*,
 No. 24-CV-04058-EKL, 2025 WL 1592676, at *7 (N.D. Cal. June 5, 2025) ........................ 10

*Coe v. Gen. Mills, Inc.*
 2016 WL 4208287, at *5-6 (N.D. Cal. Aug. 10, 2016) ............................................................ 2

*Cole v. Wright Med. Tech. Inc.*,
 WL 5846460, at *2 (C.D. Cal. July 27, 2020) ....................................................................... 10

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
 911 F.2d 242, (9th Cir. 1990) ................................................................................................... 3

*DeBons v. Globus Med., Inc.*,
 No. 2:13-cv-08518-SVW-FFMx, 2014 WL 12586433 (C.D. Cal. Jan. 31, 2014) ................................................................................................................................... 11

*Delacruz v. Cytosport, Inc.*,
 C 11-3532-CW, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ............................................... 3

*Deras v. Volkswagen Grp. of Am., Inc.*,
 No. 17-cv-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ................................ 6, 7

*DiGiacinto v. RB Health (US) LLC*,
 668 F. Supp. 3d 950, 963-65 (N.D. Cal. 2023) ........................................................................ 2

*Doyle v. FKA Distrib. Co., LLC*,
 No. 2:23-cv-10807-SPG-SSC, 2025 WL 3804500 (C.D. Cal. June 13, 2025) .................... 5, 6

*Erickson v. Kimberly-Clark Corp.*,
 No. 24-CV-07032-AMO, 2025 WL 2105830 (N.D. Cal. July 28, 2025) ......................... 12, 13

*Garcia v. Gen. Motors LLC*,
 No. 18-cv-01313-LJO-BAM, 2019 WL 1209632 (E.D. Cal. Mar. 14, 2019) ........................ 10

*Gutierrez v. Bausch Health US, LLC*,
 No. 21-55141, 2024 WL 1854288, at *1 (9th Cir. Apr. 29, 2024) ......................................... 3

*Hadley v. Kellogg Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................................ 12

*Hodsdon v. Mars, Inc.*,
 891 F.3d 857 (9th Cir. 2018)............................................................................................ 11, 13

*In re Honda Idle Stop Litig.*,
 694 F. Supp. 3d 1293, 1307 (C.D. Cal. 2023)......................................................................... 6

*Hutchins v. Nationstar Mortg. LLC*,
 No. 16-cv-07067-PJH, 2017 WL 4224720 (N.D. Cal. Sept. 22, 2017) ................................ 12

*Kennedy v. Meta Platforms Inc.*,
 No. 23-cv-06615-HSG, 2024 WL 4565091 (N.D. Cal. Oct. 23, 2024) ................................. 14

*Krystofiak v. BellRing Brands, Inc.*
 737 F. Supp. 3d 782, 799-802 (N.D. Cal. 2024) ............................................................ 2, 3, 4

*Kwikset Corp. v. Sup. Ct.*
 51 Cal. 4th 310, 327-28 (2011) ............................................................................................... 4

*Leining v. Foster Poultry Farms, Inc.*,
 61 Cal. App. 5th 203, 217 (2021), *as modified* (Mar. 15, 2021)............................................ 10

*Long v. Graco Child.'s Products Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763,
 at *6–7 (N.D. Cal. Aug. 26, 2013) .......................................................................................... 7

*MacDonald v. Ford Motor Co.*,
 37 F. Supp. 3d 1087 (N. D. Cal. 2014) ................................................................................... 9

*Magee v. Gen. Motors LLC*, No. EDCV 23-1715 JGB (SSCx), 2024 WL 1829692,
 at *8 (C.D. Cal. Jan. 26, 2024)............................................................................................... 14

*Moore v. Mars Petcare US, Inc.*,
 966 F.3d 1007 (9th Cir. 2020)................................................................................................. 4

*In re MyFord Touch Consumer Litig.*,
 46 F. Supp. 3d 936 (N.D. Cal. 2014) ...................................................................................... 9

*Patrick v. Volkswagen Grp. of Am., Inc.*, No. SACV191908JVSADSX, 2020 WL
 3883275, at *4 (C.D. Cal. Mar. 5, 2020) ................................................................................ 6

*Paperno v. Whirlpool Corp.*,
 No. 23-cv-05114-RFL, 2024 WL 1091192 (N.D. Cal. Mar. 13, 2024).................................. 9

*Republican Nat'l Comm. v. Google LLC*,
  742 F. Supp. 3d 1099 (E.D. Cal. 2024) .................................................................................. 12

*Roberts v. Nuna Baby Essentials, Inc.*,
  No. 25-CV-2209-KKE (W.D. Wash.) ................................................................................. 7, 14

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................................. 6, 8

*Smith v. Intel Corp.*,
  No. 23-CV-05761-HSG, 2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) .............................. 12

*In re Soc. Media Adolescent Addiction/Personal Injury Products Liab. Litig.*,
  753 F. Supp. 3d 849, 889-91 (N.D. Cal. 2024) ..................................................................... 11

*Spectravest, Inc. v. Mervyn's Inc.*,
  673 F. Supp. 1486 (N.D. Cal. 1987) ....................................................................................... 8

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................................ 3

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
  534 F. Supp. 3d 1067 (N.D. Cal. 2021) .................................................................................. 9

*Williams v. Gerber Products Co.*,
  552 F.3d 934, 939 & n.3 (9th Cir. 2008) ..................................................................... 5, 7, 11

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................................ 5, 7

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ............................................................................................ 13

**Statutes**

Cal. Bus. & Prof. Code § 17204 ................................................................................................ 12, 14

**Other Authorities**

49 C.F.R. § 571.213 ......................................................................................................................... 13

49 C.F.R. § 571.213 and 517.213a ................................................................................................. 12

49 C.F.R. §§ 571.213(S5.1), 517.213a(S6.1.2) .............................................................................. 12

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iv

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

## I. INTRODUCTION

Plaintiffs' Opposition fails to identify factual allegations and legal authorities supporting their claims against Nuna. Opp. (ECF No. 76). Plaintiffs concede that their First Amended Consolidated Class Action Complaint (the "FAC") does not include new allegations supporting their misrepresentation-based claims that address the deficiencies this Court raised when it dismissed Plaintiffs' prior complaint. For their omission-based claims, Plaintiffs continue to rely solely on the number of alleged consumer complaints without any meaningful reference point from which the Court could infer presale knowledge of the alleged defect such that Nuna had a duty to disclose.

This Court granted leave to amend to permit Plaintiffs yet another opportunity to address the specific deficiencies the Court previously identified. Plaintiffs have failed to do so. Plaintiffs have had multiple bites at the apple. Because Plaintiffs have repeatedly demonstrated an inability to plead a viable case, the FAC should be dismissed with prejudice.

## II. PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR FRAUD-BASED CLAIMS (FRAUD, NEGLIGENT MISREPRESENTATION, CLRA, UCL, FAL) (COUNTS 1–5)

### A. Plaintiffs allege no actionable misrepresentations on which they relied.

This Court granted Plaintiffs leave to amend only "to the extent plaintiffs could allege more specific marketing statements" by Nuna that Plaintiffs actually relied on. January 8, 2026 Hearing Tr., ECF No. 64 at 22:1–3. Plaintiffs have failed to do so. Instead, Plaintiffs repeat (Opp. at 20:3-20) the assorted Nuna marketing statements the Court has already held inadequate. They admit they cannot offer the Court a single representation that speaks to the alleged design "Defect." *Id.* at 22:13-15; 23:7-13. And, in all, they continue to maintain that generalized comments about safety suffice, a fiction they support with no law and which this Court has already rejected.

Plaintiffs now urge that the cumulative effect or "combination" of Nuna's statements, along with "photos and videos of children securely fastened in the RAVA car seats" and "targeted advertisements," creates an actionable misrepresentation. Opp. at 22:13–23:6. But quantity is not quality. Nonactionable puffery, no matter the volume, is still nonactionable puffery. "Combined" assertions and depictions of "safety," each one of them generic and unmeasurable, do not make

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- 1 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

them viable. Compounding matters, the FAC does not even include or cite "photos and videos of children fastened in the RAVA car seats" and does not allege any "targeted advertising" by Nuna.

None of Plaintiffs' cited authorities—each of which concerns labeling for food and consumable products—hold that misrepresentation-based claims can proceed based solely on puffery and none involved similarly vague statements regarding "safety." *Id*. In *DiGiacinto v. RB Health (US) LLC* (Opp. at 22:26-23:2) plaintiffs alleged that a children's cough medicine label stating that it was "Children's" and "Ages 4+" with a cartoon child, when compared against the adult version of the product that did not contain those words or image, was misleading because a reasonable consumer would believe that the "Children's" product was specially formulated for children. 668 F. Supp. 3d 950, 963-65 (N.D. Cal. 2023). The defendant did not argue, and the court did not consider, whether these statements were non-actionable puffery. *Coe v. Gen. Mills, Inc.* (Opp. at 23:2–6) focused on the cumulative effect of statements and images together on a cereal box—such as calling it a "great start" to the day, featuring images of healthy-looking children, and referencing "sweetened" in small font—which could be misleading as to the cereal's health benefits. No. 15-cv-05112-TEH, 2016 WL 4208287, at *5–6 (N.D. Cal. Aug. 10, 2016). In stark contrast, Plaintiffs here do not assert misrepresentations shown together on Rava packaging, and much of what they do cite is not even specific to the Rava. Opp. at 20:8-14 (citing statements that Nuna's products in general are "extensively tested" and that Nuna's car seats in general are "luxurious"). Nor do they allege that the "cumulative" effect conveys anything other than generalized "safety." And in *Krystofiak v. BellRing Brands, Inc.* (Opp. at 23:6), which concerned statements on labels for protein shakes and powders, the court found that "healthy snack" when combined with a more *specific* statement regarding "immune health" could be actionable, though the court ultimately dismissed the plaintiff's misrepresentation claim because could not tie those statements to the high lead levels they had alleged in the products. 737 F. Supp. 3d 782, 799–802 (N.D. Cal. 2024). Notably, the court cited the Ninth Circuit's guidance that "[t]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by *specific* rather than general assertions." *Id.* at 800 (emphasis added) (quoting

CROWELL & MORING LLP
ATTORNEYS AT LAW

- 2 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). Plaintiffs here allege no specific and measurable marketing statements.

### B. Plaintiffs fail to allege reliance.

This Court instructed that Plaintiffs must allege "actual reliance" on alleged misrepresentations to state their fraud-based claims. Mot. at 9:26–10:12; Ex. A at 23:22–24:3. Ignoring this instruction, Plaintiffs persist in claiming they need not allege they relied on any specific marketing statements and that conclusory allegations of reliance suffice. Opp. at 20:24-21:28. That is not the law.

Plaintiffs rely on *In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009), for the proposition that they need not allege individualized reliance on specific misrepresentations. Opp. at 21:3–7. But as this Court has explained, *In re Tobacco II Cases* created a "narrow" exception where plaintiffs alleged exposure "to numerous advertisements over a period of decades" by multiple tobacco companies and therefore need not "plead with an unrealistic degree of certainty [the] particular advertisements and statements that [they] relied upon." *Brown v. Madison Reed, Inc.*, 21 cv-01233-WHO, 2021 WL 3861457, at *11 (N.D. Cal. Aug. 30, 2021) (collecting cases confirming narrow scope of *In re Tobacco II Cases* exception); *see also Gutierrez v. Bausch Health US, LLC*, No. 21-55141, 2024 WL 1854288, at *1 (9th Cir. Apr. 29, 2024) (affirming dismissal of misrepresentation-based CLRA, FAL and UCL claims for failure to plead reliance with particularity and rejecting application of *In re Tobacco II Cases* because plaintiffs "fail to plead facts establishing that they themselves were exposed to or relied on a long-term advertising campaign that carried on into the class period"). Plaintiffs here do not plead decades of advertising bombardment by an industry which might prevent them from identifying the specific marketing statement(s) they relied on so as to come within this narrow exception. *See Delacruz v. Cytosport, Inc.*, C 11-3532-CW, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012) (dismissing misrepresentation-based claims where plaintiff alleged neither any specific marketing statement they relied on nor the existence of "advertising campaign [that] approached the longevity and pervasiveness of the marketing at issue in *Tobacco II*"). Plaintiffs' reliance on *Krystofiak, supra,* is also misplaced. As to reliance, one of the *Krystofiak* plaintiffs specifically alleged relying on the "immune support" statement and the

1  other alleged he relied on the "totality" of the product label representations, which necessarily
2  included that statement. *Id.* at 800.  Plaintiffs here do not point to any alleged marketing statements
3  they relied on, a reality Plaintiffs now concede.

4  The only other cases Plaintiffs invoke illustrate how reliance may at times be properly
5  pleaded—exactly as Plaintiffs have failed to do.  Plaintiffs in *Kwikset Corp. v. Sup. Ct.* (Opp. at
6  20:7–9) alleged they saw and relied on a specific, measurable marketing statement—that
7  defendant's products were "Made in U.S.A."—in choosing to buy the product over alternatives.  51
8  Cal. 4th 310, 327-28 (2011).  And plaintiffs in *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th
9  Cir. 2020), specifically alleged reliance on there being a "prescription requirement" to purchase pet
10  food products.  The FAC pleads no such reliance on specific statements.  *See* Mot. at 5:3–15.

   **C. Plaintiffs' omission-based claims fail because they do not plausibly plead presale knowledge that could give rise to a duty to disclose.**

13  Misrepresenting caselaw in this Circuit and ignoring this Court's guidance when it
14  dismissed the CAC, Plaintiffs double down on their argument that the existence of consumer
15  complaints alone suffices to plead presale knowledge.  Plaintiffs insist they need allege nothing
16  beyond numbers, such as plausible allegations that the volume of those complaints was unusually
17  high compared to some meaningful reference point so as to plausibly infer Nuna's presale
18  knowledge of the "Defect" in the Rava.  Opp. at 9–15.  Plaintiffs even suggest a single alleged
19  consumer complaint about the Rava is sufficient on its own to give Nuna presale knowledge of the
20  alleged defect in 2017.  Opp. at 7:6-13; 17:13-15.  Plaintiffs are wrong on the law, and fail to allege
21  facts that would be sufficient to support their omission-based claims.  *See* Mot. at 10–14.

22  ***What Plaintiffs do not allege***.  It first bears emphasis that Plaintiffs do not allege a single
23  representation or acknowledgment by Nuna that it knew of the design "Defect" alleged in this case
24  prior to Plaintiffs' purchases of their Ravas.  Although Plaintiffs state conclusorily that Nuna's
25  customer service process with respect to the alleged Defect was not "customary" (FAC ¶ 107), it
26  offers no supporting fact allegations.  Their presale knowledge theory thus remains purely
27  speculative, reducing to a simple equation: some number of complaints—compared to nothing—
28  equates to presale knowledge.  That is not the law.

1    ***The law requires more than a raw number of complaints.*** Following the Ninth Circuit's
2    decision in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017), courts in this
3    Circuit have consistently held that plaintiffs can plead presale knowledge of a product defect based
4    on consumer complaints only where they allege additional facts beyond the number of complaints
5    to show that the complaint volume was "unusually high" such that a defendant's presale knowledge
6    of the defect may be inferred. Those additional facts have taken different forms in different cases,
7    but the common thread is that something beyond mere numerosity is required. In an effort to lower
8    their pleading burden, Plaintiffs argue that *Williams* merely "accepted" that 40 or 50 complaints
9    "*constituted* an unusually high number." Opp. at 9:27–10:4 (emphasis in original). This misreads
10   *Williams*, the consistent line of authority applying *Williams*, and this Court's prior ruling.

11   In *Williams*, the Ninth Circuit did not accept a raw number of complaints in isolation as
12   "unusually high," but found a baseline for "unusually high" in the form of defendant's response to
13   these complaints—the establishment of a dedicated customer care center—which suggested "that
14   [defendant] itself saw this number as significant and beyond the norm." *Id.* at 1027. This is a
15   matter of logic: "unusually" is meaningless unless compared to what is usual, so courts look for
16   such comparators or reference points, whether it be a comparative numeric benchmark or a
17   comparative change in corporate conduct. That is especially essential here, where only a fraction
18   of Plaintiffs' alleged complaints even pre-date the most recent Plaintiff's purchase in August 2023
19   (FAC ¶ 62) —and even accepting the entirety of Plaintiffs' complaint count for present purposes,
20   the full universe, both before and after Plaintiffs' purchases, of alleged complaints amounts to just
21   ███████████████████████████████████████████ FAC ¶¶ 54, 68.

22   As this Court recognized when it dismissed the CAC, Plaintiffs' continued fixation on courts
23   "mere numerosity" is insufficient. ECF No. 64 at 16:13–16, 25:16–23. Nuna's Motion catalogued
24   courts' search for some reference point showing the number of complaints to be unusually high to
25   support an inference of presale knowledge. Mot. at 11:9–13:16; *see Doyle v. FKA Distrib. Co.,*
26   *LLC*, No. 2:23-cv-10807-SPG-SSC, 2025 WL 3804500, at *10 (C.D. Cal. June 13, 2025)
27   (allegations of 138 complaints did not plead presale knowledge because they failed to "explain
28   whether this is an unusually high number of customer complaints, either compared to other products

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- 5 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

sold by Defendants or compared to competitor products"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 866 (N.D. Cal. 2018) (permitting the amended complaint to proceed only after plaintiffs alleged that "the number of complaints far exceeds the number of similar complaints for competitor vehicles," which gave the court "a baseline upon which to conclude that Plaintiffs have plausibly pled an unusual number of complaints."); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *5 (N.D. Cal. May 17, 2018) (allegations of fifty-six complaints did not plead presale knowledge where plaintiffs failed to allege that special quality control mechanisms were implemented in response to the alleged defect). The FAC alleges no reference point, no baseline, no comparator.

Plaintiffs downplay Nuna's cited cases by suggesting they merely involved numbers of complaints that "prompt[ed] the court to consider (but not require) other evidence." Opp. at 10:20–26. That is Plaintiffs' characterization, not the courts', as this reasoning does not appear in *Sloan*, *Doyle*, or *Deras*, nor would it make any sense since these cases *dismissed* omission-based claims where "other evidence" was not plead. See *Doyle*, 2025 WL 3804500, at *10; *Deras*, 2018 WL 2267448, at *5. Plaintiffs' own cited cases confirm that allegations beyond "mere numerosity" of consumer complaints are required to plead presale knowledge. In *Patrick v. Volkswagen Grp. of Am., Inc.* (Opp. at 10:15–17), the court explicitly stated that "[c]onsumer complaints alone are not sufficient to establish pre-sale knowledge." No. SACV191908JVSADSX, 2020 WL 3883275, at *4 (C.D. Cal. Mar. 5, 2020). The court permitted an omissions claim to proceed because, in addition to complaints, the plaintiff alleged that defendant engaged with a private Facebook group to directly respond to complaints about the specific defect, provided dealers with targeted repair suggestions specific to the defect, and participated in a number of class vehicle buybacks. *Id.* at *5. In *In re Honda Idle Stop Litig.* (Opp. at 10:14-15), the court noted that consumer complaints did not "move[] the needle alone," but found sufficient allegations of presale knowledge because the plaintiff alleged consumer complaints *plus* allegations of specific presale testing that, if properly performed, would have revealed that the class vehicles were susceptible to the alleged defect prior to sale. 694 F. Supp. 3d 1293, 1307 (C.D. Cal. 2023). The remaining cases Plaintiffs cite are inapposite. See *Beaty v. Ford Motor Co.*, 854 Fed. Appx. 845, 847 n.1 (9th Cir. 2021) (unpublished)

1  (Opp. at 10:7–10) (explicitly declining to assess "unusually high" inquiry on appeal of summary
2  judgment ruling because the issue was raised for the first time on appeal); *Long v. Graco Child's*
3  *Products Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *6–7 (N.D. Cal. Aug. 26, 2013) (Opp.
4  at 10:10-13) (pre-dating *Williams* and finding presale knowledge because the plaintiff alleged
5  customer complaints *plus* defendant monitored complaints filed on the NHTSA website "at all
6  times," informed NHTSA it was "keenly aware" of the alleged defect, and responded directly to
7  NHTSA complaints).

8  Nor are Plaintiffs aided by selectively quoting Nuna counsel from a February 11, 2026
9  hearing in *Roberts v. Nuna Baby Essentials, Inc.*, No. 25-CV-2209-KKE (W.D. Wash.). What Nuna
10 counsel actually said is this: "The bottom line, though, Your Honor, is that it's not a numbers issue[],
11 it's not how many complaints were there, or how many -- how many complaints did the defendant
12 know of. The question is, does that give rise to knowledge." Opp. at 11:22–12:1. That is precisely
13 the point here: the number of complaints alone does not establish presale knowledge of an alleged
14 defect. Plaintiffs must allege something more and they have failed to do so.

15 ***Plaintiffs' "additional" allegations do not show Nuna's presale knowledge.*** Plaintiffs
16 argue that two categories of allegations show a "change in corporate behavior" signaling that
17 something amiss was known to Nuna : (1) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
18 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
19 ▆▆▆▆▆▆ (Opp. at 11:6-9); and (2) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
20 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Opp. at 11:9-11). Yet Plaintiffs do not allege
21 these practices were anything other than Nuna's standard, customary approach to processing
22 consumer complaints and warranty claims generally. This stands in sharp contrast to *Williams*,
23 where plaintiffs alleged the creation of a dedicated customer care center—an exceptional step
24 specifically and exclusively directed at the defect at issue—which indicated that defendant
25 considered the number of complaints unusual. 851 F.3d at 1026. By contrast, in *Deras*, the court
26 found that bare allegations of an "internal monitoring system" that tracked alleged complaints were
27 insufficient to establish presale knowledge. 2018 WL 2267448, at *5. The difference makes all
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- 7 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

1  the difference. Exceptional, unusual corporate conduct may suggest corporate knowledge; ordinary
2  claims processing, as alleged here, does not.
3        As to the ████████████████████, Plaintiffs' own allegations contradict their
4  (unsupported) premise that this evidences a "change" in behavior (Opp. at 11:6-11). Plaintiffs
5  specifically allege that ████████████████████████████████████████████████████████████
6  ████████████████████████████ FAC ¶ 107. Moreover, the spreadsheet itself post-dates all of
7  Plaintiffs' Rava purchases and thus says nothing about *presale* knowledge of the alleged "Defect."
8        Finally, and curiously, Plaintiffs argue that it would be impossible for any plaintiff to make
9  allegations regarding competitor products when that is precisely what plaintiffs were able to do in
10 *Sloan* (Mot. at 12:11-14), a case Plaintiffs simply ignore. 287 F. Supp. 3d at 866 (specific
11 allegations regarding numbers of complaints for competitor products gave court a "baseline").
12 Plaintiffs' refusal to engage on the issue of competitors is particularly salient considering their own
13 pleading history. As Nuna pointed out in its Motion (Mot. 12:22-13:3), Plaintiffs' prior complaint
14 referenced a consumer's 2021 online post describing the alleged defect as *"not just a Nuna issue,"*
15 and stating that "so many moms with different brands of car seats" had found "the same issues"—
16 a complaint Plaintiffs conspicuously removed in the FAC. CAC ¶ 69, n.59 (emphasis added) (citing
17 https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps
18 ).[1] That omission is not accidental. It reflects Plaintiffs' awareness that complaints about similar
19 issues across multiple car seat brands undercut any inference that Nuna had presale knowledge of
20 a specific defect particular to the Rava.
21       ***The October 2023 refresh allegation remains speculative.*** Plaintiffs offer no new factual
22 allegation about Nuna's Rava refresh in October 2023 that might anchor their omission theory, a
23 conspicuous failure since the Court already found dependence on the refresh "speculative." Mot.
24 at 11:4–8; Opp. at 15:24–28. Instead, Plaintiffs offer an inapt analogy to cases in which presale
25 knowledge of a defect was adequately plead based on multiple technical service bulletins ("TSBs").
26 Opp. at 16:1–15. TSBs may evidence knowledge: they explicitly alert customers to some concern

---

[1] As explained in Nuna's Motion, the Court may take judicial notice of Plaintiffs' prior pleading. *See Spectravest, Inc. v. Mervyn's Inc.*, 673 F. Supp. 1486, 1490 (N.D. Cal. 1987) (the court "may take judicial notice of the existence of an earlier pleading, particularly when the same parties are involved") (citation modified).

CROWELL & MORING LLP
ATTORNEYS AT LAW

- 8 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

the issuing company has learned.  A product refresh does not.  As explained in the cases Plaintiffs cite, these TSBs expressly identified the alleged defect as an issue and provided instructions for its repair—permitting an inference that the manufacturer had knowledge of a product defect before and after the TSBs were issued.  *See Paperno v. Whirlpool Corp.*, No. 23-cv-05114-RFL, 2024 WL 1091192, at *1-2 (N.D. Cal. Mar. 13, 2024) (defendant issued "technical service pointers" to authorized retailers before and after plaintiffs' purchase identifying the alleged refrigerator defect); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d. 1087, 1093-94 (N. D. Cal. 2014) (defendant issued TSB identifying similar defect in other product prior to plaintiffs' purchases and additional TSBs post-purchase); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 949-50 (N.D. Cal. 2014) (defendant issued at least eight TSBs to dealers recommending repairs); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1079, 1099 (N.D. Cal. 2021) (defendant issued a "tech tip" to service providers about the alleged defect and noted it was "under investigation").  Plaintiffs allege no TSBs and nothing else evidencing knowledge of the "Defect" in connection with the October 2023 refresh.

***A moving-target theory of defect undermines Plaintiffs' presale knowledge allegations***.  Plaintiffs explicitly define the "Defect" as the potential for debris to enter the harness adjuster mechanism due to the absence of a cover over the harness adjuster button:  "Nuna sold and later recalled over 600,000 RAVA car seats . . . without a cover over the front harness adjuster button, which controls the tightness of the Car Seat straps, causing the straps to loosen when debris enters the front harness adjuster button area that can enable children to come loose in transit ('the Defect')."  Opp. at 1:9-13.  This corresponds with the issue Nuna identified in the recall notices cited in the FAC.  *See* FAC ¶ 5.  Yet, Plaintiffs now state the harness may loosen "not only[ ] when debris enters the area where the front harness adjuster button is located."  Opp. at 6:24–28.  To the extent Plaintiffs now suggest some separate design issues unrelated to debris entering the uncovered adjuster button—a different failure mode, a different causal mechanism, a different defect—they undermine their knowledge theory, since a multiplicity of varied product issues does not impart knowledge of the singular "Defect" alleged in this lawsuit and Plaintiffs do not allege facts suggesting presale knowledge of some alternative design issue.

### D. Plaintiffs' negligent misrepresentation claim fails for additional reasons (Count 2).

Plaintiffs do not dispute that they cannot state a negligent misrepresentation claim based on alleged omissions. Opp. at 23:14-24:19; Mot. at 14:18-24. Moreover, absent physical injury, California law permits negligent misrepresentation claims only where plaintiffs allege membership in a limited group "for whose benefit and guidance" the representation was made. Mot. at 15:1 (quoting *Leining v. Foster Poultry Farms, Inc.*, 61 Cal. App. 5th 203, 217 (2021), *as modified* (Mar. 15, 2021)). Plaintiffs argue that their claim survives because (i) they read and relied on Nuna's marketing statements; (ii) statements made to the general public are actionable; and (iii) the alleged representations are not puffery. Opp. at 23:19–24:19. All are wrong.

***First***, the FAC does not allege Plaintiffs read or relied on any identified marketing statement before buying their Rava. *See* FAC ¶¶ 159, 175, 190–91, 202–03. Plaintiffs do not cite a single case in which a negligent misrepresentation claim was permitted to proceed where a plaintiff failed to identify the representation they actually read and relied on. Caselaw already provided by Nuna is to the contrary. *See* Mot. at 14:10-17; *see also Garcia v. Gen. Motors LLC*, No. 18-cv-01313-LJO-BAM, 2019 WL 1209632, at *7 (E.D. Cal. Mar. 14, 2019) (dismissing negligent misrepresentation claim for failure to allege specific representations plaintiffs "actually reviewed and relied upon . . . .").

***Second***, as to alleged statements made to the general public, Plaintiffs fail to address California's authoritative holding in *Leining* (Mot. at 14:26) that absent physical injury, representations made to the general public are not actionable under a theory of negligent misrepresentation. 61 Cal. App. 5th at 220. Instead, Plaintiffs retreat to the same district court cases they cited in their opposition to Nuna's prior motion to dismiss the CAC. *Compare* Opp. at 24:10–19 *with* ECF No. 57 at 20:2–8. As before, Plaintiffs' cases are inapposite. The plaintiff in *Cole v. Wright Med. Tech. Inc.* suffered a physical injury. 20-cv-03993-RGK-E, 2020 WL 5846460, at *2 (C.D. Cal. July 27, 2020). And in *Pirozzi v. Apple, Inc.* and *Clark v. Nordic Naturals., Inc.*, defendants did not raise, and the Court did not consider, if a negligent misrepresentation claim for purely economic losses could proceed based on statements made to the public. 966 F. Supp. 2d

909, 918 (N.D. Cal. 2013); No. 24-CV-04058-EKL, 2025 WL 1592676, at *7 (N.D. Cal. June 5, 2025). The FAC's new vague allegations that Nuna "engaged in targeted advertising" and that Plaintiffs Pelufo and Kade "received targeted advertisements" (Opp. at 24:17-19; FAC ¶¶ 191, 203) do not save them. Beyond Plaintiffs' failure to even allege the content of such advertisements, let alone when, where and how they were made, Plaintiffs do not cite any authority holding that a negligent misrepresentation claim may be predicated on "targeted advertisements."

**Third**, as the Court explained when it dismissed the CAC, the marketing statements alleged in the FAC are non-actionable puffery. ECF No. 64 at 22:1–3; *see Supra* Section III.A. Plaintiffs cite new cases, but none help their claim. In *In re Soc. Media Adolescent Addiction/Personal Injury Products Liab. Litig.* (Opp. at 23:20-26), the court recognized that vague statements regarding "safety" were puffery and only permitted plaintiffs' misrepresentation-based claims to proceed because plaintiffs alleged "yearslong course of conduct replete with numerous public statements regarding user safety varying widely in character and degree of deceit." 753 F. Supp. 3d 849, 889-91 (N.D. Cal. 2024). There are no such allegations here. In *Williams v. Gerber Products Co.* (Opp. at 24:3-7), the court declined to dismiss misrepresentation claims based on fruit juice snacks packaging where puffery ("nutritious") was mixed with more specific and measurable statements (the product was made with "fruit juice and all natural ingredients"). 552 F.3d 934, 939 & n.3 (9th Cir. 2008). Here, Plaintiffs do not allege *any* actionable statements.

### E. Plaintiffs fail to state a claim under the UCL "unfair" and "unlawful" prongs (Count 4).

Plaintiffs argue that they state claims under the UCL "unfair" and "unlawful" prongs separate and apart from their misrepresentation and omission-based claims. Opp. at 17:24-19:23. The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (citation omitted). To have standing under the UCL, Plaintiffs must allege that they "(1) suffered an injury in fact; (2) have lost money or property; and (3) can show that the injury and loss of property were the 'result of the unfair competition.'" *DeBons v. Globus Med., Inc.*, No. 2:13-cv-08518-SVW-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- 11 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

1  FFMx, 2014 WL 12586433, at *3 (C.D. Cal. Jan. 31, 2014) (quoting Cal. Bus. & Prof. Code §
2  17204).  Plaintiffs fail to allege a violation of any UCL prong.
3         *Unlawful prong*.  "Plaintiffs can only survive a motion to dismiss brought under [the
4  unlawful] prong if they plead sufficient facts to support another cause of action." *Smith v. Intel*
5  *Corp.*, No. 23-CV-05761-HSG, 2025 WL 2381617, at *8 (N.D. Cal. Aug. 15, 2025).  If "the
6  predicate claims fail, the UCL claim also fails." *Id*. (citation modified).  To the extent Plaintiffs'
7  unlawful prong claim relies on their negligent misrepresentation, fraud, CLRA and FAL claims
8  (FAC ¶ 285), the UCL claim fails for the same reasons those predicate claims fail.  *Supra* Sections
9  III.A–D.
10         Plaintiffs' invocation of Federal Motor Vehicle Safety Standard ("FMVSS") 213 and 213a,
11  codified at 49 C.F.R. § 571.213 and 517.213a, (FAC ¶ 285; Opp. at 19:20–21) fares no better.
12  FMVSS 213 and 213a specify certain performance and testing requirements for car seats, not all-
13  encompassing requirements for all features and functionality of a car seat.  They specify, for
14  example, "dynamic performance" and "dynamic test procedure[s]," and, more recently,
15  requirements for side-impact testing.  49 C.F.R. §§ 571.213(S5.1), 517.213a(S6.1.2).  Plaintiffs
16  have not pleaded that the subject Ravas violated any provisions of FMVSS 213 or 213a.  The UCL
17  claim based on the unlawful prong therefore fails.  *See Hutchins v. Nationstar Mortg. LLC*, No. 16-
18  cv-07067-PJH, 2017 WL 4224720, at *12 (N.D. Cal. Sept. 22, 2017) (dismissing UCL "unlawful"
19  claim where plaintiff has "not alleged facts sufficient to state a claim" under federal regulations).
20         *Unfair prong*.  There are several tests courts in this Circuit have used to determine whether
21  conduct is "unfair" under the UCL.  *See Erickson v. Kimberly-Clark Corp.*, No. 24-CV-07032-
22  AMO, 2025 WL 2105830, at *5 (N.D. Cal. July 28, 2025) (Martínez-Olguín, J.).  Here, Plaintiffs
23  suggest the Court should apply either the "balancing test" or the "tethering test."  Opp. at 17:28–
24  18:8.  Under the "balancing test," courts weigh the "utility of the conduct against the harm to the
25  consumer." *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1114–15 (E.D. Cal.
26  2024).  Under the "tethering test," conduct is unfair if it "offends 'some legislatively declared
27  policy.'" *Id*.  A violation of the unfair prong must be pleaded with particularity under Rule 9(b)
28  where, as here, the claim is based on fraudulent conduct. *Hadley v. Kellogg Sales Co.*, 243 F. Supp.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

- 12 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

3d 1074, 1094 (N.D. Cal. 2017). The FAC alleges that Nuna's conduct violated the UCL's unfair prong for two reasons: (1) Nuna failed to disclose the alleged defect, and (2) Nuna's recall is ineffective. FAC ¶ 285(b). In their Opposition, Plaintiffs add a third unpleaded basis for their "unfair" prong claim: it violated "public policy of the United States," namely FMVSS No. 213 (i.e., 49 C.F.R. § 571.213). Opp. at 18:21–27. Plaintiffs' claim fails under each theory.

***First***, to the extent Plaintiffs' claim relies on Nuna's alleged failure to disclose the alleged defect, it fails alongside Plaintiffs' other omission-based claims predicated on the same allegations. *Supra* Section III.C; *see also Erickson*, 2025 WL 2105830, at * 5 (dismissing unfair claim premised on same basis as false advertising claims plaintiff failed to adequately plead). Since Plaintiffs fail to adequately allege that Nuna had presale knowledge of the alleged defect and a duty to disclose, there is no "unfair" claim. *See Hodsdon*, 891 F.3d at 867 (affirming dismissal of "unfair" claim because defendant's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical" under balancing test) (citation modified). *Long*, the only case Plaintiffs cite to support their argument that Nuna's alleged failure to disclose was "unfair" (Opp. at 18:18) is inapposite because the court there found the defendant had presale knowledge of the defect and thus a duty to disclose. 2013 WL 4655763, at *6, *9.

***Second***, to the extent Plaintiffs rely on the alleged ineffectiveness of the recall, their claim fails for multiple reasons. As an initial matter, Plaintiffs get to unfairness by continuing to grossly mischaracterize the recall, suggesting yet again that customers are "required" to install the remedy "themselves" (Opp. at 4:20–22) and that Nuna failed to provide any "reimbursement" (*id.* at 4:25). As Nuna has repeatedly demonstrated through documents referenced in the pleadings, all owners of subject Ravas can order the remedy kit and Nuna offers to conduct the cleaning and seat cover installation free of charge, and Nuna offers reimbursements to customers who paid out of pocket for a replacement before the remedy kits were available. Mot. at 3:14-18 (citing February 21, 2025 Notice Letter at 3)[2].

---

[2] The February Notice Letter, attached as Exhibit A to this filing, is available through the NHTSA webpage Plaintiffs cite in the FAC. *See* FAC ¶ 44. "The contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice, even when the truthfulness of the documents on file is another matter." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) (citation modified); *see Balboa Cap. Corp.*

CROWELL & MORING LLP
ATTORNEYS AT LAW

- 13 -

DFT'S REPLY ISO MOTION TO DISMISS PLTFS'
FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT;
CASE NO. 3:25-CV-01284-AMO

Next, Plaintiffs cite no case holding that a recall process approved and overseen by a federal regulator, like NHTSA does here, can be "unfair" under the UCL.

Finally, as a matter of standing, to bring a claim under the UCL Plaintiffs must allege that they "lost money or property as a result of" defendant's unfair practices. Cal. Bus. & Prof. Code § 17204; *see Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1044–45 (S.D. Cal. 2018) (dismissing UCL claim because plaintiff did not plead facts showing that challenged conduct caused economic injury). Here, Plaintiffs do not allege that they lost money or property as a result of the ineffectiveness of Nuna's recall; they allege that they would not have purchased the Ravas or would have paid less for them had they known about the alleged defect. FAC ¶ 286. Plaintiffs do not otherwise allege in the FAC or identify in their Opposition any "lost money or property" specifically resulting from the allegedly ineffective recall. In fact, no Plaintiff alleges that they experienced loosening of their Ravas' harness straps after installing the remedy kit (if ever). Plaintiffs cannot plausibly allege they lost "money or property as a result of" a recall they either did not participate in or which remedied the alleged defect in their Ravas.[3]

***Third***, Plaintiffs' new allegation regarding public policy in FMVSS No. 213 does not save this claim. To begin, the Court should reject Plaintiffs' attempt to amend its complaint through their Opposition brief. *See Kennedy v. Meta Platforms Inc.*, No. 23-cv-06615-HSG, 2024 WL 4565091, at *7 (N.D. Cal. Oct. 23, 2024) ("Plaintiff may not amend her complaint through arguments in her opposition brief"). Even if the Court were to consider it, this new theory fails on the merits. To "determine whether a claim is sufficiently 'tethered' to a legislative policy for the purposes of the unfair prong, California courts require a close nexus between the challenged act and the legislative policy." *Magee v. Gen. Motors LLC*, No. EDCV 23-1715 JGB (SSCx), 2024 WL 1829692, at *8 (C.D. Cal. Jan. 26, 2024). As noted above, Plaintiffs do not allege that the Ravas ever failed to meet any testing mandates for child restraints. Moreover, Plaintiffs' argument

---

*v. Shaya Med. P.C. Inc.*, 623 F. Supp. 3d 1059, 1066 n.3 (C.D. Cal. 2022) ("[A] court may take judicial notice of government-provided information on its official website.") (citation omitted).

[3] Plaintiffs' reliance on the related *Roberts* action (Opp. at 19:8-12), which is not controlling and did not address the standing issue, is misplaced.

is predicated on Nuna's failure to disclose the alleged defect to consumers in marketing of the car seats (the challenged act) and therefore falls with Plaintiffs' omission-based claims.  *Supra* III.C.

### III. CONCLUSION

Plaintiffs have now had five opportunities to allege viable claims, even aided by this Court's guidance, and have failed each time.  Dismissal with prejudice is warranted.

March 13, 2026                                                                CROWELL & MORING LLP

By: _____
Valerie M. Goo
Scott L. Winkelman*
Robert A. Mantel*
Branden Nikka
Kendyl Barnholtz

*Attorneys for Defendant*
NUNA BABY ESSENTIALS, INC.

*Admitted pro hac vice*